UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

VERA N. NGWA,

                            Plaintiff,

               v.

CASTLE POINT MORTGAGE,
INC., HEATHER GEARIN,
GMAC MORTGAGE, LLC and
ROYAL SETTLEMENT
SERVICES, INC.,

                      Defendant(s).

------------------------------------------------------------------------x

Civil Action No.: 08-00859

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

     The plaintiff, Vera N. Ngwa, by her attorney, David M. Harrison, Esq.,

complaining of the defendants, Castle Point Mortgage, Inc., Heather Guerin, GMAC

Mortgage, LLC and Royal Settlement Services, Inc., respectfully alleges and sets

forth as follows:

## PRELIMINARY STATEMENT

     1.  This Complaint is filed under the Truth In Lending Act, 15 U.S.C. § 1601 et

Seq., to enforce plaintiff's right to rescind a consumer credit transaction, and to void

the security interest in plaintiff's home held by Castle Point Mortgage, Inc. and/or

GMAC Mortgage, LLC; and to recover actual monetary damages; statutory damages;

reasonable attorney fees and costs, by reason of: **(i)** violation by the original "lender" to

the subject consumer credit transaction, Castle Point Mortgage, Inc., as set forth by

15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; **(ii)** violation by the original "lender" to the subject consumer credit transaction, Castle Point Mortgage, Inc., as set forth by 15 U.S.C. § 1639, as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226.31, 12 C.F.R. § 226.32 and 12 C.F.R. § 226.34; **(iii)** violation by the original "lender" to the subject consumer credit transaction, Castle Point Mortgage, Inc., as well as defendants Heather Gearin and Royal Settlement Services, Inc., as codified by Section 349 of the New York State General Business Law; **(iv)** violation by defendant Castle Point Mortgage, Inc. of Section 589 of the New York State Banking Law; **(v)** violation by the original "lender" to the subject consumer credit transaction, Castle Point Mortgage, Inc., as well as defendant Royal Settlement Services, Inc., of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.; **(vi)** violation by the original "lender" to the subject consumer credit transaction, Castle Point Mortgage, Inc., as well as defendant Royal Settlement Services, Inc., of Sections 484 and 495 of the New York State Judiciary Law. Plaintiff also seeks monetary damages, including punitive damages, for multiple acts of fraud on the part of defendants herein; and further, plaintiff seeks rescission of the subject consumer credit transaction, based upon general principles of equity. Plaintiff also seeks money damages and/or equitable relief from defendant GMAC Mortgage, LLC, as said defendant has taken numerous measures to collect upon a mortgage loan, including commencement of a foreclosure action, when, upon information and belief, said mortgage and/or mortgage loan has loan has not been validly assigned to defendant GMAC Mortgage, LLC; and/or has not been properly recorded.

## JURISDICTION

2.  Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e), as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  The Court has authority to issue a declaratory judgment, by virtue of 28 U.S.C. § 2201.

3.  The Court has Supplemental Jurisdiction over the Plaintiff's State law claims, pursuant to 28 U.S.C. § 1367.

## PARTIES

### Plaintiff:

4.  The plaintiff, Vera N. Ngwa, is a natural person, residing at 10 West 123rd Street, Bronx, New York, New York.  Plaintiff is the owner of said residential real property.

### Defendants:

5.  The defendant, Castle Point Mortgage, Inc., hereinafter referred to as "defendant Castle Point", is a foreign corporation, authorized to conduct and/or transact business in New York State.  Defendant Castle Point derives substantial revenue from its transactions of business in the State of New York; regularly does or solicits business in the State of New York, with substantial revenue derived from interstate and/or international commerce therefrom; contracts outside the State of New York to supply goods and services within the State of New York, having reasonable expectations that

same will have consequences within the State of New York and/or is otherwise subject to jurisdiction before the Courts of the State of New York.

6.  Defendant Castle Point regularly engages in the making of mortgage loans, and is therefore subject to the Truth In Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R § 226, which implements the act.

7.  The defendant, Heather Gearin, hereinafter referred to as defendant Gearin, is an individual, who at all times herein mentioned, served as an employee of defendant Castle Point.  Defendant Gearin served under the employ of defendant Castle Point in the capacity of "loan officer".

8.  The defendant, GMAC Mortgage, LLC, hereinafter referred to as defendant GMAC, is a foreign limited liability company, duly licensed, or otherwise so authorized to do business in the State of New York.  Defendant GMAC derives substantial revenue from its transactions of business in the State of New York; regularly does or solicits business in the State of New York, with substantial revenue derived from interstate and/or international commerce therefrom; contracts outside the State of New York to supply goods and services within the State of New York, having reasonable expectations that same will have consequences within the State of New York and/or is otherwise subject to jurisdiction before the Courts of the State of New York.

9.  Defendant GMAC regularly serves as an assignee of lenders which regularly engage and/or have regularly engaged in the making of mortgage loans, and is therefore subject to the Truth In Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as

Federal Reserve Board Regulation Z, 12 C.F.R § 226, which implements the act. As an assignee to mortgage loans from said lenders, defendant GMAC is also subject to the Truth In Lending Act.

10.   The defendant, Royal Settlement Services, Inc., hereinafter referred to as "defendant Royal", is a foreign corporation, duly licensed, or otherwise so authorized to do business in the State of New York. Defendant Royal derives substantial revenue from its transactions of business in the State of New York; regularly does or solicits business in the State of New York, with substantial revenue derived from interstate and/or international commerce therefrom; contracts outside the State of New York to supply goods and services within the State of New York, having reasonable expectations that same will have consequences within the State of New York and/or is otherwise subject to jurisdiction before the Courts of the State of New York.

11.   Defendant Royal derives fees in connection with title services rendered in connection with the making of mortgage loans. Defendant Royal also acts in the capacity of a "Settlement Company" and "Closer", in connection with real estate closings. The nature of defendant Royal's services, as well as the fees for which defendant Royal assesses in connection with such services, are subject to the dictates imposed by the Truth in Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; as well as The Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et seq; and the New York State Judiciary Law, including Sections 484 and 495 of said statute.

12.   The principals of defendant Castle Point are the majority owners of defendant

Royal.

13.   The original lender to the subject consumer credit transaction, defendant

Castle Point, issued a mortgage loan to plaintiff Vera N. Ngwa on January 25, 2007,

in the amount of $1,165,000.00.  The resultant Mortgage and Note are secured by

plaintiff's residential property located at 10 West 123rd Street, New York, New York

10027.  Defendant Castle Point, as the lender to said mortgage loan, and the original

"holder" to the resultant mortgage and note, thereafter allegedly assigned said mortgage

and note, and all rights to collect therefrom, to defendant GMAC.

14.   Defendant Gearin was the loan officer assigned by defendant Castle Point

to the subject transaction involving plaintiff Vera N. Ngwa and defendant Castle Point.

15.   Defendant Royal acted as the "Settlement Agent" and/or "Closing Agent"

on the subject loan transaction.  Defendant Royal also rendered "title services" in

connection with said transaction.

16.   Defendants Castle Point and Gearin made a predatory mortgage loan to

plaintiff based upon a variety of false, fraudulent and deceptive acts and statements upon

which the plaintiff relied.  Defendants Castle Point and Gearin knowingly engaged in

conduct which completely violated the applicable disclosure requirements mandated by

the Truth In Lending Act, as set forth by 15 U.S.C. § 1601 et Seq., as well as Federal

Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; including

15 U.S.C. § 1640; Regulation Z § 226.17 and  Regulation Z § 226.19(b).  Defendants

Castle Point and Gearin knowingly engaged in conduct which was knowingly fraudulent

and deceptive, in connection with the origination and processing of the subject loan; and

further, defendant Castle Point received a "loan origination fee" in the amount of

$46,600.00 which was drastically disproportionate in relation to services provided upon

the subject loan; and in violation of the dictates imposed by New York State Banking

Law Section 589. Defendant Royal violated regulations imposed by the Real Estate

Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et seq, by acting as a

"closing or settlement agent" on the subject loan, whose services included distribution

of loan proceeds and escrowing of loan funds, in which capacity defendant Royal was

not legally permitted to act. Defendant Royal, in acting as a "closing or settlement

agent" also violated Sections 484 and 495 of the New York State Judiciary Law, in

that said defendant undertook procedures in connection with the closing of the subject

loan, including the distribution of loan proceeds and escrowing of loan funds, which

are required to be performed by an attorney, as well as a party independent of the "lender"

to the loan. Defendant Royal, despite not being legally empowered in New York State

to serve as a "closing agent" and/or "settlement agent" on the subject loan,  assessed

fees for "closing services", which are clearly unreasonable and nonbonafide.   The

conduct engaged in by defendants Castle Point, Gearin and Royal, in connection with the

origination, processing and consummation of the subject loan were materially misleading,

knowingly deceptive, and unlawful, and as such, constituted violations of the New York

State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York

State General Business Law; and further, defendants' conduct with respect to the creation

of the subject mortgage loan involved several fraudulent misrepresentations made to

plaintiff, as well as concealment from the plaintiff of material facts relating to the subject

loan transaction. Defendant GMAC, as an alleged assignee of the mortgage loan rendered by

defendant Castle Point, assumes liability for all Truth In Lending Disclosure violations herein

set forth, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and

Regulation Z § 226.19.

