UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

VERA N. NGWA,

                                    Plaintiff,

            -against-

CASTLE POINT MORTGAGE, INC., HEATHER
GEARIN, GMAC MORTGAGE, LLC and ROYAL
SETTLEMENT SERVICES, INC.,

                                    Defendants.

-------------------------------------------------------------------X

Docket No. 08CV0859
Date Filed: 1/24/08


**NOTICE OF MOTION**


COUNSELORS:

    **PLEASE TAKE NOTICE** that upon the annexed declaration of Keith D. Grace, Esq., sworn to

May 30, 2008, Defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement

Services, Inc. will move this Court, before the Honorable Andrew J. Peck, for an Order pursuant to

Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure dismissing all causes of action in the

Amended Complaint, and for such other and further relief this Court may deem just and proper.


DATED:    New York, New York
             May 30, 2008

_____
Keith D. Grace, Esq. (KG6230)
**CONWAY, FARRELL, CURTIN & KELLY, P.C.**
Attorneys for Defendants
*Castle Point Mortgage, Inc., Heather Gearin*
and *Royal Settlement Services, Inc.*
48 Wall Street – 20th Floor
New York, N.Y. 10005
(212) 785-2929

TO:

David M. Harrison, Esq.
*Attorney for Plaintiff*
48 Willoughby Street
Brooklyn, New York  11201
(718) 243-2109

Stan Goldberg, Esq.
Platzer Swergold Karlin Levine Goldberg &
Jaslow, LLP
*Attorneys for Defendant, GMAC*
1065 Avenue of the Americas
New York, NY 10018
(212) 593-3000

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------x

VERA N. NGWA,

Civil Action No.:

Plaintiff(s)

**COMPLAINT**

v.

**JURY TRIAL DEMANDED**

CASTLE POINT MORTGAGE,
INC., HEATHER GEARIN,
GMAC MORTGAGE, LLC and
ROYAL SETTLEMENT
SERVICES, INC.,

Defendant(s).

------------------------------------------------------------x

The plaintiff, Vera N. Ngwa, by her attorney, David M. Harrison, Esq.,

complaining of the defendants, Castle Point Mortgage, Inc., Heather Guerin, GMAC

Mortgage, LLC and Royal Settlement Services, Inc., respectfully alleges and sets

forth as follows:

## PRELIMINARY STATEMENT

1.  This Complaint is filed under the Truth In Lending Act, 15 U.S.C. § 1601 et

Seq., to enforce plaintiff's right to rescind a consumer credit transaction, and to void

the security interest in plaintiff's home held by Castle Point Mortgage, Inc. and/or

GMAC Mortgage, LLC; and to recover actual monetary damages; statutory damages;

reasonable attorney fees and costs, by reason of: **(i)** violation by the original "lender" to

the subject consumer credit transaction, Castle Point Mortgage, Inc., as set forth by

15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226,

which implements the act; **(ii)** violation by the original "lender" to the subject consumer

credit transaction, Castle Point Mortgage, Inc., as set forth by 15 U.S.C. § 1639, as well as

Federal Reserve Board Regulation Z, 12 C.F.R. § 226.31, 12 C.F.R. § 226.32 and

12 C.F.R. § 226.34; **(iii)** violation by the original "lender" to the subject consumer credit

transaction, Castle Point Mortgage, Inc., as well as defendants Heather Gearin and

Royal Settlement Services, Inc., as codified  by Section 349 of the New York State

General Business Law; **(iv)** violation by defendant Castle Point Mortgage, Inc. of

Section 589 of the New York State Banking Law; **(v)** violation by the original "lender"

to the subject consumer credit transaction, Castle Point Mortgage, Inc., as well as

defendant Royal Settlement Services, Inc., of the Real Estate Settlement Procedures Act,

12 U.S.C. § 2601 et seq.; **(vi)** violation by the original "lender" to the subject consumer

credit transaction, Castle Point Mortgage, Inc., as well as defendant Royal Settlement

Services, Inc., of Sections 484 and 495 of the New York State Judiciary Law.  Plaintiff

also seeks monetary damages, including punitive damages, for multiple acts of fraud on

the part of defendants  herein; and further, plaintiff seeks rescission of the subject consumer

credit transaction, based upon general principles of equity.   Plaintiff also seeks money

damages and/or equitable relief from defendant GMAC Mortgage, LLC, as said

defendant has taken numerous measures to collect upon a mortgage loan, including

commencement of a foreclosure action, when, upon information and belief, said mortgage

and/or mortgage loan has loan has not been validly assigned to defendant GMAC

Mortgage, LLC; and/or has not been properly recorded.

## JURISDICTION

2.   Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e), as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  The Court has authority to issue a declaratory judgment, by virtue of 28 U.S.C. § 2201.

3.   The Court has Supplemental Jurisdiction over the Plaintiff's State law claims, pursuant to 28 U.S.C. § 1367.

## PARTIES

### Plaintiff:

4.   The plaintiff, Vera N. Ngwa, is a natural person, residing at 10 West 123rd Street, Bronx, New York, New York.  Plaintiff is the owner of said residential real property.

### Defendants:

5.   The defendant, Castle Point Mortgage, Inc., hereinafter referred to as "defendant Castle Point", is a foreign corporation, authorized to conduct and/or transact business in New York State.  Defendant Castle Point derives substantial revenue from its transactions of business in the State of New York; regularly does or solicits business in the State of New York, with substantial revenue derived from interstate and/or international commerce therefrom; contracts outside the State of New York to supply goods and services within the State of New York, having reasonable expectations that

same will have consequences within the State of New York and/or is otherwise subject

to jurisdiction before the Courts of the State of New York.

  6. Defendant Castle Point regularly engages in the making of mortgage loans,

and is therefore subject to the Truth In Lending Act, as dictated by 15 U.S.C. § 1601 et Seq.,

as well as Federal Reserve Board Regulation Z, 12 C.F.R § 226, which implements the

act.

  7. The defendant, Heather Gearin, hereinafter referred to as defendant Gearin, is

an individual employed by defendant Castle Point.  Defendant Gearin is employed by

defendant Castle Point in the capacity of "loan officer".

  8. The defendant, GMAC Mortgage, LLC, hereinafter referred to as defendant

GMAC, is a foreign limited liability company, duly licensed, or otherwise so authorized to

do business in the State of New York.  Defendant GMAC derives substantial revenue from

its transactions of business in the State of New York; regularly does or solicits business in

the State of New York, with substantial revenue derived from interstate and/or international

commerce therefrom; contracts outside the State of New York to supply goods and services

within the State of New York, having reasonable expectations that same will have

consequences within the State of New York and/or is otherwise subject to jurisdiction before

the Courts of the State of New York.

  9. Defendant GMAC regularly serves as an assignee of lenders which regularly

engage and/or have regularly engaged in the making of mortgage loans, and is therefore

subject to the Truth In Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as

Federal Reserve Board Regulation Z, 12 C.F.R § 226, which implements the act.  As an

assignee to mortgage loans from said lenders, defendant GMAC is also subject to the Truth In Lending Act.

10.   The defendant, Royal Settlement Services, Inc., hereinafter referred to as "defendant Royal", is a foreign corporation, duly licensed, or otherwise so authorized to do business in the State of New York.  Defendant Royal derives substantial revenue from its transactions of business in the State of New York; regularly does or solicits business in the State of New York, with substantial revenue derived from interstate and/or international commerce therefrom; contracts outside the State of New York to supply goods and services within the State of New York, having reasonable expectations that same will have consequences within the State of New York and/or is otherwise subject to jurisdiction before the Courts of the State of New York.

11.   Defendant Royal is a title company, which derives fees in connection with title services rendered in connection with the making of mortgage loans.  The nature of defendant Royal's services, as well as the fees for which defendant Royal assesses in connection with such services, are subject to the dictates imposed by the Truth in Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; and, The Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et seq.

12.   The principals of defendant Castle Point are the majority owners of defendant Royal.

13.   The original lender to the subject consumer credit transaction, defendant Castle Point, issued a mortgage loan to plaintiff Vera N. Ngwa on January 25, 2007,

in the amount of $1,165,000.00. This mortgage is secured by plaintiff's residential property located at 10 West 123rd Street, New York, New York 10027. Defendant Castle Point, as the lender to said mortgage loan, and the original "holder" to the mortgage, thereafter allegedly assigned said mortgage, and all rights to collect therefrom, to defendant GMAC.

14.    Defendant Gearin was the loan officer assigned by defendant Castle Point Mortgage to the subject loan transaction involving plaintiff Vera N. Ngwa and defendant Castle Point.

15.    Defendant Royal acted as the "Settlement Agent" and/or "Closing Agent" on the subject loan transaction. Defendant Royal also rendered "title services" in connection with said transaction.

16.    Defendants Castle Point and Gearin made a predatory mortgage loan to plaintiff based upon a variety of false, fraudulent and deceptive acts and statements upon which the plaintiff relied. Defendants Castle Point and Gearin knowingly engaged in conduct which completely violated the applicable disclosure requirements mandated by the Truth In Lending Act, as set forth by 15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; including 15 U.S.C. § 1640; Regulation Z § 226.17 and  Regulation Z § 226.19(b). Defendants Castle Point and Gearin knowingly engaged in conduct which was knowingly fraudulent and deceptive, in connection with the origination and processing of the subject loan; and further, defendant Castle Point received a "loan origination fee" in the amount of $46,600.00 which was drastically disproportionate in relation to services provided upon

the subject loan, in violation of the dictates imposed by New York State Banking Law

Section 589. Defendant Royal violated the dictates imposed by the Real Estate

Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et seq, by acting as a "closing

or settlement agent" on the subject loan, whose services included distribution of loan

proceeds and escrowing of loan funds, in which capacity defendant Royal was not legally

permitted to act. Defendant Royal, in acting as a "closing or settlement agent" also

violated Sections 484 and 495 of the New York State Judiciary Law, in that said

defendant undertook procedures in connection with the closing of the subject loan,

including the distribution of loan proceeds and escrowing of loan funds, which were

required to be performed by an attorney, as well as a party independent of the "lender"

to the loan. Defendant Royal, despite not being legally empowered in New York State

to serve as a "closing agent" and/or "settlement agent" on the subject loan,  assessed

fees for "closing services", which are clearly unreasonable and nonbonafide.  The

conduct engaged in by defendants Castle Point, Gearin and Royal, in connection with the

origination, processing and consummation of the subject loan were materially misleading,

knowingly deceptive, and unlawful, and as such, constituted violations of the New York

State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York

State General Business Law; and further, defendants' conduct with respect to the creation

of the subject mortgage loan involved several fraudulent misrepresentations and

concealment of material facts. Defendant GMAC, as an alleged assignee of the mortgage

loan rendered by defendant Castle Point, assumes liability for all Truth In Lending Disclosure

violations herein set forth, including 15 U.S.C. § 1640; Regulation Z § 226.17; and

Regulation Z § 226.19(b).

17.    Defendant GMAC has never taken proper steps to record the "alleged" assignment of the subject mortgage to it from defendant Castle Point.  To date, the subject "assignment" has yet to be recorded with the County Clerk, County of New York, or any other like entity.  As such, defendant GMAC does not have standing to undertake any enforcement measures against plaintiff Vera N. Ngwa concerning the subject loan.

## STATUTORY AND REGULATORY FRAMEWORK

18.    This case arises under the Truth in Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; New York State General Business Law Section 349, also known as the New York State Deceptive Acts and Practices Statute; New York State Banking Law Section 589; The Real Estate Settlement Procedures Act, commonly known as RESPA, as set forth by 12 U.S.C. § 2601 et seq; and Sections 484 and 495 of the New York State Judiciary law.

19.    The Truth In Lending Act provides relief to a borrower, in the form of monetary damages and rescission, by reason of a lender's failure to accurately disclose

a variety of financing information.  The statute also provides such relief to a borrower should a lender fail to comply with mandated rescission/cancellations procedures, as set forth by Regulation Z.

20.  New York State General Business Law Section 349, also known as the New York State Deceptive Acts and Practices Statute, prohibits deceptive acts or practices in the conduct of any business, trade or commerce, or in the provision of any service; and provides, *inter alia*, for money damages, injunctive relief, and attorney fees for its violation.

21.  New York Banking Law Section 589 , by its language, is designed to "ensure that the mortgage lending industry is operating fairly, honestly and efficiently, as well as free from deceptive and anti-competitive language" This statute protects consumers, in that it seeks to enforce reasonable standards governing the actions and conduct of mortgage lenders and their agents.

22.  The Real Estate Settlement Procedures Act is a consumer protection statute that requires that borrowers receive disclosures at various times.  The statute applies to all loans secured with a mortgage placed on a 1-4 family residential property, which includes refinances.

23.  The New York State Judiciary law sets forth the manner in which legal services are to be performed on behalf of either an individual or corporation; and who is empowered to perform such legal services.

## STATEMENT OF FACTS

24.    In or about December of 2006, plaintiff Vera N. Ngwa was "cold called" and solicited by defendants Castle Point and/or Gearin to refinance an existing mortgage, held by Option One Mortgage Corporation, upon which the plaintiff was already in foreclosure upon, containing an existing balance of $986,779.27.  The obligations imposed by the mortgage held by Option One Mortgage Corporation required a monthly payment from the plaintiff in the amount of approximately $6,035.00.   This existing mortgage was secured by plaintiff's residential property located at 10 West 123rd Street, New York, New York.

25.    Plaintiff was advised by defendants Castle Point and/or Gearin that she could obtain a "lower rate" of interest and "get a good deal" on a refinancing of the mortgages currently existing on plaintiff's residential premises.

26.    At the time of said solicitation, plaintiff Vera N. Ngwa was the sole individual on the deed to plaintiff's residential premises located at 10 West 123rd Street, New York, New York.  Plaintiff was also the sole individual named as a "borrower", in connection with the mortgage held by Option One Mortgage Corporation at that time, secured by plaintiff's residential premises.

27.    Pursuant to the representations made by defendants Castle Point and/or Gearin to the plaintiff, plaintiff Vera N. Ngwa, provided said defendants thereafter with her existing income information.  Plaintiff also executed tax income/income record authorizations for the purpose of allowing release of such information.

28.   Defendants Castle Point and/or Gearin thereafter forwarded said tax income/ income record authorizations to defendant Royal for processing.

29.   Plaintiff was thereafter advised by defendants Castle Point and/or Gearin, by telephone, that plaintiff qualified for a refinancing which would consist of a mortgage loan with payment terms more favorable than those imposed by her existing mortgage. The proposed new loan would be secured by plaintiff's residential premises located at 10 West 123rd Street, New York, New York.

30.   Plaintiff was also told by defendants Castle Point and/or Gearin that said proposed mortgage refinancing would  result in satisfaction of plaintiff's existent mortgage balance; as well as significant "cash out".  Plaintiff was also advised by defendants Castle Point and Gearin that her new mortgage would involve lower monthly payments than that existing on plaintiff's current mortgage obligations, at a reduced rate of interest.

31.   Plaintiff was further advised by defendants Castle Point and/or Gearin that plaintiff's existent income status would enable her to remain current on the proposed loan, which, in turn, would subsequently provide plaintiff with the option of a further refinancing which would result in another loan with even more favorable payment terms.

32.   Pursuant to said representations made to plaintiff by defendants Castle Point and/or Gearin, the plaintiff, Vera N. Ngwa, agreed to proceed on the proposed mortgage refinancing.

33.   Defendants Castle Point and/or  Gearin scheduled plaintiff for a "closing" of

said mortgage loan transaction.   This "closing" would consist of plaintiff being presented with numerous documents for her execution, by a representative of defendant Royal, whose sole purpose was to notarize said documents.  The scheduled date of this "closing" was January 25, 2007.

34.   Plaintiff was advised by defendants Castle Point and/or Gearing that it was not necessary for her to be represented by an attorney in connection with said "closing".

35.   At no time prior to the date of closing of the subject transaction (January 25, 2007) was the plaintiff ever presented with any Truth In Lending Statement and/or Truth In Lending information, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1640 and Regulation Z § 226.17.

36.   At no time prior to the date of closing of the subject transaction (January 25, 2007) was the plaintiff ever presented with any information and/or terms concerning the subject loan's "Annual Percentage Rate"; "Finance Charge"; "Amount Financed" or "Total of Payments", as mandated by the Truth In Lending Act, including 15 U.S.C. § 1640 and Regulation Z § 226.17.

37.   That on January 25, 2007, plaintiff was approached by a representative of defendant Royal, who presented her with multiple documents for her execution, in connection with the subject transaction.  Defendant Royal's representative possessed no knowledge of the contents of any of the document provided to plaintiff, as said individual's sole purpose was to notarize plaintiff's signature on such documents presented.

38.   The documents which were provided to plaintiff Vera N. Ngwa, at the

time of "closing" of the subject mortgage loan, included the following: **(i)** Document
entitled "MORTGAGE" (with a document annexed entitled "ADJUSTABLE RATE
RIDER"), dated January 25, 2007; **(ii)** "Document entitled "ADJUSTABLE RATE NOTE",
dated January 25, 2007; **(iii)** Document entitled "SETTLEMENT STATEMENT" (also
entitled "U.S. Department of Housing and Urban Development Statement", and
hereinafter referred to as "the HUD Statement"), evidencing the "Settlement Date"
as January 25, 2007;  **(iv)** Document entitled "FEDERAL TRUTH-IN-LENDING
DISCLOSURE STATEMENT, dated January 25, 2007; **(v)** Document entitled
"UNIFORM RESIDENTIAL LOAN APPLICATION", dated January 25, 2007.

39.   The document entitled "MORTGAGE" described plaintiff Vera N. Ngwa
as the "Borrower" to the subject loan.  This document also described defendant Castle
Point as the "Lender" to the loan.

40.   The document entitled "MORTGAGE" evidenced the subject mortgage loan
to be issued by defendant Castle Point to plaintiff as consisting of a principal loan balance
of $1,165,000.00, "plus interest and other amounts that may be payable".

41.   The document entitled "MORTGAGE" also made reference to an annexed
document described "ADJUSTABLE RATE RIDER".

42.   The document entitled "ADJUSTABLE RATE NOTE" stated that in return
for the loan that plaintiff were receiving from defendant Castle Point, plaintiff promised to
pay $1,165,000.00 as "principal", "plus interest to the order of Lender".  This document
referenced defendant Castle Point as the "Lender".

43.   The document entitled "ADJUSTABLE RATE NOTE" stated that pursuant

to the terms of the subject mortgage loan: "Interest will be charged on unpaid principal until the full amount of Principal has been paid".  Plaintiff was obligated to pay interest on the subject loan at a yearly rate of 11.875 %.  This interest rate was subject to change, pursuant to "Section 4 of this Note."

44.    The document entitled "ADJUSTABLE RATE NOTE" also set forth plaintiff's initial monthly payments as $11,871.36.  The document added that such a payment amount "may change".

45.    The document entitled "ADJUSTABLE RATE NOTE" stated that the interest rate which plaintiff was obligated to pay "may change on the first date of February, 2012, and on that day every six month thereafter".  Each date on which plaintiff's interest rate could change was described as a "Change Date".

46.    The document entitled "ADJUSTABLE RATE NOTE" stated that beginning with the first "Change Date", plaintiff's interest rate would be based on an "Index".  The "Index" would be "the average of interbank offered rates for six month U.S. Dollar-denominated deposits in the London market ("LIBOR") as published in the Wall Street Journal.

47.    The document entitled "ADJUSTABLE RATE NOTE" stated that the most recent Index figure available as of the first business day of the month immediately preceding the month in which the "Change Date" occurs would be called the "Current Index".

48.    The document entitled "ADJUSTABLE RATE NOTE" further contained the following language: "Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 500/1000 percentage points (6.500 0%) to the Current

Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date".

49.  The document entitled "ADJUSTABLE RATE NOTE" stated that the interest rate that plaintiff would be "required to pay at the first Change Date will not be greater than 17.875% or less than 6.500%".  Plaintiff's interest rate thereafter "will "never be increased or decreased on any single Change Date by more than TWO AND 000/100 percentage points (2.000 %) from the rate of interest" plaintiff would have been paying for "the preceding 6 months.".

50.  The document entitled "ADJUSTABLE RATE NOTE" stated that plaintff's interest rate would "never be greater than 17.875%".

51.  The document entitled "ADJUSTABLE RATE RIDER" stated that plaintiff's interest rate on the subject mortgage loan "provides for an initial interest rate of 11.875%. This document further stated that plaintiff's interest rate "may change on the first date of February, 2008, and on that day every sixth month thereafter."

52.  The document entitled "ADJUSTABLE RATE RIDER" stated that each date on which plaintiff's interest rate could change would be referred to as a "Change Date". Beginning with the first "Change Date", plaintiffs' interest rate would be based on an "index".  The document described the "index" as "the average of interbank offered rates for six month U.S. dollar denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is

called the "Current Index."

53.   The document entitled "ADJUSTABLE RATE RIDER" stated to plaintiff that "Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 500/1000 percentage points (6.500%) to the Current Index.   The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date"

54.   The document entitled "ADJUSTABLE RATE RIDER" stated that the interest rate that plaintiff would be "required to pay at the first Change Date will not be greater than 17.875% or less than 6.500%".  Plaintiff's interest rate thereafter "will "never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points (2.000%)" from the rate of interest plaintiffs would be paying "for the preceding 6 months".

