UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VERA N. NGWA,                                    Docket No. 08CV0859
                                                 Date Filed: 1/24/08
                                    Plaintiff,

            -against-


CASTLE POINT MORTGAGE, INC., HEATHER
GEARIN, GMAC MORTGAGE, LLC and ROYAL
SETTLEMENT SERVICES, INC.,


                                    Defendants.
-------------------------------------------------------------------X


---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

---

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

## INTRODUCTION

The Amended Complaint in this case is plaintiff's attempt to avoid foreclosure by blaming other parties for her long-standing credit problems. According to the Amended Complaint, Ms. Ngwa had already defaulted, and her property was already in foreclosure, when she first came into contact with the defendants. She contends that she was "cold called" and then pressured into re-financing her mortgage, when in fact the evidence, including a handwritten letter by Ms. Ngwa, would ultimately prove that it was plaintiff who actively sought out and lobbied the defendants to execute this transaction with her. Contrary to the carefully orchestrated tone of the Amended Complaint, Ms. Ngwa is not a low income, unsophisticated victim of fraud, but rather a business owner with a piece of real estate worth more than $1 Million.

Now that Ms. Ngwa has defaulted and is faced with foreclosure, she seeks to wipe out the mortgage she granted, and to completely avoid taking any responsibility for her own actions. Ms. Ngwa, however, has failed to state any legally cognizable claims upon which relief can be granted, despite having already been given the opportunity to amend. The instant motion is directed at plaintiff's defective pleading and, as addressed more fully below, plaintiff's Amended Complaint should be dismissed in its entirety.

## ARGUMENT

In deciding a Motion to Dismiss under Rule 12(b)(6), "A court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party… ." *Leemon v. Burns*, 175 F. Supp. 2d 551, 554, 2001 U.S. Dist. LEXIS 5415 (S.D.N.Y. 2001)(citations omitted). The court generally must exclude from consideration any additional materials submitted in support of a 12(b)(6) motion, except that it "may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference." *Id.* (citations omitted).

## 1ST AND 2ND CAUSES OF ACTION SHOULD BE DISMISSED

## PLAINTIFF FAILS TO STATE A CLAIM UNDER TILA

Plaintiff's first and second purported causes of action assert that the defendants violated the disclosure requirements of the Truth-in-Lending Act ("TILA"), specifically those contained in Reg. Z §§226.17, 226.18 and 226.19.  Plaintiff alleges that, "[a]t no time prior to the date of 'closing' and/or consummation of the subject transaction (January 25, 2007) was the plaintiff ever presented with any Truth In Lending Statement and/or Truth In Lending information, as mandated by the Truth In Lending Act, including 15 U.S.C. § 1638; Regulation Z § 226.17; Regulation Z § 226.18 and Regulation Z § 226.19."  (Declaration in Support ("Dec.") Exh. B (Amended Complaint) ¶¶ 49-50, 108)(emphasis supplied)

Plaintiff, however, acknowledges in her complaint that she was provided with the Mortgage, Adjustable Rate Note, Adjustable Rate Rider, HUD Statement, TILA Statement and URLA "at the time of 'closing' of the subject mortgage loan."  (Dec. Exh. B ¶ 53)(emphasis supplied)  These documents, which are incorporated by reference in the Amended Complaint and therefore properly considered on this motion, are attached to the Declaration in Support as Exhibits C – H for the Court's consideration.  The documents contain all of the disclosures required by Regulation Z §§ 226.17, 226.18 and 226.19 that are applicable to the instant transaction.

For example, plaintiff acknowledges in the Amended Complaint that the Note she received at closing disclosed the amount of the principal ($1,165,000), the yearly interest rate (11.875%), the initial monthly payments ($11,871.36), that the interest rate was subject to change starting in February 2012 based on the LIBOR Index, that the interest rate would always be between 6.500% and 17.875%, among other information.  (Dec. Exh. B ¶¶ 57-65; Dec. Exh. D)  The Rider contained similar disclosures.  (Dec. Exh. B ¶¶ 65-70; Dec. Exh. E)

Plaintiff further acknowledges that the TILA Statement she received at closing disclosed the Annual Percentage Rate (which is the total cost of the credit at a yearly rate—12.475%), the Finance Charge (which is the total cost of the credit—$3,157,887.08) and the Amount Financed (which the amount of credit provided less the fees—$1,115,801.95). (Dec. Exh. B ¶¶ 71-73; Dec. Exh. F)  The TILA Statement also disclosed the Total of Payments ($4,273,689.03), the initial payment amount ($11,871.36), the number of payments (359) and that the loan contains a variable rate feature, among other information. (Dec. Exh. B ¶¶ 74-76; Dec. Exh. F)

Regulation Z § 226.17 states: "The creditor shall make disclosures before consummation of the transaction." 12 CFR 226.17(b)(emphasis supplied). Certain disclosures required in applicable transactions under Regulation Z § 226.19(a) must be made: "before consummation, or....not later than three business days after the creditor receives the consumer's written application, whichever is earlier."  And another set of disclosures is required in applicable transactions under Regulation Z §226.19(b): "at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier."

