UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

VERA N. NGWA,                                  Action No.: 08 CV 859 (AJP)

                            Plaintiff,

        -against-


CASTLE POINT MORTGAGE, INC.,
HEATHER GEARIN, GMAC
MORTGAGE, LLC and ROYAL
SETTLEMENT SERVICES, INC.

                            Defendant(s).

-------------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANTS CASTLE POINT MORTGAGE, INC., HEATHER GEARIN AND ROYAL SETTLEMENT SERVICES, INC. TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT

I.    DEFENDANT CASTLE POINT VIOLATED THE TRUTH IN LENDING
      ACT BY FAILING TO PROVIDE PLAINTIFF WITH TIMELY
      DISCLOSURES CONCERNING THE MATERIAL TERMS OF THE
      LOAN; AS WELL AS FAILING TO PROVIDE PLAINTIFF WITH
      AN INITIAL TRUTH IN LENDING DISCLOSURE STATEMENT . . . . . . . . . . . 10

II.   DEFENDANTS CASTLE POINT, GEARIN ND ROYAL VIOLATED
      THE NEW YORK STATE DECEPTIVE ACTS AND PRACTICES
      UNLAWFUL STATUTE, AS CODIFIED BY SECTION 349 OF
      THE NEW YORK STATE GENERAL BUSINESS LAW . . . . . . . . . . . . . . . . . . . . .14

III.  DEFENDANTS CASTLE POINT AND ROYAL VIOLATED NEW
      YORK STATE BANKING LAW SECTION 589 IN ASSESSING
      AN EXCESSIVE "LOAN ORIGINATION FEE" . . . . . . . . . . . . . . . . . . . . . . . . . . .18

IV.   DEFENDANTS CASTLE POINT, GEARIN & ROYAL COMMITTED
      FRAUD IN THE PROCESSING OF THE SUBJECT REFINANCE
      LOAN TRANSACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    PLAINTIFF HAS A VALID CAUSE OF ACTION AGAINST
      DEFENDANT CASTLE POINT GROUNDED IN NEGLIGENCE . . . . . . . . . . . 22

VI.   DEFENDANT ROYAL ACTED IMPROPERLY AS A "SETTLEMENT
      AGENT AND/OR CLOSING AGENT ASSIGNED WITH ESCROW
      OF PROCEEDS DERIVED FROM THE SUBJECT LOAN . . . . . . . . . . . . . . . 23

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

Page

**Cases**

Basile v. H&R Block, Inc., 897 F. Supp. 194 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . 10

Bonnie & Co. Fashions, Inc. vs. BankersTrust Co., 945 F. Supp 693
(E.D.N.Y. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Floyd v. Security Fin. Corp of Nevada, 181 F. Supp 2d 1137 (D. Nev. 2001) . . . . . . . . .. 10

Garedakis v. Indymac Bank, 2004 WL 2254676 (N.D. Cal., 2004). . . . . . . . . . . . . . . . . . 14

Gibbons v. Interbank Funding Group, 208 F.R.D. 278 (N.D. Cal. 2002); . . . . . . . . . . . . ..12

H&R Block, Inc., 897 F. Supp. 194 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . 10

Jones v. Saxon Mortgage, Inc., 161 F.2d 2(table), 1998 WL 614150 (4th Circuit, 1998) . . .14

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2nd Circuit/2006) . . . . . . . .. . . . . . . . . . . . . . . 20

Mercado v. Playa  Realty Corp., 2005 WL 1594306 at 12 E.D.N.Y. (2005) . . . . . . . . . . . .20

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.
85 NYS2d 20, 623 NYS2d 529, 647 NE2d 741 (1995) . . . . . .. . . . . . . . . . . . . . . .. . . 15

Pellechia v. Pellechia, Inc. v. American National Fire Insurance Company . . . . . . . . . . . . 15
244 AD2d 395, 665 NYS2d 565 (1997/2nd Dept.)

 Revlon Consumer Products Corp. v. Arnow; 238 AD2d 223, 657 NYS2d 9 (1997,
1st Dept.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Shilelds v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2nd Circuit/194)  . . . . . . . . . . . .20

Taylor v. Domestic Remodeling, Inc., 97 F.3d 96 (5th Circuit, 1996) . . . . . . . . . . . . . . . . .14

Thomas v. GMAC Residential Funding Corp., 309 B.R. 453 (D.Md,004) . . . . . . . . . . . . .14

Weeden v. Auto Workers Credit Union, Inc., 173 F.3d 857 (6th Circuit/1999) . . . . . . . . ..12

<u>Williams v. Empire Funding Corp.</u>, 109 F. Supp. 2d 352 (E.D. Pa 2000) . . . . . . . . . . . 12-13

**Statutes**

New York State General Business Law # 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

New York State Banking Law # 589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,19

New York State Banking Law # 590 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

New York State Banking Law # 590(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

New York State Banking Law # 590(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

New York State Banking Law # 590(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

New York State Banking Law # 598 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

New York State Banking Law # 598(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

Article 12-D of the New York State Banking Law . . . . . . . . . . . . . . . . . . . . . . . 18-19

New York State Judiciary Law Section 484 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24

New York State Judiciary Law Section 495 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24

15 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-14

15 U.S.C. §  1602(u) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

15 U.S.C. §  1632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. §  1632(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

15 U.S.C. §  1632(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

15 U.S.C. §  1635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,12, 13, 14

 15 U.S.C. §  1638(b) . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. § 1640 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Regulation Z 12 C.F.R. 226. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11,12,13

Regulation Z § 226.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 11

Regulation Z § 226.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Regulation Z § 226.15(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Regulation Z § 226..17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Regulation Z § 226..17(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Regulation Z § 226.17(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Regulation Z § 226.19 . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11,12,13

Regulation Z § 226.19(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Regulation Z § 226.19(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Regulation Z § 226.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Regulation Z § 226.23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Regulation Z § 226.23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