## STATUTORY AND REGULATORY FRAMEWORK

17.  This case arises under the Truth in Lending Act, as dictated by 15 U.S.C. §

1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which

implements the act; New York State General Business Law Section 349, also known

as the New York State Deceptive Acts and Practices Statute; New York State Banking

Law Section 589; The Real Estate Settlement Procedures Act, commonly known as

RESPA, as set forth by 12 U.S.C. § 2601 et seq; and Sections 484 and 495 of the New

York State Judiciary law.

18.  The Truth In Lending Act provides relief to a borrower, in the form of

monetary damages and rescission, by reason of a lender's failure to accurately disclose

a variety of financing information. The statute also provides such relief to a borrower

should a lender fail to comply with mandated rescission/cancellations procedures, as

set forth by Regulation Z.

19.  New York State General Business Law Section 349, also known as the New

York State Deceptive Acts and Practices Statute, prohibits deceptive acts or practices in the conduct of any business, trade or commerce, or in the provision of any service; and provides, *inter alia*, for money damages, injunctive relief, and attorney fees for its violation.

20.   New York Banking Law Section 589 , by its language, is designed to "ensure that the mortgage lending industry is operating fairly, honestly and efficiently, as well as free from deceptive and anti-competitive language". This statute protects consumers, in that it seeks to enforce reasonable standards governing the actions and conduct of mortgage lenders and their agents.

21.   The Real Estate Settlement Procedures Act is a consumer protection statute that requires that borrowers receive disclosures at various times. The statute applies to all loans secured with a mortgage placed on a 1-4 family residential property, which includes refinances.

22.   The New York State Judiciary law sets forth the manner in which legal services are to be performed on behalf of either an individual or corporation; and who is empowered to perform such legal services.

## STATEMENT OF FACTS

23.   In or about December of 2006, plaintiff Vera N. Ngwa was "cold called" and solicited (by telephone) by defendant Gearin, on behalf of defendant Castle Point,

to refinance an existing mortgage held originally by Option One Mortgage Corporation,

with a then existent balance of $986,779.27. This mortgage was secured by plaintiff's

residential property located at 10 West 123rd Street, New York, New York. The mortgage

had resulted from a $910,000.00 mortgage loan issued to the plaintiff by Option One

Mortgage Corporation on or about July 5, 2005. Plaintiff was in default on this loan at the

time of said defendants' solicitation; and was herself a named defendant in a foreclosure

action as a result of her default.

    24.  The payment obligations imposed by the mortgage originally held by Option

One Mortgage Corporation required a monthly payment from the plaintiff in the amount

of approximately $6,035.00. The underlying loan issued by Option One Mortgage

Corporation consisted of an adjustable rate loan, with an initial fixed interest rate of 6.800%

over the first two years of the loan. In August of 2007, the adjustable rate trigger on this

loan went into effect; with the applicable interest rate at that time not being permitted to be

greater than 9.800%; or less than 6.800 %. This interest rate was in effect at the time

of the initial solicitation of plaintiff by defendant Gearin, on behalf of defendant Castle

Point.

    25.  At the time of said solicitation by defendants Castle Point and/or Gearin,

plaintiff Vera N. Ngwa was the sole individual on the deed to plaintiff's residential

premises located at 10 West 123rd Street, New York, New York. Plaintiff was also the

sole individual named as a "borrower", in connection with the mortgage held by Option

One Mortgage Corporation at that time.

    26.  During the initial communication between plaintiff and defendant Gearin,

plaintiff was advised by defendant Gearin that she could obtain a refinance mortgage loan from defendant Castle Point, for "just over one million dollars" which would consist of a loan with a "lower rate of interest" than that which existed on plaintiff's current mortgage; with resultant "lower" monthly mortgage payments than what was imposed by plaintiff's current mortgage.

27.  During her initial conversation with defendant Gearin, plaintiff informed said defendant as to her current income status.  Defendant Gearin informed plaintiff at that time that plaintiff's current income qualified her for a refinance loan, to be issued by defendant Castle Point, with resultant payment terms which were more favorable than what was imposed by her current mortgage.

28.  Plaintiff was further advised by defendant Gearin during their initial conversation, that the proposed refinance loan would result in satisfaction of plaintiff's existent mortgage balance; and would also result in "significant cash out" for plaintiff's "benefit".

29.  Defendant Gearin also advised plaintiff at that time that the proposed refinance loan was "the only way" that plaintiff would be able to "save her home".

30.  Based upon the representations made by defendant Gearin, on behalf of defendant Castle Point, plaintiff decided to pursue a refinancing of her existent mortgage with defendant Castle Point.

31.  In or about late December of 2006, plaintiff provided defendants Castle Point and Gearin with relevant income information, including a 2006 W2 earnings statement, as well as tax return related documents  for the preceding two years.

32.  In or about late December of 2006, plaintiff executed tax income/income record authorizations with defendants Castle Point and Gearin, which allowed defendants to obtain relevant income information from Internal Revenue Service, as well as related tax authorities.

33.  On or about December 29, 2006, plaintiff was provided with correspondence from defendant Gearin, on behalf of defendant Castle Point, which referenced attached documents which constituted" initial disclosure" by defendant Castle Point concerning the proposed refinance loan.  Many of these documents contained defendant Gearin's signature.

34.  The "initial disclosure" exchanged by defendant Gearin, on behalf of defendant Castle Point, indicated that the subject refinance loan was to consist of a loan principal balance of $1,135.000.  This disclosure also indicated that the subject loan would be an adjustable rate transaction, to be secured by plaintiff's residential premises located at 10 West 123rd Street, New York, New York.

35.  That nowhere within said "initial disclosure" was there any reference made to the "Annual Percentage" Rate assessable against the subject refinance loan.

36.  That nowhere within said "initial disclosure" was there any reference made to the "Finance Charge" assessable against the subject refinance loan.

37.  That nowhere within said "initial disclosure" was there any reference made to the "Amount Financed" concerning  the subject refinance loan.

38.  That nowhere within said "initial disclosure" was there any reference made to the "Total of Payments" assessable against the subject refinance loan.

39.   That nowhere within said "initial disclosure" was there any reference made to the "Total Number of Payments" assessable against the subject refinance loan.

40.   That said "initial disclosure" did not contain a "Truth in Lending Statement", as mandated by the Truth In Lending Act.

41.   That no attempts were made by defendants Gearin and/or Castle Point to explain the contents of any of the documents comprising said "initial disclosure" prepared by defendant Castle Point.

42.   Shortly following plaintiff's receipt of said "initial disclosure, defendant Gearin telephoned plaintiff and advised her that plaintiff should execute the enclosed documents and return them to defendants Castle Point and Gearin, as such documents were necessary to enable plaintiff to "close" on the proposed loan.  No attempts were made at that time by defendants Gearin and/or Castle Point to explain the contents of any of the documents comprising said "initial disclosure" prepared by defendant Castle Point.

43.   During said telephone conversation between plaintiff and defendant Gearin following said defendants' forwarding of said "initial disclosure" to plaintiff, defendant Gearin reiterated to plaintiff that  the subject refinance loan was a "good deal" with terms as favorable as plaintiff could get; and which would consist of the "only way" in which plaintiff could "save" her home.  Plaintiff was also told by defendant Gearin at that time that the subject refinance loan would result in monthly payments which plaintiff could "easily" afford; and that if plaintiff remained current on said loan for one year, she would "qualify" for a refinance loan with even more favorable monthly loan payment

terms.

44.  Pursuant to said representations made to plaintiff by defendants Castle

Point and/or Gearin, the plaintiff, Vera N. Ngwa, agreed to proceed on the proposed

mortgage refinancing.

45.  In or about early January of 2007, plaintiff executed an authorization which

enabled defendant Royal Settlement Services, Inc. (hereinafter referred to as defendant

Royal) to obtain relevant income information from Internal Revenue Service, as well

as well as related tax authorities.  Plaintiff facsimiled her execution of these documents

to defendant Royal, on or about January 8, 2007.

46.  Defendants Gearin and Castle Point scheduled plaintiff for a "closing" of

the subject refinance loan transaction, to be held on January 25, 2007.

47.  The "closing" of the subject refinance transaction was scheduled to be

held at plaintiff's residential premises located at 10 West 123rd Street, New York, New

York.