55.   The document entitled "ADJUSTABLE RATE RIDER" stated that plaintiff's interest rate would "never be greater than 17.875%".

56.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", "stated that the "**ANNUAL PERCENTAGE RATE**" of the subject mortgage loan (described as "The cost of your credit at a yearly rate") was 12.457%.

57.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated that the "**FINANCE CHARGE**" of the subject mortgage loan (described as "The dollar

amount the credit will cost you") was $3,157,887.08.

58.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated that the "Amount Financed" on the subject mortgage loan (described as "The amount of credit provided to you or on your behalf") was $1,115,801.95.

59.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated that the "Total of Payments" of the subject mortgage loan (described as "The amount you will have paid after you have made all payments as scheduled") was $4,273,689.03.

60.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", set forth a "payment schedule".  This schedule reflected that the first 359 months, payments would involve monthly amounts of $11,871.36.  The next payment would involve a monthly amounts of $11,870.79.

61.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", contained the language: "Your loan contains a Variable Rate Feature.  Disclosures about the Variable Rate Feature have been provided to you earlier".

62.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT" stated that plaintiff would be giving a security interest in real property located at 10 West 123rd Street, New York, New York 10027.

63.   The HUD Statement received by plaintiff on the date of "closing" of the

subject loan transaction described defendant Castle Point as the "Lender" to the loan.

64. The HUD Statement set forth arious charges assessable against the loan, enumerated as "settlement charges", which included the following: **(i)** "Loan Origination Fee" to defendant Castle Point, in the amount of $46,600.00; **(ii)** "Application Fee" to defendant Castle Point, in the amount of $595.00; **(iii)** "Processing Fee" to defendant Castle Point, in the amount of $795.00; **(iv)** "Settlement or closing fee" to defendant Royal, in the amount of $375.00; **(v)** "Title examination" to defendant Royal, in the amount of $350.00; **(vi)** Title Insurance to defendant Royal (enumerated as "RSS/Stewart Title"), in the amount of $3,153.00.

65. Plaintiff, upon information and belief, did not receive a reduced premium reissuance rate on the title insurance she received in connection with the subject loan transaction, payable by the plaintiff from the proceeds of the subject mortgage loan.

66. Plaintiff was not provided with any explanation or disclosure from defendants New Castle, Guerin and/or Royal explaining why she did not receive a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject mortgage loan.

67. The HUD Statement further reflected that the "Total Settlement Charges" assessed in connection with the subject loan transaction amounted to a figure of $83,131.40. These funds were paid by the plaintiff from the proceeds of the subject loan.

68. The HUD Statement reflected a "Disbursement" to "STEVEN J. BAUM", representing a "FORECLOSURE PAYOFF" in the amount of $986,779.27. This amount was paid by the plaintiff from the proceeds of the subject transaction.

69.    The HUD Statement evidenced the following terms: "Loan Amount": $1,165,000.00; "Total Settlement Charges": $83,131.40; and "Total Disbursements to Others": $1,008,265.27.

70.    The HUD Statement identified plaintiff Vera N. Ngwa as the "Borrower" on the subject loan; and defendant Castle Point as the "Lender" to the subject transaction.

71.    The HUD Statement indentified the "Settlement Agent" to the subject loan as defendant Royal.

72.    Defendant Royal was also paid a fee of $375 for "settlement or closing" services", despite not being legally authorized or qualified to assess such a fee, as said services are required to be performed by an attorney, pursuant to the Real Estate Settlement Procedures Act; as well as by reason of escrow services which are necessarily performed by any individual or entity functioning in such capacity, pursuant to the Judiciary law of New York State.

73.    Defendant Royal also acted in the capacity of a "settlement agent" on the subject loan, involving a lender whose principals are defendant Royal's majority owners.

74.    The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, was compiled by defendant Gearin.

75.    The document entitled "Uniform Residential Loan Application" provided to plaintiff Vera N. Ngwa on the date of closing, reflected that the subject loan transaction involved a loan "Amount" of $1,165,000.00; "Interest Rate" of 11.875.00; over a period of "360 months", with the subject loan consisting of an "ARM" loan.

76.   The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, reflected that plaintiff earned a monthly "Base Employment Income" of $30,000.00.

77.   The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, reflected that plaintiff earned a "Gross Monthly Income" of $30,000.00, resulting from her monthly "Base Employment Income".

78.   The income information contained within said document entitled "Uniform Residential Loan Application" was entirely contrary to plaintiff's existing income information previously by the plaintiff to defendants Castle Point and Guerin.

79.   At no time prior to the date of "closing" of the date of the subject loan did plaintiff represent to defendants Castle Point and/or Gearin that plaintiff earned a gross monthly income of $30,000.00; as plaintiff was earning significantly less at that time.

80.   At no time did plaintiff knowingly represent to defendants Castle Point and/or Gearin that plaintiff earned a gross monthly income of $30,000, as plaintiff has never earned such a monthly amount.

81.   Plaintiff had never represented, either verbally or by written disclosure, to any of the defendants that her base employment monthly income was $30,000.00; as said income figure was entirely contrary to the income information previously provided to defendants Castle Point and/or Guerin.

82.   Defendants Castle Point and/or Gearin fraudulently inflated plaintiff's

income as a means to enable plaintiff to qualify for the subject mortgage financing subsequently issued by defendant Castle Point.

83.    Plaintiff executed W-9 forms/tax record authorizations, as well as 4506 form record employment/tax authorizations, which permitted defendants Castle Point, Gearin and/or Royal to obtain her tax/employment record and information evincing her applicable income information.

84.    Defendants Castle Point, Gearin and/or Royal failed to process said W-9 and 4506 forms; and failed to undertake any measures to verify the income information provided by the plaintiff.

85.    Defendants Castle Point and/or Gearin reiterated to plaintiff on the date of closing, and thereafter, that he terms of the subject loan were as favorable as plaintiff could receive, given plaintiff's existent credit and asset status.

86.    Defendants Castle Point and/or Gearin reiterated to plaintiff on the date of closing, and thereafter, that plaintiff could further qualify for a subsequent refinancing with more favorable loan terms by remaining current on the subject loan proposal for approximately one year.

87.    Defendants Castle Point and Gearin reiterated to plaintiff on the date of closing, and thereafter, that plaintiff could further qualify for a subsequent refinancing with more favorable loan terms by remaining current on the subject loan proposal for approximately one year, despite knowing full well that plaintiff had been unable to remain current on the previous mortgage held by Option One Mortgage Corporation, which imposed payment obligations of approximately $6,035.00 per month.

88.    Defendants Castle Point and Gearin reiterated to plaintiff on the date of closing,

and thereafter, that plaintiff could further qualify for a subsequent refinancing with more favorable loan terms by remaining current on the subject loan proposal for approximately one year, despite knowing full well that plaintiff had been unable to remain current on the previous mortgage held by Option One Mortgage Corporation, which imposed payment obligations of approximately $6,035.00 per month.

89.   Defendants Castle Point and Gearin reiterated to plaintiff on the date of closing, and thereafter, that plaintiff could further qualify for a subsequent refinancing with more favorable loan terms by remaining current on the subject loan proposal for approximately one year, despite knowing full well that plaintiff had gone into foreclosure on the previous mortgage held by Option One Mortgage Corporation, resulting from a loan which imposed payment obligations which were significantly less than that of the subject loan.

## AS AND FOR A FIRST CAUSE OF ACTION

90.   In the course of the consumer credit transaction between defendant Castle Point and plaintiff herein, defendant Castle Point violated numerous provisions of the Truth In Lending Act and Regulation Z, including the applicable disclosure requirements.

91.   That at no time prior to the "date of closing" of the subject transaction did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any Truth In Lending Statement and/or Truth In Lending information, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1640 and Regulation Z § 226.17.

92.    That at no time prior to the "date of closing" of the subject transaction did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Annual Percentage Rate" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1640 and Regulation Z § 226.17.

93.    That at no time prior to the "date of closing" of the subject transaction did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa, with any information concerning the "Finance Charge" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1640 and Regulation Z § 226.17.

94.    That at no time prior to the "date of closing" of the subject transaction did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Amount Financed" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1640 and Regulation Z § 226.17.

95.    That at no time prior to the "date of closing" of the subject transaction did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Total Number of Payments" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1640 and Regulation Z § 226.17.

96.    That by reason of defendant Castle Point's refusal and/or failure to provide Truth In Lending Disclosure prior to the date of closing of the subject mortgage loan

transaction, as mandated by the Federal Truth In Lending Act, plaintiff Vera N. Ngwa

makes claim, pursuant to U.S.C. § 1635, for the following relief: **(i)** rescission/cancellation

of the subject mortgage loan/and/or rescission of this transaction; **(ii)** termination of any

security interest in plaintiff's residential premises created for defendant Castle Point

Mortgage, Inc. and thereafter assigned to defendant , GMAC Mortgage, LLC, under

this transaction; **(iii)** Return of any money or property given by the plaintiff to any party,

 in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of

plaintiff's return of any loan proceeds received from the subject mortgage loan;

**(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action,

and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure

proceedings on the plaintiff's residential premises, and from recording any deeds or

mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive

plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee,

as well as the costs of this action, pursuant to 15 U.S.C. § 1640(a).


## AS AND FOR A SECOND CAUSE OF ACTION


97.   That the plaintiff repeats and realleges each and every allegation set forth

in Paragraphs "1" through "95", as if fully set forth herein.

98.   That by reason of the refusal and/or failure of defendant Castle Point,

as well as said defendant's agents, servants, employees and/or representatives,

to provide Truth In Lending disclosure to the plaintiff, Vera N. Ngwa, prior to the date

of closing of the subject mortgage loan transaction, as mandated by the Federal Truth

In Lending Act, the plaintiff, Vera N. Ngwa, makes claim against the defendants,

Castle Point Mortgage, Inc. and GMAC Mortgage, LLC, for actual monetary damages,

pursuant to 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an amount to be determined at

trial; and, for statutory monetary damages, pursuant to 15 U.S.C. § 1635(g) and

15 U.S.C. § 1640, in an amount not to exceed TWO THOUSAND and XX/100 ($2,000,00)

DOLLARS for each and every Federal Truth In Lending violation enumerated herein;

and a reasonable attorney fee, as well as the costs of this action, pursuant to

15 U.S.C. § 1640(a).


## AS AND FOR A THIRD CAUSE OF ACTION


99.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "95"; and "97", as if fully set forth herein

100.   The actions taken by defendants Castle Point, Gearin and/or Royal, in

connection with the processing of the subject mortgage loan were known by said

defendants to likely mislead the plaintiff, who were acting reasonably under the

circumstances then and there existing, in that the misrepresentations made by defendants

Castle Point and/or Gearin, as to plaintiff's income status at that time; and the

mischaracterization of material terms set forth within the HUD Statement were knowingly

deceptive, and unlawful, and as such, constituted violations of the New York State

Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State

General Business Law.

101.    Defendants Castle Point and/or Gearin knowingly inflated plaintiff's income

within said document entitled "Uniform Residential Loan Application", as said

defendants wrongfully and knowingly falsely imputed a monthly gross income figure for

the plaintiff, in the amount of $30,000.00, which defendants Castle Point and/or Gearin

knew were inaccurate; and which was entirely contrary to the income information

provided said defendants by the plaintiff.

102.    Defendants Castle Point and/or Gearin had knowingly significantly inflated

plaintiff's income within the "Uniform Residential Loan Application" as a means to ensure

that plaintiff would qualify for the subject loan, as plaintiff's actual income status at that

time would not have been sufficient to otherwise enable plaintiff to obtain said financing.

103.    Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff

that her income would enable her to qualify for the subject financing; and that plaintiff

could subsequently thereafter qualify for an additional refinancing with even more favorable

loan terms.  Defendants Castle Point and/or Gearin knowingly misrepresented this fact to

plaintiff for the purpose of preventing plaintiff from learning and/or realizing that the

subject loan transaction was detrimental to her; and to dissuade plaintiff from exploring

other loan opportunities available to plaintiff at that time.

104.    Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff

that her income would enable her to qualify for the subject financing; when defendants

were fully aware that plaintiff was already in foreclosure on her existing mortgage at the time of her application on the subject loan, which involved payment obligations which were significantly less than that imposed by the subject loan transaction.

105.   Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff that the subject loan terms were the most favorable terms which plaintiff could receive, given her then existent credit and asset status.  Defendants Castle Point and/or Gearin knowingly misrepresented this fact to plaintiff for the purpose of preventing plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

106.   Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff that she could further qualify for even more favorable loan payment terms by remaining current on the subject loan transaction for a period of one year, when defendants knew this to be untrue; and when defendants knew that plaintiff would be unable to remain current on the subject loan for such a period of time.  Defendants knowingly misrepresented this fact to plaintiff for the purpose of preventing plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

107.   Defendants Castle Point and Gearin knowingly failed to provide plaintiff with Truth In Lending Disclosure prior to the date of "closing" of the subject mortgage loan, as mandated by the Truth In Lending Act, for the purpose of preventing plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

108.   Defendants Castle Point, Gearin and/or Royal knowingly acted improperly, in discouraging plaintiff from retaining an attorney to represent her in connection with the subject transaction; and then having plaintiff proceed with a "closing" which involved a representative from defendant Royal, whose sole purpose was to notarize documents executed by the plaintiff, and who possessed no knowledge of the contents of the documents being presented to plaintiff. Defendants acted in such manner so as to prevent the plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

109.   Defendants Castle Point and Royal also knowingly acted improperly, in having defendant Royal serve as a "settlement agent" and/or "closing agent" on a loan transaction involving a lender, when both defendant Castle Point and/or Royal are operated and/or owned by the same individuals.

110.   Defendants Castle Point and/or Royal failed to disclose to plaintiff the conflict imposed by related entities serving as a lender and "settlement agent/ closing agent" on a mortgage loan transaction, so as to prevent plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

111.   Defendants Castle Point and Royal also knowingly and intentionally failed to provide plaintiff with any explanation or disclosure explaining why she did not receive a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject mortgage loan, despite the subject transaction consisting of a refinance.

112.   Defendants Castle Point and Royal also knowingly and intentionally failed to provide plaintiff with any explanation or disclosure explaining why she did not receive a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject mortgage loan, for the purpose of preventing plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her; and to dissuade plaintiff from exploring other loan opportunities available to them at that time.

113.   The actions undertaken by defendants Castle Point, Gearin and/or Royal, in connection with their material concealment of facts relating to the subject loan, as well as defendants' failure to provide plaintiff with mandated Truth In Lending Disclosure prior to the date of the subject closing, were materially misleading and knowingly deceptive, in that such actions were designed by said defendants to prevent plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her; and to dissuade the plaintiff from canceling or rescinding the subject mortgage transaction, as well as to convince plaintiff to forego other loan opportunities available to her at that time.

114.   That actions taken by defendants Castle Point, Guerin and/or Royal involved conduct which said defendants knew were materially misleading and knowingly deceptive, and as such, constituted a violation of the New York State Deceptive Acts and Practices Statute, as codified by General Business Law Section 349.

115.   That by reason of said material misdisclosures, the plaintiff, Vera N. Ngwa, makes claim, pursuant to The New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law, for

the following relief: **(i)** rescission/cancellation of the subject mortgage loan and/or

rescission of this transaction; **(ii)** termination of any security interest in plaintiff's

residential premises created for defendant Castle Point Mortgage, Inc., and thereafter

assigned to GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or

property given by the plaintiff to any party, in connection with the subject mortgage loan;

**(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received

from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC

during the pendency of this action, and permanently thereafter, from instituting,

prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises,

and from recording any deeds or mortgages concerning plaintiff's property, or from

otherwise taking any steps to deprive plaintiff of her ownership interest of that residential

premise; **(vi)** a reasonable attorney fee, pursuant to New York State General Business Law

Section 349(h).


## AS AND FOR A FOURTH CAUSE OF ACTION


116.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "95"; "97"; and "99" through "114", as if fully set forth herein.

117.   That by reason of the knowingly deceptive and unlawful actions undertaken

by defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services,

Inc., which were known by said defendants to likely mislead the plaintiff, who was

acting reasonably under the circumstances then and there existing, the plaintiff, Vera

N. Ngwa, makes claim against defendants Castle Point Mortgage, Inc., Heather Gearin

and Royal Settlement Services, Inc., for monetary damages, pursuant to the New

York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New

York State General Business Law; in an amount to be determined at trial; and a reasonable

attorney fee, pursuant to New York State General Business Law Section 349(h).


## AS AND FOR A FIFTH CAUSE OF ACTION


118.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "95"; "97"; "99" through "114" and "116", as if fully set forth

herein.

119.   The "loan origination fee", in the amount of $46,600.00, payable to defendant

Castle Point, from the proceeds of the subject loan, was known by defendants Castle Point

and Gearin to be excessive, in that it was drastically disproportionate to the services time

and/or degree of expertise rendered by defendants Castle Point and/or Gearin.

120.   The "loan origination fee", in the amount of $46,600.00, payable to defendant

Castle Point, from the proceeds of the subject loan, was known by defendants Castle

Point and Gearin to be excessive and to plaintiff's detriment in that it drastically reduced

the amount of moneys which plaintiff received at consummation of the loan; and that said

fees allowed for an inflated commission fee for defendant Gearin.

121.   The "loan origination fee", in the amount of $46,600.00, payable to

defendant Castle Point, from the proceeds of the subject loan, was known by defendants

Castle Point and/or Gearin to be excessive, in that it was drastically disproportionate to the

services time and/or degree of expertise rendered by said defendants, and as such constituted

a violation of New York State Banking Law Section 589.

122. Defendants Castle Point and/or Gearin in charging plaintiff with said

mortgage "loan origination fee" payable by the plaintiff from the proceeds of the subject

loan, did not operate fairly, honestly and efficiently, and acted deceptively in assessing said

fee for services rendered by defendants Castle Point and/or Gearin, in connection with the

subject mortgage loan.

123. Defendants Castle Point and/or Gearin also acted unfairly, dishonestly and

inefficiently in assessing plaintiff with an additional "Application Fee" , in the amount of

$595.00, and a "Processing Fee" in the amount of $795.00, which was payable to defendant

Castle Point, by the plaintiff, from the proceeds of the subject loan, despite plaintiff having

already been assessed with said "loan origination fee" in the amount of $46,600.00.

124. That by reason of the unfair, dishonest and inefficient conduct perpetrated

by defendant Castle Point Mortgage, Inc., in connection with services allegedly rendered

by defendants Castle Point Mortgage, Inc. and Heather Gearin, the plaintiff, Vera N.

Ngwa, makes claim for money damages, pursuant to Section 589 of the New York State

Banking Law, against the defendant, Castle Point Mortgage, Inc., in an amount to be

determined at trial; and a reasonable attorney fee, pursuant to the dictates of the New York

State Banking Law.

## AS AND FOR A SIXTH CAUSE OF ACTION

125.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "95"; "97"; "99" through "114"; "116" and "118" through

"123", as if fully set forth herein.

126.   The actions taken by defendants Castle Point, Gearin and Royal, in

connection with the processing of the subject mortgage, as well as with respect to services

rendered on the loan, were designed to designed to prevent plaintiff from exploring other

borrowing opportunities which defendants knew were more favorable to the plaintiff.

127.   Defendants Castle Point and Gearin knew that the amount of moneys

assessed for the "loan origination fee", in the amount of $46,600.00; and all "settlement

charges" enumerated within the HUD Statement, were excessive; and that the subject

loan ultimately failed to provide the plaintiff with any "net tangible benefit".  As such,

defendants completely misrepresented to the plaintiff that the subject mortgage loan was

beneficial to her; while engaging in conduct tantamount to "equity stripping".

128.   Defendants  Castle Point and/or Gearin were fully aware that plaintiff's

actual income status at the time of application for the subject loan was not sufficient to

enable plaintiff to qualify for the subject loan transaction; or to allow plaintiff to remain

current on the resultant mortgage.

129.   Defendants Castle Point, Gearin and/or Royal knowingly ignored the

information concerning plaintiff's income which was provided by the plaintiff herein;

while refusing to act upon tax record authorizations duly executed by plaintiff, which were provided to defendants Castle Point and/or Gearin.

130.   Defendants Castle Point and/or Gearin significantly inflated plaintiff's income within documents subsequently rendered, so as to enable plaintiff to show the income necessary in allowing her to qualify for the subject loan.

131.   Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff that her income would enable her to qualify for the subject financing; and that plaintiff could subsequently thereafter qualify for an additional refinancing with even more favorable loan terms.  In reliance upon said representation, plaintiff Vera N. Ngwa agreed to commit to and/or proceed with the subject loan transaction.

132.   Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff that the subject loan terms were the most favorable terms which plaintiff could receive, given her then existent credit status.  In reliance upon said representation, plaintiff Vera N. Ngwa agreed to commit to and/or proceed with the subject loan transaction.

133.   Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff that she could further qualify for even more favorable loan payment terms by remaining current on the subject loan transaction for a period of one year.  In reliance upon said representation, plaintiff Vera N. Ngwa agreed to commit to and/or proceed with the subject loan transaction.

134.   The misrepresentations made by defendants Castle Point and/or Gearin, as well as their concealment of facts from plaintiff, concerning the nature and status of the subject mortgage loan; including having refused to provide plaintiff with any Truth In

Lending Disclosure prior to the date of the subject closing, were relied upon by plaintiff, to her detriment, and resulted in plaintiff agreeing to commit to and/or proceed with the subject loan transaction, while also convincing plaintiff to forego exercising her right to cancel the loan; while also foregoing other borrowing/loan opportunities which defendants Castle Point and/or Gearin knew were available to the plaintiff at that time.