Plaintiff's own allegations establish that she received all of the foregoing documents, including the URLA, at the time of closing on January 25, 2007. (Dec. Exh. B ¶ 53; Dec. Exh. H) The complaint therefore fails to make out a cause of action for the violation of the disclosure requirements of TILA, because the allegations, if taken as true, establish that the disclosures were made both before consummation, and at the same time the application (URLA) was provided. Plaintiff does not allege that she paid any non-refundable fee.

Hence, even under plaintiff's own version of events, the disclosures were timely and there is no TILA violation alleged. Plaintiff seems to be under the impression that TILA requires disclosures to be made at least one calendar day "prior to the date of the closing." Aside from the limited

circumstances addressed in §226.19(a) and (b), neither of which is applicable to the facts as alleged, there is no requirement in TILA to make disclosures "prior to the date of" closing. TILA expressly and repeatedly uses the term "consummation of the transaction" as the deadline for disclosures, and plaintiff can point to no authority stating that this somehow means disclosures must be made on the day before the closing or some earlier date. Indeed, if plaintiff were correct, there would undoubtedly be plentiful authority describing the procedures whereby TILA disclosures would have to be delivered to parties on or before midnight of the day preceding the closing. There is no such authority because the rule is disclosure <u>before consummation</u>, not disclosure "at least one day before closing."

### 6TH CAUSE OF ACTION SHOULD BE DISMISSED

### THE FRAUD CLAIM IS NOT PLED WITH THE REQUISITE PARTICULARITY

### AND FAILS TO STATE A CAUSE OF ACTION AS A MATTER OF LAW

"In order to state a claim for fraud under federal or New York state common law a plaintiff must allege that the defendant made a material false representation, that the defendant knew of the falsity (scienter), that the defendant acted with intent to defraud, that the plaintiff reasonably relied on the false representation, and damages." *Marcus v. AT&T Corp.*, 138 F.3d 46, 1998 U.S. App. LEXIS 3648 (2nd Cir. 1998); *see also Ozelkan v. Tyree Bros. Envtl. Servs., Inc.*, 29 A.D.3d 877, 815 N.Y.S.2d 265, 267 (App. Div. 2006). These elements must ultimately be proven by clear and convincing evidence. *See Green v. Beer*, 2007 U.S. Dist. LEXIS 12557 (S.D.N.Y. 2007)(*citing Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 704 N.Y.S.2d 177 (1999)).

Fraudulent concealment (e.g. fraud by <u>omission</u> of material facts) generally requires an allegation that the defendant <u>had a duty</u> to disclose material information, or that the defendant used "artifice, wiles, or deceptive conduct designed to throw the other party off his guard and lull him into a false sense of security" in the nondisclosure of material information. *See Green, supra* at *20

(*quoting Ozelkan, supra*, at 267 and *Small v. Lorillard Tobacco Co.*, 176 Misc. 2d 413, 672 N.Y.S.2d 601, 610 (Sup. Ct. 1997), *rev'd on other grounds,* 252 A.D.2d 1, 679 N.Y.S.2d 593 (App. Div. 1998)).  "A duty to disclose may arise either from a fiduciary relationship or from one party's superior knowledge of essential facts whose nondisclosure would render a transaction inherently unfair." *Id.* (*citing Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 802 N.Y.S.2d 132, 134 (App. Div. 2005).

In either case, fraudulent misrepresentations or acts of fraudulent concealment must be pled with particularity.  "Federal Rule of Civil Procedure 9(b) requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.'" *Green* at *21 (*quoting* Fed. R. Civ. P. 9(b)).  "The Second Circuit has specified that, where a claim is subject to *Rule 9(b),* 'the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation.'" *Id.* (*quoting Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2nd Cir. 1990)).  Fraud allegations in which multiple defendants are lumped together are insufficient to meet the particularity requirements. *Leemon, supra*, at 556-557.

Ngwa's purported Sixth Cause of Action asserts conclusory, non-specific allegations, none of which could ever support a fraud claim.  Plaintiff's allegations are as follows:

> a. Defendants Castle Point and/or Gearin misrepresented to plaintiff, prior to the date of 'closing' of the subject loan transaction, that plaintiff's income status would enable her to afford the subject refinance loan; and thereby enable to plaintiff to 'save' her home (with defendants knowing that plaintiff had already been in foreclosure at that time on her pending mortgage) (Dec. Exh. B ¶ 157);

> b. Defendants Castle Point and/or Gearin also knowingly failed and/or refused to provide plaintiff with accurate information concerning the material terms of the subject loan prior to the date of 'closing' of said transaction, including the loan's: (i) "Annual Percentage Rate"; (ii) "Finance Charge"; (iii) "Amount Financed";