12 U.S.C. § 2601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 24

**Treatises**

Truth In Lending, National Consumer Law Center/Sixth Edition, by Elizabeth Renuart and

Kathleen Keest (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12,13,14

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure Rule 9(b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,20

## PRELIMINARY STATEMENT

Plaintiff Vera N. Ngwa ("Ngwa") respectfully submits this brief in opposition to the motion brought by defendants Castle Point Mortgage, Inc. ("Castle Point"), Heather Gearin ("Gearin") and Royal Settlement Services, Inc. ("Royal) for an Order dismissing all causes of action against said defendants, pursuant to Federal Rules of Civil Rules of Procedure 12(b)(6). and Rule 9(b)

## STATEMENT OF THE CASE

The subject action arises from a non-purchase money mortgage loan issued to Ngwa by Castle Point, with a loan principal amount of $1,165.000.00, secured by plaintiff's residential premises located at 10 West 123rd Street, New York, New York. This loan transaction constituted a refinancing of a prior mortgage held by Option One Mortgage Corporation (with a then existing loan balance of approximately $986,000.00); upon which Ngwa had fallen into default (resulting in the commencement of a foreclosure action). Castle Point served as the "lender" on the subject transaction. Gearin was a loan officer employed by Castle Point, assigned with the responsibility of processing plaintiff's application on the loan. Royal served in the capacity of "Closing Agent" and/or "Settlement Agent" to the subject transaction. The Honorable Court should note that Castle Point and Royal share the same principals.

In or about December of 2006, Ngwa was "cold-called" and solicited by Gearin (by telephone). Gearin identified herself at that time as a "loan officer for Castle Point.

Gearin, aware that Ngwa was already in foreclosure, informed Ngwa that Castle Point could issue plaintiff with a "refinance" money loan for just over "one million dollars", with a "lower rate of interest"; and resultant "lower" monthly mortgage payment obligations than that which existed on plaintiff's current mortgage. Gearin emphasized to Ngwa that her loan proposal was "the only way" that Ngwa could "save" her home from foreclosure. Gearin further advised Ngwa that such a refinance transaction would result in "significant cash out" to Ngwa.

Ngwa informed Gearin as to her income status at the time of Gearin's initial solicitation by telephone. Gearin advised Ngwa at that hat time that her income was sufficient enough to allow her to proceed with an application on the subject refinancing.

Ngwa was interested in Gearin's proposal, as she sought to retain possession of her home. Gearin emphasized to Ngwa that if she remained current on the subject proposed loan, that Ngwa would qualify for a further refinancing in the future, with even better payment terms. Based upon the representations made by Gearin, Ngwa decided to proceed with application for the subject refinancing.

Ngwa provided Gearin with information concerning her earnings, as well as tax return related documents for the preceding calendar year. Ngwa further executed <u>authorizations permitting release to Castle Point of all of her applicable income tax record/ return information on file with Internal Revenue Service and/or applicable tax authorities, in connection with this transaction</u> (Exhibit 1).

Ngwa was provided with "initial disclosures" by defendant Castle Point (through regular mail), pursuant to correspondence dated December 29, 2006 (Exhibit 2). **None of**

these disclosures, however, contained a Federal Truth In Lending Statement; nor did any of these disclosures contain information concerning the loan's "Annual Percentage Rate"; "Finance Charge"; or "Amount Financed". These disclosures also inaccurately set forth the subject loan "amount" as $1,135,000.00. Gearin instructed Ngwa (by telephone) to execute the enclosed disclosures, and return them to defendant Castle Point, by mail. Gearin explained to Ngwa that plaintiff's execution of these documents was necessary to enable plaintiff to "close" on the subject loan. No attempts were ever made by defendants Castle Point or Gearin to explain the contents of any of these documents comprising said "initial disclosures". These were the only such "initial disclosures" received by Ngwa concerning this loan.

Gearin scheduled a "closing" of the subject transaction to take place at Ngwa's residence, on January 25, 2007. This "closing" consisted of Ngwa being presented with numerous documents for her execution by a notary assigned by defendant Royal.. Ngwa was told by Gearin that it was not necessary for her to retain an attorney for this proceeding. As it turned out, the notary appearing at the "closing" possessed absolutely no knowledge as to the contents of any of the documents presented to the plaintiff; but was present only for the purpose of notarizing plaintiff's signatures.

The Honorable Court should note that defendants' counsel has previously exchanged a duplicate copy of "re-disclosure" allegedly forwarded to Ngwa by Castle Point, pursuant to correspondence dated January 24, 2007 (Exhibit "3"). Plaintiff denies having received said disclosures with said correspondence (as there is no mention of it within plaintiff's Complaint); but it is clear that such documents were not received by

Ngwa before the date of "closing" of the loan, given that Castle Point claims  to have mailed

such documents on January 24, 2007 (one day prior to the subject "closing"); and given that

the copies of these disclosures allegedly provided to plaintiff, which  contain her signature,

were apparently signed by plaintiff at the "closing" of the loan (as said documents are

signed January 25, 2007).  **These January 24, 2007 "redisclosures" allegedly forwarded**

**by Castle Point did not, however, contain a Federal Truth In Lending Statement; or**

**nor did any of these disclosures contain information concerning the loan's "Annual**

**Percentage Rate"; "Finance Charge"; or "Amount Financed".**

Ngwa was presented with several documents for her execution at the "closing"

One of these papers was a document entitled "Uniform Residential Loan Application"

(Exhibit 4), dated January 25, 2007. This document reflects that it was prepared by

Gearin.  **It lists plaintiff's combined monthly "gross income" as $30,000 (all of the**