48.  Plaintiff was advised by defendant Gearin, one behalf of defendant Castle

Point, that it was not necessary for her to be represented by an attorney in connection with

said "closing".

49.  At no time prior to the date of "closing" and/or consummation of the subject

transaction (January 25, 2007) was the plaintiff ever presented with any Truth In Lending

Statement and/or Truth In Lending information, as mandated by the Truth In Lending Act,

including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and

Regulation Z § 226.19.

50.   At no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) was the plaintiff ever presented with any information and/or terms concerning the subject loan's: **(i)** "Annual Percentage Rate"; **(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments" and/or **(v)** "Total number of Payments", as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

51.   The "closing" of the subject loan transaction held on January 25, 2007, at plaintiff's residence consisted of plaintiff being presented with numerous documents for her execution, by a representative of defendant Royal, whose sole purpose was to notarize said documents.

52.   The representative sent by defendant Royal to attend said "closing" possessed no knowledge of the contents of any of the document provided to plaintiff; or any of the information contained therein.  When plaintiff attempted to ask said representative about the information contained within said documents, plaintiff was advised by said representative that he was unaware as to any specific information concerning the loan.

53.   The documents which were provided to plaintiff Vera N. Ngwa, at the time of "closing" of the subject mortgage loan, included the following: **(i)** Document entitled "MORTGAGE" (with a document annexed thereto entitled "ADJUSTABLE RATE  RIDER"), dated January 25, 2007; **(ii)** "Document entitled "ADJUSTABLE RATE NOTE", dated January 25, 2007; **(iii)** Document entitled "SETTLEMENT STATEMENT" (also entitled "U.S. Department of Housing and Urban Development Statement", and hereinafter referred to as "the HUD Statement"), evidencing the "Settlement Date" of the

subject loan transaction as January 25, 2007; **(iv)** Document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT, dated January 25, 2007; **(v)** Document entitled "UNIFORM RESIDENTIAL LOAN APPLICATION", dated January 25, 2007.

54.    The document entitled "MORTGAGE" described plaintiff Vera N. Ngwa as the "Borrower" to the subject loan.  This document also referred to defendant Castle Point as the "Lender" to the loan.

55.    The document entitled "MORTGAGE" evidenced the subject mortgage loan to be issued by defendant Castle Point to plaintiff as consisting of a principal loan balance of $1,165,000.00, "plus interest and other amounts that may be payable".

56.    The document entitled "MORTGAGE" also made reference to the "note signed by Borrower and dated January 25, 2007"

57.    The document entitled "ADJUSTABLE RATE NOTE" stated that in return for the loan that plaintiff was receiving from defendant Castle Point, plaintiff promised to pay $1,165,000.00 as "principal", "plus interest to the order of Lender".  This document referenced defendant Castle Point as the "Lender".

58.    The document entitled "ADJUSTABLE RATE NOTE" stated that pursuant to the terms of the subject mortgage loan: "Interest will be charged on unpaid principal until the full amount of Principal has been paid".  Plaintiff was obligated to pay interest on the subject loan at a yearly rate of 11.875 %.  This interest rate was subject to change, pursuant to "Section 4 of this Note."

59.    The document entitled "ADJUSTABLE RATE NOTE" also set forth  plaintiff's initial monthly payments as $11,871.36.  The document added that such a payment amount

"may change".

60.    The document entitled "ADJUSTABLE RATE NOTE" stated that the interest rate which plaintiff was obligated to pay "may change on the first date of February, 2012, and on that day every 6th month thereafter". Each date on which plaintiff's interest rate could change was described as a "Change Date".

61.    The document entitled "ADJUSTABLE RATE NOTE" stated that beginning with the first "Change Date", plaintiff's interest rate would be based on an "Index". The "Index" would be "the average of interbank offered rates for six month U.S. Dollar-denominated deposits in the London market ("LIBOR") as published in the Wall Street Journal.

62.    The document entitled "ADJUSTABLE RATE NOTE" stated that the most recent Index figure available as of the first business day of the month immediately preceding the month in which the "Change Date" occurs would be called the "Current Index".

63.    The document entitled "ADJUSTABLE RATE NOTE" further contained the following language: "Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 500/1000 percentage points (6.500 0%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date".

64.    The document entitled "ADJUSTABLE RATE NOTE" stated that the interest rate that plaintiff would be "required to pay at the first Change Date will not be greater than

17.875% or less than 6.500%". Plaintiff's interest rate thereafter "will "never be increased or decreased on any single Change Date by more than TWO AND 000/100 percentage points (2.000 %) from the rate of interest" plaintiff would have been paying for the preceding 6 months.".

65.    The document entitled "ADJUSTABLE RATE NOTE" stated that plaintff's interest rate would "never be greater than 17.875%".

66.    The document entitled "ADJUSTABLE RATE RIDER", annexed to the document entitled "Mortgage", stated that plaintiff's interest rate on the subject mortgage loan "provides for an initial interest rate of 11.875%. This document further stated that plaintiff's interest rate "may change on the first date of February, 2012, and on that day every 6th month thereafter."

67.    The document entitled "ADJUSTABLE RATE RIDER" stated that each date on which plaintiff's interest rate could change would be referred to as a "Change Date". Beginning with the first "Change Date", plaintiffs' interest rate would be based on an "index". The document described the "index" as "the average of interbank offered rates for six month U.S. dollar denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

68.    The document entitled "ADJUSTABLE RATE RIDER" stated to plaintiff that "Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 500/1000 percentage points (6.500%) to the Current Index. The Note

Holder will then round the result of this addition to the nearest one-eighth of one

percentage point (.125%).  Subject to the limits stated in Section 4(D) below, this

rounded amount will be my new interest rate until the next Change Date"

69.   The document entitled "ADJUSTABLE RATE RIDER" stated that the

interest  rate that plaintiff would be "required to pay at the first Change Date will not be

greater than 17.875% or less than 6.500%".  Plaintiff's interest rate thereafter "will "never

be increased or decreased on any single Change Date by more than TWO AND 000/1000

percentage  points (2.000%)" from the rate of interest plaintiff would be paying "for the

preceding 6 months".

70.   The document entitled "ADJUSTABLE RATE RIDER" stated that plaintiff's

interest rate would "never be greater than 17.875%".

71.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE

STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", "stated that

the "**ANNUAL PERCENTAGE RATE**" of the subject mortgage loan (described as

"The cost of your credit at a yearly rate") was 12.457%.

72.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE

STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated

that the **"FINANCE CHARGE"** of the subject mortgage loan (described as "The dollar

amount the credit will cost you") was $3,157,887.08.

73.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE

STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated that

the "**Amount Financed**" on the subject mortgage loan (described as "The amount of credit

provided to you or on your behalf") was $1,115,801.95.

74.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated that the "Total of Payments" of the subject mortgage loan (described as "The amount you will have paid after you have made all payments as scheduled") was $4,273,689.03.

75.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", set forth a "payment schedule". This schedule reflected that the first 359 months, payments would involve monthly amounts of $11,871.36. The next payment would involve a monthly amounts of $11,870.79.

76.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", contained the language: "Your loan contains a Variable Rate Feature. Disclosures about the Variable Rate Feature have been provided to you earlier".

77.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT" stated that plaintiff would be giving a security interest in real property located at 10 West 123rd Street, New York, New York 10027.

78.   The HUD Statement received by plaintiff on the date of "closing" of the subject loan transaction described plaintiff as the "Borrower" to the subject loan; and defendant Castle Point as the "Lender".

79.   The HUD Statement indentified the "Settlement Agent" to the subject loan as defendant Royal.

80.   The HUD Statement set forth various charges assessable against the loan, enumerated as "settlement charges", which  included the following: **(i)** "Loan Origination Fee" to defendant Castle Point, in the amount of $46,600.00; **(ii)** "Application Fee" to defendant Castle Point, in the amount of $595.00; **(iii)** "Processing Fee" to defendant Castle Point, in the amount of $795.00;  **(iv)** "Settlement or closing fee" to defendant Royal, in the amount of $375.00; **(v)** "Title examination" fee to defendant Royal, in the amount of $350.00; **(vi)** Title Insurance to defendant Royal (enumerated as "RSS/Stewart Title"), in the amount of $3,153.00.

81.   The documents received by plaintiff on the date of "closing" of the subject transaction did  not reflect that plaintiff received a reduced premium reissuance rate on the title insurance she received in connection with the subject loan transaction, payable by the plaintiff from the proceeds of the subject mortgage loan.

82.   Plaintiff was not provided with any explanation or disclosure from defendants New Castle, Guerin and/or Royal explaining why she did not receive a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject mortgage loan, despite having received indication that she would be receiving such a reduction, pursuant to documents previously forwarded to her as part of the "initial disclosure" exchanged by defendants Castle Point and Gearin on or about December 29, 2006.