135.   Defendants Castle Point and/or Gearin were entirely aware that the "loan origination fee" in the amount $46,600.00; as well as the "Application fee" and "Processing fee" paid to said defendants by the plaintiff, from the proceeds of the subject loan, were excessive, given the nature of the services actually rendered by said defendants, in connection with a loan which merely constituted a refinancing of a previous mortgage to which plaintiff was a party.  Defendants Castle Point and/or Gearin were entirely aware that said fees paid to defendant Castle Point were unfair and to plaintiff's detriment, in that it drastically reduced the amount of moneys which plaintiff received at consummation of the loan; and that said fees allowed for an excessive commission fee for defendant Gearin.

136.   As a means of concealing the detrimental nature of the subject loan transaction from plaintiff, defendants Castle Point, Gearin and/or Royal conspired to have defendant Royal acted as "Settlement Agent/Closing Agent" on the subject transaction.  In this way, defendant Castle Point, as a "sister corporation" to Royal, was able to completely dictate the manner in which the "closing" of the loan proceeded, all to plaintiff's detriment.

137.   All of the misrepresentations and concealment of material facts engaged

in by defendants Castle Point, Gearin and/or Royal, their agents, servants, employees and/or representatives, were intended to deceive and defraud plaintiff, and/or prevent plaintiff from discovering defendants' fraudulent misrepresentations and/or fraudulent scheme, and plaintiff relied on these misrepresentations and concealment of material facts to her detriment.

138.   The fraudulent misrepresentations and fraudulent concealment of material facts rendered by defendants Castle Point, Gearin and/or Royal, prevented plaintiff from conducting meaningful exploration of more favorable loan opportunities available to her at the time of consummation of the subject mortgage loan.

139.   Plaintiff, but for said defendants' fraudulent representations and fraudulent concealment of material facts, would not have proceeded with efforts to make payments on said loan, which the plaintiff has not been able to maintain payment upon, resulting in damage to plaintiff's credit; and impairment of title to her real property.

140.   That by reason of the fraudulent misrepresentations and concealment of material facts rendered by defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., the plaintiff, Vera N. Ngwa, has sustained actual damages of at least ONE MILLION DOLLARS and XX/00 ($1,000,000.00) DOLLARS; wrongful impairment of title to their property; and damage to her credit in an amount not fully known or ascertainable.

141.   That plaintiff has suffered constant depression anxiety, loss of sleep and stress as a result of having been victimized by defendants' fraud.

142.   That upon information and belief, the plaintiff is entitled to compensatory

damages in an amount to be determined by the trier of fact.

143.   That upon information and belief, the gross, wanton and willfully fraudulent conduct of defendants Castle Point, Gearin and/or Royal, their agents, servants, employees and/or representatives, were not only morally evil and reprehensible, as it has affected the plaintiff, but it is also part of a pattern of predatory lending directed at vulnerable segments of the public.

144.   That by reason of the gross, wanton and willfully fraudulent conduct directed to the plaintiff, as well as vulnerable segments of the public, and in order to both punish defendants, their agents, servants, employees and/or representatives, from engaging in the same or similar conduct in the future, the plaintiff, Vera N. Ngwa, demands an award of punitive damages in the amount of TEN MILLION and XX/100 ($10,000.000.00) DOLLARS against  the defendants, Castle Point Mortgage, Inc., Heather Gearin and/or Royal Settlement Services, Inc., jointly and individually

145.   That by reason of defendant' fraudulent concealment of material information and terms essential to the processing of the subject loan, as well as defendants' fraudulent conduct and misrepresentations made in connection with the subject mortgage loan, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., both jointly and individually, for actual monetary damages, in the amount of ONE MILLION DOLLARS and XX/100 ($1,000,000.00) DOLLARS; for compensatory damages in an amount to be determined by the trier of fact; and for punitive monetary damages, in the amount of TEN MILLION and XX/100 ($10,000,000.00) DOLLARS.

## AS AND FOR A SEVENTH CAUSE OF ACTION

146.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "95"; "97"; "99" through "114"; "116"; "118" through "123", and "125" through "144", as if fully set forth herein.

147.   The fraudulent misrepresentations and material concealment of facts  made by defendants Castle Point, Gearin and/or Royal, in connection with the processing and closing of the subject loan, as well as the disclosure of its terms, constituted inequitable and unconscionable conduct, by which the plaintiff has been victimized.

148.   Plaintiff is entitled to cancellation/discharge and/or rescission of the subject loan, based upon general principles of equity.

149.   That by reason of the fraud, inequity, and unconscionable conduct rendered by defendants Castle Point Mortgage, Inc., Heather Gearin and/or Royal Settlement Services, Inc., the plaintiff, Vera N. Ngwa, makes claim for the following relief:

(i)  rescission/cancellation of the subject mortgage loan and/or rescission of this transaction;

(ii) termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction; (iii) Return of any money or property given by the plaintiff to any  party, in connection with the subject mortgage loan; (iv) judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; (v) enjoinment of defendant GMAC Mortgage, LLC during

the pendency of this action, and permanently thereafter, from instituting, prosecuting,

or maintaining foreclosure proceedings on the plaintiff's residential premises, and from

recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking

any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a

reasonable attorney fee.


## AS AND FOR AN EIGHTH CAUSE OF ACTION


150.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "95"; "97"; "99" through "114"; "116"; "118" through "123";

"125" through "144" and "146" through "148", as if fully set forth herein.

151.   That the plaintiff, Vera N. Ngwa, had provided and/or authorized

defendants Castle Point, Gearin and/or Royal with all information within her possession

concerning her existent employment income at the time of her application for financing,

including pay stubs, W-2 forms and tax return documents.

152.   That the plaintiff, Vera N. Ngwa, executed employment income

authorization forms in connection with the subject consumer credit transaction, which

consisted of Request for Verification of Employment Forms and 4506 Tax Record income

authorizations.  These authorizations enabled defendants Castle Point and/or Royal to

verify plaintiff's employment income information which had been provided by plaintiff.

153.   That the employment income authorizations executed by the plaintiff,

Vera N. Ngwa, consisting of W-9 forms/tax record authorizations, as well as 4506

form record employment/tax authorizations, were duly executed and provided by plaintiff

to defendants Castle Point, Gearin and/or Royal

154.    That defendants Castle Point, Gearin and/or Royal completely failed to act

upon said employment authorizations.

155.    That as a result of defendant Castle Point's failure to take measures to

verify plaintiff's employment income or status, defendant Castle Point was negligent in

the underwriting of the subject consumer credit transaction, as well as the subsequent

approval of plaintiff's subject loan application, as plaintiff's actual income at that time

was entirely insufficient to allow her to qualify for the subject financing.

156.    That this action falls within one or more of the exceptions set forth in

C.P.L.R. 1602.

157.    That by reason of defendant Castle Point Mortgage, Inc.'s negligence in the

underwriting of the subject consumer credit transaction, as well as the subsequent approval

of plaintiff's subject loan application, the plaintiff, Vera N. Ngwa, makes claim against

defendant Castle Point Mortgage, Inc. for actual monetary damages, in an amount which

exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction

and which warrants the jurisdiction of this Court.


## AS AND FOR A NINTH CAUSE OF ACTION

158.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "95"; "97"; "99" through "114"; "116"; "118" through "123"; "125" through "144";  "146" through "148"; and "150" through "156", as if fully set forth herein.

159.   That the alleged assignment of the subject mortgage loan from defendant Castle Point to defendant GMAC has, upon information and belief, never been documented, effectuated  and/or recorded in the County Clerk, County of New York, or with any like entity.

160.   That defendant GMAC has wrongfully attempted to collect payments from the plaintiff on the subject transaction, pursuant to an assignment which has never been validly documented, effectuated and/or recorded in the County Clerk, County of New York, or with any like entity.

161.   That defendant GMAC commenced a foreclosure action against the plaintiff, in connection with plaintiff's default on the subject loan, at which time said defendant admitted within its suit papers filed that the assignment of the loan from defendant Castle Point to defendant GMAC had not been recorded.

162.   That at no time prior to the commencement of this action has defendant GMAC  provided the plaintiff with any evidence establishing a documented, effectuated and/or recorded assignment of the subject loan from defendant Castle Point to defendant GMAC.

163.   That as defendant GMAC has not documented, effectuated and/or recorded the alleged assignment of the subject mortgage from defendant Castle Point, the subject

"assignment" must be deemed invalid.

164.   That as defendant GMAC has not documented, effectuated and/or recorded its alleged assignment of the subject mortgage from defendant Castle Point, the subject "assignment" is thereby invalidated; and defendant GMAC is estopped from collecting moneys from the plaintiff on the subject loan transaction and/or enforcing the subject mortgage.

165.   That by reason of defendant GMAC Mortgage, LLC having failed to document, effectuated and/or record the alleged assignment of the subject mortgage from defendant Castle Point, the plaintiff, Vera N. Ngwa, makes claim, for the following relief: **(i)** termination of any security interest in plaintiff's residential premises created for defendant GMAC Mortgage, LLC; **(ii)** enjoinment of defendant GMAC Mortgage, LLC, during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of the subject residential premise; **(iii)** a reasonable attorney fee.

## AS AND FOR A TENTH CAUSE OF ACTION

166.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "95"; "97"; "99" through "114"; "116"; "118" through "123"; "125" through "144"; "146" through "148";"150" through "156"; and "158" through

"164", as if fully set forth herein.

167.   That defendant GMAC improperly commenced a foreclosure action against the plaintiff, Vera N. Ngwa, despite having failed to record the document, effectuate and/or record the alleged assignment of the subject loan by defendant Castle Point.

168.   That the actions taken by defendant GMAC have resulted in irreparable damage to plaintiff's credit standing, as well as impairment of plaintiff's title.

169.   That plaintiff has suffered constant depression anxiety, loss of sleep and stress as a result of defendant GMAC wrongfully commencing a foreclosure action against her, which could result in loss of ownership of her property.

170.   That upon information and belief, the plaintiff is entitled to compensatory damages from defendant GMAC, by reason of said defendant's improper actions to enforce said mortgage, despite not having a validly documented, effectuated and/or recorded assignment.

171.   That by reason of the improper actions of defendant GMAC Mortgage, LLC, taken to enforce payment obligations on the plaintiff herein, in connection with the subject mortgage loan transaction, the plaintiff, Vera N. Ngwa, makes claim against the defendant, GMAC Mortgage, LLC. for actual monetary damages, in the amount of ONE MILLION DOLLARS and XX/100  ($1,000,000.00) DOLLARS; and for compensatory damages in an amount to be determined by the trier of fact

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

172.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "95"; "97"; "99" through "114"; "116"; "118" through "123"; "125" through "144"; "146" through "148";"150" through "156"; "158" through "164"; and "166" through "170", as if fully set forth herein.

173.   That defendant Royal acted as the "settlement or "closing" agent on the subject mortgage loan, as reflected by the HUD Statement.  As such, defendant's services included distributing proceeds on the subject loan, as well as to take possession of loan proceeds during the period wherein plaintiff had the right to rescind and/or cancel the loan.

174.   Defendants Castle Point and Royal acted improperly in permitting and/or designating defendant Royal as the "settlement or closing" agent on the subject mortgage loan, in that said services are required to be performed by an attorney, pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq.   Furthermore, both defendants Castle Point and/or Royal were aware that defendant Royal, as "settlement or closing agent", was responsible for escrowing moneys derived from the proceeds of the subject loan, during the period wherein plaintiff had the right to rescind and/or cancel the loan, which defendant Royal was not legally empowered or qualified to do; and which services defendants Castle Point and/or Royal knew had to be performed by an attorney.

175.   Defendants Castle Point and Royal acted improperly in permitting and/or

designating defendant Royal as the "settlement or closing" agent on the subject mortgage

loan, in that said services are required to be performed by a person and/or entity independent

of the lender, pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. §

2601 et Seq.  Both defendants Castle Point and/or Royal were aware that defendant Royal,

as "settlement or closing agent", was responsible for escrowing moneys derived from the

proceeds of the subject loan, during the period wherein plaintiff had the right to rescind

and/or cancel the loan.  As such defendant Castle Point, a related entity to defendant

Royal, was able to entirely control the "closing" of the subject transaction.

176.   By acting as "closing and/or settlement agent" on the subject loan, defendant

Royal was enabled to obtain fees for services actually rendered on the subject loan, which

defendants Castle Point and/or Royal knew were not reasonable or bonafide, and which

were in violation of the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. §

2601 et Seq.

177.   That by reason of defendant Royal improperly serving as "closing and/or

settlement agent" on the subject loan, plaintiff Vera N. Ngwa makes claim against the

defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual

monetary damages,  pursuant to the Real Estate Settlement Procedures Act, as set forth by

12 U.S.C. § 2601 et Seq., as well as statutory money damages, pursuant to the dictates of

said statute; and a reasonable attorney fee, as well as the costs of this action.

## AS AND FOR A TWELFTH CAUSE OF ACTION

178.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "95"; "97"; "99" through "114"; "116" and "118" through "123"; "125" through "144"; "146" through "148";"150" through "156"; "158" through "164"; "166" through "170"; and "172" through "176", as if fully set forth herein.

179.   That defendant Royal acted as the "settlement or "closing" agent on the subject mortgage loan, as reflected by the HUD Statement.  As such, defendant's services included distributing proceeds on the subject loan, as well as to take possession of loan proceeds during the period wherein plaintiff had the right to rescind and/or cancel the loan.

180.   That defendants Castle Point and Royal acted improperly in permitting and/or designating defendant Royal as the "settlement or closing" agent on the subject mortgage loan, in that said services are required to be performed by an independent attorney, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute.  Furthermore, defendants Castle Point and Royal were aware that defendant Royal, as "settlement or closing agent", was responsible for escrowing moneys derived from the proceeds of the subject loan, during the period wherein plaintiff had the right to rescind and/or cancel the loan, which defendant Royal was not legally empowered or qualified to  do; and which services defendants Castle Point and/or Royal knew had to be performed by an independent attorney.

181.   In defendant Royal acting as "closing and/or settlement agent" on the

subject loan, defendant Royal was able  to obtain excessive fees for services actually rendered on the subject loan, which defendant Royal knew were not reasonable or bonafide, and which were in violation of the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute.

182.    That by reason of defendant Royal improperly serving as "closing and/or settlement agent" on the subject loan, the plaintiff, Vera N. Ngwa makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute, as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, it is respectfully requested prayed that this Court

**(A).**   Assume jurisdiction of this case;

**(B)**   Upon the FIRST CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC, pursuant to U.S.C. § 1635, for the following relief: **(i)** rescission/cancellation of the subject mortgage loan/and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction;

**(iii)** Return of any money or property given by the plaintiff to any party, in connection with

the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any

loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC

Mortgage, LLC, during the pendency of this action, and permanently thereafter, from

instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential

premises, and from recording any deeds or mortgages concerning plaintiff's property, or

from otherwise taking any steps to deprive plaintiff of her ownership interest of that

residential premise; **(vi)** a reasonable attorney fee, as well as the costs of this action, pursuant

to 15 U.S.C. § 1640(a);

**(C)** Upon the SECOND CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes

makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC,

for actual monetary damages, pursuant to 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an

amount to be determined at trial; and, for statutory monetary damages, pursuant to 15 U.S.C. §

1635(g) and 15 U.S.C. § 1640, in an amount not to exceed TWO THOUSAND and XX/100

($2,000,00) DOLLARS for each and every Federal Truth In Lending violation enumerated

herein, and a reasonable attorney fee, as well as the costs of this action, pursuant to 15 U.S.C. §

1640(a);

**(D)** Upon the THIRD CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes

makes claim, pursuant to The New York State Deceptive Acts and Practices Statute, as

codified by Section 349 of the New York State General Business Law, for the following

relief: **(i)** rescission/cancellation of the subject mortgage loan and/or rescission of this

transaction; **(ii)** termination of any security interest in plaintiff's residential premises created

for defendant Castle Point Mortgage, Inc., and thereafter assigned to GMAC Mortgage, LLC,

under this transaction; **(iii)** Return of any money or property given by the plaintiff to any party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

**(E)**  Upon the FOURTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., for monetary damages, pursuant to the New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law; in an amount to be determined at trial; and a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

**(F)**  Upon the FIFTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendant, Castle Point Mortgage, Inc., for money damages, pursuant to Section 589 of the New York State Banking Law, in an amount to be determined at trial; and a reasonable attorney fee, pursuant to the dictates of the New York State Banking Law.

**(G)** Upon the SIXTH CAUSE OF ACTION, the plaintiff, plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc., Heather Gearin and

Royal Settlement Services, Inc., both jointly and individually, for actual monetary damages, in the amount of ONE MILLION DOLLARS and XX/100 ($1,000,000.00) DOLLARS; for compensatory damages in an amount to be determined by the trier of fact; and for punitive monetary damages, in the amount of TEN MILLION and XX/100 ($10,000,000.00) DOLLARS.

(H)  Upon the SEVENTH CAUSE OF ACTION, the plaintiff, the plaintiff, Vera N. Ngwa, makes claim for the following relief: (i)  rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; (ii) termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction; (iii) Return of any money or property given by the plaintiff to any  party, in connection with the subject mortgage loan; (iv) judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; (v) enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; (vi) a reasonable attorney fee.

(I)  Upon the EIGHTH CAUSE OF ACTION, the plaintiff, Vera N, Ngwa makes claim against the defendant, Castle Point Mortgage, Inc. for actual monetary damages, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and which warrants the jurisdiction of this Court.

**(J)**  Upon the NINTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa Fiorenza, makes claim against the defendant, GMAC Mortgage, LLC. for the following relief: **(i)** termination of any security interest in plaintiff's residential premises created for defendant GMAC Mortgage, LLC; **(ii)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of the subject residential premise; **(iii)** a reasonable attorney fee.

**(K)**  Upon the TENTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendant, GMAC Mortgage, LLC, for actual monetary damages, in the amount of  ONE MILLION DOLLARS and XX/100  ($1,000,000.00) DOLLARS; and for compensatory damages in an amount to be determined by the trier of fact

**(L)**  Upon the ELEVENTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages,  pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq., as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

**(M)** Upon the TWELFTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendant, Royal Settlement Services, Inc., for actual monetary damages, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and

495 of said statute, as well as statutory money damages, pursuant to the dictates of said

statute; and a reasonable attorney fee, as well as the costs of this action.

**(N)** the costs, interest and disbursements of this action; and for such other and

further relief as to this Court may seem just and proper.

Dated: Brooklyn, New York
       January 21, 2008

Yours, etc.

**DAVID M. HARRISON, ESQ.**
Attorney for Plaintiff
VERA N. NGWA
Office & P.O. Address
48 Willoughby Street
Brooklyn, New York 11201
(718) 243-2109
Bar No.: DH6188

By: _____
    David M. Harrison, Esq.

UNITED STATES DISTRICT COURT        Civil Action No.:
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------------------------------

VERA N. NGWA,

                                Plaintiff,

        v.

CASTLE POINT MORTGAGE, INC., HEATHER
GEARIN, GMAC MORTGAGE, LLC and
ROYAL SETTLEMENT SERVICES, INC.,

                                Defendants.

--------------------------------------------------------------------------------------------------------

## **COMPLAINT**

--------------------------------------------------------------------------------------------------------

**DAVID M. HARRISON, ESQ.**
Attorney for the Plaintiff
VERA N. NGWA
Office & P.O. Address
48 Willoughby Street
Brooklyn, New York 11201
(718) 243-2109

--------------------------------------------------------------------------------------------------------
PLEASE TAKE NOTICE:
[ ] <u>Notice of Entry</u>
   that the within is a (certified) true copy of Order            duly entered in the office of the clerk of the within
named court on
[ ] <u>Notice of Settlement</u>

   that an order             of which the within is a true copy
   will be presented for settlement to the HON        one of the judges of the
   within named Court, at
on          19   at     M.
     Dated,               Yours, etc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

VERA N. NGWA,                                        Civil Action No.: 08-00859

               Plaintiff,              **AMENDED COMPLAINT**

                               **JURY TRIAL DEMANDED**
         v.

CASTLE POINT MORTGAGE,
INC., HEATHER GEARIN,
GMAC MORTGAGE, LLC and
ROYAL SETTLEMENT
SERVICES, INC.,

               Defendant(s).