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

(iv) "Total of Payments"; and (v) "Number of Payments"; as well as the principal balance and/or amount of the loan. (Dec. Exh. B ¶¶ 159-160);

c.  Defendants Castle Point and/or Gearin knowingly intended to further entice plaintiff to proceed with the subject loan, prior to the date of "closing", by verbally informing plaintiff, on multiple occasions, that she could thereafter qualify for an additional refinancing with even more favorable terms, by remaining current on the subject refinance loan for a period of approximately one year. (Dec. Exh. B ¶ 161);

d.  Defendants Castle Point and/or Gearin knowingly concealed the monthly payment obligations on the subject loan at all times prior to the date of the "closing" of the subject transaction, while verbally advising plaintiff that her income status "qualified" her for the subject loan, which in turn, would enable plaintiff to "save" her home. (Dec. Exh. B ¶ 162);

e.  Defendants Castle Point and/or Gearin also knowingly misrepresented to plaintiff, at all times prior to the date of the "closing" of the subject transaction, that plaintiff would be receiving "significant cash out" to her "benefit" as a result of the proceeds received from the refinance loan.  Defendants made this representation while concealing the amount of the monthly payments which plaintiff would be required to make on the resultant mortgage.  Defendants knowingly failed to reveal to plaintiff that the resultant mortgage would result in monthly payments which would be more than double what plaintiff had been paying previously, thereby negating any cash proceeds which plaintiff would receive from the subject loan transaction. (Dec. Exh. B ¶ 163);

f. Defendants Castle Point and/or Gearin also knowingly misrepresented to plaintiff, at all times prior to the date of the "closing" of the subject transaction, that the subject loan terms were the most favorable terms which plaintiff could receive at that time, given her then existent credit and asset status. (Dec. Exh. B ¶ 164);

g. Defendants Castle Point and/or Gearin also misrepresented to plaintiff that it was not necessary for her to retain an attorney to represent her in connection with the "closing" of the subject transaction;

h.  Defendants Castle Point, Gearin and/or Royal knowingly acted improperly, deceptively and fraudulently, in producing a representative to meet with plaintiff at her home, in connection with said "closing", whose sole purpose was to notarize documents executed and signed by the plaintiff; and who possessed no knowledge or information as to the contents of the documents contained therein. (Dec. Exh. B ¶ 166);

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

i. Defendants Castle Point and Gearin knew that the amount of moneys assessed for the "loan origination fee", in the amount of $46,000.00; and all "settlement charges" enumerated within the HUD Statement, were excessive; and that the subject loan ultimately failed to provide plaintiff with any "net tangible benefit". As such, defendants completely misrepresented to the plaintiff that the subject mortgage loan was beneficial to her… . (Dec. Exh. B ¶ 167);

First, not one of plaintiff's fraud allegations in the Amended Complaint specifies time, place or speaker as is required by Rule 9(b), despite the fact that this Court expressly indicated that plaintiff's original complaint was deficient in this regard and invited plaintiff to amend. The allegations also impermissibly lump defendants together. The fraud claim should be dismissed on this basis.

The only purported allegation of fraud that even mentions Royal (as set forth in "h" above) does not allege any misrepresentation or fraudulent omission against any defendant, including Royal. This being the only purported fraud allegation involving Royal, the fraud claim against Royal should be dismissed for lack of particularity and failure to state a claim.

Moreover, the purported misrepresentations by "Castle Point and/or Gearin" that "plaintiff's income status would enable her to afford the subject refinance loan; and thereby enable to plaintiff to 'save' her home" (Dec. Exh. B ¶ 157), that "she could thereafter qualify for an additional refinancing with even more favorable terms, by remaining current on the subject refinance loan for a period of approximately one year" (Dec. Exh. B ¶ 161), and that "her income status 'qualified' her for the subject loan, which in turn, would enable plaintiff to 'save' her home" (Dec. Exh. B. ¶ 162) are not actionable misrepresentations of fact. These alleged statements, if made, were far too vague and conclusory to constitute representations of existing fact.

Indeed, the question of whether the plaintiff could "afford" the loan, and likelihood of plaintiff's losing her home could never have been known at the time the loans were made, and

depended largely upon the plaintiff's fiscal responsibility and other factors. Plaintiff was in the best position to know what she could afford, and therefore could not have relied to her detriment on such a representation. As will be addressed more fully below, plaintiff's own allegations establish that the loan terms were fully disclosed to her at the closing.