**terms on said document were typewritten/computer printed).  Ngwa had never**

**provided such income information to either Castle Point or Gearin.  The income**

**figure contained in this document (as imputed by Gearin) was approximately five**

**times the actual amount of monthly earnings derived by plaintiff Ngwa at that time;**

**and was entirely contrary to the income information previously provided by Ngwa**

**to Castle Point and Gearin.**

Ngwa was also presented at the "closing" with a document entitled "Mortgage"

(Exhibit 5).  This document evidenced the subject mortgage loan being issued by Castle Point

 to plaintiff consisting of a principal loan balance of $1,165,,000.00 (a figure which had

never been disclosed to Ngwa prior to the date of "closing".  Annexed to this document was

an additional document entitled "Adjustable Rate Rider" (Exhibit 5). **This document evidenced the loan as containing an adjustable rate of interest, with an initial interest rate of 11.875%, subject to change on February 1, 2012. The "Adjustable Rate Rider" reflected that the interest rate could increase to as much as 17.875% over the term of the note (30 years)**. **Furthermore, as a result of the initial interest rate assessable against the subject loan, the initial monthly payment amount on the loan was $11,871.36; more than double what Ngwa had been paying on her prior mortgage (with such monthly payment amount subject to increase, pursuant to the loan's variable rate).**

Furthermore, Ngwa was also provided with a document at "closing" entitled "Adjustable Rate Note" (Exhibit 6) and "Federal Truth In Lending Disclosure Statement" (Exhibit 7). The "Adjustable Rate Note" contained the same information contained within the "Adjustable Rate Rider". The "Federal Truth In Lending Disclosure Statement" was the first such document ever received by plaintiff on the subject transaction. This document set forth the following loan terms: (i) **"ANNUAL PERCENTAGE RATE"** of the subject mortgage loan (described as "The cost of your credit at a yearly rate") as 12.457%; (ii) **"FINANCE CHARGE"** of the subject mortgage loan (described as "The dollar amount the credit will cost you") as $3,157,887.08; (iii) **"Amount Financed"** on the subject mortgage loan (described as "The amount of credit provided to you or on your behalf") was $1,115,801.95; (iv) **"Total of Payments"** of the subject mortgage loan (described as "The amount you will have paid after you have made all payments as scheduled") was $4,273,689.03. This document further "estimated" that Ngwa would make monthly

payments consisting of $11,871.36 for the  first "359 months" of  the subject loan; and would make a final monthly payment of $1,870.79. <u>None of this  information had ever been provided to plaintiff previously</u>.

Ngwa was also served at the "closing" with a document entitled "Settlement .Statement of Charges"  (Exhibit 8).  This document set forth various charges which were assessed against plaintiff, payable from the proceeds of the subject loan.  These charges included: **(i)** a "loan origination fee" of 4% to Castle Point, **resulting in a fee of $46,660.00**; **(ii)** "Application Fee" to Castle Point, in the  amount of $595.00; **(iii)** "Processing Fee" to Castle Point, in the amount of $795.00; **(iv)** "Settlement or closing fee" to Royal, in the amount of $375.00.  The HUD Statement further reflected an itemization of charges incurred by Ngwa,  in connection with the processing of the subject transaction, as follows: **(a)** $1,165,000.00; as the "Loan Amount"; **(b)** $83,131.40 as the  "Total Settlement Charges"; **(c)** $1,008,265.27 as "Total Disbursements to Others";  **(d)** $73,000.00 as the amount of "cash funds" to plaintiff Ngwa.

The cash moneys received by Ngwa were subsequently used by her to make the monthly mortgage payment ($11,871.36) on the subject loan.  Once these moneys were exhausted, however, Ngwa ultimately fell into default on the loan; following which time an action for foreclosure was commenced by GMAC  as "assignee" to the note (Exhibit 9).

**<u>Amended Complaint</u>**

Plaintiff commenced the subject lawsuit by filing of the Complaint with the Clerk of the Court on January 25, 2008. Plaintiff thereafter filed an Amended Complaint on

April 30, 2008.  Duplicate copies of plaintiffs' Complaint and Amended Complaint are annexed to defendants' motion papers.

Plaintiff, on the first cause of action raised in her Amended Complaint, seeks money damages against Castle Point,  pursuant to the Federal Truth In Lending Act ("the Act"),  as set forth by 15 U.S.C.  § 1601 et Seq., as well as Federal Reserve Board Regulation Z 12 C.F.R. 226.  This cause of action arises from Castle Point's failure to provide mandated initial Federal Truth In Lending disclosures prior to the date of consummation of the subject loan.

Plaintiff, on the second cause of action raised in her Amended Complaint, seeks judicial enforcement of her rescission of the subject mortgage and note against defendant GMAC and/or Castle Point, pursuant to 15 U.S.C. § 1635, arising from said failure on the part of Castle Point to provide mandated initial Federal Truth In Lending disclosures prior to the date of consummation of the subject loan.

Plaintiff, on the third cause of action raised in her Amended Complaint, seeks actual money damages against defendants Castle Point, Gearin and Royal, in an amount to be determined at trial, as well as remuneration for costs incurred in bringing the subject action. Plaintiff on the fourth cause of action raised in her Amended Complaint alleges rescission of the subject mortgage and loan against defendants GMAC and/or Castle Point.  Both of these causes are based upon defendants' violation of the New York State Deceptive Act and Practice Statute (as codified by Section 349 of the New York State Business Law); specifically: **(i)** Castle Point and/or Gearin knowingly inflated plaintiffs' income in connection with the processing of the subject loan, as reflected by loan documents

7

processed by said defendants; and contrary to the income information previously provided by plaintiffs to defendants; **(ii)** Castle Point and/or Gearin knowingly failing to provide plaintiff with mandated initial disclosures concerning the material terms of the loan, thereby preventing plaintiff from learning about the complete nature and status of the loan; and preventing plaintiff from being able to engage in meaningful comparison shopping with other borrowing opportunities potentially available to her at that time; (**iiii**) Castle Point and/or Gearin knowingly misrepresenting to plaintiff that she would be receiving significant cash funds from the subject transaction; when in fact defendants knew that Ngwa would be forced to apply such moneys towards her mortgage payments, as her income status would otherwise not allow her to afford the payment obligations imposed by the loan; **(iv)** Castle Point and Gearin misrepresented to plaintiff that she could qualify in the future for another refinance transaction with even better lower monthly payment terms, in the event that Ngwa was able to remain current on the subject loan.  This statement was plainly intended to entice Ngwa into entering the subject transaction, despite both Castle and Gearin knowing full well that plaintiff's actual income status would never allow her to remain current on the subject loan for any extended period of time; **iv)** Royal assessed fees in the capacity as "closing agent"/"settlement agent" (and in Castle Point assigning  Royal in such capacity), when in fact Royal took no measures to review the contents of any of the documents  provided to Ngwa during the "closing";  and did not even attend said "closing".