83.   The HUD Statement further reflected that the "Total Settlement Charges" assessed in connection with the subject loan transaction amounted to a figure of $83,131.40.  These funds were paid by the plaintiff from the proceeds of the subject loan issued by defendant Castle Point.

84. The HUD Statement reflected a "Disbursement" to "STEVEN J. BAUM", representing a "FORECLOSURE PAYOFF" in the amount of $986,779.27. This amount was paid by the plaintiff from the proceeds of the subject loan issued by defendant Castle Point.

85. The HUD Statement evidenced the following terms: "Loan Amount": $1,165,000.00; "Total Settlement Charges": $83,131.40; and "Total Disbursements to Others": $1,008,265.27.

86. Defendant Royal was also paid a fee of $375.00 for "settlement" and/or "closing" services, despite not being legally authorized or qualified to assess such a fee, as said services are required to be performed by an attorney, pursuant to the Real Estate Settlement Procedures Act; as well as by reason of "closing", "settlement" and/or "escrow" services which are necessarily performed by any individual or entity functioning in such capacity, pursuant to the Judiciary law of New York State.

87. Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing" services, despite not having an attorney to effectuate such services either within its employ and/or assigned to the subject transaction.

88. Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing" services, despite not producing an individual for said "closing" who was capable of reviewing the information contained within those documents provided to the plaintiff for her execution.

89. Defendant Royal also acted in the capacity of a "settlement agent" on the subject loan, involving a lender whose principals are defendant Royal's majority

owners.

90.   The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, was prepared by defendant Gearin.

91.   The document entitled "Uniform Residential Loan Application" provided to plaintiff Vera N. Ngwa on the date of closing, reflected that the subject loan transaction involved a loan "Amount" of $1,165,000.00; with an "Interest Rate" of 11.875.00; over a period of "360 months", with the subject loan consisting of an "ARM" loan.

92.   The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, reflected that plaintiff earned a monthly "Base Employment Income" of $30,000.00.

93.   The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, reflected that plaintiff earned a "Gross Monthly Income" of $30,000.00, resulting from her monthly "Base Employment Income".

94.   The income information contained within said document entitled "Uniform Residential Loan Application" was entirely contrary to plaintiff's existing income information previously by the plaintiff to defendants Castle Point and Guerin.

95.   At no time prior to the date of "closing" of the date of the subject loan did plaintiff represent to defendants Castle Point and/or Gearin that plaintiff earned a gross monthly income of $30,000.00; as plaintiff was earning significantly less at that time.

96.   At no time did plaintiff knowingly represent to defendants Castle Point and/or Gearin that plaintiff earned a gross monthly income of $30,000, as plaintiff has never earned such a monthly amount.

97.  Plaintiff had never represented, either verbally or by written disclosure, to any of the defendants that her base employment monthly income was $30,000.00; as said income figure was entirely contrary to the income information previously provided to defendants Castle Point and/or Guerin.

98.  Defendants Castle Point and/or Gearin wrongfully and fraudulently inflated plaintiff's income as a means to justify their qualification of plaintiff for the subject mortgage refinance loan subsequently issued by defendant Castle Point.

99.  Defendants Castle Point, Gearin and/or Royal completely failed to acknowledge and/or process said earnings/tax return/record documents provided to them by the plaintiff which enabled defendants to verify plaintiff's actual income information.

100.  Defendants Castle Point, Gearin and/or Royal failed to process said W-9 and 4506 forms previously executed by plaintiff; and failed to undertake any measures to verify the income information provided by the plaintiff.

101.  Documents exchanged upon plaintiff at the "closing of the subject loan transaction evidenced the monthly mortgage payments as approximating $11,900.00 per month, almost double that from the monthly payment obligation imposed by the prior mortgage and note held by Option One Mortgage Corporation.

102.  The monthly payment obligation imposed by the subject refinance loan consisted of an amount which even exceeded the average monthly income derived by plaintiff at that time, as set forth by the income information provided to defendants Castle Point, Gearin and/or Royal by plaintiff.

103. Defendants Castle Point and/or Gearin inflated plaintiff's income information

within the document entitled "Uniform Residential Loan Application", as a means of justifying the resultant refinance loan issued by defendant Castle Point, which involved monthly payment obligations that were almost double that of the prior mortgage, upon which defendants knew that plaintiff had defaulted upon; and upon which plaintiff had fallen into foreclosure.

104.   That at no time prior to the date of "closing" and/or consummation of the subject loan transaction (January 25, 2007) did plaintiff ever receive disclosure establishing the amount and/or "principal balance" of the loan, as consisting of $1,165,000.00.

105.   That the initial disclosure received by plaintiff from defendants, dated December 29, 2006, evidenced the subject loan amount as $1,135,000.00.

106.   That in failing to disclose the proper amount and/or "principal balance" of the subject loan prior to the date of "closing" and/or consummation of the subject loan transaction (January 25,2007) to the plaintiff, defendant Castle Point violated the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC. AND GMAC MORTGAGE, LLC

107.   In the course of the consumer credit transaction between defendant Castle

Point and plaintiff herein, defendant Castle Point violated numerous provisions of the Truth In Lending Act and Regulation Z, including the applicable disclosure requirements set forth by the statute.

108.  That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any Truth In Lending Statement and/or Truth In Lending information, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

109.  That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Annual Percentage Rate" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

110.  That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa, with any information concerning the "Finance Charge" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

111.  That at no time prior to the date of "closing" and/or consummation of the

subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Amount Financed" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

112.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Total of Payments" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

113.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Total Number of Payments" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

114.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Annual Percentage Rate" figure set forth in the "Truth In Lending Statement" exchanged upon

plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

115.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Finance Charge" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

116.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Amount Financed" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

117.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Total of Payments" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

118.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Total Number of Payments" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

119.   That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N.

Ngwa with information which approximated and/or accurately reflected the "Total Number of Payments" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

120. That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the amount and/or principal balance of the subject loan, as set forth in various documents exchanged upon the plaintiff on said date of "closing" and/or consummation of the subject refinance loan transaction (including said document entitled "Mortgage"), as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

121. That by reason of defendant Castle Point's refusal and/or failure to provide mandated Truth In Lending Disclosure prior to the date of "closing" and/or consummation of the subject mortgage loan transaction (January 25, 2007) , as mandated by the Federal Truth In Lending Act, plaintiff Vera N. Ngwa makes claim, pursuant to U.S.C. § 1635, for the following relief: **(i)** rescission/cancellation of the subject mortgage loan/and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc. and thereafter assigned to defendant ,

GMAC Mortgage, LLC, under this transaction; **(iiii)** Return of any money or property given by the plaintiff to any party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee, as well as the costs of this action, pursuant to 15 U.S.C. § 1640(a).

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE,  INC. AND GMAC MORTGAGE, LLC

122.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120", as if fully set forth herein.

123.   That by reason of the refusal and/or failure of defendant Castle Point, as well as said defendant's agents, servants, employees and/or representatives, to provide disclosure to the plaintiff, Vera N. Ngwa, prior to the date of "closing" and/or consummation of the subject mortgage loan transaction (January 25, 2007), consisting of information concerning and/or which approximated and/or accurately reflected the material

terms of the subject refinance loan, including the loan's "Annual Percentage Rate";

"Finance Charge"; "Amount Financed"; "Total of Payments" and/or "Total Number of

Payments", as well as information concerning the amount and/or principal balance of the

subject loan, as mandated by the Federal Truth In Lending Act, the plaintiff, Vera N. Ngwa,

makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC,

for actual monetary damages, pursuant to 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an

amount to be determined at trial; and, for statutory monetary damages, pursuant to

15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an amount not to exceed TWO THOUSAND

and XX/100 ($2,000,00) DOLLARS for each and every Federal Truth In Lending violation

enumerated herein; and a reasonable attorney fee, as well as the costs of this action, pursuant

to 15 U.S.C. § 1640(a).

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC., HEATHER GEARIN AND ROYAL SETTLEMENT SERVICES, INC.

124.  That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "120"; and "122", as if fully set forth herein

125.  The actions taken by defendants Castle Point, Gearin and/or Royal, in

connection with the processing of the subject mortgage loan were known by said

defendants to likely mislead the plaintiff, who was acting reasonably under the

circumstances then and there existing, in that the misrepresentations made by defendants

Castle Point and/or Gearin to plaintiff prior to the date of "closing" of the subject

transaction concerning plaintiff's supposed ability to afford the monthly mortgage

payment imposed by the subject loan were knowingly false; as defendants Castle Point

and/or Gearin thereafter intentionally inflated plaintiff's income within the document

entitled "Uniform Residential Loan Application" as a means to justify qualifying plaintiff

for a loan which defendants knew, or should have known, she could not remain current

upon.  Defendants Castle Point and/or Gearin also knowingly failed to provide plaintiff

with accurate information concerning the material terms of the subject loan prior to the

date of "closing" of said transaction, including the loan's: **(i)** "Annual Percentage Rate";

**(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments"; and,

**(v)** "Number of Payments"; as well as the amount and/or principal balance of the loan.

Defendants knowingly failed to provide such information as a means to conceal from

plaintiff the detrimental nature of the subject loan transaction; while also preventing

plaintiff from being able to compare the terms of the subject loan transaction with other

borrowing opportunities available to plaintiff at that time.  These actions taken by

defendants Castle Point and/or Gearin were knowingly deceptive, and unlawful; and as

such, constituted violations of the New York State Deceptive Acts and Practices Statute,

as codified by Section 349 of the New York State General Business Law.