------------------------------------------------------------------------x

     The plaintiff, Vera N. Ngwa, by her attorney, David M. Harrison, Esq.,

complaining of the defendants, Castle Point Mortgage, Inc., Heather Guerin, GMAC

Mortgage, LLC and Royal Settlement Services, Inc., respectfully alleges and sets

forth as follows:

## **PRELIMINARY STATEMENT**

    1.  This Complaint is filed under the Truth In Lending Act, 15 U.S.C. § 1601 et

Seq., to enforce plaintiff's right to rescind a consumer credit transaction, and to void

the security interest in plaintiff's home held by Castle Point Mortgage, Inc. and/or

GMAC Mortgage, LLC; and to recover actual monetary damages; statutory damages;

reasonable attorney fees and costs, by reason of: **(i)** violation by the original "lender" to

the subject consumer credit transaction, Castle Point Mortgage, Inc., as set forth by

15 U.S.C. § 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226,

which implements the act; **(ii)** violation by the original "lender" to the subject consumer

credit transaction, Castle Point Mortgage, Inc., as set forth by 15 U.S.C. § 1639, as well as

Federal Reserve Board Regulation Z, 12 C.F.R. § 226.31, 12 C.F.R. § 226.32 and

12 C.F.R. § 226.34; **(iii)** violation by the original "lender" to the subject consumer credit

transaction, Castle Point Mortgage, Inc., as well as defendants Heather Gearin and

Royal Settlement Services, Inc., as codified by Section 349 of the New York State

General Business Law; **(iv)** violation by defendant Castle Point Mortgage, Inc. of

Section 589 of the New York State Banking Law; **(v)** violation by the original "lender"

to the subject consumer credit transaction, Castle Point Mortgage, Inc., as well as

defendant Royal Settlement Services, Inc., of the Real Estate Settlement Procedures Act,

12 U.S.C. § 2601 et seq.; **(vi)** violation by the original "lender" to the subject consumer

credit transaction, Castle Point Mortgage, Inc., as well as defendant Royal Settlement

Services, Inc., of Sections 484 and 495 of the New York State Judiciary Law. Plaintiff

also seeks monetary damages, including punitive damages, for multiple acts of fraud on

the part of defendants herein; and further, plaintiff seeks rescission of the subject consumer

credit transaction, based upon general principles of equity. Plaintiff also seeks money

damages and/or equitable relief from defendant GMAC Mortgage, LLC, as said

defendant has taken numerous measures to collect upon a mortgage loan, including

commencement of a foreclosure action, when, upon information and belief, said mortgage

and/or mortgage loan has loan has not been validly assigned to defendant GMAC

Mortgage, LLC; and/or has not been properly recorded.

## JURISDICTION

2.  Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e), as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  The Court has authority to issue a declaratory judgment, by virtue of 28 U.S.C. § 2201.

3.  The Court has Supplemental Jurisdiction over the Plaintiff's State law claims, pursuant to 28 U.S.C. § 1367.

## PARTIES

### Plaintiff:

4.  The plaintiff, Vera N. Ngwa, is a natural person, residing at 10 West 123rd Street, Bronx, New York, New York.  Plaintiff is the owner of said residential real property.

### Defendants:

5.  The defendant, Castle Point Mortgage, Inc., hereinafter referred to as "defendant Castle Point", is a foreign corporation, authorized to conduct and/or transact business in New York State.  Defendant Castle Point derives substantial revenue from its transactions of business in the State of New York; regularly does or solicits business in the State of New York, with substantial revenue derived from interstate and/or international commerce therefrom; contracts outside the State of New York to supply goods and services within the State of New York, having reasonable expectations that

same will have consequences within the State of New York and/or is otherwise subject

to jurisdiction before the Courts of the State of New York.

      6.  Defendant Castle Point regularly engages in the making of mortgage loans,

and is therefore subject to the Truth In Lending Act, as dictated by 15 U.S.C. § 1601 et Seq.,

as well as Federal Reserve Board Regulation Z, 12 C.F.R § 226, which implements the

act.

      7.  The defendant, Heather Gearin, hereinafter referred to as defendant Gearin, is

an individual, who at all times herein mentioned, served as an employee of defendant

Castle Point.  Defendant Gearin served under the employ of defendant Castle Point in the

capacity of "loan officer".

      8.  The defendant, GMAC Mortgage, LLC, hereinafter referred to as defendant

GMAC, is a foreign limited liability company, duly licensed, or otherwise so authorized to

do business in the State of New York.  Defendant GMAC derives substantial revenue from

its transactions of business in the State of New York; regularly does or solicits business in

the State of New York, with substantial revenue derived from interstate and/or international

commerce therefrom; contracts outside the State of New York to supply goods and services

within the State of New York, having reasonable expectations that same will have

consequences within the State of New York and/or is otherwise subject to jurisdiction before

the Courts of the State of New York.

      9.  Defendant GMAC regularly serves as an assignee of lenders which regularly

engage and/or have regularly engaged in the making of mortgage loans, and is therefore

subject to the Truth In Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as

Federal Reserve Board Regulation Z, 12 C.F.R § 226, which implements the act. As an

assignee to mortgage loans from said lenders, defendant GMAC is also subject to the Truth

In Lending Act.

10. The defendant, Royal Settlement Services, Inc., hereinafter referred to as

"defendant Royal", is a foreign corporation, duly licensed, or otherwise so authorized

to do business in the State of New York. Defendant Royal derives substantial revenue

from its transactions of business in the State of New York; regularly does or solicits

business in the State of New York, with substantial revenue derived from interstate

and/or international commerce therefrom; contracts outside the State of New York to

supply goods and services within the State of New York, having reasonable expectations

that same will have consequences within the State of New York and/or is otherwise

subject to jurisdiction before the Courts of the State of New York.

11. Defendant Royal derives fees in connection with title services rendered in

connection with the making of mortgage loans. Defendant Royal also acts in the

capacity of a "Settlement Company" and "Closer", in connection with real estate

closings. The nature of defendant Royal's services, as well as the fees for which

defendant Royal assesses in connection with such services, are subject to the dictates

imposed by the Truth in Lending Act, as dictated by 15 U.S.C. § 1601 et Seq., as well as

Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; as well

as The Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et seq;

and the New York State Judiciary Law, including Sections 484 and 495 of said statute.

12. The principals of defendant Castle Point are the majority owners of defendant

Royal.

13.   The original lender to the subject consumer credit transaction, defendant

Castle Point, issued a mortgage loan to plaintiff Vera N. Ngwa on January 25, 2007,

in the amount of $1,165,000.00.  The resultant Mortgage and Note are secured by

plaintiff's residential property located at 10 West 123rd Street, New York, New York

10027.  Defendant Castle Point, as the lender to said mortgage loan, and the original

"holder" to the resultant mortgage and note, thereafter allegedly assigned said mortgage

and note, and all rights to collect therefrom, to defendant GMAC.

14.   Defendant Gearin was the loan officer assigned by defendant Castle Point

to the subject transaction involving plaintiff Vera N. Ngwa and defendant Castle Point.

15.   Defendant Royal acted as the "Settlement Agent" and/or "Closing Agent"

on the subject loan transaction.  Defendant Royal also rendered "title services" in

connection with said transaction.

16.   Defendants Castle Point and Gearin made a predatory mortgage loan to

plaintiff based upon a variety of false, fraudulent and deceptive acts and statements upon

which the plaintiff relied.  Defendants Castle Point and Gearin knowingly engaged in

conduct which completely violated the applicable disclosure requirements mandated by

the Truth In Lending Act, as set forth by 15 U.S.C. § 1601 et Seq., as well as Federal

Reserve Board Regulation Z, 12 C.F.R. § 226, which implements the act; including

15 U.S.C. § 1640; Regulation Z § 226.17 and  Regulation Z § 226.19(b).  Defendants

Castle Point and Gearin knowingly engaged in conduct which was knowingly fraudulent

and deceptive, in connection with the origination and processing of the subject loan; and

further, defendant Castle Point received a "loan origination fee" in the amount of

$46,600.00 which was drastically disproportionate in relation to services provided upon

the subject loan; and in violation of the dictates imposed by New York State Banking

Law Section 589. Defendant Royal violated regulations imposed by the Real Estate

Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et seq, by acting as a

"closing or settlement agent" on the subject loan, whose services included distribution

of loan proceeds and escrowing of loan funds, in which capacity defendant Royal was

not legally permitted to act. Defendant Royal, in acting as a "closing or settlement

agent" also violated Sections 484 and 495 of the New York State Judiciary Law, in

that said defendant undertook procedures in connection with the closing of the subject

loan, including the distribution of loan proceeds and escrowing of loan funds, which

are required to be performed by an attorney, as well as a party independent of the "lender"

to the loan. Defendant Royal, despite not being legally empowered in New York State

to serve as a "closing agent" and/or "settlement agent" on the subject loan,  assessed

fees for "closing services", which are clearly unreasonable and nonbonafide.  The

conduct engaged in by defendants Castle Point, Gearin and Royal, in connection with the

origination, processing and consummation of the subject loan were materially misleading,

knowingly deceptive, and unlawful, and as such, constituted violations of the New York

State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York

State General Business Law; and further, defendants' conduct with respect to the creation

of the subject mortgage loan involved several fraudulent misrepresentations made to

plaintiff, as well as concealment from the plaintiff of material facts relating to the subject

loan transaction. Defendant GMAC, as an alleged assignee of the mortgage loan rendered by

defendant Castle Point, assumes liability for all Truth In Lending Disclosure violations herein

set forth, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and

Regulation Z § 226.19.


## STATUTORY AND REGULATORY FRAMEWORK


17.   This case arises under the Truth in Lending Act, as dictated by 15 U.S.C. §

1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R. § 226, which

implements the act; New York State General Business Law Section 349, also known

as the New York State Deceptive Acts and Practices Statute; New York State Banking

Law Section 589; The Real Estate Settlement Procedures Act, commonly known as

RESPA, as set forth by 12 U.S.C. § 2601 et seq; and Sections 484 and 495 of the New

York State Judiciary law.

18.   The Truth In Lending Act provides relief to a borrower, in the form of

monetary damages and rescission, by reason of a lender's failure to accurately disclose

a variety of financing information.  The statute also provides such relief to a borrower

should a lender fail to comply with mandated rescission/cancellations procedures, as

set forth by Regulation Z.

19.   New York State General Business Law Section 349, also known as the New

York State Deceptive Acts and Practices Statute, prohibits deceptive acts or practices in the conduct of any business, trade or commerce, or in the provision of any service; and provides, *inter alia*, for money damages, injunctive relief, and attorney fees for its violation.

20.   New York Banking Law Section 589 , by its language, is designed to "ensure that the mortgage lending industry is operating fairly, honestly and efficiently, as well as free from deceptive and anti-competitive language". This statute protects consumers, in that it seeks to enforce reasonable standards governing the actions and conduct of mortgage lenders and their agents.

21.   The Real Estate Settlement Procedures Act is a consumer protection statute that requires that borrowers receive disclosures at various times. The statute applies to all loans secured with a mortgage placed on a 1-4 family residential property, which includes refinances.

22.   The New York State Judiciary law sets forth the manner in which legal services are to be performed on behalf of either an individual or corporation; and who is empowered to perform such legal services.

## STATEMENT OF FACTS

23.   In or about December of 2006, plaintiff Vera N. Ngwa was "cold called" and solicited (by telephone) by defendant Gearin, on behalf of defendant Castle Point,

to refinance an existing mortgage held originally by Option One Mortgage Corporation,

with a then existent balance of $986,779.27. This mortgage was secured by plaintiff's

residential property located at 10 West 123rd Street, New York, New York. The mortgage

had resulted from a $910,000.00 mortgage loan issued to the plaintiff by Option One

Mortgage Corporation on or about July 5, 2005. Plaintiff was in default on this loan at the

time of said defendants' solicitation; and was herself a named defendant in a foreclosure

action as a result of her default.

24. The payment obligations imposed by the mortgage originally held by Option

One Mortgage Corporation required a monthly payment from the plaintiff in the amount

of approximately $6,035.00. The underlying loan issued by Option One Mortgage

Corporation consisted of an adjustable rate loan, with an initial fixed interest rate of 6.800%

over the first two years of the loan. In August of 2007, the adjustable rate trigger on this

loan went into effect; with the applicable interest rate at that time not being permitted to be

greater than 9.800%; or less than 6.800 %. This interest rate was in effect at the time

of the initial solicitation of plaintiff by defendant Gearin, on behalf of defendant Castle

Point.

25. At the time of said solicitation by defendants Castle Point and/or Gearin,

plaintiff Vera N. Ngwa was the sole individual on the deed to plaintiff's residential

premises located at 10 West 123rd Street, New York, New York. Plaintiff was also the

sole individual named as a "borrower", in connection with the mortgage held by Option

One Mortgage Corporation at that time.

26. During the initial communication between plaintiff and defendant Gearin,

plaintiff was advised by defendant Gearin that she could obtain a refinance mortgage

loan from defendant Castle Point, for "just over one million dollars" which would consist

of a loan with a "lower rate of interest" than that which existed on plaintiff's current

mortgage; with resultant "lower" monthly mortgage payments than what was imposed by

plaintiff's current mortgage.

27.   During her initial conversation with defendant Gearin, plaintiff informed

said defendant as to her current income status.  Defendant Gearin informed plaintiff

at that time that plaintiff's current income qualified her for a refinance loan, to be issued

by defendant Castle Point, with resultant payment terms which were more favorable than

what was imposed by her current mortgage.

28.   Plaintiff was further advised by defendant Gearin during their initial

conversation, that the proposed refinance loan would result in satisfaction of plaintiff's

existent mortgage balance; and would also result in "significant cash out" for plaintiff's

"benefit".

29.   Defendant Gearin also advised plaintiff at that time that the proposed

refinance loan was "the only way" that plaintiff would be able to "save her home".

30.   Based upon the representations made by defendant Gearin, on behalf of

defendant Castle Point, plaintiff decided to pursue a refinancing of her existent

mortgage with defendant Castle Point.

31.  In or about late December of 2006, plaintiff provided defendants Castle Point

and Gearin with relevant income information, including a 2006 W2 earnings statement,

as well as tax return related documents  for the preceding two years.

32.  In or about late December of 2006, plaintiff executed tax income/income record authorizations with defendants Castle Point and Gearin, which allowed defendants to obtain relevant income information from Internal Revenue Service, as well as related tax authorities.

33.  On or about December 29, 2006, plaintiff was provided with correspondence from defendant Gearin, on behalf of defendant Castle Point, which referenced attached documents which constituted" initial disclosure" by defendant Castle Point concerning the proposed refinance loan.  Many of these documents contained defendant Gearin's signature.

34.  The "initial disclosure" exchanged by defendant Gearin, on behalf of defendant Castle Point, indicated that the subject refinance loan was to consist of a loan principal balance of $1,135.000.  This disclosure also indicated that the subject loan would be an adjustable rate transaction, to be secured by plaintiff's residential premises located at 10 West 123rd Street, New York, New York.

35.  That nowhere within said "initial disclosure" was there any reference made to the "Annual Percentage" Rate assessable against the subject refinance loan.

36.  That nowhere within said "initial disclosure" was there any reference made to the "Finance Charge" assessable against the subject refinance loan.

37.  That nowhere within said "initial disclosure" was there any reference made to the "Amount Financed" concerning  the subject refinance loan.

38.  That nowhere within said "initial disclosure" was there any reference made to the "Total of Payments" assessable against the subject refinance loan.

39.   That nowhere within said "initial disclosure" was there any reference made to the "Total Number of Payments" assessable against the subject refinance loan.

40.   That said "initial disclosure" did not contain a "Truth in Lending Statement", as mandated by the Truth In Lending Act.

41.   That no attempts were made by defendants Gearin and/or Castle Point to explain the contents of any of the documents comprising said "initial disclosure" prepared by defendant Castle Point.

42.   Shortly following plaintiff's receipt of said "initial disclosure, defendant Gearin telephoned plaintiff and advised her that plaintiff should execute the enclosed documents and return them to defendants Castle Point and Gearin, as such documents were necessary to enable plaintiff to "close" on the proposed loan.  No attempts were made at that time by defendants Gearin and/or Castle Point to explain the contents of any of the documents comprising said "initial disclosure" prepared by defendant Castle Point.

43.   During said telephone conversation between plaintiff and defendant Gearin following said defendants' forwarding of said "initial disclosure" to plaintiff, defendant Gearin reiterated to plaintiff that  the subject refinance loan was a "good deal" with terms as favorable as plaintiff could get; and which would consist of the "only way" in which plaintiff could "save" her home.  Plaintiff was also told by defendant Gearin at that time that the subject refinance loan would result in monthly payments which plaintiff could "easily" afford; and that if plaintiff remained current on said loan for one year, she would "qualify" for a refinance loan with even more favorable monthly loan payment

terms.

44.   Pursuant to said representations made to plaintiff by defendants Castle

Point and/or Gearin, the plaintiff, Vera N. Ngwa, agreed to proceed on the proposed

mortgage refinancing.

45.   In or about early January of 2007, plaintiff executed an authorization which

enabled defendant Royal Settlement Services, Inc. (hereinafter referred to as defendant

Royal) to obtain relevant income information from Internal Revenue Service, as well

as well as related tax authorities.  Plaintiff facsimiled her execution of these documents

to defendant Royal, on or about January 8, 2007.

46.   Defendants Gearin and Castle Point scheduled plaintiff for a "closing" of

the subject refinance loan transaction, to be held on January 25, 2007.

47.   The "closing" of the subject refinance transaction was scheduled to be

held at plaintiff's residential premises located at 10 West 123rd Street, New York, New

York.

48.   Plaintiff was advised by defendant Gearin, one behalf of defendant Castle

Point, that it was not necessary for her to be represented by an attorney in connection with

said "closing".

49.   At no time prior to the date of "closing" and/or consummation of the subject

transaction (January 25, 2007) was the plaintiff ever presented with any Truth In Lending

Statement and/or Truth In Lending information, as mandated by the Truth In Lending Act,

including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and

Regulation Z § 226.19.

50.   At no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) was the plaintiff ever presented with any information and/or terms concerning the subject loan's: **(i)** "Annual Percentage Rate"; **(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments" and/or **(v)** "Total number of Payments", as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

51.   The "closing" of the subject loan transaction held on January 25, 2007, at plaintiff's residence consisted of plaintiff being presented with numerous documents for her execution, by a representative of defendant Royal, whose sole purpose was to notarize said documents.

52.   The representative sent by defendant Royal to attend said "closing" possessed no knowledge of the contents of any of the document provided to plaintiff; or any of the information contained therein.  When plaintiff attempted to ask said representative about the information contained within said documents, plaintiff was advised by said representative that he was unaware as to any specific information concerning the loan.

53.   The documents which were provided to plaintiff Vera N. Ngwa, at the time of "closing" of the subject mortgage loan, included the following: **(i)** Document entitled "MORTGAGE" (with a document annexed thereto entitled "ADJUSTABLE RATE  RIDER"), dated January 25, 2007; **(ii)** "Document entitled "ADJUSTABLE RATE NOTE", dated January 25, 2007; **(iii)** Document entitled "SETTLEMENT STATEMENT" (also entitled "U.S. Department of Housing and Urban Development Statement", and hereinafter referred to as "the HUD Statement"), evidencing the "Settlement Date" of the

subject loan transaction as January 25, 2007;  **(iv)** Document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT, dated January 25, 2007; **(v)** Document entitled "UNIFORM RESIDENTIAL LOAN APPLICATION", dated January 25, 2007.

54.   The document entitled "MORTGAGE" described plaintiff Vera N. Ngwa as the "Borrower" to the subject loan.  This document also referred to defendant Castle Point as the "Lender" to the loan.

55.   The document entitled "MORTGAGE" evidenced the subject mortgage loan to be issued by defendant Castle Point to plaintiff as consisting of a principal loan balance of $1,165,000.00, "plus interest and other amounts that may be payable".

56.   The document entitled "MORTGAGE" also made reference to the "note signed by Borrower and dated January 25, 2007"

57.   The document entitled "ADJUSTABLE RATE NOTE" stated that in return for the loan that plaintiff was receiving from defendant Castle Point, plaintiff promised to pay $1,165,000.00 as "principal", "plus interest to the order of Lender".  This document referenced defendant Castle Point as the "Lender".

58.   The document entitled "ADJUSTABLE RATE NOTE" stated that pursuant to the terms of the subject mortgage loan: "Interest will be charged on unpaid principal until the full amount of Principal has been paid".  Plaintiff was obligated to pay interest on the subject loan at a yearly rate of 11.875 %.  This interest rate was subject to change, pursuant to "Section 4 of this Note."

59.   The document entitled "ADJUSTABLE RATE NOTE" also set forth  plaintiff's initial monthly payments as $11,871.36.  The document added that such a payment amount

"may change".

60.   The document entitled "ADJUSTABLE RATE NOTE" stated that the interest rate which plaintiff was obligated to pay "may change on the first date of February, 2012, and on that day every 6th month thereafter".  Each date on which plaintiff's interest rate could change was described as a "Change Date".

61.   The document entitled "ADJUSTABLE RATE NOTE" stated that beginning with the first "Change Date", plaintiff's interest rate would be based on an "Index".  The "Index" would be "the average of interbank offered rates for six month U.S. Dollar-denominated deposits in the London market ("LIBOR") as published in the Wall Street Journal.

62.   The document entitled "ADJUSTABLE RATE NOTE" stated that the most recent Index figure available as of the first business day of the month immediately preceding the month in which the "Change Date" occurs would be called the "Current Index".

63.   The document entitled "ADJUSTABLE RATE NOTE" further contained the following language: "Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 500/1000 percentage points (6.500 0%) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date".

64.   The document entitled "ADJUSTABLE RATE NOTE" stated that the interest rate that plaintiff would be "required to pay at the first Change Date will not be greater than

17.875% or less than 6.500%".  Plaintiff's interest rate thereafter "will "never be increased
or decreased on any single Change Date by more than TWO AND 000/100 percentage
points (2.000 %) from the rate of interest" plaintiff would have been paying for the
preceding 6 months.".

65.  The document entitled "ADJUSTABLE RATE NOTE" stated that plaintff's
interest rate would "never be greater than 17.875%".