Even if the vague assertion that plaintiff could later qualify for another refinancing loan were liberally construed as a promise to help plaintiff refinance at some later date (which it is not), such promises are not actionable unless there is a present intent to deceive. *Glassman v. Catli*, 111 A.D.2d 744, 745 (App. Div. 1985). Nothing in the allegations support the contention that any of the defendants did not intend at the time of the loan to try to assist plaintiff in re-financing at a later date for more favorable terms (scienter), in fact, if anything, the allegations suggest that the defendants hoped to assist plaintiff in another refinancing. For purposes of pleading a *prima facie* case of fraud in New York, a plaintiff cannot sustain her burden by simply inferring scienter from the fact that an expectation (e.g. plaintiff's "saving her home" or a later refinance loan) did not occur. *Fink v. Citizens Mortgage Banking, Ltd.*, 148 A.D.2d 578, 539 N.Y.S.2d 45 (App. Div. 1989).

The allegations that defendants "knowingly failed and/or refused to provide plaintiff with accurate information concerning the material terms of the subject loan prior to the date of 'closing' of said transaction…" (Dec. Exh. B ¶ 159)(emphasis supplied), "knowingly concealed the monthly payment obligations on the subject loan at all times prior to the date of the "closing" of the subject transaction" (Dec. Exh. B ¶ 162)(emphasis supplied), "conceal[ed] the amount of the monthly payments which plaintiff would be required to make on the resultant mortgage" (Dec. Exh. B ¶ 163), and "knowingly failed to reveal to plaintiff that the resultant mortgage would result in monthly payments which would be more than double what plaintiff had been paying previously" (Dec. Exh. B ¶ 163) are attempts at alleging fraud by concealment. The Amended Complaint, however, lacks any

allegation to support the contention that defendants had a <u>duty</u> to disclose any such information on some date prior to the day of closing, and plaintiff concedes all of this information was disclosed at the closing, <u>before</u> consummation.  Plaintiff also does not allege that any defendant used "artifice, wiles, or deceptive conduct" (i.e. some kind of active concealment) in the nondisclosure of this information that was designed to throw her off her guard and lull her into a false sense of security.  At most, plaintiff alleges that the defendants simply did not give her certain information until she sat down to sign documents at the closing which, even if true, is not fraudulent, deceptive or actionable as such.  *See* Dec. Exh. C-H;  *see also Brown v. Cushman & Wakefield, Inc.*, 2002 U.S. Dis. LEXIS 13787, *56-57 (S.D.N.Y. 2002) *adopted in its entirety by* 235 F. Supp.2d 291; 2002 U.S. Dist. LEXIS 23460 (S.D.N.Y. 2002)(justifiable reliance cannot be established where allegedly fraudulent misrepresentation in fraudulent inducement claim could have been readily discovered upon reading of agreement).

The allegations that "the subject loan ultimately failed to provide plaintiff with any 'net tangible benefit,' and that "defendants completely misrepresented to the plaintiff that the subject mortgage loan was beneficial to her..." (Dec. Exh. B ¶ 167) are also not actionable misrepresentations of fact.  These allegations imply some fiduciary or other duty that is not alleged, and which does not exist.  The premise that the defendants owed plaintiff a duty to advise plaintiff as to what would be "beneficial" to her is a false one, and for purposes of the instant motion, such a duty is not pled or alleged.

Indeed, as will be discussed below in the context of plaintiff's Deceptive Practices claim, the New York Court of Appeals has held that the Deceptive Practices statute certainly does not require businesses to ascertain consumers' individual needs and ensure that they have all the information relevant to their specific situation. *See Oswego Laborers Local 214 Pension Fund v. Marine Midland*

*Bank, N.A.*, 623 N.Y.S2d 529 (1995); *see also Giordano v. Giammarino*, 2008 N.Y. Misc. LEXIS 716 (Sup. Ct. 2008)(fraud and Deceptive Practices claims dismissed against attorney in alleged predatory lending case despite attorney's possible fiduciary duties – "it is not a deceptive act or practice to proceed with an arms-length transaction without attempting to ascertain the extent of every consumer's appreciation of the ramifications of his or her decision, and whether that decision is in his or her overall best interest (citation omitted)").  Plaintiff has not pled and does not have a cause of action for breach of fiduciary duty against these defendants, and cannot recover in fraud based on the mere lack of fiduciary advice from non-fiduciaries in this arm's length transaction.

Similarly, the alleged misrepresentation in "g" above is vague, ambiguous and non-actionable. Plaintiff does not allege any requirement under New York law that a person be represented by an attorney in a loan closing transaction like the one at issue (there is no such requirement), nor any basis for a duty advise, so this statement, if it was made, would have been accurate and not deceptive.  If the import of the allegation is that Ngwa should have been advised that she needed an attorney to represent her interests despite not being required by law to have one, this is a purported breach of fiduciary duty allegation, not a fraud allegation.