Plaintiff, on the fifth cause of action raised in her Amended Complaint, seeks actual money damages in an amount to be determined at trial, against Castle Point, as well as remuneration for costs incurred in bringing the subject action.  This claim is based upon

Castle Point's violation of Section 589 of the New York State Banking Law; specifically, in the assessment of a plainly excessive "loan origination fee" of 46,660.00.

Plaintiff, on the sixth cause of action raised in her Amended Complaint, seeks money damages in an amount to be determined at trial, including compensatory damages and punitive damages. This cause of action is grounded in fraud. The actions taken by Castle Point, Gearin and/or Royal on the subject loan were plainly intended to both deceive and defraud Ngwa, so as to prevent plaintiff from discovering defendants' fraudulent scheme; and to induce Ngwa to rely on defendant's misrepresentations and concealment of material facts concerning the subject loan, all to plaintiff's obvious detriment.

Plaintiffs, on the seventh cause of action raised in her Amended Complaint, seeks rescission of the subject mortgage loan against Castle Point and/or GMAC, by reason of the fraudulent and deceptive actions perpetrated against her by Castle Point, Gearin and Royal. This cause of action is based upon general principles of equity.

Plaintiff, on the eighth cause of action raised in her Amended Complaint, seeks money damages against Castle Point, by reason of said defendant's negligent underwriting, in approving Ngwa for a loan for which she clearly never should have qualified.

Plaintiff, on the ninth and tenth cause of action raised within her Amended Complaint, seeks money damages , based upon Royal having impermissibly escrowed funds on the subject loan, in the capacity of "Settlement Agent"/"Closing Agent", when such services are required to be performed by an attorney. The ninth cause of action is based upon dictates imposed by the Real Estate Settlement Procedures Act, as set forth by 12 U.S.C. § 2601. The tenth cause of action is based upon the dictates imposed by

the New York State Judiciary Law; specifically Sections 484 and 495 of said statue.


## ARGUMENT


**I.   DEFENDANT CASTLE POINT VIOLATED THE TRUTH IN
LENDING ACT  BY FAILING TO PROVIDE PLAINTIFF
WITH TIMELY DISLOSURES CONCERNING THE
MATERIAL TERMS OF THE LOAN; AS WELL AS
FAILING TO PROVIDE PLAINTIFF WITH AN INITIAL
<u>TRUTH IN LENDING DISCLOSURE STATEMENT</u>**


The Federal Truth In Lending Act, as dictated by 15 U.S.C. § 1601, and Federal

Reserve Regulation Z, 12 C.F.R § 226 (which implements the Act), sets forth the

procedure which a lender must follow in providing disclosure about a loan to a

prospective borrower.  The Act requires a lender to provide such disclosures not only on

the date of consummation of a transaction; **but also prior to said date**. The initial

disclosures which lenders are mandated to provide on closed-end mortgage loans secured

by one's residential dwelling includes information as to: **(i)** The "Annual Percentage Rate"

applicable to the loan; **(ii)** The "Finance Charge" applicable to the loan; **(iii)** The "Amount

_Financed" applicable to the loan; **(iv)** The total number of payments to be made on the

loan; **(v)** The payment schedule on the subject loan.  See <u>15 U.S.C. §  1638</u>. See also

<u>Floyd v. Security Fin. Corp of Nevada</u>, 181 F. Supp 2d 1137 (D. Nev. 2001); <u>Basile v.

H&R Block, Inc.</u>, 897 F. Supp. 194 (E.D. Pa. 1995).  Both the "Annual Percentage"

Rate" and the "Finance Charge" must be particularly highlighted, as compared to the

loan's other material terms <u>Ibid</u>.  **The purpose of this requirement is to allow a consumer**

**to make an informed and rational economic decision about the financial aspects of a**

**transaction prior to entering into it; and to encourage "comparison shopping".**    Ibid.

See also Truth In Lending, National Consumer Law Center/Sixth Edition, (Section 4.3,

entitled "Timing  of Disclosures") by Elizabeth Renuart and Kathleen Kees (2007).  These

disclosures are required to be made *"before the credit is extended"* (15 U.S.C. § 1638(b);

and even more specifically: *"(a) before consummation or (b) within three business days*

*after the creditor receives the consumer's written application,whichever is earlier"* (italics

added)  (See Regulation Z §  226.19(a)(1).  **The failure of a lender to provide a borrower**

**with such mandated material disclosure prior to the date of consummation of the loan,**

**in the manner set forth by the statute, entitles a borrower to actual money damages, as**

**well as statutory damages for each violation of the statute committed by the lender,**

**pursuant to 15 U.S.C. § 1640.**

The Federal Truth In lending Act defines "consummation" as *"the time that a*

*consumer becomes contractually obligated on a credit transaction"* (italics added).  See

Regulation Z § 226.2.  This date, in a closed end mortgage transaction, is virtually always

the date of "closing" (as it is at the "closing" wherein  a borrower becomes contractually

obligated, pursuant to execution of a mortgage and note).  **Contrary  to what defendants'**