     126.  Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff

prior to the date of closing of the subject loan transaction that the subject refinance loan

would involve lower monthly mortgage payments than what was set forth by plaintiff's

existent mortgage at that time; and that plaintiff's income would enable her to afford the

monthly payment obligations imposed by the subject refinance loan transaction. Defendants made such misrepresentations to plaintiff while fully knowing that plaintiff's actual income status would not enable her to remain current on the subject refinance loan.

127.   As defendants Castle Point and Gearin knew that plaintiff's actual income status at that time would not enable her to remain current on the subject loan, said defendants knowingly inflated plaintiff's income within said document entitled "Uniform Residential Loan Application"; by wrongfully and knowingly falsely imputing a monthly gross income figure for the plaintiff, in the amount of $30,000.00, which defendants Castle Point and/or Gearin knew was inaccurate; and which was entirely contrary to the income information provided said defendants by the plaintiff, which allowed for verification of plaintiff's proper monthly income.

128.   Defendants Castle Point and/or Gearin had knowingly significantly inflated plaintiff's income within the "Uniform Residential Loan Application" as a means to justify their qualification of plaintiff for the subject loan, as plaintiff's actual income status at that time would not have been sufficient to otherwise enable plaintiff to qualify for the subject refinance loan.

129.   Prior to the date of "closing" of the subject refinance loan transaction, defendants Castle Point and/or Gearin further enticed plaintiff to proceed with the loan, by verbally informing plaintiff, on multiple occasions, that she could thereafter qualify for an additional refinancing with even more favorable loan terms, by remaining current on the subject refinance loan for a period of approximately one year.  Defendants Castle Point and/or Gearin knew this to be untrue, as said defendants were entirely aware that plaintiff's

income status would not allow her to remain current on the subject loan. Defendants knowingly made said misrepresentations to plaintiff for the purpose of preventing plaintiff from learning and/or realizing that the subject loan transaction was of no actual benefit to her and/or detrimental to plaintiff; and to dissuade plaintiff from exploring other loan opportunities available to plaintiff at that time.

130. Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff, prior to the date of "closing" of the subject transaction, that plaintiff's income would enable her to remain current on the monthly payment obligations imposed by the loan; when defendants were fully aware that plaintiff was already in foreclosure in connection with a mortgage which involved payment obligations which were significantly less than that imposed by the subject loan transaction.

131. Defendants Castle Point and/or Gearin knowingly refused to provide plaintiff with information concerning the monthly mortgage payment obligations imposed by the subject refinance loan, at any time prior to the date of "closing" of said transaction. Defendants acted to conceal such information because they knew that plaintiff would eventually default on the payment obligations required by the subject refinance mortgage.

132. Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff, prior to the date of "closing" of the subject transaction, that the subject loan involved the most favorable payment terms which plaintiff could receive at that time, given her then existent credit and asset status; and that the subject loan was the only means available for plaintiff to "save" her home from foreclosure. Defendants Castle Point and/or Gearin knowingly misrepresented this fact to plaintiff for the purpose of preventing plaintiff from

learning and/or realizing that the subject loan transaction was actually of no benefit to her; and/or detrimental to plaintiff; while also serving to dissuade plaintiff from exploring other loan opportunities available to her at that time.

133.   Defendants Castle Point and/or Gearin knowingly failed to provide plaintiff with required Truth In Lending Disclosure prior to the date of "closing" of the subject mortgage loan, as mandated by the Truth In Lending Act, for the purpose of preventing plaintiff from learning and/or realizing that the subject loan transaction was actually of no benefit to her; and/or detrimental to plaintiff; while also serving to dissuade plaintiff from exploring other loan opportunities available to her at that time.

134.   Defendants Castle Point and/or Gearin knowingly acted improperly and deceptively, in discouraging plaintiff from retaining an attorney to represent her in connection with the "closing" of the subject transaction; when defendants knew that plaintiff would not be able to fully understand the contents of the documents provided to plaintiff at said proceeding; and when said defendants knew that said "closing" involved plaintiff meeting a representative from defendant Royal, who possessed no knowledge or information concerning the contents of the documents provided to plaintiff.  Defendants Castle Point and/or Gearin acted in such manner so as to prevent the plaintiff from learning and/or realizing that the subject loan transaction was actually of no benefit to her and/or detrimental to plaintiff; while also serving to dissuade plaintiff from exploring other loan opportunities available to her at that time.

135.   Defendants Castle Point, Gearin and/or Royal knowingly acted improperly, and deceptively, in producing a representative to meet with plaintiff at her home, in

connection with said "closing", whose sole purpose was to notarize documents executed

and signed by the plaintiff; and who possessed no knowledge or information as to the

contents of the documents contained therein.  Defendant Royal, as "closing agent" and/or

"settlement agent", acted wrongfully in refusing to produce an individual for said

"closing" who possessed no knowledge as to the contents of said documents; and who

could not provide explanation as to the information contained in those documents

presented to the plaintiff.  Defendants acted in such a manner so as to prevent the plaintiff

from learning and/or realizing that the subject loan transaction was actually of no benefit

to her and/or detrimental to plaintiff; and to dissuade plaintiff from exploring other loan

opportunities available to her at that time.

136.   Defendants Castle Point and Royal also knowingly acted improperly and

deceptively, in having defendant Royal serve as a "settlement agent" and/or "closing agent"

on a loan transaction involving a lender, when both defendant Castle Point and/or Royal

are operated and/or owned by the same individuals.

137.   Defendants Castle Point and/or Royal failed to make clear to the plaintiff as

to the inherent conflict imposed by related entities serving as a lender and "

settlement agent/closing agent" on the subject mortgage loan transaction.  Defendants

acted in such manner so as to prevent plaintiff from learning and/or realizing that the

subject loan transaction was actually of no benefit to her and/or detrimental to plaintiff; and

to dissuade plaintiff from exploring other loan opportunities available to her at that time.

138.   Defendants Castle Point and/or Royal also knowingly and intentionally failed

to provide plaintiff with any explanation or disclosure explaining why she did not receive

a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject refinance mortgage loan transaction, despite the subject transaction consisting of a refinance; and despite defendants being fully aware that plaintiff was entitled to such a reduced premium reissuance rate.

139.  Defendants Castle Point and Royal also knowingly and intentionally failed to provide plaintiff with any explanation or disclosure explaining why she did not receive a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject refinance mortgage loan transaction, despite the subject transaction consisting of a refinance; and despite defendants knowing that plaintiff was entitled to such a reduced premium reissuance rate.  Defendants acted in such manner so as to prevent plaintiff from learning and/or realizing that the subject loan transaction was of no benefit to her and/or detrimental to plaintiff; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

140.  Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff, prior to the date of "closing" of the subject loan transaction, that plaintiff would be receiving "significant cash out", which would be to plaintiff's "benefit".  While plaintiff received $73,603.33 in cash funds on the date of "closing" of the subject transaction, such cash moneys were entirely negated by the monthly payment obligations imposed by the subject loan, with plaintiff's "initial" monthly payments on the subject loan amounting to $11,871.36.  In refusing and/or failing to provide plaintiff with information concerning the monthly payment amounts dictated by the subject loan, defendants knowingly misrepresented to plaintiff that said "cash" to be received by plaintiff was to plaintiff's "benefit", as

defendants were entirely aware that said cash received by plaintiff would be entirely negated by the payment obligations imposed upon the plaintiff by the subject loan.

141.   The actions undertaken by defendants Castle Point, Gearin and/or Royal, in connection with their material concealment of facts relating to the subject loan, as well as defendants' failure to provide plaintiff with mandated Truth In Lending Disclosure prior to the date of the subject closing, were materially misleading and knowingly deceptive, in that such actions were designed by said defendants to prevent plaintiff from learning and/or realizing that the subject loan transaction was of no actual benefit to her and/or detrimental to plaintiff; and to dissuade the plaintiff from canceling or rescinding the subject mortgage transaction,  as well as to convince plaintiff to forego other loan opportunities available to her at that time.

142.   That actions taken by defendants Castle Point, Guerin and/or Royal involved conduct which said defendants knew were materially misleading and knowingly deceptive, and as such, constituted a violation of the New York State Deceptive Acts and Practices Statute, as codified by General Business Law Section 349.