66.  The document entitled "ADJUSTABLE RATE RIDER", annexed to the
document entitled "Mortgage", stated that plaintiff's interest rate on the subject mortgage
loan "provides for an initial interest rate of 11.875%.  This document further stated that
plaintiff's interest rate "may change on the first date of February, 2012, and on that day
every 6th month thereafter."

67.  The document entitled "ADJUSTABLE RATE RIDER" stated that each date
on which plaintiff's interest rate could change would be referred to as a "Change Date".
Beginning with the first "Change Date", plaintiffs' interest rate would be based on an
"index".  The document described the "index" as "the average of interbank offered rates
for  six month U.S. dollar denominated deposits in the London market ("LIBOR"), as
published in The Wall Street Journal.  The most recent Index figure available as of the
first business day of the month immediately preceding the month in which the Change
Date occurs is called the "Current Index."

68.  The document entitled "ADJUSTABLE RATE RIDER" stated to plaintiff
that "Before each Change Date, the Note Holder will calculate my new interest rate by
adding  SIX AND 500/1000 percentage points (6.500%) to the Current Index.   The Note

Holder will then round the result of this addition to the nearest one-eighth of one

percentage point (.125%).  Subject to the limits stated in Section 4(D) below, this

rounded amount will be my new interest rate until the next Change Date"

      69.   The document entitled "ADJUSTABLE RATE RIDER" stated that the

interest  rate that plaintiff would be "required to pay at the first Change Date will not be

greater than 17.875% or less than 6.500%".  Plaintiff's interest rate thereafter "will "never

be increased or decreased on any single Change Date by more than TWO AND 000/1000

percentage  points (2.000%)" from the rate of interest plaintiff would be paying "for the

preceding 6 months".

      70.   The document entitled "ADJUSTABLE RATE RIDER" stated that plaintiff's

interest rate would "never be greater than 17.875%".

      71.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE

STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", "stated that

the "**ANNUAL PERCENTAGE RATE**" of the subject mortgage loan (described as

"The cost of your credit at a yearly rate") was 12.457%.

      72.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE

STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated

that the **"FINANCE CHARGE"** of the subject mortgage loan (described as "The dollar

amount the credit will cost you") was $3,157,887.08.

      73.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE

STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated that

the "**Amount Financed**" on the subject mortgage loan (described as "The amount of credit

provided to you or on your behalf") was $1,115,801.95.

74.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", stated that the "Total of Payments" of the subject mortgage loan (described as "The amount you will have paid after you have made all payments as scheduled") was $4,273,689.03.

75.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", set forth a "payment schedule". This schedule reflected that the first 359 months, payments would involve monthly amounts of $11,871.36. The next payment would involve a monthly amounts of $11,870.79.

76.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT", provided to plaintiff Vera N. Ngwa on the date of "closing", contained the language: "Your loan contains a Variable Rate Feature. Disclosures about the Variable Rate Feature have been provided to you earlier".

77.   The document entitled "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT" stated that plaintiff would be giving a security interest in real property located at 10 West 123rd Street, New York, New York 10027.

78.   The HUD Statement received by plaintiff on the date of "closing" of the subject loan transaction described plaintiff as the "Borrower" to the subject loan; and defendant Castle Point as the "Lender".

79.   The HUD Statement indentified the "Settlement Agent" to the subject loan as defendant Royal.

80.   The HUD Statement set forth various charges assessable against the loan, enumerated as "settlement charges", which  included the following: **(i)** "Loan Origination Fee" to defendant Castle Point, in the amount of $46,600.00; **(ii)** "Application Fee" to defendant Castle Point, in the amount of $595.00; **(iii)** "Processing Fee" to defendant Castle Point, in the amount of $795.00;  **(iv)** "Settlement or closing fee" to defendant Royal, in the amount of $375.00; **(v)** "Title examination" fee to defendant Royal, in the amount of $350.00; **(vi)** Title Insurance to defendant Royal (enumerated as "RSS/Stewart Title"), in the amount of $3,153.00.

81.   The documents received by plaintiff on the date of "closing" of the subject transaction did  not reflect that plaintiff received a reduced premium reissuance rate on the title insurance she received in connection with the subject loan transaction, payable by the plaintiff from the proceeds of the subject mortgage loan.

82.   Plaintiff was not provided with any explanation or disclosure from defendants New Castle, Guerin and/or Royal explaining why she did not receive a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject mortgage loan, despite having received indication that she would be receiving such a reduction, pursuant to documents previously forwarded to her as part of the "initial disclosure" exchanged by defendants Castle Point and Gearin on or about December 29, 2006.

83.   The HUD Statement further reflected that the "Total Settlement Charges" assessed in connection with the subject loan transaction amounted to a figure of $83,131.40.  These funds were paid by the plaintiff from the proceeds of the subject loan issued by defendant Castle Point.

84.  The HUD Statement reflected a "Disbursement" to "STEVEN J. BAUM", representing a "FORECLOSURE PAYOFF" in the amount of $986,779.27. This amount was paid by the plaintiff from the proceeds of the subject loan issued by defendant Castle Point.

85.  The HUD Statement evidenced the following terms: "Loan Amount": $1,165,000.00; "Total Settlement Charges": $83,131.40; and "Total Disbursements to Others": $1,008,265.27.

86.  Defendant Royal was also paid a fee of $375.00 for "settlement" and/or "closing" services, despite not being legally authorized or qualified to assess such a fee, as said services are required to be performed by an attorney, pursuant to the Real Estate Settlement Procedures Act; as well as by reason of "closing", "settlement" and/or "escrow" services which are necessarily performed by any individual or entity functioning in such capacity, pursuant to the Judiciary law of New York State.

87.  Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing" services, despite not having an attorney to effectuate such services either within its employ and/or assigned to the subject transaction.

88.  Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing" services, despite not producing an individual for said "closing" who was capable of reviewing the information contained within those documents provided to the plaintiff for her execution.

89.  Defendant Royal also acted in the capacity of a "settlement agent" on the subject loan, involving a lender whose principals are defendant Royal's majority

owners.

90. The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, was prepared by defendant Gearin.

91. The document entitled "Uniform Residential Loan Application" provided to plaintiff Vera N. Ngwa on the date of closing, reflected that the subject loan transaction involved a loan "Amount" of $1,165,000.00; with an "Interest Rate" of 11.875.00; over a period of "360 months", with the subject loan consisting of an "ARM" loan.

92. The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, reflected that plaintiff earned a monthly "Base Employment Income" of $30,000.00.

93. The document entitled "Uniform Residential Loan Application", provided to plaintiff Vera N. Ngwa on the date of closing, reflected that plaintiff earned a "Gross Monthly Income" of $30,000.00, resulting from her monthly "Base Employment Income".

94. The income information contained within said document entitled "Uniform Residential Loan Application" was entirely contrary to plaintiff's existing income information previously by the plaintiff to defendants Castle Point and Guerin.

95. At no time prior to the date of "closing" of the date of the subject loan did plaintiff represent to defendants Castle Point and/or Gearin that plaintiff earned a gross monthly income of $30,000.00; as plaintiff was earning significantly less at that time.

96. At no time did plaintiff knowingly represent to defendants Castle Point and/ or Gearin that plaintiff earned a gross monthly income of $30,000, as plaintiff has never earned such a monthly amount.

97.  Plaintiff had never represented, either verbally or by written disclosure, to any of the defendants that her base employment monthly income was $30,000.00; as said income figure was entirely contrary to the income information previously provided to defendants Castle Point and/or Guerin.

98.  Defendants Castle Point and/or Gearin wrongfully and fraudulently inflated plaintiff's income as a means to justify their qualification of plaintiff for the subject mortgage refinance loan subsequently issued by defendant Castle Point.

99.  Defendants Castle Point, Gearin and/or Royal completely failed to acknowledge and/or process said earnings/tax return/record documents provided to them by the plaintiff which enabled defendants to verify plaintiff's actual income information.

100.  Defendants Castle Point, Gearin and/or Royal failed to process said W-9 and 4506 forms previously executed by plaintiff; and failed to undertake any measures to verify the income information provided by the plaintiff.

101.  Documents exchanged upon plaintiff at the "closing of the subject loan transaction evidenced the monthly mortgage payments as approximating $11,900.00 per month, almost double that from the monthly payment obligation imposed by the prior mortgage and note held by Option One Mortgage Corporation.

102.  The monthly payment obligation imposed by the subject refinance loan consisted of an amount which even exceeded the average monthly income derived by plaintiff at that time, as set forth by the income information provided to defendants Castle Point, Gearin and/or Royal by plaintiff.

103.  Defendants Castle Point and/or Gearin inflated plaintiff's income information

within the document entitled "Uniform Residential Loan Application", as a means of

justifying the resultant refinance loan issued by defendant Castle Point, which involved

monthly payment obligations that were almost double that of the prior mortgage, upon

which defendants knew that plaintiff had defaulted upon; and upon which plaintiff had

fallen into foreclosure.

104.   That at no time prior to the date of "closing" and/or consummation of the

subject loan transaction (January 25, 2007) did plaintiff ever receive disclosure establishing

the amount and/or "principal balance" of the loan, as consisting of $1,165,000.00.

105.   That the initial disclosure received by plaintiff from defendants,

dated December 29, 2006, evidenced the subject loan amount as $1,135,000.00.

106.   That in failing to disclose the proper amount and/or "principal balance" of

the subject loan prior to the date of "closing" and/or consummation of the subject loan

transaction (January 25,2007) to the plaintiff, defendant Castle Point violated the Truth In

Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18

and Regulation Z § 226.19.


### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST THE DEFENDANTS, CASTLE POINT
### MORTGAGE, INC. AND GMAC MORTGAGE, LLC


107.   In the course of the consumer credit transaction between defendant Castle

Point and plaintiff herein, defendant Castle Point violated numerous provisions of the Truth In Lending Act and Regulation Z, including the applicable disclosure requirements set forth by the statute.

108. That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any Truth In Lending Statement and/or Truth In Lending information, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

109. That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Annual Percentage Rate" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

110. That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa, with any information concerning the "Finance Charge" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

111. That at no time prior to the date of "closing" and/or consummation of the

subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Amount Financed" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

112.    That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Total of Payments" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

113.    That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with any information concerning the "Total Number of Payments" applicable to the subject loan, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

114.    That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Annual Percentage Rate" figure set forth in the "Truth In Lending Statement" exchanged upon

plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or

consummation of the subject refinance loan transaction, as mandated by the Truth In

Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18

and Regulation Z § 226.19.

     115.   That at no time prior to the date of "closing" and/or consummation

of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents,

servants, employees and/or representatives of defendant Castle Point, provide plaintiff

Vera N. Ngwa with information which approximated and/or accurately reflected the

"Finance Charge" figure set forth in the "Truth In Lending Statement" exchanged upon

plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or

consummation of the subject refinance loan transaction, as mandated by the Truth In

Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18

and Regulation Z § 226.19.

     116.   That at no time prior to the date of "closing" and/or consummation of the

subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants,

employees and/or representatives of defendant Castle Point, provide plaintiff Vera N.

Ngwa with information which approximated and/or accurately reflected the "Amount

Financed" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff

by defendants Castle Point and/or Royal on said date of "closing" and/or consummation

of the subject refinance loan transaction, as mandated by the Truth In Lending Act,

including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18

and Regulation Z § 226.19.

117.    That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Total of Payments" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

118.    That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N. Ngwa with information which approximated and/or accurately reflected the "Total Number of Payments" figure set forth in the "Truth In Lending Statement" exchanged upon plaintiff by defendants Castle Point and/or Royal on said date of "closing" and/or consummation of the subject refinance loan transaction, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19.

119.    That at no time prior to the date of "closing" and/or consummation of the subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants, employees and/or representatives of defendant Castle Point, provide plaintiff Vera N.

Ngwa with information which approximated and/or accurately reflected the "Total

Number of Payments" figure set forth in the "Truth In Lending Statement" exchanged

upon plaintiff by defendants Castle Point and/or Royal on said date of "closing"

and/or consummation of the subject refinance loan transaction, as mandated by the Truth

In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z §

226.18 and Regulation Z § 226.19.

120.   That at no time prior to the date of "closing" and/or consummation of the

subject transaction (January 25, 2007) did defendant Castle Point, or any agents, servants,

employees and/or representatives of defendant Castle Point, provide plaintiff Vera N.

Ngwa with information which approximated and/or accurately reflected the amount

and/or principal balance of the subject loan, as set forth in various documents exchanged

upon the plaintiff on said date of "closing" and/or consummation of the subject refinance

loan transaction (including said document entitled "Mortgage"), as mandated by the

Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z §

226.18 and Regulation Z § 226.19.

121.   That by reason of defendant Castle Point's refusal and/or failure to provide

mandated Truth In Lending Disclosure prior to the date of "closing" and/or consummation

of the subject mortgage loan transaction (January 25, 2007) , as mandated by the Federal

Truth In Lending Act, plaintiff Vera N. Ngwa makes claim, pursuant to U.S.C. § 1635, for

the following relief: **(i)** rescission/cancellation of the subject mortgage loan/and/or rescission

of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises

created for defendant Castle Point Mortgage, Inc. and thereafter assigned to defendant ,

GMAC Mortgage, LLC, under this transaction; **(iiii)** Return of any money or property given

by the plaintiff to any party, in connection with the subject mortgage loan; **(iv)** judicial

enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject

mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of

this action, and permanently thereafter, from instituting, prosecuting, or maintaining

foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds

or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive

plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee,

as well as the costs of this action, pursuant to 15 U.S.C. § 1640(a).


## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC. AND GMAC MORTGAGE, LLC


122.   That the plaintiff repeats and realleges each and every allegation set forth

in Paragraphs "1" through "120", as if fully set forth herein.

123.   That by reason of the refusal and/or failure of defendant Castle Point, as

well as said defendant's agents, servants, employees and/or representatives, to provide

disclosure to the plaintiff, Vera N. Ngwa, prior to the date of "closing" and/or

consummation of the subject mortgage loan transaction (January 25, 2007), consisting of

information concerning and/or which approximated and/or accurately reflected the material

terms of the subject refinance loan, including the loan's "Annual Percentage Rate";

"Finance Charge"; "Amount Financed"; "Total of Payments" and/or "Total Number of

Payments", as well as information concerning the amount and/or principal balance of the

subject loan, as mandated by the Federal Truth In Lending Act, the plaintiff, Vera N. Ngwa,

makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC,

for actual monetary damages, pursuant to 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an

amount to be determined at trial; and, for statutory monetary damages, pursuant to

15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an amount not to exceed TWO THOUSAND

and XX/100 ($2,000,00) DOLLARS for each and every Federal Truth In Lending violation

enumerated herein; and a reasonable attorney fee, as well as the costs of this action, pursuant

to 15 U.S.C. § 1640(a).


## AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC., HEATHER GEARIN AND ROYAL SETTLEMENT SERVICES, INC.

124.   That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "120"; and "122", as if fully set forth herein

125.   The actions taken by defendants Castle Point, Gearin and/or Royal, in

connection with the processing of the subject mortgage loan were known by said

defendants to likely mislead the plaintiff, who was acting reasonably under the

circumstances then and there existing, in that the misrepresentations made by defendants

Castle Point and/or Gearin to plaintiff prior to the date of "closing" of the subject

transaction concerning plaintiff's supposed ability to afford the monthly mortgage

payment imposed by the subject loan were knowingly false; as defendants Castle Point

and/or Gearin thereafter intentionally inflated plaintiff's income within the document

entitled "Uniform Residential Loan Application" as a means to justify qualifying plaintiff

for a loan which defendants knew, or should have known, she could not remain current

upon. Defendants Castle Point and/or Gearin also knowingly failed to provide plaintiff

with accurate information concerning the material terms of the subject loan prior to the

date of "closing" of said transaction, including the loan's: **(i)** "Annual Percentage Rate";

**(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments"; and,

**(v)** "Number of Payments"; as well as the amount and/or principal balance of the loan.

Defendants knowingly failed to provide such information as a means to conceal from

plaintiff the detrimental nature of the subject loan transaction; while also preventing

plaintiff from being able to compare the terms of the subject loan transaction with other

borrowing opportunities available to plaintiff at that time. These actions taken by

defendants Castle Point and/or Gearin were knowingly deceptive, and unlawful; and as

such, constituted violations of the New York State Deceptive Acts and Practices Statute,

as codified by Section 349 of the New York State General Business Law.

    126. Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff

prior to the date of closing of the subject loan transaction that the subject refinance loan

would involve lower monthly mortgage payments than what was set forth by plaintiff's

existent mortgage at that time; and that plaintiff's income would enable her to afford the

monthly payment obligations imposed by the subject refinance loan transaction.
Defendants made such misrepresentations to plaintiff while fully knowing that plaintiff's
actual income status would not enable her to remain current on the subject refinance loan.

127.  As defendants Castle Point and Gearin knew that plaintiff's actual income
status at that time would not enable her to remain current on the subject loan, said
defendants knowingly inflated plaintiff's income within said document entitled "Uniform
Residential Loan Application"; by wrongfully and knowingly falsely imputing a monthly
gross income figure for the plaintiff, in the amount of $30,000.00, which defendants Castle
Point and/or Gearin knew was inaccurate; and which was entirely contrary to the income
information provided said defendants by the plaintiff, which allowed for verification of
plaintiff's proper monthly income.

128.  Defendants Castle Point and/or Gearin had knowingly significantly inflated
plaintiff's income within the "Uniform Residential Loan Application" as a means to
justify their qualification of plaintiff for the subject loan, as plaintiff's actual income status
at that time would not have been sufficient to otherwise enable plaintiff to qualify for the
subject refinance loan.

129.  Prior to the date of "closing" of the subject refinance loan transaction,
defendants Castle Point and/or Gearin further enticed plaintiff to proceed with the loan, by
verbally informing plaintiff, on multiple occasions, that she could thereafter qualify for an
additional refinancing with even more favorable loan terms, by remaining current on the
subject refinance loan for a period of approximately one year.  Defendants Castle Point
and/or Gearin knew this to be untrue, as said defendants were entirely aware that plaintiff's

income status would not allow her to remain current on the subject loan. Defendants
knowingly made said misrepresentations to plaintiff for the purpose of preventing
plaintiff from learning and/or realizing that the subject loan transaction was of no actual
benefit to her and/or detrimental to plaintiff; and to dissuade plaintiff from exploring other
loan opportunities available to plaintiff at that time.

130. Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff,
prior to the date of "closing" of the subject transaction, that plaintiff's income would
enable her to remain current on the monthly payment obligations imposed by the loan;
when defendants were fully aware that plaintiff was already in foreclosure in connection
with a mortgage which involved payment obligations which were significantly less than
that imposed by the subject loan transaction.

131. Defendants Castle Point and/or Gearin knowingly refused to provide plaintiff
with information concerning the monthly mortgage payment obligations imposed by the
subject refinance loan, at any time prior to the date of "closing" of said transaction.
Defendants acted to conceal such information because they knew that plaintiff would
eventually default on the payment obligations required by the subject refinance mortgage.

132. Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff,
prior to the date of "closing" of the subject transaction, that the subject loan involved the
most favorable payment terms which plaintiff could receive at that time, given her then
existent credit and asset status; and that the subject loan was the only means available for
plaintiff to "save" her home from foreclosure. Defendants Castle Point and/or Gearin
knowingly misrepresented this fact to plaintiff for the purpose of preventing plaintiff from

learning and/or realizing that the subject loan transaction was actually of no benefit to her; and/or detrimental to plaintiff; while also serving to dissuade plaintiff from exploring other loan opportunities available to her at that time.

133.  Defendants Castle Point and/or Gearin knowingly failed to provide plaintiff with required Truth In Lending Disclosure prior to the date of "closing" of the subject mortgage loan, as mandated by the Truth In Lending Act, for the purpose of preventing plaintiff from learning and/or realizing that the subject loan transaction was actually of no benefit to her; and/or detrimental to plaintiff; while also serving to dissuade plaintiff from exploring other loan opportunities available to her at that time.

134.  Defendants Castle Point and/or Gearin knowingly acted improperly and deceptively, in discouraging plaintiff from retaining an attorney to represent her in connection with the "closing" of the subject transaction; when defendants knew that plaintiff would not be able to fully understand the contents of the documents provided to plaintiff at said proceeding; and when said defendants knew that said "closing" involved plaintiff meeting a representative from defendant Royal, who possessed no knowledge or information concerning the contents of the documents provided to plaintiff.  Defendants Castle Point and/or Gearin acted in such manner so as to prevent the plaintiff from learning and/or realizing that the subject loan transaction was actually of no benefit to her and/or detrimental to plaintiff; while also serving to dissuade plaintiff from exploring other loan opportunities available to her at that time.

135.  Defendants Castle Point, Gearin and/or Royal knowingly acted improperly, and deceptively, in producing a representative to meet with plaintiff at her home, in

connection with said "closing", whose sole purpose was to notarize documents executed and signed by the plaintiff; and who possessed no knowledge or information as to the contents of the documents contained therein. Defendant Royal, as "closing agent" and/or "settlement agent", acted wrongfully in refusing to produce an individual for said "closing" who possessed no knowledge as to the contents of said documents; and who could not provide explanation as to the information contained in those documents presented to the plaintiff. Defendants acted in such a manner so as to prevent the plaintiff from learning and/or realizing that the subject loan transaction was actually of no benefit to her and/or detrimental to plaintiff; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

136.    Defendants Castle Point and Royal also knowingly acted improperly and deceptively, in having defendant Royal serve as a "settlement agent" and/or "closing agent" on a loan transaction involving a lender, when both defendant Castle Point and/or Royal are operated and/or owned by the same individuals.