The allegation that defendants "knowingly misrepresented to plaintiff, at all times prior to the date of the "closing" of the subject transaction, that the subject loan terms were the most favorable terms which plaintiff could receive at that time, given her then existent credit and asset status" (Dec. Exh. B ¶ 164) is likewise vague, ambiguous and non-actionable.  The contention that the misrepresentation was made "at all times prior to the date of 'closing'" is *de facto* insufficient as to time, place and speaker.  Moreover, plaintiff does not actually plead any fact suggesting that this representation was actually false—to the contrary, she acknowledges she had already defaulted and was in foreclosure on her mortgage.  Such a statement, if made, would be a mere instance of puffing,

not an actionable misrepresentation of and existing material fact.  See *Glassman*, *supra*, at 745-46 ("puffing" not actionable fraud).  For all these reasons, Ngwa has failed to allege <u>any</u> material misrepresentation of fact sufficient to support a fraud claim.

Finally, plaintiff has also failed to plead facts sufficient to support a claim for punitive damages.  As the Court of Appeals held in *Sharapata v. Town of Islip*, 56 N.Y.2d 332, 335 (1982), punitive damages "may only be awarded for exceptional misconduct which transgresses mere negligence, as when the wrongdoer has acted 'maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness' … or has engaged in 'outrageous or oppressive intentional misconduct' or with 'reckless or wanton disregard of safety or rights' (citations omitted)."  Even taken as true, the acts alleged in the Amended Complaint do not rise to the level of conduct that gives rise to a claim for punitive damages.  Plaintiff's punitive damages claim is baseless and frivolous and should be dismissed.

### 3RD AND 4TH CAUSES OF ACTION SHOULD BE DISMISSED

#### THE DECEPTIVE PRACTICES CLAIM FAILS TO STATE A CAUSE OF ACTION AS A MATTER OF LAW

Plaintiff's allegations in support of her Deceptive Practices Act claim are equally deficient to the fraud allegations.  Many of the same allegations made in plaintiff's fraud claim are simply repeated in the deceptive practices claim and, as discussed above, are in the nature of baseless, non-actionable breach of fiduciary duty allegations.

To state a claim pursuant to General Business Law ("GBL") §349, a plaintiff must allege "a material deceptive act or practice directed to consumers that caused actual harm."  *Marcus v. AT&T Corp.*, 138 F.3d 46, 63 (2nd Cir. 1998) (*citing Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S2d 529 (1995).  The elements are: 1) that the challenged act or practice was consumer-oriented; 2) that it was misleading in a material way;

and 3) that plaintiff suffered injury as a result of the deceptive act. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).

The allegations in the Amended Complaint (Dec. Exh. B ¶¶ 125, 127-128) that the defendants inflated plaintiff's income on the loan application (URLA) cannot support a deceptive practices claim because, even if true, such acts could <u>never</u> fit the objective definition of "deceptive acts or practices" adopted by the Court of Appeals, to wit, "those likely to mislead a *reasonable consumer acting reasonably under the circumstances*." *Oswego, supra* at 532. As already discussed, Ms. Ngwa signed the application verifying her income, and if those documents were "falsified" as she now alleges, Ms. Ngwa was the one who falsified them by signing them. Ms. Ngwa cannot be heard to claim that she was deceived because signed the documents without reading them, because she is charged with knowledge of the contents of these documents. *See Brown, supra.* Moreover, neither Ms. Ngwa, nor any reasonable consumer acting reasonably, could ever claim to have been misled by a blatant misstatement of *her own income*.

While reliance is not a required element for a Deceptive Practices claim, again, one must plead and ultimately prove that the activity was "misleading in a material way," to a "reasonable consumer acting reasonably under the circumstances." None of the acts of concealment alleged in the complaint regarding the terms of the loan could ever support a Deceptive Practices claim because the four corners of the complaint reveal that all these facts <u>were revealed</u> at the closing, prior to the consummation of the transaction. Since the information was all before the plaintiff when she signed the documents and consummated the transaction, the alleged acts of not disclosing the information sooner was neither misleading in a material way, nor deceptive to a reasonable consumer acting reasonably under the circumstances. For example, plaintiff cannot establish that she was deceived in a material way by not knowing what her monthly payment would be when the payment was disclosed

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

to her in multiple documents which she signed at closing.

As already mentioned above, the allegations that the subject loan provided the plaintiff "no benefit" or were "not in her best interest" are insufficient to support a claim under the Deceptive Practices Act. These are allegations in the nature of breach of fiduciary duty, and not an allegation that can support a deceptive practices claim. The Court of Appeals held in *Oswego* that:

> **the statute [GBL § 349] surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation.**

623 N.Y.S.2d at 533 (emphasis added).

Similarly, the likelihood of plaintiff's losing her home, the question of whether the loan would be "affordable" to plaintiff and similar facts could never have been known at the time the loans were made, and depended largely upon the plaintiff's fiscal responsibility and other factors. A reasonable consumer acting reasonably under the circumstances would know this. Representations of this nature, if made, could not support a finding of a "material deceptive act."