**counsel suggests, there are no documents within defendants' possession which reflect**

**that Ngwa became contractually obligated on the subject loan on any date beyond**

**January 25, 2007 (as the subject Mortgage and Adjustable Rate Note were effectuated**

**upon said date)**.  Accordingly, Ngwa was supposed to receive Federal Truth In Lending

disclosures prior to January 25, 2007.  Defendants' counsel's assertion that Castle Point's

provision of Federal Truth In Lending disclosures at the "closing" was I compliance with

the Act is entirely inaccurate, as such an interpretation renders the purpose of making "initial

 disclosures" meaningless (and thereby negates  "comparison shopping" which is one of

the essential purposes of the Act in the first place).  **Furthermore, it is clear that Ngwa**

**never received a Federal Truth In Lending Statement prior to January 25, 2007**.

None of the "initial disclosures" forwarded (or allegedly forwarded) by Castle Point

to Ngwa contain a Federal Truth In Lending Statement.  As no initial statement was ever

provided by Castle Point concerning the material terms of the loan (including the loan's

"Annual Percentage Rate", "Finance Charge" and "Amount Financed"), Castle Point has

completely violated the disclosure dictates imposed by  15 U.S.C. § 1638 and Regulation Z §

226.19(a)(1). As such, plaintiff is completely within her rights to make claim for actual

money damages, as well as statutory damages, pursuant to 15 U.S.C. §  1640.

   **Furthermore, a lender's failure to provide timely disclosures gives rise to an**

**ex tended right on the part of the borrower to rescind and/or cancel the subject**

**transaction,  beyond the three day period wherein a borrower can automatically**

**rescind, pursuant to 15 U.S.C. § 1635.  This extended right to rescind lasts for three**

**years from the date of "closing" of the subject transaction**.  See 15 U.S.C. § 1635;

Regulation Z § 226.15(a)(3) and Regulation Z § 226.23 (a)(1).  See also Truth In Lending,

National Consumer Law Center/Sixth Edition (Section 6.4.2, entitled "Failure to Make

Material Disclosures Properly"), by Elizabeth Renuart and Kathleen Keest (2007). A

consumer's "actual  knowledge " is not a relevant factor, in those situations where

disclosures are not  given in the proper form.  Ibid.  See also Weeden v. Auto Workers

Credit Union, Inc., 173 F.3d 857 (6th Circuit/1999); Gibbons v. Interbank Funding Group, 208 F.R.D. 278 (N.D. Cal. 2002); Williams v. Empire Funding Corp., 109 F. Supp. 2d 352 (E.D. Pa 2000).

 The five material disclosures that must always be properly and accurately disclosed in order for a lender in a closed end transactions in order to terminate a borrower's right to cancel (after the initial three day period set forth by 15 U.S.C. § 1635), are the transaction's applicable: **(i)** "Annual Percentage Rate"; **(ii)** "Finance Charge"; **(iii)** "Amount Financed"; **(iv)** "Total of Payments"; **(v)** "Payment Schedule" (15 U.S.C. § 1638 and Regulation Z § 226.23(a). This information is to be provided in a Federal Truth In Lending Statement which "clearly and conspicuously" provides such disclosure; and which places particular emphasis on the loan's "Annual Percentage Rate" and "Finance Charge" (See 15 U.S.C. § 1632 (a); 15 U.S.C. § 1638; 15 U.S.C.§ 1602(u); Regulation Z § 226.17(a); and Regulation Z § 226.23(a)(3). See also First Nat'l Bank v. Office of the Comptroller, 956 F.2d 1456 (8th Circuit/1992). See also Truth In Lending, National Consumer Law Center/Sixth Edition (Section 4.2.6, entitled "More Conspicuous: Annual Percentage Rate and Finance Charge"), by Elizabeth Renuart and Kathleen Keest (2007). **The failure on the part of a lender to provide accurate initial disclosures prior to the date of consummation of a loan results in an extended right to rescind on behalf of the consumer** .

 As Castle Point failed to provide Ngwa with material disclosures concerning the subject transaction at any time prior to the date of consummation of the transaction at issue; plaintiff herein has properly exercised her right to rescind/cancel the subject

loan. Ngwa has exercised this right on two fronts: **(i)** A Verified Answer interposed in connection with a foreclosure action commenced against her on a related State foreclosure action (Exhibit 9); as well as **(ii)** commencement of the instant action. The filing of a Complaint has been held sufficient as a "written communication" of the consumer's election to cancel. See <u>Jones v. Saxon Mortgage, Inc.</u>, 161 F.2d 2(table), 1998 WL 614150 (4th Circuit, September 9, 1998); <u>Taylor v. Domestic Remodeling, Inc.</u>, 97 F.3d 96 (5th Circuit, 1996); <u>Garedakis v. Indymac Bank,</u> 2004 WL 2254676 (N.D. Cal. October 4, 2004); <u>Thomas v. GMAC Residential Funding Corp.</u>, 309 B.R. 453 (D.Md 2004); See also <u>Truth In Lending</u>, National Consumer Law Center/Sixth Edition (Section 6.6.2.5, entitled "Can a Complaint Serve as The Consumer's Notice of Cancellation?"), by Elizabeth Renuart and Kathleen Keest (2007). In the subject action, Ngwa has asserted her right to cancel/rescind the subject loan on the basis of those material violations of the Truth In Lending Act enumerated herein.