143.   That actions taken by defendants Castle Point, Guerin and/or Royal involved conduct which constituted a violation of the New York State Deceptive Acts and Practices Statute, as codified by General Business Law Section 349, resulted in defendant Castle Point stripping plaintiff of any and all of her equity remaining in her premises, while also enabling defendants Castle Point, Gearin and/or Royal to receive excessive and/or unwarranted fees in connection with their "services" rendered on the subject transaction.

144.   That by reason of the knowingly deceptive and unlawful actions undertaken by defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., which were known by said defendants to likely mislead the plaintiff, who was acting reasonably under the circumstances then and there existing, the plaintiff, Vera N. Ngwa, makes claim against defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., for monetary damages, pursuant to the New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law; in an amount to be determined at trial; and a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC. AND GMAC MORTGAGE, LLC

145.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; and "124" through "143", as if fully set forth herein

146.   That by reason of said material misdisclosures, the plaintiff, Vera N. Ngwa, makes claim, pursuant to The New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law, for the following relief: **(i)** rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's

residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or property given by the plaintiff to any party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST THE DEFENDANT,**
**CASTLE POINT MORTGAGE,  INC.,**

147.    That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; and "145", as if fully set forth herein.

148.    The "loan origination fee", in the amount of $46,600.00, payable to defendant Castle Point, from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee),  was known by defendant Castle Point to be excessive, in that it was drastically disproportionate to the services time and/or degree of

expertise rendered by defendants Castle Point and/or Gearin, as well as any agents, servants, employees and/or representatives of said defendants.

149.  The "loan origination fee", in the amount of $46,600.00, payable to defendant Castle Point, from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee), was known by defendant Castle Point to be both excessive and to plaintiff's detriment; in that the said "loan origination fee" drastically reduced the amount of moneys which plaintiff received at consummation of the loan; and that said fees allowed for an inflated commission fee for defendant Gearin.

150.  The "loan origination fee", in the amount of $46,600.00, payable to defendant Castle Point, from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee), was known by defendant Castle Point to be both excessive and to plaintiff's detriment; in that the said "loan origination fee" was rendered in connection with a mortgage loan transaction which defendant Castle Point knew was to plaintiff's detriment.

151.  The "loan origination fee", in the amount of $46,600.00, payable to defendant Castle Point, from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee), was known by defendants Castle Point to be excessive, in that it was drastically disproportionate to the services time and/or degree of expertise rendered by defendants Castle Point and/or Gearin; and that it was assessed in connection with a mortgage loan transaction which defendant Castle Point knew was of no benefit to the plaintiff; and as such, constituted a violation of New York State Banking Law Section 589.

152.  Defendant Castle Point, in charging plaintiff with said mortgage "loan origination fee" payable by the plaintiff from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee) , did not operate fairly, honestly and efficiently, and acted deceptively in assessing said fee for services rendered by defendants Castle Point and/or Gearin, in connection with the subject mortgage loan.

153.  Defendant Castle Point  also acted unfairly, dishonestly and inefficiently in assessing plaintiff with an additional "Application Fee" , in the amount of $595.00, and a "Processing Fee" in the amount of $795.00, which was payable to defendant Castle Point, by the plaintiff, from the proceeds of the subject loan, despite plaintiff  having already been assessed with said "loan origination fee" by defendant Castle Point in the amount of $46,600.00.

154.  That by reason of the unfair, dishonest and inefficient conduct perpetrated by defendant Castle Point Mortgage, Inc., in connection with services allegedly rendered by defendants Castle Point Mortgage, Inc. and Heather Gearin, the plaintiff, Vera N. Ngwa, makes claim for money damages, pursuant to Section 589 of the New York State Banking Law, against the defendant, Castle Point Mortgage, Inc., in an amount to be determined at trial; and a reasonable attorney fee, pursuant to the dictates of the New York State Banking Law.


**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE,  INC., HEATHER GEARIN AND ROYAL SETTLEMENT SERVICES, INC.**

155.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; and "147" through "153", as if fully set forth herein.

156.   The actions taken by defendants Castle Point, Gearin and Royal, in connection with the processing of the subject mortgage, as well as with respect to services rendered on the loan, were designed to mislead and induce the plaintiff into entering the subject refinance loan transaction; which said defendants knew was of no benefit to the plaintiff; and which defendants were the only parties to benefit, as the subject loan transaction resulted in defendant Castle Point stripping plaintiff of any and all equity remaining in her residential property; while defendants Castle Point, Gearin and Royal obtained fees for services which were clearly excessive and unwarranted.

157.   Defendants Castle Point and/or Gearin misrepresented to plaintiff, prior to the date of "closing" of the subject transaction, that plaintiff's income status would enable her to afford the subject refinance loan; and thereby enable plaintiff to "save" her home (with defendants knowing that plaintiff had already been in foreclosure at that time on her pending mortgage).  Defendants Castle Point and/or Gearin knew that said representations were false, as defendants were fully aware that plaintiff's income status would not enable her to remain current on the monthly mortgage payments imposed by the loan; and which in turn prompted defendants, unbeknownst to plaintiff, to grossly inflate plaintiff's gross monthly income within defendants' generated loan application documents, so as to justify said defendants' qualification of plaintiff for a loan which said defendants

knew plaintiff could not remain current upon.

158.   The misrepresentations made by defendants Castle Point and/or Gearin to plaintiff, prior to the date of "closing" of the subject transaction, that plaintiff's income status would enable her to afford the subject refinance loan; and thereby enable plaintiff to "save" her home, was designed to induce the plaintiff into entering a loan transaction which was of no benefit to plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all equity remaining in her residential property, while also enabling defendant Gearin to obtain an excessive "commission" fee for services rendered on the subject transaction.

159.   Defendants Castle Point and/or Gearin also knowingly failed and/or refused to provide plaintiff with accurate information concerning the material terms of the subject loan prior to the date of "closing" of said transaction, including the loan's: **(i)** "Annual Percentage Rate"; **(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments"; and, **(v)** "Number of Payments"; as well as the principal balance and/or amount of the loan.  Defendants Castle Point and/or Gearin knowingly failed to provide such information as a means to conceal from plaintiff the detrimental nature of the subject loan transaction; while also preventing plaintiff from being able to compare the terms of the subject loan transaction.  These actions were taken to induce plaintiff into entering the subject loan transaction, which said defendants knew was of no benefit to the plaintiff.

160.   Defendants Castle Point and/or Gearin also knowingly failed and/or refused to provide plaintiff with accurate information concerning the material terms of the subject loan prior to the date of "closing" of said transaction, including the loan's: **(i)** "Annual

Percentage Rate"; **(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of

Payments"; and, **(v)** "Number of Payments"; as well as the principal balance and/or

amount of the subject loan. Defendants Castle Point and/or Gearin knowingly failed to

provide such information as a means to conceal from plaintiff the detrimental nature of

the subject loan transaction; while also preventing plaintiff from being able to compare the

terms of the subject loan transaction. These actions were taken to induce plaintiff into

entering the subject loan transaction, which said defendants knew was of no benefit to the

plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining

equity held in her residential property, while also enabling defendant Gearin to obtain an

excessive "commission" fee for services rendered on the subject transaction.

161.   Defendants Castle Point and/or Gearin knowingly intended to further entice

plaintiff to proceed with the subject loan, prior to the date of "closing", by verbally

informing plaintiff, on multiple occasions, that she could thereafter qualify for an

additional refinancing with even more favorable loan terms, by remaining current on the

subject refinance loan for a period of approximately one year. Defendants Castle Point

and/or Gearin knew this to be untrue, as said defendants were entirely aware that

plaintiff's income status would not allow her to remain current on the subject loan.

Defendants knowingly made said misrepresentations to plaintiff for the purpose of

inducing plaintiff into entering the subject loan transaction, which said defendants knew

was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip

plaintiff of any and all remaining equity in her residential property, while also enabling

defendant Gearin to obtain an excessive "commission" fee for services rendered on the

subject transaction.

162.   Defendants Castle Point and/or Gearin knowingly concealed the monthly payment obligations on the subject loan at all times prior to the date of "closing" of the subject transaction, while verbally advising plaintiff that her income status "qualified" her for the subject loan, which in turn, would enable plaintiff to "save" her home.  Defendants were fully aware at all times prior to the date of "closing" that the monthly payment obligations imposed by the subject loan were almost double than what was dictated by plaintiff's existent mortgage, upon which plaintiff had already defaulted, and which had resulted in a commencement of a foreclosure action against the plaintiff.  Defendants made such representations to induce plaintiff into entering the subject loan transaction, which was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity in her residential property; while resulting in defendant Gearin obtaining an excessive "commission" fee for services rendered on the subject transaction.