137.    Defendants Castle Point and/or Royal failed to make clear to the plaintiff as to the inherent conflict imposed by related entities serving as a lender and " settlement agent/closing agent" on the subject mortgage loan transaction. Defendants acted in such manner so as to prevent plaintiff from learning and/or realizing that the subject loan transaction was actually of no benefit to her and/or detrimental to plaintiff; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

138.    Defendants Castle Point and/or Royal also knowingly and intentionally failed to provide plaintiff with any explanation or disclosure explaining why she did not receive

a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject refinance mortgage loan transaction, despite the subject transaction consisting of a refinance; and despite defendants being fully aware that plaintiff was entitled to such a reduced premium reissuance rate.

139. Defendants Castle Point and Royal also knowingly and intentionally failed to provide plaintiff with any explanation or disclosure explaining why she did not receive a reduced premium reissuance rate on the title insurance paid from the proceeds of the subject refinance mortgage loan transaction, despite the subject transaction consisting of a refinance; and despite defendants knowing that plaintiff was entitled to such a reduced premium reissuance rate. Defendants acted in such manner so as to prevent plaintiff from learning and/or realizing that the subject loan transaction was of no benefit to her and/or detrimental to plaintiff; and to dissuade plaintiff from exploring other loan opportunities available to her at that time.

140. Defendants Castle Point and/or Gearin knowingly misrepresented to plaintiff, prior to the date of "closing" of the subject loan transaction, that plaintiff would be receiving "significant cash out", which would be to plaintiff's "benefit". While plaintiff received $73,603.33 in cash funds on the date of "closing" of the subject transaction, such cash moneys were entirely negated by the monthly payment obligations imposed by the subject loan, with plaintiff's "initial" monthly payments on the subject loan amounting to $11,871.36. In refusing and/or failing to provide plaintiff with information concerning the monthly payment amounts dictated by the subject loan, defendants knowingly misrepresented to plaintiff that said "cash" to be received by plaintiff was to plaintiff's "benefit", as

defendants were entirely aware that said cash received by plaintiff would be entirely negated

by the payment obligations imposed upon the plaintiff by the subject loan.

141.   The actions undertaken by defendants Castle Point, Gearin and/or Royal,

in connection with their material concealment of facts relating to the subject loan, as well

as defendants' failure to provide plaintiff with mandated Truth In Lending Disclosure

prior to the date of the subject closing, were materially misleading and knowingly deceptive,

in that such actions were designed by said defendants to prevent plaintiff from learning and/

or realizing that the subject loan transaction was of no actual benefit to her and/or detrimental

to plaintiff; and to dissuade the plaintiff from canceling or rescinding the subject mortgage

transaction,  as well as to convince plaintiff to forego other loan opportunities available

to her at that time.

142.   That actions taken by defendants Castle Point, Guerin and/or Royal

involved conduct which said defendants knew were materially misleading and knowingly

deceptive, and as such, constituted a violation of the New York State Deceptive Acts and

Practices Statute, as codified by General Business Law Section 349.

143.   That actions taken by defendants Castle Point, Guerin and/or Royal

involved conduct which constituted a violation of the New York State Deceptive Acts

and Practices Statute, as codified by General Business Law Section 349, resulted in

defendant Castle Point stripping plaintiff of any and all of her equity remaining in her

premises, while also enabling defendants Castle Point, Gearin and/or Royal to receive

excessive and/or unwarranted fees in connection with their "services" rendered on the

subject transaction.

144.   That by reason of the knowingly deceptive and unlawful actions undertaken by defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., which were known by said defendants to likely mislead the plaintiff, who was acting reasonably under the circumstances then and there existing, the plaintiff, Vera N. Ngwa, makes claim against defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., for monetary damages, pursuant to the New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law; in an amount to be determined at trial; and a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC. AND GMAC MORTGAGE, LLC

145.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; and "124" through "143", as if fully set forth herein

146.   That by reason of said material misdisclosures, the plaintiff, Vera N. Ngwa, makes claim, pursuant to The New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law, for the following relief: **(i)** rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's

residential premises created for defendant Castle Point Mortgage, Inc., and thereafter

assigned to GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or

property given by the plaintiff to any party, in connection with the subject mortgage loan;

**(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received

from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC

during the pendency of this action, and permanently thereafter, from instituting,

prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises,

and from recording any deeds or mortgages concerning plaintiff's property, or from

otherwise taking any steps to deprive plaintiff of her ownership interest of that residential

premise; **(vi)** a reasonable attorney fee, pursuant to New York State General Business Law

Section 349(h).

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANT, CASTLE POINT MORTGAGE, INC.,

147.    That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "120"; "122"; "124" through "143"; and "145", as if fully set

forth herein.

148.    The "loan origination fee", in the amount of $46,600.00, payable to

defendant Castle Point, from the proceeds of the subject loan (from which defendant

Gearin received a "commission" fee),  was known by defendant Castle Point to be

excessive, in that it was drastically disproportionate to the services time and/or degree of

expertise rendered by defendants Castle Point and/or Gearin, as well as any agents, servants, employees and/or representatives of said defendants.

149. The "loan origination fee", in the amount of $46,600.00, payable to defendant Castle Point, from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee), was known by defendant Castle Point to be both excessive and to plaintiff's detriment; in that the said "loan origination fee" drastically reduced the amount of moneys which plaintiff received at consummation of the loan; and that said fees allowed for an inflated commission fee for defendant Gearin.

150. The "loan origination fee", in the amount of $46,600.00, payable to defendant Castle Point, from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee), was known by defendant Castle Point to be both excessive and to plaintiff's detriment; in that the said "loan origination fee" was rendered in connection with a mortgage loan transaction which defendant Castle Point knew was to plaintiff's detriment.

151. The "loan origination fee", in the amount of $46,600.00, payable to defendant Castle Point, from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee), was known by defendants Castle Point to be excessive, in that it was drastically disproportionate to the services time and/or degree of expertise rendered by defendants Castle Point and/or Gearin; and that it was assessed in connection with a mortgage loan transaction which defendant Castle Point knew was of no benefit to the plaintiff; and as such, constituted a violation of New York State Banking Law Section 589.

152.  Defendant Castle Point, in charging plaintiff with said mortgage "loan origination fee" payable by the plaintiff from the proceeds of the subject loan (from which defendant Gearin received a "commission" fee) , did not operate fairly, honestly and efficiently, and acted deceptively in assessing said fee for services rendered by defendants Castle Point and/or Gearin, in connection with the subject mortgage loan.

153.  Defendant Castle Point  also acted unfairly, dishonestly and inefficiently in assessing plaintiff with an additional "Application Fee" , in the amount of $595.00, and a "Processing Fee" in the amount of $795.00, which was payable to defendant Castle Point, by the plaintiff, from the proceeds of the subject loan, despite plaintiff  having already been assessed with said "loan origination fee" by defendant Castle Point in the amount of $46,600.00.

154.  That by reason of the unfair, dishonest and inefficient conduct perpetrated by defendant Castle Point Mortgage, Inc., in connection with services allegedly rendered by defendants Castle Point Mortgage, Inc. and Heather Gearin, the plaintiff, Vera N. Ngwa, makes claim for money damages, pursuant to Section 589 of the New York State Banking Law, against the defendant, Castle Point Mortgage, Inc., in an amount to be determined at trial; and a reasonable attorney fee, pursuant to the dictates of the New York State Banking Law.


**AS AND FOR A SIXTH CAUSE OF ACTION**
**AGAINST THE DEFENDANTS, CASTLE POINT**
**MORTGAGE,  INC., HEATHER GEARIN AND**
**ROYAL SETTLEMENT SERVICES, INC.**

155.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; and "147" through "153", as if fully set forth herein.

156.   The actions taken by defendants Castle Point, Gearin and Royal, in connection with the processing of the subject mortgage, as well as with respect to services rendered on the loan, were designed to mislead and induce the plaintiff into entering the subject refinance loan transaction; which said defendants knew was of no benefit to the plaintiff; and which defendants were the only parties to benefit, as the subject loan transaction resulted in defendant Castle Point stripping plaintiff of any and all equity remaining in her residential property; while defendants Castle Point, Gearin and Royal obtained fees for services which were clearly excessive and unwarranted.

157.   Defendants Castle Point and/or Gearin misrepresented to plaintiff, prior to the date of "closing" of the subject transaction, that plaintiff's income status would enable her to afford the subject refinance loan; and thereby enable plaintiff to "save" her home (with defendants knowing that plaintiff had already been in foreclosure at that time on her pending mortgage). Defendants Castle Point and/or Gearin knew that said representations were false, as defendants were fully aware that plaintiff's income status would not enable her to remain current on the monthly mortgage payments imposed by the loan; and which in turn prompted defendants, unbeknownst to plaintiff, to grossly inflate plaintiff's gross monthly income within defendants' generated loan application documents, so as to justify said defendants' qualification of plaintiff for a loan which said defendants

knew plaintiff could not remain current upon.

158.    The misrepresentations made by defendants Castle Point and/or Gearin to plaintiff, prior to the date of "closing" of the subject transaction, that plaintiff's income status would enable her to afford the subject refinance loan; and thereby enable plaintiff to "save" her home, was designed to induce the plaintiff into entering a loan transaction which was of no benefit to plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all equity remaining in her residential property, while also enabling defendant Gearin to obtain an excessive "commission" fee for services rendered on the subject transaction.

159.    Defendants Castle Point and/or Gearin also knowingly failed and/or refused to provide plaintiff with accurate information concerning the material terms of the subject loan prior to the date of "closing" of said transaction, including the loan's: **(i)** "Annual Percentage Rate"; **(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments"; and, **(v)** "Number of Payments"; as well as the principal balance and/or amount of the loan. Defendants Castle Point and/or Gearin knowingly failed to provide such information as a means to conceal from plaintiff the detrimental nature of the subject loan transaction; while also preventing plaintiff from being able to compare the terms of the subject loan transaction. These actions were taken to induce plaintiff into entering the subject loan transaction, which said defendants knew was of no benefit to the plaintiff.

160.    Defendants Castle Point and/or Gearin also knowingly failed and/or refused to provide plaintiff with accurate information concerning the material terms of the subject loan prior to the date of "closing" of said transaction, including the loan's: **(i)** "Annual

Percentage Rate"; **(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments"; and, **(v)** "Number of Payments"; as well as the principal balance and/or amount of the subject loan. Defendants Castle Point and/or Gearin knowingly failed to provide such information as a means to conceal from plaintiff the detrimental nature of the subject loan transaction; while also preventing plaintiff from being able to compare the terms of the subject loan transaction. These actions were taken to induce plaintiff into entering the subject loan transaction, which said defendants knew was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity held in her residential property, while also enabling defendant Gearin to obtain an excessive "commission" fee for services rendered on the subject transaction.

161.   Defendants Castle Point and/or Gearin knowingly intended to further entice plaintiff to proceed with the subject loan, prior to the date of "closing", by verbally informing plaintiff, on multiple occasions, that she could thereafter qualify for an additional refinancing with even more favorable loan terms, by remaining current on the subject refinance loan for a period of approximately one year. Defendants Castle Point and/or Gearin knew this to be untrue, as said defendants were entirely aware that plaintiff's income status would not allow her to remain current on the subject loan. Defendants knowingly made said misrepresentations to plaintiff for the purpose of inducing plaintiff into entering the subject loan transaction, which said defendants knew was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity in her residential property, while also enabling defendant Gearin to obtain an excessive "commission" fee for services rendered on the

subject transaction.

162.   Defendants Castle Point and/or Gearin knowingly concealed the monthly payment obligations on the subject loan at all times prior to the date of "closing" of the subject transaction, while verbally advising plaintiff that her income status "qualified" her for the subject loan, which in turn, would enable plaintiff to "save" her home.  Defendants were fully aware at all times prior to the date of "closing" that the monthly payment obligations imposed by the subject loan were almost double than what was dictated by plaintiff's existent mortgage, upon which plaintiff had already defaulted, and which had resulted in a commencement of a foreclosure action against the plaintiff.  Defendants made such representations to induce plaintiff into entering the subject loan transaction, which was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity in her residential property; while resulting in defendant Gearin obtaining an excessive "commission" fee for services rendered on the subject transaction.

163.   Defendants Castle Point and/or Gearin also knowingly misrepresented to plaintiff, at all times prior to the date of "closing" of the subject transaction, that plaintiff would be receiving "significant cash out" to her "benefit" as a result of the proceeds received from the refinance loan.  Defendants made this representation while concealing the amount of the monthly payments which plaintiff would be required to make on the resultant mortgage.  Defendants knowingly failed to reveal to plaintiff that the resultant mortgage would result in monthly payments which would be more than double what plaintiff had been paying previously, thereby negating any cash proceeds which plaintiff

would receive from the subject loan transaction. Defendants made such representations to induce plaintiff into entering the subject loan transaction, which was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity in her residential property; while resulting in defendant Gearin obtaining an excessive "commission" fee for services rendered on the subject transaction.

164. Defendants Castle Point and/or Gearin also knowingly misrepresented to plaintiff, at all times prior to the date of "closing" of the subject transaction, that the subject loan terms were the most favorable terms which plaintiff could receive at that time, given her then existent credit and asset status. Defendants made such misrepresentation at a time when they knew that plaintiff was facing the loss of her property through foreclosure. By making such misrepresentation, defendants were able to induce plaintiff into entering the subject loan transaction, which was of no benefit to the plaintiff; and which enabled defendant Castle Point to strip plaintiff of any and all remaining equity in her home; while resulting in defendant Gearin obtaining an excessive "commission" fee for services rendered on the subject transaction.

165. Defendants Castle Point and/or Gearin also misrepresented to plaintiff that it was not necessary for her to retain an attorney to represent her in connection with the "closing" of the subject transaction. Defendants made this representation, despite knowing that plaintiff would not fully understand the contents of the documents presented to her at "closing"; and that the representative appearing on behalf of defendant Royal (as "closing agent and/or "settlement agent to the loan) would not be able to provide explanation as to any information contained within the documents presented to the plaintiff. Defendants

Castle Point and/or Gearin discouraged plaintiff from retaining counsel to represent her on the subject matter; so as to prevent her from learning as to the detrimental nature of the loan. Plaintiff, in proceeding with the "closing" of the subject transaction, justifiably relied upon the prior representations made by defendants Castle Point and/or Gearin, concerning the subject loan; all of which were actually to plaintiff's detriment; and which enabled defendant Castle Point to strip plaintiff of any and all equity remaining in her home; while also enabling defendants Gearin and Royal to obtain excessive fees for services rendered.

166.    Defendants Castle Point, Gearin and/or Royal knowingly acted improperly, deceptively and fraudulently, in producing a representative to meet with plaintiff at her home, in connection with said "closing", whose sole purpose was to notarize documents executed and signed by the plaintiff; and who possessed no knowledge or information as to the contents of the documents contained therein.  Defendant Royal, as "closing agent" and/or "settlement agent", acted wrongfully in refusing to produce an individual with knowledge as to the contents of said documents; and who could provide explanation as to the purpose of those documents presented to the plaintiff.  Defendants acted in such manner so as to prevent the plaintiff from learning and/or realizing that the subject loan transaction was detrimental to her, thereby inducing plaintiff to proceed with the subject transaction, while enabling defendant Castle Point to strip plaintiff of any and all equity remaining in her home; while also enabling defendants Gearin and Royal to obtain excessive fees for services rendered.

167.    Defendants Castle Point and Gearin knew that the amount of moneys assessed for the "loan origination fee", in the amount of $46,600.00; and all "settlement

charges" enumerated within the HUD Statement, were excessive; and that the subject

loan ultimately failed to provide the plaintiff with any "net tangible benefit". As such,

defendants completely misrepresented to the plaintiff that the subject mortgage loan was

beneficial to her; while engaging in conduct which enabled defendant Castle Point to

strip plaintiff of any and all equity remaining in her residential property; while also

enabling defendant Royal to obtain excessive fees for services rendered.

168. All of the misrepresentations and concealment of material facts engaged in

by defendants Castle Point, Gearin and/or Royal, their agents, servants, employees and/or

representatives, were intended to deceive and defraud plaintiff, and/or prevent plaintiff

from discovering defendants' fraudulent misrepresentations and/or fraudulent scheme,

and plaintiff relied on these misrepresentations and concealment of material facts to

her detriment.

169. The fraudulent misrepresentations and fraudulent concealment of material

facts rendered by defendants Castle Point, Gearin and/or Royal, prevented plaintiff from

conducting meaningful exploration of more favorable loan opportunities available to her

both prior to and at the time of consummation of the subject mortgage loan.

170. Plaintiff, but for said defendants' fraudulent representations and fraudulent

concealment of material facts, would not have proceeded with the subject transaction,

upon which plaintiff has been unable to remain current upon; and which has resulted in

commencement of a foreclosure action by defendant GMAC, as assignee to the subject

loan from defendant Castle Point, thereby resulting in damage to plaintiff's credit; and

impairment of title to her real property.

171.   That by reason of the fraudulent misrepresentations and concealment of material facts rendered by defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., the plaintiff, Vera N. Ngwa, has sustained actual damages of at least ONE MILLION DOLLARS and XX/00 ($1,000,000.00) DOLLARS; wrongful impairment of title to their property; and damage to her credit in an amount not fully known or ascertainable.

172.   That plaintiff has suffered constant depression anxiety, loss of sleep and stress as a result of having been victimized by defendants' fraud.

173.   That upon information and belief, the plaintiff is entitled to compensatory damages in an amount to be determined by the trier of fact.

174.   That upon information and belief, the gross, wanton and willfully fraudulent conduct of defendants Castle Point, Gearin and/or Royal, their agents, servants, employees and/or representatives, were not only morally evil and reprehensible, as it has affected the plaintiff, but it is also part of a pattern of predatory lending directed at vulnerable segments of the public.

175.   That by reason of the gross, wanton and willfully fraudulent conduct directed to the plaintiff, as well as vulnerable segments of the public, and in order to both punish defendants, their agents, servants, employees and/or representatives, from engaging in the same or similar conduct in the future, the plaintiff, Vera N. Ngwa, demands an award of punitive damages in the amount of TEN MILLION and XX/100 ($10,000.000.00) DOLLARS against the defendants, Castle Point Mortgage, Inc., Heather Gearin and/or Royal Settlement Services, Inc., jointly and individually

176.   That by reason of defendant' fraudulent concealment of material information and terms essential to the processing of the subject loan, as well as defendants' fraudulent conduct and misrepresentations made in connection with the subject mortgage loan, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., both jointly and individually, for actual monetary damages, in the amount of ONE MILLION DOLLARS and XX/100 ($1,000,000.00) DOLLARS; for compensatory damages in an amount to be determined by the trier of fact; and for punitive monetary damages, in the amount of TEN MILLION and XX/100 ($10,000,000.00) DOLLARS.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC. AND GMAC MORTGAGE, LLC

177.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153" and "155" through "175", as if fully set forth herein.

178.   The fraudulent misrepresentations and material concealment of facts  made by defendants Castle Point, Gearin and/or Royal, in connection with the processing and closing of the subject loan, as well as the disclosure of its terms, constituted inequitable and unconscionable conduct, by which the plaintiff has been victimized.

179.    Plaintiff is entitled to cancellation/discharge and/or rescission of the subject loan, based upon general principles of equity.

180.    That by reason of the fraud, inequity, and unconscionable conduct rendered by defendants Castle Point Mortgage, Inc., Heather Gearin and/or Royal Settlement Services, Inc., the plaintiff, Vera N. Ngwa, makes claim for the following relief: **(i)** rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or property given by the plaintiff to any  party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee.

**AS AND FOR AN EIGHTH CAUSE OF
ACTION AGAINST THE DEFENDANT,
CASTLE POINT MORTGAGE,  INC.,**

181.    That the plaintiff repeats and realleges each and every allegation set forth in

Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153" "155" through "175"; and "177" through "179", as if fully set forth herein.

182.   That the plaintiff, Vera N. Ngwa, had provided and/or authorized defendants Castle Point, Gearin and/or Royal with all information within her possession concerning her existent employment income at the time of her application for financing, including pay stubs, W-2 forms and tax return documents.

183.   That the plaintiff, Vera N. Ngwa, executed employment income authorization forms in connection with the subject consumer credit transaction, which consisted of Request for Verification of Employment Forms and 4506 Tax Record income authorizations.  These authorizations enabled defendants Castle Point and/or Royal to verify plaintiff's employment income information which had been provided by plaintiff.

184.   That the employment income authorizations executed by the plaintiff, Vera N. Ngwa, consisting of W-9 forms/tax record authorizations, as well as 4506 form record employment/tax authorizations, were duly executed and provided by plaintiff to defendants Castle Point, Gearin and/or Royal

185.   That defendants Castle Point, Gearin and/or Royal completely failed to act upon said employment authorizations.

186.   That as a result of defendant Castle Point's failure to take measures to verify plaintiff's employment income or status, defendant Castle Point was negligent in the underwriting of the subject consumer credit transaction, as well as the subsequent approval of plaintiff's subject loan application, as plaintiff's actual income at that time was entirely insufficient to allow her to qualify for the subject financing.