As already discussed, the alleged misrepresentation regarding plaintiff's need for legal counsel is vague, ambiguous and non-actionable. There is no requirement under New York Law that a person be represented by an attorney in a loan closing transaction like the one at issue, so this statement, if it was made, would have been accurate and not deceptive. This allegation is therefore, at most, a breach of fiduciary duty type allegation (where no such claim is alleged), and not an allegation that could support a deceptive practices claim.

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

**5ᵀᴴ CAUSE OF ACTION SHOULD BE DISMISSED**

**PLAINTIFF FAILS TO STATE A CAUSE OF ACTION PURSUANT TO**

**NEW YORK STATE BANKING LAW SECTION 589**

Plaintiff alleges that the defendants violated New York State Banking Law § 589 by receiving

a loan origination fee that was "excessive and to plaintiff's detriment" (Dec. Dec. Exh. B, ¶ 149) as

well as "drastically disproportionate to the services time and/or degree of expertise rendered by

defendants Castle Point and/or Gearin." (Dec. Exh. B, ¶ 151)  Section 589, entitled "Declaration of

policy" contains just that, a general declaration of policy.  The section does not contain any specific

requirements or prohibitions, and does not mention excessive fees.  The section reads as follows:

> The origination, funding and servicing of residential mortgage loans and the types
> of entities involved in residential mortgage lending has undergone significant
> changes in recent years, due in part to developments in the general economy,
> specifically interest rate volatility, the sophistication of the national secondary
> market for mortgage loans and the market for mortgage-backed securities. The
> recent trend toward deregulation in the financial services industry has accelerated
> the evolution of residential mortgage lending, dramatically increasing the types of
> mortgage loans offered and the manner in which they are advertised and marketed
> to consumers. Depository institutions, traditionally the major source of residential
> mortgage financing for individuals, now compete for capital and customers with
> mortgage bankers and other financial service organizations. Residential mortgage
> lenders of every type have increasingly relied on non-financial intermediaries,
> such as mortgage brokers, to make loans available to consumers. These
> developments have raised questions as to whether all entities engaging in this
> banking function operate under appropriate regulatory scrutiny and as to whether
> all residential mortgage lenders are conducting their business in the best interests
> of New York homeowners and potential homeowners.
>
> The activities of lenders and their agents offering financing for residential real
> property have a direct and immediate impact upon the housing industry, the
> neighborhoods and communities of this state, its homeowners and potential
> homeowners. The legislature finds that it is essential for the protection of the
> citizens of this state and the stability of the state's economy that reasonable
> standards governing the business practices of mortgage lenders and their agents be
> imposed. The legislature further finds that the obligations of lenders and their
> agents to consumers in connection with making, soliciting, processing, placing or
> negotiating of mortgage loans are such as to warrant the uniform regulation of the

residential mortgage lending process, including the application, solicitation, making and servicing of mortgage loans. Consistent with the purposes of promoting mortgage lending for the benefit of our citizens by responsible providers of mortgage loans and services and avoiding requirements inconsistent with legitimate and responsible business practices in the mortgage lending industry, the purpose of this article is to protect New York consumers seeking a residential mortgage loan and to ensure that the mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices.

New York State Banking Law § 589.

The sections that follow § 589 contain certain requirements for the registration, licensing and regulation of "Licensed Mortgage Bankers" by the Banking Board and superintendent. Banking Law § 595 sets forth certain grounds for suspension or revocation of license, and § 595-a provides that "the banking board shall promulgate regulations and policies governing the establishment of grounds to impose a fine or penalty with respect to the activities of a mortgage banker, mortgage broker or exempt organization," which encompasses various enumerated wrongful acts (e.g. misrepresentation or concealment of material terms, failure to deliver funds, etc.). Plaintiff does not allege that any of these provisions were violated, or even that any of these provisions contains any prohibition relating to the charging of "excessive" fees by brokers or lenders. Plaintiff's Fifth Cause of Action appears to referencing the provisions of the Real Estate Settlement Procedures Act ("RESPA") prohibiting the collection of "unearned fees" or fees "other than for services actually performed." (see RESPA § 8 - 12 U.S.C. § 2607). Banking Law § 589 does not contain such provisions. Plaintiff therefore fails to state a claim pursuant to New York State Banking Law § 589, and her Fifth Cause of Action should therefore be dismissed.

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

**7TH CAUSE OF ACTION SHOULD BE DISMISSED**

**PLAINTIFF FAILS TO STATE A CLAIM OF UNCONSCIONABILITY**

Plaintiff alleges that "[t]he fraudulent misrepresentations and material concealment of facts made by defendants Castle Point, Gearin and/or Royal, in connection with the processing and closing of the subject loan, as well as the disclosure of its terms, constituted inequitable and unconscionable conduct, by which plaintiff has been victimized." (Dec. Exh. B, ¶ 178) Based on this allegation, plaintiff asserts the right to rescission.