## II. DEFENDANTS CASTLE POINT, GEARIN AN ROYAL VIOLATED THE NEW YORK STATE DECEPTIVE ACTS AND PRACTICES UNLAWFUL STATUTE, AS CODIFIED BY SECTION 349 OF THE NEW YORK STATE GENERAL BUSINESS LAW

The New York State Deceptive Acts and Practices Unlawful Statute (New York State General Business Law Section 349(h) permits a consumer who has been injured or damaged due to a violation of the statute to bring an action in such individual's name to enjoin such unlawful act or practice. The statute allows for recovery of money damages

(actual damages or fifty dollars, whichever is greater, or both on such actions).  A Court

may also award treble damages in the event of a finding that the statute has been violated

A party seeking to bring claim for damages under the New York State Deceptive Acts

and Practices Unlawful Statute must be able to establish: **(i)** that the challenged conduct

of the defendant is consumer related; **(ii)** that the defendant is engaging in an act or

practice that is deceptive or misleading in a material way; and, **(iii)** that plaintiff has been

injured by reason thereof.  Oswego Laborers' Local 214 Pension Fund v. Marine Midland

Bank, N.A. 85 NYS2d 20, 623 NYS2d 529, 647 NE2d 741 (1995)  The statute does

not require proof of justifiable reliance; but a party must show that the defendant engaged

in a materially deceptive act or practice which caused actual, although not necessarily,

pecuniary harm.  Id.  The "consumer oriented conduct" referenced by the statute does

not mandate repetition or pattern of deceptive behavior, and thus a plaintiff does not need

to show that the defendant committed the so-called complained-of acts repeatedly; but

instead must establish that such acts or practices have broader impact on consumers at

large,  Id.  A private contract dispute unique to the parties involved in a subject transaction

will not qualify as "consumer oriented conduct".  Oswego Laborers'Local 214 Pension

Fund v. Marine Midland Bank, N.A. 85 NYS2d 20, 623 NYS2d 529, 647 NE2d 741

(1995); Revlon Consumer Products Corp. v. Arnow; 238 AD2d 223, 657 NYS2d 9 (1997,

1st Dept.); Pellechia v. Pellechia, Inc. v. American National Fire Insurance Company,

244 AD2d 395, 665 NYS2d 565 (1997/2nd Dept.)

     The Residential Loan Application documents prepared by Castle Point and Gearin

blatantly inflates plaintiff's combined monthly gross income.  **Such information was**

**clearly falsified for the express purpose of enabling defendants to justify Ngwa being approved for a loan on which she never should have qualified. Castle Point was therefore able to strip Ngwa of her equity, while Gearin likely obtained a significant commission for her "services".** Castle Point and/or Gearin clearly saw fit to ignore plaintiffs' actual combined income status, despite having been told directly by plaintiff as to what they were earning; and despite having even been provided by plaintiffs with applicable tax return/record authorizations.

      Defendants' counsel suggests that Castle Point should be absolved of any wrongdoing in this matter, by reason of Ngwa having executed documents presented to her at the "closing". This argument ignores the fact that Ngwa was denied a reasonable opportunity to compare the terms of the loan with other borrowing opportunities available to her, by reason of having not been provided with initial disclosures concerning the material terms of the loan. Secondly, Castle Point, Gearin and Royal knew full well that Ngwa was being provided with documents at the "closing" by a notary who possessed no information as to any of the contents contained within these papers. It was therefore palpably improper for Royal to represent itself as a "closing agent"/"settlement agent" when it did not even attend the closing. Thirdly, Castle Point and Gearin possessed information which clearly established the falsification of plaintiff's income status in defendants' prepared loan documents. The fact that Ngwa subsequently signed this document at a "closing" does not suddenly make such information verifiable for Castle Point. Clearly, if Ngwa was attempting to mislead defendants by providing false information, it would have made no sense for her to execute the Tax Record Authorizations

provided to Castle Point and Gearin.  Fourthly, despite what defendants' counsel suggests, Castle Point and Gearin knew that plaintiff's income status would not allow her to remain current on the subject loan (**this is why defendants falsified plaintiff's income information in the first place**).  Castle Point and Gearin further acted deceptively in representing to Ngwa that the subject loan was the "only way" for plaintiff to "save her home"; and that Ngwa could receive a future refinance loan in the future with even better payment terms ( a representation which defendants' knew was false, given that plaintiff's income would never enable her to make the monthly payments required of the loan, over an extended period of time).  Defendants' emphasis that plaintiff was receiving significant cash funds (approximately $73,000.00) was also misleading, because the onerous monthly payment terms of the loan (almost $12,000.00 per month) would exhaust these funds in a relatively short period of time.

The above-noted actions perpetrated by Castle Point and Gearin were clearly "consumer-related and consumer-oriented", in that such conduct arose from an act or practice perpetrated by a licensed mortgage lender; its loan officer; and its settlement company who regularly meets with prospective borrowers inquiring about and/or bringing application of a proposed refinancing.  The actions taken,  in the processing of plaintiff's' loan application, did not result from a "private contract unique to the parties", but from a process engaged in regularly by defendants, involving a consumer credit transaction.

**Furthermore, the actions taken by said defendants were clearly deceptive and materially misleading, in that they were orchestrated by Castle Point's loan officer for the specific purpose of enabling plaintiff to qualify for a loan which**

**defendants knew was of no tangible benefit to the plaintiffs**.  Ngwa went from having

an outstanding mortgage balance approximating  $986,000 to  a mortgage with a markedly

higher loan principal ($1,165,000.00).  The corresponding increase in principal on the

subject loan, combined with a variable rate , results in a significantly higher monthly

payment amount (more than double) than that which plaintiff had been paying, on a

mortgage which defendants knew plaintiff had defaulted upon, resulting in plaintiff having

been in foreclosure.  Defendants also knew that the increased principal in the subject loan

resulted in a significant reduction in equity which plaintiff had in her home.  The subject

loan also resulted in excessive closing costs incurred by plaintiff; and with the resultant

cash funds received by Ngwa ($73,000.00) as being entirely misleading because such funds

were  exhausted shortly thereafter, by the dramatic increase in plaintiff's monthly

mortgage payment.  As such, Castle Point, Gearin and Royal knew that there was absolutely

no net tangible benefit gained by the plaintiff from the subject transaction.