163.   Defendants Castle Point and/or Gearin also knowingly misrepresented to plaintiff, at all times prior to the date of "closing" of the subject transaction, that plaintiff would be receiving "significant cash out" to her "benefit" as a result of the proceeds received from the refinance loan.  Defendants made this representation while concealing the amount of the monthly payments which plaintiff would be required to make on the resultant mortgage.  Defendants knowingly failed to reveal to plaintiff that the resultant mortgage would result in monthly payments which would be more than double what plaintiff had been paying previously, thereby negating any cash proceeds which plaintiff

would receive from the subject loan transaction. Defendants made such representations to induce plaintiff into entering the subject loan transaction, which was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity in her residential property; while resulting in defendant Gearin obtaining an excessive "commission" fee for services rendered on the subject transaction.

164.    Defendants Castle Point and/or Gearin also knowingly misrepresented to plaintiff, at all times prior to the date of "closing" of the subject transaction, that the subject loan terms were the most favorable terms which plaintiff could receive at that time, given her then existent credit and asset status. Defendants made such misrepresentation at a time when they knew that plaintiff was facing the loss of her property through foreclosure. By making such misrepresentation, defendants were able to induce plaintiff into entering the subject loan transaction, which was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity in her home; while resulting in defendant Gearin obtaining an excessive "commission" fee for services rendered on the subject transaction.

165.    Defendants Castle Point and/or Gearin also misrepresented to plaintiff that it was not necessary for her to retain an attorney to represent her in connection with the "closing" of the subject transaction. Defendants made this representation, despite knowing that plaintiff would not fully understand the contents of the documents presented to her at "closing"; and that the representative appearing on behalf of defendant Royal (as "closing agent and/or "settlement agent to the loan) would not be able to provide explanation as to any information contained within the documents presented to the plaintiff. Defendants

Castle Point and/or Gearin discouraged plaintiff from retaining counsel to represent her on the subject matter; so as to prevent her from learning as to the detrimental nature of the loan. Plaintiff, in proceeding with the "closing" of the subject transaction, justifiably relied upon the prior representations made by defendants Castle Point and/or Gearin, concerning the subject loan; all of which were actually to plaintiff's detriment; and which enabled defendant Castle Point to strip plaintiff of any and all equity remaining in her home; while also enabling defendants Gearin and Royal to obtain excessive fees for services rendered.

166.    Defendants Castle Point, Gearin and/or Royal knowingly acted improperly, deceptively and fraudulently, in producing a representative to meet with plaintiff at her home, in connection with said "closing", whose sole purpose was to notarize documents executed and signed by the plaintiff; and who possessed no knowledge or information as to the contents of the documents contained therein.  Defendant Royal, as "closing agent" and/or "settlement agent", acted wrongfully in refusing to produce an individual with knowledge as to the contents of said documents; and who could provide explanation as to the purpose of those documents presented to the plaintiff.  Defendants acted in such manner so as to prevent the plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her, thereby inducing plaintiff to proceed with the subject transaction, while enabling defendant Castle Point to strip plaintiff of any and all equity remaining in her home; while also enabling defendants Gearin and Royal to obtain excessive fees for services rendered.

167.    Defendants Castle Point and Gearin knew that the amount of moneys assessed for the "loan origination fee", in the amount of $46,600.00; and all "settlement

charges" enumerated within the HUD Statement, were excessive; and that the subject

loan ultimately failed to provide the plaintiff with any "net tangible benefit". As such,

defendants completely misrepresented to the plaintiff that the subject mortgage loan was

beneficial to her; while engaging in conduct which enabled defendant Castle Point to

strip plaintiff of any and all equity remaining in her residential property; while also

enabling defendant Royal to obtain excessive fees for services rendered.

168.   All of the misrepresentations and concealment of material facts engaged in

by defendants Castle Point, Gearin and/or Royal, their agents, servants, employees and/or

representatives, were intended to deceive and defraud plaintiff, and/or prevent plaintiff

from discovering defendants' fraudulent misrepresentations and/or fraudulent scheme,

and plaintiff relied on these misrepresentations and concealment of material facts to

her detriment.

169.   The fraudulent misrepresentations and fraudulent concealment of material

facts rendered by defendants Castle Point, Gearin and/or Royal, prevented plaintiff from

conducting meaningful exploration of more favorable loan opportunities available to her

both prior to and at the time of consummation of the subject mortgage loan.

170.   Plaintiff, but for said defendants' fraudulent representations and fraudulent

concealment of material facts, would not have proceeded with the subject transaction,

upon which plaintiff has been unable to remain current upon; and which has resulted in

commencement of a foreclosure action by defendant GMAC, as assignee to the subject

loan from defendant Castle Point, thereby resulting in damage to plaintiff's credit; and

impairment of title to her real property.

171.  That by reason of the fraudulent misrepresentations and concealment of material facts rendered by defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., the plaintiff, Vera N. Ngwa, has sustained actual damages of at least ONE MILLION DOLLARS and XX/00 ($1,000,000.00) DOLLARS; wrongful impairment of title to their property; and damage to her credit in an amount not fully known or ascertainable.

172.  That plaintiff has suffered constant depression anxiety, loss of sleep and stress as a result of having been victimized by defendants' fraud.

173.  That upon information and belief, the plaintiff is entitled to compensatory damages in an amount to be determined by the trier of fact.

174.  That upon information and belief, the gross, wanton and willfully fraudulent conduct of defendants Castle Point, Gearin and/or Royal, their agents, servants, employees and/or representatives, were not only morally evil and reprehensible, as it has affected the plaintiff, but it is also part of a pattern of predatory lending directed at vulnerable segments of the public.

175.  That by reason of the gross, wanton and willfully fraudulent conduct directed to the plaintiff, as well as vulnerable segments of the public, and in order to both punish defendants, their agents, servants, employees and/or representatives, from engaging in the same or similar conduct in the future, the plaintiff, Vera N. Ngwa, demands an award of punitive damages in the amount of TEN MILLION and XX/100 ($10,000.000.00) DOLLARS against  the defendants, Castle Point Mortgage, Inc., Heather Gearin and/or Royal Settlement Services, Inc., jointly and individually

176.   That by reason of defendant' fraudulent concealment of material information

and terms essential to the processing of the subject loan, as well as defendants' fraudulent

conduct and misrepresentations made in connection with the subject mortgage loan, the

plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage,

Inc., Heather Gearin and Royal Settlement Services, Inc., both jointly and individually,

for actual monetary damages, in the amount of ONE MILLION DOLLARS and XX/100

($1,000,000.00) DOLLARS; for compensatory damages in an amount to be determined by

the trier of fact; and for punitive monetary damages, in the amount of TEN MILLION and

XX/100 ($10,000,000.00) DOLLARS.


### AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE,  INC. AND GMAC MORTGAGE, LLC


177.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153"

and "155" through "175", as if fully set forth herein.

178.   The fraudulent misrepresentations and material concealment of facts  made

by defendants Castle Point, Gearin and/or Royal, in connection with the processing and

closing of the subject loan, as well as the disclosure of its terms, constituted inequitable

and unconscionable conduct, by which the plaintiff has been victimized.

179.   Plaintiff is entitled to cancellation/discharge and/or rescission of the subject loan, based upon general principles of equity.

180.   That by reason of the fraud, inequity, and unconscionable conduct rendered by defendants Castle Point Mortgage, Inc., Heather Gearin and/or Royal Settlement Services, Inc., the plaintiff, Vera N. Ngwa, makes claim for the following relief: **(i)** rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or property given by the plaintiff to any  party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee.


**AS AND FOR AN EIGHTH CAUSE OF
ACTION AGAINST THE DEFENDANT,
CASTLE POINT MORTGAGE,  INC.,**


181.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153" "155" through "175"; and "177" through "179", as if fully set forth herein.

182.    That the plaintiff, Vera N. Ngwa, had provided and/or authorized defendants Castle Point, Gearin and/or Royal with all information within her possession concerning her existent employment income at the time of her application for financing, including pay stubs, W-2 forms and tax return documents.

183.    That the plaintiff, Vera N. Ngwa, executed employment income authorization forms in connection with the subject consumer credit transaction, which consisted of Request for Verification of Employment Forms and 4506 Tax Record income authorizations.  These authorizations enabled defendants Castle Point and/or Royal to verify plaintiff's employment income information which had been provided by plaintiff.

184.    That the employment income authorizations executed by the plaintiff, Vera N. Ngwa, consisting of W-9 forms/tax record authorizations, as well as 4506 form record employment/tax authorizations, were duly executed and provided by plaintiff to defendants Castle Point, Gearin and/or Royal

185.    That defendants Castle Point, Gearin and/or Royal completely failed to act upon said employment authorizations.

186.    That as a result of defendant Castle Point's failure to take measures to verify plaintiff's employment income or status, defendant Castle Point was negligent in the underwriting of the subject consumer credit transaction, as well as the subsequent approval of plaintiff's subject loan application, as plaintiff's actual income at that time was entirely insufficient to allow her to qualify for the subject financing.