187.   That by reason of defendant Castle Point Mortgage, Inc.'s negligence in the underwriting of the subject consumer credit transaction, as well as the subsequent approval of plaintiff's subject loan application, the plaintiff, Vera N. Ngwa, makes claim against defendant Castle Point Mortgage, Inc. for actual monetary damages, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and which warrants the jurisdiction of this Court.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST THE DEFENDANTS, CASTLE POINT MORTGAGE, INC., AND ROYAL SETTLEMENT SERVICES, INC.

188.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153" "155" through "175"; "177" through "179" and "181" through "186", as if fully set forth herein.

189.   That defendant Royal acted as the "settlement or "closing" agent on the subject mortgage loan, as reflected by the HUD Statement.  As such, defendant's services included distribution of proceeds on the subject loan, as well as to escrow and/or take possession of loan proceeds during the period wherein plaintiff had the right to rescind and/or cancel the loan.

190.   Defendants Castle Point and Royal acted improperly in permitting and/or

designating defendant Royal as the "settlement or closing" agent on the subject mortgage

loan, in that said services are required to be performed by an attorney, pursuant to the Real

Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq.   Furthermore,

both defendants Castle Point and/or Royal were aware that defendant Royal, as "settlement

or closing agent", was responsible for escrowing moneys derived from the proceeds of the

subject loan, during the period wherein plaintiff had the right to rescind and/or cancel the

loan, which defendant Royal was not legally empowered or qualified to do; and which

services defendants Castle Point and/or Royal knew had to be performed by an attorney.

191.   Defendants Castle Point and Royal acted improperly in permitting and/or

designating defendant Royal as the "settlement or closing" agent on the subject mortgage

loan, in that said services are required to be performed by a person and/or entity independent

of the lender, pursuant to the Real Estate Settlement Procedures Act, as set forth by

12 U.S.C. § 2601 et Seq.   Both defendants Castle Point and/or Royal were aware that

defendant Royal, as "settlement or closing agent", was responsible for escrowing moneys

derived from the proceeds of the subject loan, during the period wherein plaintiff had the

right to rescind and/or cancel the loan.   As such defendant Castle Point, a related entity to

defendant Royal, was able to entirely control the "closing" of the subject transaction.

192.   By acting as "closing and/or settlement agent" on the subject loan, defendant

Royal was enabled to obtain fees for services actually rendered on the subject loan, which

defendants Castle Point and/or Royal knew were not reasonable or bonafide, and which

were in violation of the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. §

2601 et Seq.

193.   That by reason of defendant Royal improperly serving as "closing and/or settlement agent" on the subject loan, plaintiff Vera N. Ngwa makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages,  pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq., as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

**AS AND FOR A TENTH CAUSE OF
ACTION AGAINST THE DEFENDANTS,
CASTLE POINT MORTGAGE,  INC., AND
ROYAL SETTLEMENT SERVICES, INC.**

194.   That the plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "120"; "122"; "124" through "143"; "145"; "147" through "153" "155" through "175"; "177" through "179"; "181" through "186"; and "188" through "192", as if fully set forth herein.

195.   That defendant Royal acted as the "settlement or "closing" agent on the subject mortgage loan, as reflected by the HUD Statement.  As such, defendant's services included distributing proceeds on the subject loan, as well as to take possession of loan proceeds during the period wherein plaintiff had the right to rescind and/or cancel the loan.

196.   Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing"

services, despite not having an attorney to effectuate such services either within its employ and/or assigned to supervise the individual assigned to attend the "closing" of the subject transaction.

197. Defendant Royal was paid a fee of $375.00 for "settlement" and/or "closing" services, despite not producing an individual for said "closing" who was capable of reviewing the information contained within those documents provided to the plaintiff for her execution.

198. Defendant Royal also acted in the capacity of a "settlement agent" on the subject loan, involving a lender whose principals are defendant Royal's majority owners.

199. That defendants Castle Point and Royal acted improperly in permitting and/or designating defendant Royal as the "settlement or closing" agent on the subject mortgage loan, in that said services are required to be performed by an independent attorney, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute. Furthermore, defendants Castle Point and Royal were aware that defendant Royal, as "settlement or closing agent", was responsible for escrowing moneys derived from the proceeds of the subject loan, during the period wherein plaintiff had the right to rescind and/or cancel the loan, which defendant Royal was not legally empowered or qualified to do; and which services defendants Castle Point and/or Royal knew had to be performed by an independent attorney.

200. In defendant Royal acting as "closing and/or settlement agent" on the subject loan, defendant Royal was able to obtain excessive fees for services actually rendered on

the subject loan, which defendants Castle Point and/or Royal knew were not reasonable or

bonafide, and which were in violation of the New York State Judiciary Law, as set forth by

Sections 484 and 495 of said statute.

201.   That by reason of defendant Royal improperly serving as "closing and/or

settlement agent" on the subject loan, the plaintiff, Vera N. Ngwa makes claim against the

defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual

monetary damages, pursuant to the New York State Judiciary Law, as set forth by

Sections 484 and 495 of said statute, as well as statutory money damages, pursuant to the

dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested prayed that this Court

**(A).**   Assume jurisdiction of this case;

**(B)**   Upon the FIRST CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes

claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage, LLC,

pursuant to U.S.C. § 1635, for the following relief: **(i)** rescission/cancellation of the

subject mortgage loan/and/or rescission of this transaction; **(ii)** termination of any security

interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc.,

and thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction;

**(iii)** Return of any money or property given by the plaintiff to any party, in connection with

the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any

loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC

Mortgage, LLC, during the pendency of this action, and permanently thereafter, from

instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential

premises, and from recording any deeds or mortgages concerning plaintiff's property, or

from otherwise taking any steps to deprive plaintiff of her ownership interest of that

residential premise; **(vi)** a reasonable attorney fee, as well as the costs of this action,

pursuant to 15 U.S.C. § 1640(a);

     **(C)** Upon the SECOND CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes

makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC Mortgage,

LLC, for actual monetary damages, pursuant to 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640,

in an amount to be determined at trial; and, for statutory monetary damages, pursuant to

15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, in an amount not to exceed TWO THOUSAND

and XX/100 ($2,000,00) DOLLARS for each and every Federal Truth In Lending violation

enumerated herein, and a reasonable attorney fee, as well as the costs of this action, pursuant

to 15 U.S.C. § 1640(a);

     **(D)** Upon the THIRD CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes

makes claim, against the defendants,Castle Point Mortgage, Inc.; Heather Gearin and

Royal Settlement Services, Inc., for monetary damages, pursuant to the New York State

Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State

General Business Law; in an amount to be determined at trial; and a reasonable attorney

fee, pursuant to New York State General Business Law Section 349(h).

**(E)** Upon the FOURTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against defendants Castle Point Mortgage, Inc., and GMC Mortgage, LLC, pursuant to The New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law, for the following relief: **(i)** rescission/cancellation of the subject mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and thereafter assigned to GMAC Mortgage, LLC, under this transaction; **(iii)** Return of any money or property given by the plaintiff to any party, in connection with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of defendant GMAC Mortgage, LLC during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the plaintiff's residential premises, and from recording any deeds or mortgages concerning plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her ownership interest of that residential premise; **(vi)** a reasonable attorney fee, pursuant to New York State General Business Law Section 349(h).

**(F)** Upon the FIFTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendant, Castle Point Mortgage, Inc., for money damages, pursuant to Section 589 of the New York State Banking Law, in an amount to be determined at trial; and a reasonable attorney fee, pursuant to the dictates of the New York State Banking Law.

**(G)** Upon the SIXTH CAUSE OF ACTION, the plaintiff, plaintiff, Vera N. Ngwa,

makes claim against the defendants, Castle Point Mortgage, Inc., Heather Gearin and

Royal Settlement Services, Inc., both jointly and individually, for actual monetary damages,

in the amount of ONE MILLION DOLLARS and XX/100  ($1,000,000.00) DOLLARS;

for compensatory damages in an amount to be determined by the trier of fact; and for

punitive monetary damages, in the amount of TEN MILLION and XX/100

($10,000,000.00) DOLLARS.

   **(H)**  Upon the SEVENTH CAUSE OF ACTION, the plaintiff, the plaintiff, Vera

N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and GMAC

Mortgage, LLC, for the following relief: **(i)**  rescission/cancellation of the subject

mortgage loan and/or rescission of this transaction; **(ii)** termination of any security interest

in plaintiff's residential premises created for defendant Castle Point Mortgage, Inc., and

thereafter assigned to defendant GMAC Mortgage, LLC, under this transaction;

**(iii)** Return of any money or property given by the plaintiff to any party, in connection

with the subject mortgage loan; **(iv)** judicial enforcement of forfeiture of plaintiff's

return of any loan proceeds received from the subject mortgage loan; **(v)** enjoinment of

defendant GMAC Mortgage, LLC during the pendency of this action, and permanently

thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the

plaintiff's residential premises, and from recording any deeds or mortgages concerning

plaintiff's property, or from otherwise taking any steps to deprive plaintiff of her

ownership interest of that residential premise; **(vi)** a reasonable attorney fee.

   **(I)**  Upon the EIGHTH CAUSE OF ACTION, the plaintiff, Vera N, Ngwa

makes claim against the defendant, Castle Point Mortgage, Inc. for actual monetary

damages, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and which warrants the jurisdiction of this Court.

(J)  Upon the NINTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages,  pursuant to the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601 et Seq., as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

(K) Upon the TENTH CAUSE OF ACTION, the plaintiff, Vera N. Ngwa, makes claim against the defendants, Castle Point Mortgage, Inc. and Royal Settlement Services, Inc., for actual monetary damages, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute, as well as statutory money damages, pursuant to the dictates of said statute; and a reasonable attorney fee, as well as the costs of this action.

(L)  the costs, interest and disbursements of this action; and for such other and further relief as to this Court may seem just and proper.

Dated: Brooklyn, New York
        April 30, 2008

Yours, etc.

**DAVID M. HARRISON, ESQ.**
Attorney for Plaintiff
VERA N. NGWA

Office & P.O. Address
48 Willoughby Street
Brooklyn, New York 11201
(718) 243-2109
Bar No.: DH6188

By: _____
     David M. Harrison, Esq.

UNITED STATES DISTRICT COURT                    Civil Action No.: 08-0859
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------------
----------------------------------------------------------------------------------

VERA N. NGWA,

                                                     Plaintiff,


              v.


CASTLE POINT MORTGAGE, INC., HEATHER
GEARIN, GMAC MORTGAGE, LLC and
ROYAL SETTLEMENT SERVICES, INC.,

                                                     Defendants.


------------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------



### AMENDED COMPLAINT



------------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------



**DAVID M. HARRISON, ESQ.**
Attorney for the Plaintiff
 VERA N. NGWA
Office & P.O. Address
48 Willoughby Street
Brooklyn, New York 11201
(718) 243-2109


------------------------------------------------------------------------------------------------------
PLEASE TAKE NOTICE:
 [ ] Notice of Entry
  that the within is a (certified) true copy of Order          duly entered in the office of the clerk of the within
named court on
  [ ] Notice of Settlement
  that an order                    of which the within is a true copy
  will be presented for settlement to the HON          one of the judges of the
  within named Court, at
  on            19      at      M.
     Dated,                    Yours, etc.

Mortgage Recording Tax:

After Recording Return To:
CASTLE POINT MORTGAGE, INC.
7 ENTIN ROAD
PARSIPPANY, NEW JERSEY 07054
Loan Number: 3000002624

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

**MIN:** 1002735-3000002624-9

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A) "Security Instrument."** This document, which is dated  JANUARY 25, 2007          , together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."**  VERA N NGWA

whose address is  10 WEST 123RD STREET, NEW YORK, NEW YORK 10027

sometimes will be called "Borrower"
and sometimes simply "I" or "me."
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of  P.O. BOX 2026, FLINT, MI 48501-2026                              , tel. (888) 679-MERS.
**FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
**(D) "Lender."**  CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION

will be called "Lender." Lender is a corporation or association which exists under the laws of
MARYLAND
Lender's address is  6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND 21075

**(E) "Note."** The note signed by Borrower and dated  JANUARY 25, 2007         , will be called the "Note." The Note shows that I owe Lender  ONE MILLION ONE HUNDRED SIXTY-FIVE THOUSAND AND 00/100                    Dollars (U.S. $ 1,165,000.00      )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by  FEBRUARY 1, 2037        .

Section:              Block:              Lot(s)/Unit No(s).:

Borrower Initials: _VNN_ _____ _____ _____ _____ _____

DocMagic *Formss* 800-649-1362
www.docmagic.com

Ny3033.mzm

CPM 000012

**(F)** "**Property.**" The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G)** "**Loan.**" The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Sums Secured.**" The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I)** "**Riders.**" All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | |
|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☐ Other(s) [specify] |

**(J)** "**Applicable Law.**" All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K)** "**Community Association Dues, Fees, and Assessments.**" All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L)** "**Electronic Funds Transfer.**" "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items.**" Those items that are described in Section 3 will be called "Escrow Items."

**(N)** "**Miscellaneous Proceeds.**" "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)** "**Mortgage Insurance.**" "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment.**" The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)** "**RESPA.**" "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Borrower Initials: _V N N_ _____ _____ _____ _____ _____

Ny3033.mzm

CPM 000013

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

    (A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)  The Property which is located at      10 WEST 123RD STREET      .
                                       [Street]

                 NEW YORK                     , New York    10027      .
              [City, Town or Village]                                            [Zip Code]

This Property is in      NEW YORK          County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 1-1721-24

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

Borrower Initials: _VNW_ _____ _____ _____ _____ _____

Ny3033.mzm

CPM 000014

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1.  **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.  **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess

Borrower Initials: _V N_ _____ _____ _____ _____

exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

   **3.    Monthly Payments For Taxes And Insurance.**
   (a)  **Borrower's Obligations.**
   I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
      (1)  The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
      (2)  The leasehold payments or ground rents on the Property (if any);
      (3)  The premium for any and all Insurance required by Lender under Section 5 of this Security Instrument;
      (4)  The premium for Mortgage Insurance (if any);
      (5)  The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
      (6)  If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.
   After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.
   I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.
   The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.
   I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.
   Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

Borrower Initials: _V NW_    _____    _____    _____    _____

Ny3033.mzm

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time

Borrower Initials: _JWW_

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic EFsmms 800-649-1362
Form 3033 01/01 (01/01/07)                     Page 6 of 16                             www.docmagic.com

Ny3033.mzm

CPM 000017

charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense.  Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy

Borrower Initials:  _N N N_  _____  _____  _____  _____  _____

CPM 000018

the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title

Borrower Initials: _MM_ _____ _____ _____ _____ _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                    Page 8 of 16          *DocMagic* 800-649-1362
                                                                    www.docmagic.com

Ny3033.mzm

(sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous

Borrower Initials: VNN ________ ________ ________ ________ ________

Ny3033.mzm

Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12.  **Continuation of Borrower's Obligations And of Lender's Rights.**

(a)  **Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b)  **Lender's Rights**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if:

Borrower Initials: _V/N/N_  _____  _____  _____  _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  
Form 3033 01/01 (01/01/07)                        Page 10 of 16

DocMagic ℰℱℴ𝓇𝓂𝓈 800-649-1362  
www.docmagic.com

Ny3033.mzm

(1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due. Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions

Borrower Initials: _MN_ _____ _____ _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                Page 11 of 16                DocMagic *eFerms* 800-649-1362
www.docmagic.com

CPM 000022

of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument:  (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.**  I will be given one copy of the Note and of this Security Instrument.

**18.  Agreements about Lender's Rights If the Property Is Sold or Transferred.**  Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.  If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement.  The notice will give me at least 30 days to make the required payment.  The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument.  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19.  Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.**  Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of:  (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument.  In order to have this right, I will meet the following conditions:

(a)  I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)  I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)  I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)  I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required.  However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20.  Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.**  The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times.  I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer."  There may be a change of the Loan Servicer as a result of the sale of the Note.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  Applicable Law requires that I be given written notice of any change of the Loan Servicer.  The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments.  The notice also will contain any other information required by RESPA or Applicable Law.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan

Borrower Initials: _VNV_ ___ ___ ___ ___ ___

NEW YORK--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                                 Page 12 of 16

*DocMagic* **EForms** 800-649-1362
www.docmagic.com

Ny3033.mzm

servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

Borrower Initials: _KNK_  ___  ___  ___  ___  ___

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                    Page 13 of 16

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Ny3033.mzm

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a)  I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b)  Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1)  The promise or agreement that I failed to keep or the default that has occurred;

(2)  The action that I must take to correct that default;

(3)  A date by which I must correct the default.  That date will be at least 30 days from the date on which the notice is given;

(4)  That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5)  That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6)  That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.  Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24.  Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.  This means that I will:  (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25.  Borrower's Statement Regarding the Property  [check box as applicable].

☐  This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒  This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐  This Security Instrument does not cover real property improved as described above.

Borrower Initials: _VNN_  ____  ____  ____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                    Page 14 of 16

*DocMagic eForms* 800-649-1362
www.docmagic.com

Ny3033.mzm

CPM 000025

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)     _____ (Seal)
VERA N NGWA                -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                           -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                           -Borrower                              -Borrower

Witness:                              Witness:

_____             _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic eForms 800-649-1362
Form 3033 01/01 (01/01/07)                          Page 15 of 16              www.docmagic.com

CPM 000026

[Space Below This Line For Acknowledgment]

State of New York )
 ) ss.
County of NEW YORK )

On the 25th day of January , in the year 2007 , before me,

the undersigned, personally appeared VERA N NGWA

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Michael Senz*

Notary Public State of New York

Michael Senz
Print or Type Name

(Seal, if any)

My commission expires: 08/30/08

Tax Map Information No.: 1-1721-24

MICHAEL SENZ
Notary Public - State of New York
No. 01SE6114952
Qualified in New York County
My Comm. Expires Aug. 30, 2008

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)     Page 16 of 16     DocMagic ℰⓕℴⓇⓜⓈ 800-649-1362
www.docmagic.com

Ny3033.mzm

CPM 000027

MIN: 1002735-3000002624-9          Loan Number: 3000002624

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 25th day of JANUARY, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

10 WEST 123RD STREET, NEW YORK, NEW YORK 10027

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     11.875 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    (A)   Change Dates
The interest rate I will pay may change on the 1st    day of FEBRUARY, 2012      , and on that day every 6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."
    (B)   The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Borrower Initials: _____  _____  _____  _____  _____

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 1 of 3

DocMagic ⚡Romans 800-649-1362
www.docmagic.com

Us3138.rid

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 500/1000 percentage points ( 6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 17.875 % or less than 6.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 17.875 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

Borrower Initials: _VNN_ _____ _____ _____ _____ _____

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01    Page 2 of 3

*DocMagic eRorms* 800-649-1362
www.docmagic.com

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
VERA N NGWA                  -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 3 of 3

DocMagic *eFforms* 800-649-1362
www.docmagic.com

CPM 000033

MIN: 1002735-3000002624-9          Loan Number: 3000002624

# ADJUSTABLE RATE NOTE
**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT.  THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

JANUARY 25, 2007              ELKRIDGE              MARYLAND
[Date]                        [City]                [State]

10 WEST 123RD STREET, NEW YORK, NEW YORK 10027
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
     In return for a loan that I have received, I promise to pay U.S. $1,165,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION (CFL # 7981)
I will make all payments under this Note in the form of cash, check or money order.
     I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
     Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   11.875  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
     The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**
     **(A) Time and Place of Payments**
     I will pay principal and interest by making a payment every month.
     I will make my monthly payments on the  1st  day of each month beginning on    MARCH 1 2007  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
     I will make my monthly payments at 7 ENTIN ROAD, PARSIPPANY, NEW JERSEY 07054
                                       or at a different place if required by the Note Holder.
     **(B) Amount of My Initial Monthly Payments**
     Each of my initial monthly payments will be in the amount of U.S. $ 11,871.36        . This amount may change.
     **(C) Monthly Payment Changes**
     Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Borrower Initials: _KNN_   _____   _____   _____

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                              Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family        DocMagic *eFarms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT            Page 1 of 5                      www.docmagic.com

Us3520.not

CPM 000007

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the 1st  day of FEBRUARY, 2012            , and on that day every  6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  SIX AND 500/1000                         percentage points (     6.500   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    17.875  % or less than    6.500  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000                       percentage point(s) (     2.000     %) from the rate of interest I have been paying for the preceding  6      months. My interest rate will never be greater than     17.875  %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

Borrower Initials: _VNN_   _____   _____   _____

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3520 1/01
DocMagic *Cliforms* 800-649-1362
www.docmagic.com

Us3520.net

CPM 000008

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Borrower Initials: _V/N/N/_   _____   _____   _____   _____

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                                    Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family                          *DocMagic* ☎ 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                   Page 3 of 5                            www.docmagic.com

Us3520.not

CPM 000009

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

---

Borrower Initials: _VNW_ _____ _____ _____ _____

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 4 of 5

Form 3520 1/01
DocMagic *€Farans* 800.649.1362
www.docmagic.com

Us3520.not

CPM 000010

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Vera N. Ngwa_ _____ (Seal)          _____ (Seal)
VERA N NGWA                    -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