This allegation is so vague and general that it fails to meet even general "notice pleading" standards. It is not clear what, if any, legal theory is indented to be invoked, and the allegations fail to make out a cause of action under any cognizable legal theory. As a best guess, it appears that plaintiff purports to make a claim that the refinance transaction as a whole was an unconscionable contract of adhesion, although this is not what is pled.

Even if the Court, in its discretion, decides to view this as an unconscionability claim, plaintiff woefully fails to plead such a claim upon which relief can be granted. "An unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (1988)(citations, internal quotations omitted). "A determination of unconscionability generally requires a showing that the contract was <u>both</u> procedurally and substantively unconscionable when made -- i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id*. at 10-11 (citations, internal quotations omitted, emphasis supplied); *see also Benson v. Leeman Bros.*, 2005 U.S. Dist. LEXIS 8542 (S.D.N.Y. 2005).

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

In determining procedural unconscionability, courts look at the contract formation process and the alleged lack of meaningful choice. *Gillman* at 10-11. In *Gillman*, the claim of unconscionability was based on the plaintiff company's representative's contention "that he was unaware of the terms in the security agreement, that the security agreement was never called to his attention, that he never read it, that no one read it to him, and that, indeed, he did not know of its existence." *Id*. at 11. The Court rejected this argument, finding no procedural unconscionability. The Court pointed out that plaintiff's representative had the opportunity to read the agreement and was therefore bound by its terms, and even suggested that he was "grossly negligent" in failing to read what he signed. *Id*. at 11-12.

The same reasoning applies in the present case. As has already been addressed, plaintiff expressly acknowledges in her Amended Complaint that she did receive documents containing all the material terms of the refinance transaction at the time of closing, and she does not deny signing these documents at the closing. As in *Gillman*, the acknowledged opportunity to review these documents defeats any claim of procedural unconscionability. Because plaintiff has not pled facts sufficient to support a claim of procedural unconscionability, there is no cause for this Court address the question of substantive unconscionability. The claim should be dismissed.

Nevertheless, if the Court chooses to reach the issue of substantive unconscionability, plaintiff also fails to plead facts sufficient to establish this element of a cause of action as well. The question of substantive unconscionability "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id*. at 12.

Plaintiff in this case does not allege that the instant transaction involves a "high cost loan" as that term is defined in applicable state and federal regulations. While plaintiff complains vaguely that

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

17

the fees (including the "loan origination fee" of $46,000 which was a yield-spread-premium that was paid by the lender, not plaintiff) were unfair, it must be remembered that plaintiff is a landowner with a single piece of property valued significantly in excess of $1 million. Plaintiff does not allege in the Amended Complaint that a loan origination fee of approximately four percent (4%) of the $1,115,800 loan amount, or any of the other fees or terms were "unreasonably favorable" to the defendants, or that this transaction was out of line with similar transactions for persons with similar credit histories as this plaintiff (which it is not). Plaintiff having failed to allege facts sufficient to support either aspect of an unconscionability claim, the Seventh Cause of Action should be dismissed.

## 8TH CAUSE OF ACTION SHOULD BE DISMISSED

### PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE

Plaintiff alleges "[t]hat as a result of defendant Castle Point's failure to take measures to verify plaintiff's employment income or status, defendant castle point was negligent in the underwriting of the subject consumer credit transaction, ass well as the subsequent approval of plaintiff's subject loan application, as plaintiff's actual income at the time was entirely insufficient to allow her to qualify for the subject financing." (Dec. Exh. B, ¶ 186) Plaintiff seeks money damages based on this assertion of negligence.

This allegation is so vague and general that it also fails to meet the general "notice pleading" standards. Plaintiff does not even allege any of the elements of common law negligence, i.e. that any defendant had a duty to verify her income, that such duty was breached, that such breach caused her loss, or whether or how she suffered supposedly suffered damages as a result. Although she fails to plead facts to support any of these elements, the primary defect is her failure to allege that a duty existed, or any facts which would support the existence of such a duty.

"In any negligence action, the threshold issue before the court is the defendant owed a legally recognized duty to the plaintiff." *Gilson v. Metropolitan Opera*, 5 N.Y.3d 574, 807 N.Y.S.2d 588, 589 (2005; *see also Sanchez v. State of New York*, 99 N.Y.2d 247, 754 N.Y.S.2d 621, 624 (2002)("A defendant stands liable in negligence only for a breach of a duty of care owed to the plaintiff"). Whether a duty is owed to a plaintiff is a question of law for the court's determination. *Sanchez*, 99 N.Y.S.2d at 252.  In the absence of a duty owed to the plaintiff by a defendant, a plaintiff's cause of action cannot survive.  *See Strauss v. Belle Realty Co.*, 492 N.Y.S.2d 555, 65 N.Y.2d 399; *Pulka v. Edelman*, 390 N.Y.S.2d 393, 40 N.Y.2d 781 (1976).