Plaintiff has clearly been damaged and/or injured by the actions taken by Castle Point,

Gearin and Royal, in that the title to her residential property has been subsequently impaired

by the subject loan; with Ngwa having lost significant (if not all) equity in her home; and

with GMAC having already commenced a foreclosure action against the plaintiff.  Defendants'

actions were taken in connection with loan processing activities which defendants regularly

undertake for a broad consumer base interested in obtaining financing based upon existing

equity in their residential properties.  These actions do affect the "public interest at large";

and are therefore ripe for a General Business Law Section 349 claim.

### III.  DEFENDANTS CASTLE POINT AND ROYAL VIOLATED NEW YORK STATE BANKING LAW SECTION 589, IN ASSESSING AN EXCESSIVE "LOAN ORIGINATION FEE"

New York State Banking Law Section 589 is designed to ensure that mortgage entities, including brokers, are operating in the best interests of New York homeowners and potential homeowners.  New York State Banking Law Section 589 is part of Article 12-D of the New York State Banking Law entitled "Licensed Mortgage Bankers".  New York State Banking Law Section 589 states that the "purpose" of Article (Article 12-D) "is to protect New York consumers seeking a residential mortgage Loan and to ensure that the mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices".  Section 598(3) of the New York State Banking Law references a private right of action on behalf of an individual consumer, in connection with Article 12-D; as the statute sets forth the following language: *"Liquidated damages.  In addition to any other remedy which an applicant for a mortgage loan or mortgagor may have against a license, registrant or exempt organization for breach of contract or agreement to make a mortgage loan, the court, after* *considering the circumstances may award the plaintiff, upon granting a judgment in his favor, in an individual action on such claim..."* (italics added).  it is also clear that Castle Point is subject to the dictates imposed by this act, as New York State Banking Law Section 590(g) describes a *"Registrant" or "Mortgage Broker" as ... an entity registered ... to engage in the business of soliciting, processing, placing or negotiating mortgage loans for others, or offering to solicit, process, place or negotiate mortgage loans for others."* (italics added).  Furthermore, Section 590(f) describes

a *"Licensee" or "mortgage banker" as. . . ."an entity who or which is licensed ... to
engage in the business of making mortgage loans in this state."* (italics added). The
actions taken by defendant Gearin, are also covered by the language of Section 590(d):
*"Soliciting, processing, placing or negotiating  mortgage loan shall mean for compensation
or gain, either directly or indirectly, accepting or offering to accept an application for a
mortgage loan . . . "* (italics added).

   Defendant  Castle Point assessed a "loan origination fee" of $46,660; as well as
various "processing fees" ( including :an "Application Fee" of $595.00 and  a  "Processing
Fee" of $795.00) on a loan which defendant knew was completely to plaintiff's detriment.
 Furthermore,  Royal saw fit to assess a "Settlement or closing fee" of  $375.00, despite not
even being present for the "closing" on this matter.  As Castle Point and Royal  clearly did
not operate "honestly" and "fairly" in its dealings with plaintiffs, defendants' fees" were
plainly unjustified.  Accordingly, plaintiff has clearly set forth the elements of a valid claim
pursuant to New York State Banking Law Section 589.


## IV.  DEFENDANTS CASTLE POINT, GEARIN & ROYAL COMMITTED FRAUD IN THE PROCESSING OF THE SUBJECT REFINANCE LOAN TRANSACTION


        Plaintiff  has also plainly satisfied those elements necessary to establish a cause of
action against defendants predicated on fraud.  New York Courts universally hold that:
"the elements of a claim of fraud under New York law are: **(1)** a false misrepresentation
of fact; **(2)** with scienter (deliberately or knowingly); **(3)** with an intent that a party will act

or refrain from acting or refrain from acting in reliance on the misrepresentation; and, **(4)** that the party suffered pecuniary loss as a result of the reliance."  <u>Mercado v. Playa Realty Corp.</u>, 2005 WL 1594306 at 12 E.D.N.Y. (2005); <u>Bonnie & Co. Fashions, Inc. vs. BankersTrust Co.</u>, 945 F. Supp 693 (E.D.N.Y. 1996).  Any such fraud claim usually must be stated with particularity, pursuant to Federal Rule of Civil Procedure Rule 9(b); which includes requirements that the subject Complaint: **(i)** "specify the statements that the plaintiff contends were fraudulent"; **(ii)** identify the speaker; **(iii)** "State when and where the statements were made; and, **(iv)** explain why the *statements* were fraudulent.  See <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273 (2nd Circuit/2006).  Rule 9(b) does, however, allow a plaintiff to allege fraudulent intent <u>generally</u>, as long as plaintiff "alleges facts that give rise to a strong inference of fraudulent intent." <u>Shilelds v. Citytrust Bancorp., Inc.</u>, 25 F.3d 1124, 1128 (2nd Circuit/194).

In the subject action, plaintiffs have pleaded facts (as referenced herein) which clearly evidence fraudulent intent on the part of Castle Point and Royal (with the same principals) , as well as Gearin.  Ngwa has alleged within her Complaint that she was solicited and/or "cold-called", by telephone, by Gearin, in connection with the subject transaction, at which time Gearin misrepresented to Ngwa that she qualified for the subject loan; and that such a refinancing would be a "good deal"; and would "save" her house; while giving plaintiff a loan with  "lower monthly mortgage payments".  Contrary to what defendants' counsel suggests, Gearin knew this was untrue (Gearin knew that plaintiff's income wasn't even sufficient to allow her to remain current on the Option One Mortgage, with monthly payment obligations which were almost half of that imposed by the subject loan).  Gearin also

misinformed Ngwa that she would receive "significant cash out" (Gearin knew that

any such cash funds would be shortly exhausted by the terms of the loan); and that