187.   That by reason of defendant Castle Point Mortgage, Inc.'s negligence in the underwriting of the subject consumer credit transaction, as well as the subsequent approval of plaintiff's subject loan application, the plaintiff, Vera N. Ngwa, makes claim against defendant Castle Point Mortgage, Inc. for actual monetary damages, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and which warrants the jurisdiction of this Court.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC., AND ROYAL SETTLEMENT SERVICES, INC.

188.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153" "155" through "175"; "177" through "179" and "181" through "186", as if fully set forth herein.

189.   That defendant Royal acted as the "settlement or "closing" agent on the subject mortgage loan, as reflected by the HUD Statement.  As such, defendant's services included distribution of proceeds on the subject loan, as well as to escrow and/or take possession of loan proceeds during the period wherein plaintiff had the right to rescind and/or cancel the loan.

190.   Defendants Castle Point and Royal acted improperly in permitting and/or

designating defendant Royal as the "settlement or closing" agent on the subject mortgage loan, in that said services are required to be performed by an attorney, pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq.   Furthermore, both defendants Castle Point and/or Royal were aware that defendant Royal, as "settlement or closing agent", was responsible for escrowing moneys derived from the proceeds of the subject loan, during the period wherein plaintiff had the right to rescind and/or cancel the loan, which defendant Royal was not legally empowered or qualified to do; and which services defendants Castle Point and/or Royal knew had to be performed by an attorney.

191.   Defendants Castle Point and Royal acted improperly in permitting and/or designating defendant Royal as the "settlement or closing" agent on the subject mortgage loan, in that said services are required to be performed by a person and/or entity independent of the lender, pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq.   Both defendants Castle Point and/or Royal were aware that defendant Royal, as "settlement or closing agent", was responsible for escrowing moneys derived from the proceeds of the subject loan, during the period wherein plaintiff had the right to rescind and/or cancel the loan.   As such defendant Castle Point, a related entity to defendant Royal, was able to entirely control the "closing" of the subject transaction.

192.   By acting as "closing and/or settlement agent" on the subject loan, defendant Royal was enabled to obtain fees for services actually rendered on the subject loan, which defendants Castle Point and/or Royal knew were not reasonable or bonafide, and which were in violation of the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq.

193.   That by reason of defendant Royal improperly serving as "closing and/or settlement agent" on the subject loan, plaintiff Vera N. Ngwa makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages,  pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq., as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

**AS AND FOR A TENTH CAUSE OF
ACTION AGAINST THE DEFENDANTS,
CASTLE POINT MORTGAGE,  INC., AND
<u>ROYAL SETTLEMENT SERVICES, INC.</u>**

194.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153" "155" through "175"; "177" through "179"; "181" through "186"; and "188" through "192", as if fully set forth herein.

195.   That defendant Royal acted as the "settlement or "closing" agent on the subject mortgage loan, as reflected by the HUD Statement.  As such, defendant's services included distributing proceeds on the subject loan, as well as to take possession of loan proceeds during the period wherein plaintiff had the right to rescind and/or cancel the loan.

196.   Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing"

services, despite not having an attorney to effectuate such services either within its employ and/or assigned to supervise the individual assigned to attend the "closing" of the subject transaction.

197.    Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing" services, despite not producing an individual for said "closing" who was capable of reviewing the information contained within those documents provided to the plaintiff for her execution.

198.    Defendant Royal also acted in the capacity of a "settlement agent" on the subject loan, involving a lender whose principals are defendant Royal's majority owners.

199.    That defendants Castle Point and Royal acted improperly in permitting and/or designating defendant Royal as the "settlement or closing" agent on the subject mortgage loan, in that said services are required to be performed by an independent attorney, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute.  Furthermore, defendants Castle Point and Royal were aware that defendant Royal, as "settlement or closing agent", was responsible for escrowing moneys derived from the proceeds of the subject loan, during the period wherein plaintiff had the right to rescind and/or cancel the loan, which defendant Royal was not legally empowered or qualified to  do; and which services defendants Castle Point and/or Royal knew had to be performed by an independent attorney.

200.    In defendant Royal acting as "closing and/or settlement agent" on the subject loan, defendant Royal was able  to obtain excessive fees for services actually rendered on

the subject loan, which defendants Castle Point and/or Royal knew were not reasonable or bonafide, and which were in violation of the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute.

201.   That by reason of defendant Royal improperly serving as "closing and/or settlement agent" on the subject loan, the plaintiff, Vera N. Ngwa makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute, as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested prayed that this Court

**(A).**   Assume jurisdiction of this case;

**(B)**   Upon the FIRST CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC, pursuant to U.S.C. § 1635, for the following relief: **(i)** rescission/cancellation of the subject mortgage loan/and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or property given by the plaintiff to any party, in connection with

the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC, during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee, as well as the costs of this action, pursuant to 15 U.S.C. § 1640(a);

    **(C)** Upon the SECOND CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC, for actual monetary damages, pursuant to 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an amount to be determined at trial; and, for statutory monetary damages, pursuant to 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an amount not to exceed TWO THOUSAND and XX/100 ($2,000,00) DOLLARS for each and every Federal Truth In Lending violation enumerated herein, and a reasonable attorney fee, as well as the costs of this action, pursuant to 15 U.S.C. § 1640(a);

    **(D)** Upon the THIRD CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes makes claim, against the defendants,Castle Point Mortgage, Inc.; Heather Gearin and Royal Settlement Services, Inc., for monetary damages, pursuant to the New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law; in an amount to be determined at trial; and a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

**(E)**  Upon the FOURTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against defendants Castle Point Mortgage, Inc., and GMC Mortgage, LLC, pursuant to The New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law, for the following relief: **(i)** rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or property given by the plaintiff to any party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

**(F)**  Upon the FIFTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendant, Castle Point Mortgage, Inc., for money damages, pursuant to Section 589 of the New York State Banking Law, in an amount to be determined at trial; and a reasonable attorney fee, pursuant to the dictates of the New York State Banking Law.

**(G)** Upon the SIXTH CAUSE OF ACTION, the plaintiff, plaintiff, Vera N. Ngwa,

makes claim against the defendants, Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., both jointly and individually, for actual monetary damages, in the amount of ONE MILLION DOLLARS and XX/100  ($1,000,000.00) DOLLARS; for compensatory damages in an amount to be determined by the trier of fact; and for punitive monetary damages, in the amount of TEN MILLION and XX/100 ($10,000,000.00) DOLLARS.

**(H)**  Upon the SEVENTH CAUSE OF ACTION, the plaintiff, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC, for the following relief: **(i)**  rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or property given by the plaintiff to any party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee.

**(I)** Upon the EIGHTH CAUSE OF ACTION, the plaintiff, Vera N, Ngwa makes claim against the defendant, Castle Point Mortgage, Inc. for actual monetary

damages, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and which warrants the jurisdiction of this Court.

(J)   Upon the NINTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages,  pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq., as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

(K) Upon the TENTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute, as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

(L)   the costs, interest and disbursements of this action; and for such other and further relief as to this Court may seem just and proper.


Dated: Brooklyn, New York
           April 30, 2008



                                        Yours, etc.



                                        **DAVID M. HARRISON, ESQ.**
                                        Attorney for Plaintiff
                                        VERA N. NGWA

Office & P.O. Address
48 Willoughby Street
Brooklyn, New York 11201
(718) 243-2109
Bar No.: DH6188

By: _____
David M. Harrison, Esq.

UNITED STATES DISTRICT COURT   Civil Action No.: 08-0859
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------------------------

VERA N. NGWA,

               Plaintiff,


      v.


CASTLE POINT MORTGAGE, INC., HEATHER
GEARIN, GMAC MORTGAGE, LLC and
ROYAL SETTLEMENT SERVICES, INC.,

            Defendants.


-------------------------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------------------------


## AMENDED COMPLAINT



-------------------------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------------------------


**DAVID M. HARRISON, ESQ.**
Attorney for the Plaintiff
 VERA N. NGWA
Office & P.O. Address
48 Willoughby Street
Brooklyn, New York 11201
(718) 243-2109


-------------------------------------------------------------------------------------------------------------------

PLEASE TAKE NOTICE:
 [ ] <u>Notice of Entry</u>
  that the within is a (certified) true copy of Order       duly entered in the office of the clerk of the within
named court on
 [ ] <u>Notice of Settlement</u>

  that an order       of which the within is a true copy
  will be presented for settlement to the HON   one of the judges of the
  within named Court, at
  on    19  at  M.
    Dated,       Yours, etc.