PAY TO THE ORDER OF:
WITHOUT RECOURSE

CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION

BY:    _____

ITS:      Douglas Hanke, VP/CFO


*[Sign Original Only]*


MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family      *DocMagic* *e-Forms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT              Page 5 of 5                *www.docmagic.com*

Us3520.not

CPM 000011

(Printed on Jan 25, 2007 @ 13:48)      US Department of Housing and Urban Development      OMB No. 2502-0491

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 20-00025043 | Loan Number: 3000002624 | Mortgage Ins. Case #: |
|---|---|---|

NAME AND ADDRESS OF BORROWER:  VERA N NGWA, 10 W 123RD ST NEW YORK NY, 10027

NAME AND ADDRESS OF LENDER:  CASTLE POINT MORTGAGE, INC. 6800 DEERPATH RD ELKRIDGE, MD, 21075

PROPERTY LOCATION: 10 W 123RD ST NEW YORK NY, 10027

SETTLEMENT AGENT:  ROYAL SETTLEMENT SERVICES, INC  JASON ADAMS
PLACE OF SETTLEMENT:

| SETTLEMENT DATE: 01/25/2007 | DISBURSEMENT DATE: 01/30/2007 |
|---|---|

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. Items Payable In Connection With Loan | | 1501. FORECLOSURE PAYOFF | |
| 801. Loan Origination Fee % To CPM 4.000% OF $1,165,000.00 | $46,600.00 | STEVEN J BAUM P.C | $988,779.27 |
| 802. Loan Discount | | 1502. TAXES POC | |
| 803. Appraisal Fee To Royal Settlement Services  POC $100.00 | $30.00 | 1503. HOI PREMIUM | |
| 804. Credit Report Fee to CBC Companies | $6.95 | STATE FARM | $1,943.00 |
| 805. Lender's Inspection Fee | | 1504. CREDIT PAYOFF | |
| 806. Mortgage Insurance Application Fee | | CBNA | $14,952.00 |
| 807. Assumption Fee | | 1505. CREDIT PAYOFF | |
| 808. Application Fee to Castle Point Mortgage | $595.00 | VERIZON NY | $93.00 |
| 809. Processing Fee to Castle Point Mortgage | $795.00 | 1506. CREDIT PAYOFF | |
| 810. CLO Fee to Lending Tree | | CBNA | $4,498.00 |
| 811. | | 1507. | |
| 900. Items Required By Lender To Be Paid In Advance | | 1508. | |
| 901. Interest from 01/30/2007 TO 02/01/2007 @$379.024/DAY | $758.05 | | |
| 902. Mortgage Insurance Premium for | | 1509. | |
| 903. Hazard Insurance Premium for | | | |
| 904. | | 1510. | |
| 905. | | | |
| 1000. Reserves Deposited With Lender | | 1511. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1512. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1513. | |
| 1005. Annual assessments | | | |
| 1006. | | 1514. | |
| 1007. | | | |
| 1008. Aggregate Adjustment | | 1515. | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to Royal Settlement Services | $375.00 | 1516. | |
| 1102. Abstract or title search | | | |
| 1103. Title examination to Royal Settlement Services | $350.00 | 1517. | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | 1518. | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | | |
| (Includes above item numbers:   ) | | 1519. | |
| 1108. Title Insurance to RSS/ Stewart Title | $3,153.00 | | |
| (Includes above item numbers:   ) | | | |
| 1109. Lender's coverage $1,165,000.00 | | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1110. Owner's coverage | | | $1,008,265.27 |
| 1111. NY Endorsements RSS/ Stewart | $476.90 | | |
| 1112. | | | |
| 1113. | | N. Net Settlement | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording fees: Mortgage: $157.00 Release $52.00 | $209.00 | 1600. Loan Amount | $1,165,000.00 |
| 1202. City/county tax/stamps: | $29,707.50 | | |
| 1203. State tax/stamps: | | 1601. Plus Check/Cash from Borrower | $0.00 |
| 1204. Lenders 1/4% Mortgage Tax  POCL $2,912.50 | | | |
| 1205. | | 1602. Minus total settlement charges | $83,131.40 |
| 1300. Additional Settlement Charges | | (Line 1400) | |
| 1301. Survey | | 1603. Minus total Disbursements to | $1,008,265.27 |
| 1302. Pest inspection | | Others (line 1520) | |
| 1303. Wire/Overnight Fee to Royal Settlement Services | $75.00 | 1604. Equals disbursements to borrower | $73,603.33 |
| 1304. | | | |
| 1305. | | | |
| 1400. Total settlement charges (enter on line 1602) | $83,131.40 | | |

The undersigned hereby acknowledges receipt of a completed copy of this statement.  To the best of my knowledge this HUD-1A ref. RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X _____  Royal Settlement Services, Inc

X _____  VERA N NGWA

CPM 000034

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 3000002624                                    Date: JANUARY 25, 2007
Creditor: CASTLE POINT MORTGAGE, INC. (CFLID # 7981)
Address: 6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND 21075

Borrower(s): VERA N NGWA

Address: 10 WEST 123RD STREET, NEW YORK, NEW YORK 10027

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 12.457 % | $ 3,157,887.08 | $ 1,115,801.95 | $ 4,273,689.03 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 359 | 11,871.36 | 03/01/07 | | | | | | |
| 1 | 11,870.79 | 02/01/37 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

___X___ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability _____ Property Insurance _____ Flood Insurance _____ Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 10 WEST 123RD STREET, NEW YORK, NEW YORK 10027
_____ The goods or property being purchased ___X___ Real property you already own.
FILING FEES: $
LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 2.000 % of the payment.
PREPAYMENT: If you pay off early, you
_____ may ___X___ will not   have to pay a penalty.
_____ may ___X___ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may ___X___ may, subject to conditions _____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
___X___ "e" means an estimate _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| _Vera N Ngwa_ 1/20/07 | |
|---|---|
| Applicant   VERA N NGWA          Date | Applicant          Date |

| | |
|---|---|
| Applicant          Date | Applicant          Date |

| | |
|---|---|
| Applicant          Date | Applicant          Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

CPM 000036

# EXHIBIT H

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_Vera N Ngwa_ (signature)

Borrower _____    Co-Borrower _____

| I. TYPE OF MORTGAGE AND TERMS OF LOAN | | | |
|---|---|---|---|
| Mortgage Applied for | [ ] VA   [X] Conventional   [ ] Other (explain): <br> [ ] FHA   [ ] USDA/Rural Housing Service | Agency Case Number <br> 3000002624 | Lender Case Number <br> 3000002624 |
| Amount <br> $ 1,165,000.00 | Interest Rate <br> 11.875 % | No. of Months <br> 360 | Amortization Type [ ] Fixed Rate   [ ] Other (explain): <br> [ ] GPM   [X] ARM (type): |

| II. PROPERTY INFORMATION AND PURPOSE OF LOAN | | |
|---|---|---|
| Subject Property Address (street, city, state & ZIP) <br> 10 W 123rd St NEW YORK, NY 10027 | | No. of Units <br> 2 |
| Legal Description of Subject Property (attach description if necessary) | | Year Built <br> 1889 |

| Purpose of Loan | [ ] Purchase   [ ] Construction   [ ] Other (explain): <br> [X] Refinance   [ ] Construction-Permanent | Property will be: <br> [X] Primary Residence   [ ] Secondary Residence   [ ] Investment |
|---|---|---|

| Complete this line if construction or construction-permanent loan. | | | | |
|---|---|---|---|---|
| Year Lot Acquired | Original Cost <br> $ | Amount Existing Liens <br> $ | (a) Present Value of Lot <br> $ | (b) Cost of Improvements <br> $ | Total (a + b) <br> $ |

| Complete this line if this is a refinance loan. | | | | |
|---|---|---|---|---|
| Year Acquired <br> 2005 | Original Cost <br> $ 2,000,000.00 | Amount Existing Liens <br> 960,383.00 | Purpose of Refinance <br> Cash | Describe Improvements [ ] made   [ ] to be made <br> Cost: $ |

| Title will be held in what Name(s) <br> Vera N Ngwa | Manner in which Title will be held | Estate will be held in: <br> [X] Fee Simple <br> [ ] Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

| | III. BORROWER INFORMATION | |
|---|---|---|
| **Borrower** | | **Co-Borrower** |
| Borrower's Name (include Jr. or Sr. if applicable) <br> Vera N Ngwa | | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| Social Security Number <br> 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 | Home Phone (incl. area code) <br> (212) 8316178 | DOB (mm/dd/yyyy) <br> 10/19/1976 | Yrs. School <br> 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
| [ ] Married   [X] Unmarried (include <br> [ ] Separated     single, divorced, widowed) | Dependents (not listed by Co-Borrower) <br> no.   ages <br> 0 | | | [X] Married   [ ] Unmarried (include <br> [ ] Separated     single, divorced, widowed) | Dependents (not listed by Borrower) <br> no.   ages |
| Present Address (street, city, state, ZIP) [X] Own [ ] Rent 2 No. Yrs. <br> 10 W 123rd St <br> NEW YORK, NY 10027 | | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent _____ No. Yrs. <br> NY |
| Mailing Address, if different from Present Address | | Mailing Address, if different from Present Address |

| If residing at present address for less than two years, complete the following | | |
|---|---|---|
| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent _____ No. Yrs. | | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent _____ No. Yrs. |

| | IV. EMPLOYMENT INFORMATION | |
|---|---|---|
| **Borrower** | | **Co-Borrower** |
| Name & Address of Employer [X] Self Employed <br> Cashman Inc <br> 10 New York st <br> New york, NY 10027 | Yrs. on this job <br> 4 yrs <br> Yrs. employed in this line of work/profession <br> 4.00 | Name & Address of Employer [ ] Self Employed | Yrs. on this job <br> Yrs. employed in this line of work/profession |
| Position/Title/Type of Business <br> Owner | Business Phone (incl. area code) <br> (917) 2871672 | Position/Title/Type of Business | Business Phone (incl. area code) |

| If employed in current position for less than two years or if currently employed in more than one position, complete the following: | | |
|---|---|---|
| Name & Address of Employer [ ] Self Employed | Dates (from – to) <br> Monthly Income <br> $ | Name & Address of Employer [ ] Self Employed | Dates (from – to) <br> Monthly Income <br> $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer [ ] Self Employed | Dates (from – to) <br> Monthly Income <br> $ | Name & Address of Employer [ ] Self Employed | Dates (from – to) <br> Monthly Income <br> $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

3000002624

Freddie Mac Form 65  7/05
Mortgage Cadence Inc. © 1087 – 02/06

Fannie Mae Form 1003  7/05

CPM 000053

Vera N Ngwa

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 30,000.00 | $ | $ 30,000.00 | Rent | $ | |
| Overtime | | | .00 | First Mortgage (P&I) | 6,035.00 | 11,871.36 |
| Bonuses | | | .00 | Other Financing (P&I) | | |
| Commission | | | .00 | Hazard Insurance | | 453.00 |
| Dividends/Interest | | | .00 | Real Estate Taxes | | 0.00 |
| Net Rental Income | . | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | .00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 30,000.00 | $ | $ 30,000.00 | Total | $ 6,035.00 | 12,324.36 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income  **Notice:**  Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.    Completed [ ] Jointly [X] Not Jointly

| ASSETS<br>Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use the continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ .00 | LIABILITIES | | | |
| *List checking and savings accounts below* | | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>OPTION ONE MORTGAGE CO<br>3 ADA WAY<br>IRVINE, CA 92618 | | $ Payment/Months<br>6,035.00<br>151 | $ * 906,076.00 |
| Acct. no. 6470017857855 | $ | Acct. no. | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>SALLIE MAE<br>1002 ARTHUR DRIVE<br>LYNN HAVEN, FL 32444 | | $ Payment/Months<br>147.00<br>126 | $ * 18,389.00 |
| Acct. no. | $ | Acct. no. 988918991710011 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CBNA<br>1000 TECHNOLOGY DR # MS5<br>O FALLON, MO 63368 | | $ Payment/Months<br>417.00<br>36 | $ * 14,952.00 |
| Acct. no. | $ | Acct. no. 2593620 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CITI<br>P.O. BOX 6500<br>SIOUX FALLS, SD 57117 | | $ Payment/Months<br>72.00<br>95 | $ * 6,797.00 |
| Acct. no. | $ | Acct. no. 5424180272763274 | | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company<br>CHASE<br>800 BROOKSEDGE BLVD<br>WESTERVILLE, OH 43081 | | $ Payment/Months<br>161.00<br>.34 | $ * 5,352.00 |
| | | Acct. no. 5149231800018162 | | | |
| Life insurance net cash value<br>Face amount: $ | $ | Name and address of Company<br>SALLIE MAE 3RD PTY LSC<br>1002 ARTHUR DR<br>LYNN HAVEN, FL 32444 | | $ Payment/Months<br>55.00<br>87 | $ * 4,785.00 |
| Subtotal Liquid Assets | | Acct. no. 3448083551016 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,800,000.00 | Name and address of Company<br>CBNA<br>143 SPARKS AVE<br>PELHAM, NY 10803 | | $ Payment/Months<br>135.00<br>34 | $ * 4,490.00 |
| Vested interest in retirement fund | $ | | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 61782173 | | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | | $ .00 | |
| | | Total Monthly Payments | | $ 427.00 | |
| Total Assets a. | $ 1,800,000.00 | Net Worth (a minus b) | 1,761,423.00 | Total Liabilities b. | $ 38,577.00 |

3000002624

Freddie Mac Form 65 7/05<br>Mortgage Cadence Inc. © 1087 – 02/06

Fannie Mae Form 1003 7/05

CPM 000054

Vera N Ngwa

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10 W 123rd St NEW YORK, NY 10027 | SF | $ 1,800,000.00 | $ 906,076.00 | $ | $ 6,035.00 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 800,000.00 | $ 906,076.00 | $ 0.00 | $ 6,035.00 | $ 0.00 | 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | |
| b. | Alterations, improvements, repairs | |
| c. | Land (if acquired separately) | |
| d. | Refinance (incl. debts to be paid off) | 937,768.00 |
| e. | Estimated prepaid items | 2,701.04 |
| f. | Estimated closing costs | 75,773.42 |
| g. | PMI, MIP, Funding Fee | |
| h. | Discount (if Borrower will pay) | |
| i. | Total costs (add items a through h) | 1,016,242.46 |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | |
| l. | Other Credits (explain) | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,165,000.00 |
| n. | PMI, MIP, Funding Fee financed | |
| o. | Loan amount (add m & n) | 1,165,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -148,757.54 |

## VIII. DECLARATIONS

| | If you answer "Yes" to any questions a through i please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|
| | | Yes | No | Yes | No |
| a. | Are there any outstanding judgments against you? | [ ] | [X] | [ ] | [ ] |
| b. | Have you been declared bankrupt within the past 7 years? | [ ] | [X] | [ ] | [ ] |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | [ ] | [X] | [ ] | [ ] |
| d. | Are you a party to a lawsuit? | [ ] | [X] | [ ] | [ ] |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | [ ] | [X] | [ ] | [ ] |
| | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes" give details as described in the preceding question. | [ ] | [X] | [ ] | [ ] |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | [ ] | [X] | [ ] | [ ] |
| h. | Is any part of the down payment borrowed? | [ ] | [X] | [ ] | [ ] |
| i. | Are you a co-maker or endorser on a note? | [ ] | [X] | [ ] | [ ] |
| j. | Are you a U.S. citizen? | [X] | [ ] | [ ] | [ ] |
| k. | Are you a permanent resident alien? | [X] | [ ] | [ ] | [ ] |
| l. | Do you intend to occupy the property as your primary residence? | [X] | [ ] | [ ] | [ ] |
| | If "Yes," complete question m below. | | | | |
| m. | Have you had an ownership interest in a property in the last three years? | [X] | [ ] | [ ] | [ ] |
| | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, from any source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *Vera N Ngwa* | 01/24/2007 | X | 01/24/2007 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [x] I do not wish to furnish this information | CO-BORROWER | [ ] I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino  [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino  [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American | Race: | [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American |
| | [ ] Native Hawaiian or Other Pacific Islander  [ ] White | | [ ] Native Hawaiian or Other Pacific Islander  [ ] White |
| Sex: | [ ] Female  [ ] Male | Sex: | [ ] Female  [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Heather Gearin | Castle Point Mortgage, Inc. |
| [ ] Face-to-face interview | Interviewer's Signature | 6800 Deerpath Road; Suite 105 |
| [ ] Mail | *Heather Gearin* 1/25/0 | Elkridge, MD 21075 |
| [ ] Telephone | Interviewer's Phone Number (incl. area code) | |
| [x] Internet | (800) 469-4850 | |

## Statement of Assets and Liabilities
### (Supplement to Residential Loan Application)

Name
Vera N Ngwa

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 1,165,000.00
With interest at     11.875 %, for a term of  360     months and to be secured by property known as:
Subject Property Address (street, city, state & ZIP)
10 W 123rd St NEW YORK, NY 10027
Legal Description of Subject Property (attach description if necessary)

### ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| List checking and savings accounts below | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 14.00 90 | $ 1,260.00 |
| Acct. no. | $ | Acct. no. 344808356108B | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DSNB BLOOM 3039 CORNWALLIS RD DURHAM, NC 27709 | $ Payment/Months 24.00 33 | $ 787.00 |
| Acct. no. | $ | Acct. no. 60038 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company VERIZON NEW YORK INC PO BOX 165018 COLUMBUS, OH 43216 | $ Payment/Months | $ 93.00 |
| Acct. no. | $ | Acct. no. 2128316178480 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company VERIZON NY PO BOX 165018 COLUMBUS, OH 43216 | $ Payment/Months 93.00 1 | $ 93.00 |
| Acct. no. | $ | Acct. no. 917 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | $ |
| | | Acct. no. | | |
| Life insurance: net cash value Face amount: $ | $ | Name and address of Company | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,600,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ 1,600,000.00 | Net Worth (a minus b) | $ 1,761,423.00 | Total Liabilities b. $ 38,577.00 |

Freddie Mac Form 65  7/05
Mortgage Cadence Inc. © 1538 - 02/06

Fannie Mae Form 1003  7/05

CPM 000056

## Statement of Assets and Liabilities
### (Supplement to Residential Loan Application)

Name
**Vera N Ngwa**

The following information is provided as complete and becomes a part of the application for a mortgage in the amount of $ 1,165,000.00
With interest at          11.875 %, for a term of  360         months and to be secured by property known as:

Subject Property Address (street, city, state & ZIP)

**10 W 123rd St NEW YORK, NY 10027**

Legal Description of Subject Property (attach description if necessary)

---

### ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | | |
| **List checking and savings accounts below** | | **LIABILITIES** | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  *Not Included  DSNB MACYS  3039 CORNWALLIS RD  DURHAM, NC 27709 | | $ Payment/Months  3,953.00  1 | $  3,953.00 |
| Acct. no. | $ | Acct. no.  410322114 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | | $ Payment/Months  30.00  68 | $  2,611.00 |
| Acct. no. | $ | Acct. no.  3448083561076 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | | $ Payment/Months  29.00  90 | $  2,591.00 |
| Acct. no. | $ | Acct. no.  3448083561026 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | | $ Payment/Months  29.00  87 | $  2,521.00 |
| Acct. no. | $ | Acct. no.  3448083561086 | | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | | $ Payment/Months  23.00  68 | $  2,003.00 |
| | | Acct. no.  3448083561096 | | | |
| Life insurance net cash value  Face amount: $ | $ | Name and address of Company  BMBV/CBSD  PO BOX 6003  HAGERSTOWN, MD 21747 | | $ Payment/Months  58.00  34 | $  1,936.00 |
| **Subtotal Liquid Assets** | $ | Acct. no.  603526300669 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $  1,800,000.00 | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | | $ Payment/Months  18.00  89 | $  1,601.00 |
| Vested interest in retirement fund | $ | | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no.  3448083561056 | | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | | $ | |
| | | **Total Monthly Payments** | | $ | |
| **Total Assets a.** | $  1,800,000.00 | Net Worth (a minus b) $  1,761,423.00 | | **Total Liabilities b.** | $  38,577.00 |

Freddie Mac Form 65  7/05
Mortgage Cadence Inc. © 1538 - 02/06

Fannie Mae Form 1003  7/05

CPM 000057

Document Date: JANUARY 25, 2007

I/We hereby attest to the fact that I/we have not incurred any new debt obligations which have not been disclosed to the lender during the last 90 day period.

Thank you.

_Vera N. Nguen 1/25/07_ _____
Borrower VERA N NGWA        Date    Borrower                    Date

_____        _____
Borrower        Date    Borrower                    Date

_____        _____
Borrower        Date    Borrower                    Date

08/30/04                                    DocMagic EFORMS 800-649-1362
                                            www.docmagic.com

09d31.uac

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

VERA N. NGWA,

                       Plaintiff,

    -against-

CASTLE POINT MORTGAGE, INC., HEATHER
GEARIN, GMAC MORTGAGE, LLC and ROYAL
SETTLEMENT SERVICES, INC.,

                       Defendants.

-------------------------------------------------------------------X

Docket No. 08CV0859
Date Filed: 1/24/08

---

**NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

---

CONWAY, FARRELL, CURTIN & KELLY, P.C.
ATTORNEYS AT LAW
FORTY EIGHT WALL STREET
NEW YORK, NEW YORK 10005
(212) 785-2929