Plaintiff does not allege the existence of any such duty, nor any fact to support the contention that such duty exists.  Moreover, plaintiff's allegations as set forth in the Amended Complaint could never state a claim for negligence based on failure to verify her income, because she admits that she received the documents that she claims misstated her income at closing, and she does not deny she signed them.  Plaintiff could never establish that any damages were <u>caused</u> by a defendant's failure to verify her income when she herself verified the income on which the loan was based by signing the documents.  The Eighth Cause of Action should therefore be dismissed.

**9TH CAUSE OF ACTION SHOULD BE DISMISSED**

**PLAINTIFF FAILS TO STATE A CLAIM UNDER RESPA**

Plaintiff alleges that "[b]y acting as "closing and/or settlement agent" on the subject loan, defendant Royal was enabled to obtain fees for services actually rendered on the subject loan, which defendants Castle Point and/or Royal knew were not reasonable or bonafide, and which were in violation of the Real Estate Settlement Procedures Act, as set froth by 12 U.S.C. § 2601." (Dec. Exh. B., ¶ 192)  Plaintiff does not allege which fees she contends "were not reasonable or bonafide," nor does she give any indication which provision of RESPA she contends was violated.  As such, this

vague allegation does not even provide the defendants with notice of the claim, and the Ninth Cause of Action should therefore be dismissed.

### 10TH CAUSE OF ACTION SHOULD BE DISMISSED

### PLAINTIFF FAILS TO STATE A CLAIM FOR UNAUTHORIZED PRACTICE OF LAW

Plaintiff alleges that defendants Castle Point and Royal violated New York State Judiciary Law §§ 484 and 495 by allowing Royal to act as settlement agent and/or closing agent "in that said services are required to be performed by an independent attorney, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute." (Dec. Exh. B, ¶ 199) Judiciary Law § 484 states, in pertinent part:

> No natural person shall ask or receive, directly or indirectly, compensation for appearing for a person other than himself as attorney in any court or before any magistrate, or for preparing deeds, mortgages, assignments, discharges, leases or any other instruments affecting real estate, wills, codicils, or any other instrument affecting the disposition of property after death, or decedents' estates, or pleadings of any kind in any action brought before any court of record in this state, or make it a business to practice for another as an attorney in any court or before any magistrate unless he has been regularly admitted to practice, as an attorney or counselor, in the courts of record in the state;

New York State Judiciary Law §484. and Judiciary Law § 495 states, in pertinent part:

> No corporation or voluntary association shall
>
> (a) practice or appear as an attorney-at-law for any person in any court in this state or before any judicial body, nor
>
> (b) make it a business to practice as an attorney-at-law, for any person, in any of said courts, nor
>
> (c) hold itself out to the public as being entitled to practice law, or to render legal services or advice, nor
>
> (d) furnish attorneys or counsel, nor
>
> (e) render legal services of any kind in actions or proceedings of any nature or in any other way or manner, nor
>
> (f) assume in any other manner to be entitled to practice law, nor

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20th FLOOR
NEW YORK, NY 10005

(g) assume, use or advertise the title of lawyer or attorney, attorney-at-law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law or to furnish legal advice, services or counsel, nor

(h) advertise that either alone or together with or by or through any person whether or not a duly and regularly admitted attorney-at-law, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel.

New York State Judiciary Law §495.

Nothing in either of these provisions addresses the issue of a non-attorney acting as settlement or closing agent in a mortgage transaction. Moreover, plaintiff does not allege that Royal violated either of these provisions by practicing law, holding itself out as an attorney or appearing to represent any person as an attorney. Plaintiff therefore fails to state a claim under the Judiciary Law, and her Tenth Cause of Action should be dismissed.

### CONCLUSION

**WHEREFORE,** defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc. request that an Order be made in this action dismissing the Amended Complaint against them in its entirety, and for such other and further relief as to this Court seems just and proper.

Dated: New York, New York
      May 30, 2008

 

Keith D. Grace, Esq. (KG6230)
**CONWAY, FARRELL, CURTIN & KELLY, P.C.**
Attorneys for Defendants
*Castle Point Mortgage, Inc., Heather Gearin*
and *Royal Settlement Services, Inc.*
48 Wall Street – 20th Floor
New York, N.Y. 10005

### CERTIFICATE OF SERVICE

I, KEITH D. GRACE, hereby certify that on this 30th day of May, 2008, the foregoing

**Memorandum of Law in Support of Motion to Dismiss** was served via e-filing upon the following:

David M. Harrison, Esq.
*Attorney for Plaintiff*
48 Willoughby Street
Brooklyn, New York  11201
(718) 243-2109

Stan Goldberg, Esq.
Platzer Swergold Karlin Levine Goldberg &
Jaslow, LLP
*Attorney for Defendant, GMAC*
1065 Avenue of the Americas
New York, NY 10018
(212) 593-3000