Ngwa could receive even better terms on a future "refinancing" (a ridiculous proposition,

given Ngwa's inability to make the monthly payments on this loan).  As depicted in

plaintiff's Amended Complaint, all of these communications took place by telephone,

between plaintiff and Gearin, in December of 2006 and January of 2007).  Gearin, in

seeking a significant commission on this loan, blatantly inflated plaintiff's income

status within various loan application documents furnished on the loan.  Castle Point,

Gearin and Royal also orchestrated a "closing" on the loan, which involved Ngwa being

presented with documents by a notary who possessed absolutely no knowledge as to any

of the information contained within such documents.  Ngwa also did not receive proper

 initial disclosures concerning the material loan terms of the loan. Ngwa was ultimately

assessed with a $46,660 "loan origination fee"  by Castle Point on this matter, which was

entirely disproportionate to the services provided, given that the loan was entirely to plaintiff's

detriment.  Castle Point and Royal assessed plainly unjustified and excessive fees on a loan

which defendants knew plaintiff could not remain current upon(thereby enabling Castle Point

to completely strip plaintiff of her equity in her home).  Ngwa, who was seeking to prevent

the loss of her home from foreclosure, proceeded with application on the subject  loan, based

upon the misrepresentations made by Gearin; whose actions were always intended to conceal

the true nature and status of this loan.  Ngwa  has been damaged as a result, by reason of their

title to their residential premises having been impaired; with the equity in their property

having been significantly stripped and reduced; and with plaintiff having fallen significantly behind on their monthly mortgage payments, resulting in a subsequent foreclosure action having been commenced by defendant GMAC.

The above-referenced actions taken by defendants herein have been specifically pleaded to satisfy those requirements imposed upon a plaintiff in alleging a defendant's fraudulent intent, pursuant to Federal Rule of Civil Procedure 9(b).

Such actions taken by defendants Castle Point, Gearin and Royal were also clearly "unconscionable"; as defendants knowingly acted in a manner entirely to plaintiff's detriment. On this basis, plaintiff makes claim to rescission of the subject mortgage, based upon general principles of equity.


**V.    PLAINTIFF HAS A VALID CAUSE OF ACTION AGAINST
        DEFENDANT CASTLE POINT, GROUNDED IN NEGLIGENCE**


It is clear that Castle Point took no measures to verify the income figures imputed by Gearin in the Uniform Residential Loan Application documents herein referenced.  Castle Point also knew that Ngwa had defaulted on the prior mortgage loan issued by Option One Mortgage Corporation, which involved payments that were less than half of what the subject refinance loan dictated (the Uniform Residential Loan documents prepared by defendant Gearin reflect the monthly payment on such mortgage as $6,035.00).  Although Castle Point was provided with income record tax authorizations which enabled it to verify plaintiff's income status, as reflected by the Uniform Residential Loan Application prepared by defendant's loan officers, Castle Point did nothing to verify such information, in connection

with the underwriting of the subject loan. This is made clear by the fact that nowhere within the loan file possessed by Castle Point is there any evidence of written verification of plaintiff's income status. Castle Point was also entirely aware of plaintiff's home being in foreclosure at the time of Gearin's solicitation (as a "foreclosure payoff" is even referenced within the applicable "Settlement Statement of Charges"). As such, it plainly defies logic as to why defendant's underwriters approved Ngw a for a loan for which she was woefully unqualified; and with payment obligations which were exponentially greater than that which plaintiff had defaulted upon, resulting in foreclosure. As defendant's underwriters did nothing to verify that plaintiff could remain current and/or was qualified to receive the subject loan, defendant's underwriters were plainly negligent. Such negligence enabled defendant Gearin to orchestrate the "closing" of the subject loan, all to which was completely to plaintiff's detriment; and with plaintiff having received no benefit from the subject transaction.

## VI.    DEFENDANT ROYAL ACTED IMPROPERLY AS A "SETTLEMENT AND/OR CLOSING AGENT ASSIGNED WITH ESCROW OF PROCEEDS DERIVED FROM THE SUBJECT LOAN

The ninth and tenth causes of action in plaintiff's Complaint arises from defendant Castle Point's utilization of defendant Royal, a "non-attorney", as a "settlement agent"/ "closing agent" empowered to perform escrow services on the subject transaction; including the responsibility of escrowing those moneys payable from the proceeds of the loan. New York law, however, mandates that these functions be performed by an attorney.

Section 484 prohibits an individual from the practice of law, "unless regularly admitted to practice as an attorney or counselor, in the courts of record in the state", Section 495 of

the New York State Judiciary law prohibits a corporate entity from performing the functions of an attorney, by stating: : "No corporation or voluntary association shall practice or appear as an attorney-at-law for any person in any court in this state or before any judicial body, nor (b) make it a business to practice as an attorney-at-law for any person, in any of said courts, nor (c) hold itself out to the public as being entitled to practice law, or to render legal services or advice." Section 495 of the New York State Judiciary Law mandates that the escrow of moneys be performed exclusively by an attorney.

As defendant Royal was not empowered to escrow moneys in the subject transaction, its assessment of a fee for "settlement" and/or "closing" services, is clearly "non-bonafide", pursuant to the Real Estate Settlement Procedures Act, as codified by the Real Estate Settlement Procedures Act ("RESPA") , which is set forth by 12 U.S.C. § 2601. (particularly with the principals of Royal being the same as Castle Point). These principals received funds as compensation for services which Royal was not qualified to render.


## VII.    CONCLUSION


The motion by defendant NASB to dismiss all causes of action against it should be denied in all respects, as plaintiffs have clearly satisfied the requisite elements for all causes of actions raised against defendants in their Complaint. Accordingly, defendant's motion should be denied in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
      June 13, 2008

**DAVID M. HARRISON, ESQ.**

By: _____
    David M. Harrison, Esq. (DH 6188
    Attorney for Plaintiff
    Vera N. Ngwa
    Office & P.O. Address
    48 Willoughby Street
    Brooklyn, New York 11201
    (718) 243-2109