UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

VERA N. NGWA,                                    Action No.: 08 CV 859 (AJP)

                  Plaintiff,        **DECLARATION OF DAVID M.
                                                 HARRISON IN OPPOSITION
    -against-                               TO MOTION TO DISMISS**

CASTLE POINT MORTGAGE, INC.,
HEATHER GEARIN, GMAC
MORTGAGE, LLC and ROYAL
SETTLEMENT SERVICES, INC.

                Defendant(s).

--------------------------------------------------------------------x

     DAVID M. HARRISON, ESQ., pursuant to 28 U.S.C. § 1746 declares under the penalty of perjury as follows:

    1.  That I am the attorney for the plaintiff, Vera N. Ngwa. As such, I am fully. familiar with the facts and circumstances of this action, and submit this Declaration in opposition to the motion brought by defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc., to dismiss all causes of action against them, pursuant to FRCP Rule 12(b)(6) and FRCP Rule 9(b), based upon defendants' allegations that plaintiff has failed to state a claim upon which relief may be granted.

    2.  Duplicate copies of the authorizations executed by the plaintiff, permitting release of plaintiff's applicable tax record/return documents, in connection with the subject loan transaction, are annexed hereto as Exhibit "1".

    3.  Duplicate copies of the "initial disclosures" materials forwarded by defendant Castle Point Mortgage, Inc. to plaintiff Vera N. Ngwa (pursuant to correspondence dated

December 29, 2006), are annexed hereto as Exhibit "2".

4.    Duplicate copies of the "re-disclosures" materials alleged by defendant Castle Point Mortgage, Inc. to have been forwarded to plaintiff Vera N. Ngwa (pursuant to correspondence dated January 24, 2007), are annexed hereto as Exhibit "3".

5.    A duplicate copy of the document entitled "Uniform Residential Loan Application" presented to plaintiff for her execution at the "closing" of the subject loan transaction, is annexed hereto as Exhibit "4".

6.    A duplicate copy of the document entitled "Mortgage" (which contains the document entitled "Adjustable Rate Rider") presented to plaintiff for her execution at the "closing" of the subject transaction, is annexed hereto as Exhibit "5".

7.    A duplicate copy of the document entitled "Adjustable Rate Note" presented to plaintiff for her execution at the "closing" of the subject transaction, is annexed hereto as Exhibit "6".

8.    A duplicate copy of the document entitled "Federal Truth In Lending Statement" presented to plaintiffs for her execution at the "closing" of the subject transaction, is annexed hereto as Exhibit "7".

9.    A duplicate copy of the document entitled "Settlement Statement of Charges", also known as the "HUD Statement", presented to the plaintiffs for her execution at the "closing" of the subject transaction, is annexed hereto as Exhibit "8".

10.    A duplicate copy of the Answer served by plaintiff, in connection with a foreclosure action commenced against plaintiff by defendant GMAC Mortgage, LLC, is annexed hereto and made a part hereof as Exhibit "9".

**WHEREFORE,** it is respectfully requested that this Court deny the motion brought by defendants Castle Point Mortgage, Inc., Heather Gearin and defendant Royal Settlement Services, Inc. to dismiss all causes of action against them, and for such other and further relief that this Court deems just and proper.

Dated: Brooklyn, New York
        June 13, 2008

**DAVID M. HARRISON, ESQ.**

By: _____
        David M. Harrison, Esq. (DH 6188
        Attorney for Plaintiff
        Vera N. Ngwa
        Office & P.O. Address
        48 Willoughby Street
        Brooklyn, New York 11201
        (718) 243-2109

**EXHIBIT 1**

**Form W-9**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer Identification Number and Certification**

Give form to the requester. Do not send it to the IRS.

Name (as shown on your income tax return)
VERA N NGWA

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership ☐ Other ▶ _____ ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
10 WEST 123RD STREET

City, state, and ZIP code
NEW YORK, NEW YORK 10027

Requester's name and address (optional)
CASTLE POINT MORTGAGE, INC.
6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND 21075

List account number(s) here (optional)
3000002624

## Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
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

Employer identification number

## Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here  Signature of U.S. person ▶ _____  Date ▶ 1/23/07

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:
- An individual who is a citizen or resident of the United States,
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or
- Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:
- The U.S. owner of a disregarded entity and not the entity.

Form W-9 (Rev. 11-2005)    Cat. No. 10231X    Form Filled Using **DocMagic**
800-649-1362  www.docmagic.com

- The U.S. grantor or other owner of a grantor trust and not the trust, and

- The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.**

Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments (after December 31, 2002). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requestor of Form W-9.

Also see *Special rules regarding partnerships on page 1.*

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line. Check the appropriate box for your filing status (sole proprietor, corporation, etc.), then check the box for "Other" and enter "LLC" in the space provided.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

## Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

---

Form W-9 (Rev. 11-2005)     Cat. No. 10231X     Form Filled Using **DocMagic**
800-849-1362  www.docmagic.com

W9.msc-ein

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

**Exempt payees.** Backup withholding is not required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2).

2. The United States or any of its agencies or instrumentalities.

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities.

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for. . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisors Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt recipients 1 through 7[2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at *www.socialsecurity.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer ID Numbers under Related Topics. You can get Forms W-7 and SS-4 from the IRS by visiting *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

Form W-9 (Rev. 11-2005)                                                                                                      Page 4

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see *Exempt From Backup Withholding* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.
[2] Circle the minor's name and furnish the minor's SSN.
[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one). If you are a sole proprietor, IRS encourages you to use your SSN.
[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules regarding partnerships* on page 1.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA.. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. possessions to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

Form W-9 (Rev. 11-2005)                        Cat. No. 10231X                        Form Filled Using *DocMagic*
                                                                                                                800-649-1362  www.docmagic.com

W9.MISC-W0

**EXHIBIT 2**



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

**STATE:**          New York

| | | | |
|---|---|---|---|
| **MORTGAGE TYPE:** | Conventional | **NAME:** | Vera N Ngwa |
| **LIEN POSITION:** | First | | |
| **RATE TYPE:** | ARM | **ADDRESS:** | 10 W 123rd St |
| | | | NEW YORK, NY 10027 |
| **LOAN PURPOSE:** | Cashout Refinance | | |
| **DATE PREPARED:** | December 29, 2006 | **DISCLOSURE** | |
| | | **TYPE:** | Initial |
| **LOAN NUMBER:** | 3000002624 | | |

Thank you for allowing us to assist you in your financing needs. If you have any questions on anything contained in this packet, please do not hesitate to call us. Enclosed you will find 2 sets of the following documents:

Table of Contents
Federal Application Policy and Disclosure Notices
Credit Score Information Disclosure
RESPA Servicing Disclosure
1003 Uniform Residential Loan Application, page 1
1003 Uniform Residential Loan Application, page 2
1003 Uniform Residential Loan Application, page 3
1003 Continuation Sheet, page 1
1003 Continuation Sheet, page 1
Lock In/Financing Agreement
Good Faith Estimate, page 1
Good Faith Estimate, page 2
New York Application Disclosure and Fee Agreement
Good Faith Estimate Provider Relationship
Affiliated Business Arrangement Disclosure
5-6 ARM Disclosure (3-1-6 Caps)
Castle Point Mortgage Privacy Policy
Fair Lending Notice
Borrower's Authorization
Title Company Borrower Signature Authorization
Notice to Borrower
Consumer Handbook on Adjustable Rate Mortgages

Please sign and return one set in the enclosed postage page envelope to expedite the processing of your loan, and keep the other copy for your records.

***If at any time during the process you have questions regarding your loan, please call your loan officer, Heather Gearin at (800) 358-5990 .

*Table of Contents*          *Page 1*          *Castle Point Mortgage, Inc.*

CPM 000144



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850 Fax (800) 461-0346
www.castlepointmortgage.com

## FEDERAL APPLICATION POLICY AND DISCLOSURE NOTICES

| | | | |
|---|---|---|---|
| Date Prepared: | December 29, 2006 | Application Number: | 3000002624 |
| Borrower: | Vera N Ngwa | Borrower: | |
| Property Address: | 10 W 123rd St | Mailing Address: | 10 W 123rd St |
| | NEW YORK, NY 10027 | | NEW YORK, NY 10027 |

### EQUAL CREDIT OPPORTUNITY ACT DISCLOSURE

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning Castle Point Mortgage, Inc. is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC, 20580, (202) 724-1140.

Income which you receive as alimony, child support or separate maintenance payment, need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan.

Having made this disclosure to you, we are permitted to inquire if any of the income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are relying to qualify for the loan for which you are applying.

### NOTICE REGARDING YOUR UNIFORM RESIDENTIAL APPRAISAL REPORT

You are advised that you have the right, under the Equal Credit Opportunity Act, to obtain a copy of your residential appraisal report used in connection with your application for credit. If you would like a copy, please write to us at: Castle Point Mortgage, Inc., 6800 Deerpath Road, Suite 105, Elkridge, MD 21075. In your letter to us, please include your full name, property address, date of application, and loan number as stated on your application.

### FAIR CREDIT REPORTING ACT DISCLOSURE

In compliance with the Fair Credit Reporting Act, we are informing you that an investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of credit denial due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of your right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of the Fair Credit Reporting Act.

### FINANCIAL PRIVACY ACT DISCLOSURE

The Right to Financial Privacy Act requires that all applicants be informed of the purposes and uses to be made of the information that is solicited. The following is furnished to explain the purpose, use and effects of non disclosure for the information requested. <u>Purpose</u>: The information requested in the loan application is considered relevant to determine the worthiness for the loan applied. <u>Use</u>: The information gathered will be used in the evaluation of your loan application. <u>Effects of non disclosure</u>: Disclosure of the requested information is voluntary. Failure to provide information will not impose a penalty. However, the decision as to loan approval you are requesting must be made on the basis of the information supplied. This may result in a denial of credit, or delays in the processing of your application.

### REAL ESTATE SETTLEMENT PROCEDURES ACT DISCLOSURE

If you are applying for a purchase money loan, we are required to provide to you a Department of Housing and Urban Development guide entitled "Settlement Costs". By signing this disclosure, you are acknowledging receipt of the "Settlement Costs" booklet.

### FEDERAL RESERVE BOARD DISCLOSURE

If you are applying for an adjustable rate mortgage, we are required to provide you with a "Consumer Handbook on Adjustable Rate Mortgages" and an ARM disclosure. By signing this disclosure, you are acknowledging receipt of the CHARM booklet.

### BORROWER'S CERTIFICATION

I have applied for a mortgage loan from Castle Point Mortgage, Inc. (the "lender"). In applying for the loan I have completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I certify that all of the information is true and complete. I made no misrepresentation in the loan application or other application or other documents, nor did I omit any pertinent information.

I understand and agree that the Lender reserves the right to verify the information provided on the application with the employer and/or the financial institutions.

I fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement when applying for this mortgage, as applicable under the provisions of Title 18 US Code, Section 1014.

I specifically acknowledge and agree that the Lender, it's agents, successors and assigns, may report my name, account information, and other information regarding their credit experiences with me to other proper persons, such as credit reporting agencies and other lenders; and that the Lender, its agents, successors and assigns may release information about my loan, including my application and information obtained in connection with it, to affiliates and their agents so that I can be considered for other products and services offered by them.

*Federal Application Policy Disclosure Notices.doc  Page 1 of 2*          *Castle Point Mortgage, Inc.*

The Lender will normally obtain credit reports for all loan applications, and for updates, renewals, or extensions of any credit granted. Upon request, the Lender will inform you if a report has been obtained and will give you the name and address of the agency furnishing the report. I specifically authorize the Lender, its agents, successors and assigns and investors to whom the Lender may offer the mortgage to obtain and share said credit reports.

I specifically authorize the Lender, it successors, assigns and affiliates to request from time to time consumer reports on me from credit reporting agencies in order to determine my eligibility for additional product and/or service offerings; and any consumer reporting agency to provided from time to time consumer reports on me to the Lender, it's successors, assigns and affiliates so that I can be considered for additional product or service offerings. I will not be charged for these reports.

## AUTHORIZATION TO RELEASE INFORMATION

I/We have applied for a mortgage loan from Castle Point Mortgage, Inc. As part of the application process, Castle Point Mortgage, Inc. and the mortgage guaranty insurer may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

I/We authorize you to provide to Castle Point Mortgage, Inc. and to any investor to whom your mortgage may be sold or transferred to, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market and similar account balances; credit history; and copies of income tax returns.

Castle Point Mortgage, Inc. or any investor that purchases the mortgage may address this authorization to any party name in the loan application. A copy of this authorization may be accepted as an original.

## IMPORTANT PROCEDURES FOR OPENING A NEW ACCOUNT – PATRIOT ACT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account.

What this means for you: If you open an account (apply for a loan), we will ask for your name, address, taxpayer identification number, date of birth and other information that will allow us to identify you. Additionally, we will take certain steps to verify your identity, such as asking for your driver's license or other identifying documents or checking other sources. Similar identification requirements apply to non-personal accounts such as corporations and partnerships. Be assured that we recognize the importance of protecting your privacy and safeguarding the confidentiality of the information you provide to us.

## OTHER IMPORTANT INFORMATIONAL NOTICES

RESCISSION NOTICE – If you are refinancing your primary residence, you loan is subject to a three (3) business day Right of Rescission. Funds will not be disbursed until the fourth (4) business day after closing. Sundays and legal holidays are not counted in determining the rescission period.

ATTORNEY NOTICE – You have the right to employ an attorney of your choice licensed in the state that your property is located to represent you in this transaction.

PROPERTY INSURANCE – You may be required to obtain property insurance as a condition of receiving this loan. If property insurance is required, you may secure insurance from a company or agent of your own choosing. The minimum hazard insurance must equal the greater of:

1. 80% of the total property replacement cost as determined by your insurance agent; OR
2. total liens on the property, up to 100% of the total property replacement cost as determined by your insurance agent.

In addition, the deductible for the property insurance cannot exceed the greater of $1,000.00 or 1% of the policy amount.

CONDOMINIUM/PLANNED URBAN DEVELOPMENT INSURANCE – If you reside in a condominium or a PUD, you or your agent must provide us with a Master Hazard Policy.

FLOOD INSURANCE – You may be required to obtain flood insurance as a condition of receiving this loan. If it is determined that your property is located in a special flood hazard boundary area, you are required to obtain a flood insurance policy prior to closing. The minimum flood insurance must equal the lesser of:

1. total property replacement cost as determined by your insurance agent;
2. total liens on the property; OR
3. Federal Emergency Management Agency (FEMA) coverage limit of $250,000.

ESCROW ACCOUNTS – If your loan program does not escrow Taxes and Insurance, it will be your responsibility to pay all taxes, insurance premiums, water, sewer, ground rents and/or other assessments on the property listed as collateral on this loan since we will not escrow for this purpose.

IDENTIFICATION REQUIREMENTS: - At closing, all customers will be required to provide an unexpired, government issued, photo ID. For non US persons, this ID must be one of the following forms: 1. passport number and country of issuance; 2. alien identification card number; or 3. number and country of issuance of any other government issued documentation evidencing nationally or residence and bearing a photograph or similar safeguard.


**I/We do hereby certify that I/We have read, understand and acknowledge receipt of the Federal Application Policy and Disclosure Notices set forth above. I/We understand that these notices do not constitute a loan approval or that a loan approval will automatically be granted.**

|                      | 12/29/06 |
| -------------------- | -------- |
| Vera N Ngwa          | Date     |

|   |      |
| - | ---- |
|   | Date |

*Federal Application Policy  Disclosure Notices.doc  Page 2 of 2*          *Castle Point Mortgage, Inc.*

# NOTICE TO THE HOME LOAN APPLICANT
## CREDIT SCORE INFORMATION DISCLOSURE

| APPLICANT NAME AND ADDRESS<br>Vera N Ngwa<br>10 W 123rd St<br>NEW YORK, NY 10027 | LENDER NAME AND ADDRESS (ORIGINATOR)<br>Castle Point Mortgage<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075<br>(P) (800) 469-4650, (F) (800) 461-0346 |
|---|---|

In connection with your application for a home loan, Castle Point Mortgage, Inc. must disclose to you the score that a consumer reporting agency distributed. the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on the information a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have any questions concerning the terms of the loan, contact the lender.

The consumer reporting agencies listed below provided a credit score that was used in connection with your home loan application.

| Consumer Reporting Agency #1<br><br>Experian<br>PO Box 2002<br>Allen, TX 75013-0036<br>(P)888-397-3742<br><br>Module Used:<br>ExperianFairIsaac<br><br>Range of Possible Scores:<br>300 to 900 | Borrower Vera N Ngwa<br><br>Score: 533<br><br>Created: 12/4/2006 | Factors:<br>39 - SERIOUS DELINQUENCY;<br>10 - PROPORTION OF BALANCE TO HIGH CREDIT ON REVOLVING ACCOUNTS;<br>13 - TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN;<br>18 - NUMBER OF ACCOUNTS WITH DELINQUENCY |
|---|---|---|
| Consumer Reporting Agency #2<br><br>Trans Union Corporation<br>PO Box 1000<br>Crum Lynne, PA 19022<br>(P)800-888-4213<br><br>Module Used:<br>TransUnionEmpirica<br><br>Range of Possible Scores:<br>300 to 900 | Borrower Vera N Ngwa<br><br>Score: 496<br><br>Created: 12/4/2006 | Factors:<br>39 - SERIOUS DELINQUENCY;<br>13 - TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN;<br>10 - PROPORTION OF REVOLVING BALANCES TO REVOLVING CREDIT LIMITS IS TOO HIGH;<br>18 - FREQUENT DELINQUENCY |
| Consumer Reporting Agency #3<br><br>Equifax Credit Info Services<br>Atlanta, GA 30374-0241<br>(P)800-685-1111<br><br>Module Used:<br>EquifaxBeacon5.0<br><br>Range of Possible Scores:<br>300 to 900 | Borrower Vera N Ngwa<br><br>Score: 496<br><br>Created: 12/4/2006 | Factors:<br>38 - SERIOUS DELINQUENCY AND DEROGATORY PUBLIC RECORD OR COLLECTION FILED;<br>18 - NUMBER OF ACCOUNTS WITH DELINQUENCY;<br>10 - PROPORTION OF BALANCES TO CREDIT LIMITS TOO HIGH ON REVOLVING ACCOUNTS;<br>13 - TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN |

I have received a copy of this disclosure.

_____
Vera N Ngwa

_____
12/29/06

*CREDIT SCORE INFORMATION DISCLOSURE*

CPM 000147

## RESPA SERVICING DISCLOSURE

Lender: Castle Point Mortgage, Inc.                                          Loan Number : 3000002624

6800 Deerpath Road, Suite 105, Elkridge, MD 21075

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHTS TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 USC §2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer practices and requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint resolution**

Section 6 of RESPA (12 USC §2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing transfer estimates**

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:
   [ ] We may assign, sell or transfer the servicing of your loan while the loan is outstanding.
   [ ] We are able to service your loan and (we) [ ] will [ ] (will not) [ ] (haven't decided whether to) service your loan.
   OR
   [X] We do not service mortgage loans. [X] and we have not serviced mortgage loans in the past three years.
   [ ] We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.
   [ ] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
      [ ] sell all of the mortgage servicing  [ ] retain all of the mortgage servicing
      [ ] assign, sell or transfer _____% of the mortgage servicing

2. For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:
      [ ] 0 to 25% or none  [ ] 26 to 50%  [ ] 51 to 75%  [X] 76 to 100% or all
   This estimate [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. [ ] We have previously assigned, sold, or transferred the servicing of the first lien mortgage loans.
   OR
   [X] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

   | Year | Percentage of Loans Transferred |
   |------|--------------------------------|
   |      | (Rounded to the nearest quartile -- 0%, 25%, 50%, 75% or 100%) |
   | 2003 | 100% |
   | 2004 | 100% |
   | 2005 | 100% |

   This information [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.

   December 29, 2006                                    Castle Point Mortgage, Inc.
   Date                                                 Presenter Servicer or Lender

**ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT**

I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/we understand that this acknowledgment is a required part of the mortgage loan application.

Borrower Vera N Ngwa                Date    Borrower                            Date

Borrower                           Date    Borrower                            Date

Borrower                           Date    Borrower                            Date

Borrower                           Date    Borrower                            Date

Mortgage Cadence Inc. © 1092 – 0205

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____    Co-Borrower _____

| I. TYPE OF MORTGAGE AND TERMS OF LOAN | | | |
|---|---|---|---|
| Mortgage Applied for | [ ] VA  [X] Conventional  [ ] Other (explain):<br>[ ] FHA  [ ] USDA/Rural Housing Service | Agency Case Number<br>3000002624 | Lender Case Number<br>3000002624 |
| Amount<br>$ 1,135,000.00 | Interest Rate<br>11.625 % | No. of Months<br>360 | Amortization Type: [ ] Fixed Rate  [ ] Other (explain):<br>[ ] GPM  [X] ARM (type): |

| II. PROPERTY INFORMATION AND PURPOSE OF LOAN | | |
|---|---|---|
| Subject Property Address (street, city, state & ZIP)<br>10 W 123rd St NEW YORK, NY 10027 | | No. of Units<br>2 |
| Legal Description of Subject Property (attach description if necessary) | | Year Built<br>1889 |

| Purpose of Loan | [ ] Purchase  [ ] Construction  [ ] Other (explain):<br>[X] Refinance  [ ] Construction-Permanent | Property will be:<br>[X] Primary Residence  [ ] Secondary Residence  [ ] Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made  [ ] to be made | |
|---|---|---|---|---|---|
| 2004 | 2,000,000.00 | 960,383.00 | Cash | Cost: $ | |

| Title will be held in what Name(s)<br>Vera N Ngwa | Manner in which Title will be held | Estate will be held in:<br>[X] Fee Simple<br>[ ] Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

| III. BORROWER INFORMATION | | |
|---|---|---|
| **Borrower** | | **Co-Borrower** |
| Borrower's Name (include Jr. or Sr. if applicable)<br>Vera N Ngwa | | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| | Borrower | | | | | Co-Borrower | | |
|---|---|---|---|---|---|---|---|---|
| Social Security Number<br>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 | Home Phone (incl. area code)<br>(212) 8316178 | DOB (mm/dd/yyyy)<br>10/19/1976 | Yrs.School<br>16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
| [ ] Married  [X] Unmarried (include<br>[ ] Separated  single, divorced, widowed) | Dependents (not listed by Co-Borrower)<br>no. 0  ages | | | [X] Married  [ ] Unmarried (include<br>[ ] Separated  single, divorced, widowed) | Dependents (not listed by Borrower)<br>no.  ages | | |
| Present Address (street, city, state, ZIP)  [ ] Own  [ ] Rent  2 No. Yrs.<br>10 W 123rd St<br>NEW YORK, NY 10027 | | | | Present Address (street, city, state, ZIP)  [ ] Own  [ ] Rent  No. Yrs.<br>NY | | | |
| Mailing Address, if different from Present Address | | | | Mailing Address, if different from Present Address | | | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  [ ] Own  [ ] Rent  No. Yrs. | Former Address (street, city, state, ZIP)  [ ] Own  [ ] Rent  No. Yrs. |
|---|---|

| IV. EMPLOYMENT INFORMATION | | | |
|---|---|---|---|
| **Borrower** | | **Co-Borrower** | |
| Name & Address of Employer  [X] Self Employed<br>Cashman Inc<br>10 New York st<br>New york, NY 10027 | Yrs. on this job<br>4 yrs<br>Yrs. employed in this line of work/profession<br>4.00 | Name & Address of Employer  [ ] Self Employed | Yrs. on this job<br>Yrs. employed in this line of work/profession |
| Position/Title/Type of Business<br>Owner | Business Phone (incl. area code)<br>(917) 2871672 | Position/Title/Type of Business | Business Phone(incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income<br>$ | | Monthly Income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
| | Monthly Income<br>$ | | Monthly Income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone(incl. area code) |

3000002624

Freddie Mac Form 65  7/05<br>Mortgage Cadence Inc. © 1987 – 02/06

Fannie Mae Form 1003  7/05

CPM 000149

Vera N Ngwa

## VI. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 30,000.00 | $ | $ 30,000.00 | Rent | $ | |
| Overtime | | | .00 | First Mortgage (P&I) | 6,035.00 | 11,348.19 |
| Bonuses | | | .00 | Other Financing (P&I) | | |
| Commissions | | | .00 | Hazard Insurance | | 200.00 |
| Dividends/Interest | | | .00 | Real Estate Taxes | | 417.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | .00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 30,000.00 | $ | $ 30,000.00 | Total | $ 6,035.00 | $ 11,965.19 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | | |
|---|---|---|---|
| B/C | | | Monthly Amount |
| | | | $ |

## VII. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use the continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | LIABILITIES | | |
| Cash deposit toward purchase held by: | $ .00 | | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company OPTION ONE MORTGAGE CO 3 ADA WAY IRVINE, CA 92618 | $ Payment/Months 6,035.00 151 | $ * 906,078.00 |
| Acct. no. | | Acct. no. 6470017857855 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 1002 ARTHUR DRIVE LYNN HAVEN, FL 32444 | $ Payment/Months 147.00 124 | $ * 18,209.00 |
| Acct. no. | $ | Acct. no. 988918991710011 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CBNA 1000 TECHNOLOGY DR # MS5 O FALLON, MO 63368 | $ Payment/Months 417.00 38 | $ * 15,532.00 |
| Acct. no. | $ | Acct. no. 2693620 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CITI P.O. BOX 6500 SIOUX FALLS, SD 57117 | $ Payment/Months 73.00 94 | $ * 6,861.00 |
| Acct. no. | $ | Acct. no. 542418027276327 4 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company CHASE 800 BROOKSEDGE BLVD WESTERVILLE, OH 43081 | $ Payment/Months 161.00 34 | $ * 5,352.00 |
| | | Acct. no. 5149231800018162 | | |
| Life insurance net cash value Face amount: $ | $ | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444    Not Included | $ Payment/Months 55.00 87 | $ 4,785.00 |
| Subtotal Liquid Assets | | Acct. no. 344B083561016 | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 810,000.00 | | | |
| Vested interest in retirement fund | $ | Name and address of Company CBNA 143 SPARKS AVE PELHAM, NY 10803 | $ Payment/Months 135.00 34 | $ * 4,498.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | | Acct. no. 61782173 | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ .00 | |
| | | Total Monthly Payments | $ .00 | |
| Total Assets a. | $ 810,000.00 | Net Worth (a minus b) $ 810,000.00 | Total Liabilities b. | $ .00 |

3000002624

Freddie Mac Form 65 7/05
Mortgage Cadence. © 1087 – 02/06

Fannie Mae Form 1003 7/05

CPM 000150

Vera N Nawa

## V. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10 W 123rd St NEW YORK, NY 10027 | SF | 810,000.00 | 906,076.00 | | 6,035.00 | | |
| | | | | | | | |
| | Totals | $ 810,000.00 | $ 906,076.00 | $ 0.00 | $ 6,035.00 | $ 0.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ |
| b. | Alterations, improvements, repairs | |
| c. | Land (if acquired separately) | |
| d. | Refinance (incl. debts to be paid off) | 963,297.00 |
| e. | Estimated prepaid items | 5,422.35 |
| f. | Estimated closing costs | 69,585.25 |
| g. | PMI, MIP, Funding Fee | |
| h. | Discount (if Borrower will pay) | |
| i. | Total costs (add items a through h) | 1,038,304.60 |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | |
| l. | Other Credits (explain) | |
| | | |
| | | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,135,000.00 |
| n. | PMI, MIP, Funding Fee financed | |
| o. | Loan amount (add m & n) | 1,135,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -96,695.40 |

## VIII. DECLARATIONS

| If you answer "Yes" to any questions a through i please use continuation sheet for explanation. | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | [ ] | [X] | [ ] | [ ] |
| b. Have you been declared bankrupt within the past 7 years? | [ ] | [X] | [ ] | [ ] |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | [ ] | [X] | [ ] | [ ] |
| d. Are you a party to a lawsuit? | [ ] | [X] | [ ] | [ ] |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | [ ] | [X] | [ ] | [ ] |
| (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | [ ] | [X] | [ ] | [ ] |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | [ ] | [X] | [ ] | [ ] |
| h. Is any part of the down payment borrowed? | [ ] | [X] | [ ] | [ ] |
| i. Are you a co-maker or endorser on a note? | [ ] | [X] | [ ] | [ ] |
| j. Are you a U.S. citizen? | [X] | [ ] | [ ] | [ ] |
| k. Are you a permanent resident alien? | [ ] | [X] | [ ] | [ ] |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question below. | [X] | [ ] | [ ] | [ ] |
| m. Have you had an ownership interest in a property in the last three years? | [X] | [ ] | [ ] | [ ] |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home— solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date 12/29/2006 | Co-Borrower's Signature X | Date 12/29/2006 |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER [X] I do not wish to furnish this information | | CO-BORROWER [ ] I do not wish to furnish this information | |
|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native [ ] Asian [ ] Black or African American [ ] Native Hawaiian or Other Pacific Islander [ ] White | Race: | [ ] American Indian or Alaska Native [ ] Asian [ ] Black or African American [ ] Native Hawaiian or Other Pacific Islander [ ] White |
| Sex: | [ ] Female [ ] Male | Sex: | [ ] Female [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) Heather Gearin | Name and Address of Interviewer's Employer Castle Point Mortgage, Inc. |
|---|---|---|
| This application was taken by: [ ] Face-to-face interview [ ] Mail [ ] Telephone [X] Internet | Interviewer's Signature | Date | 6800 Deerpath Road; Suite 105 Elkridge, MD 21075 |
| | Interviewer's Phone Number (incl. area code) (800) 469-4850 | |

Freddie Mac Form 65  7/05
Mortgage Cadence Inc. © 1087 - 02/06

Fannie Mae Form 1003  7/05

CPM 000151

## Statement of Assets and Liabilities
### (Supplement to Residential Loan Application)

Name
Vera N Ngwa

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 1,135,000.00
With interest at      11.625 %, for a term of  360       months and to be secured by property known as:
Subject Property Address (street, city, state & ZIP)
10 W 123rd St NEW YORK, NY 10027

Legal Description of Subject Property (attach description if necessary)

### ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DSNB MACYS 3039 CORNWALLIS RD DURHAM, NC 27709 | $ Payment/Months 3,953.00  1 | $ *  3,953.00 |
| Acct. no. | $ | Acct. no. 419322114 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company       *Not Included SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 30.00  88 | $ *  2,611.00 |
| Acct. no. | $ | Acct. no. 3448083561076 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company       *Not Included SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 29.00  90 | $ *  2,591.00 |
| Acct. no. | $ | Acct. no. 3448083561026 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company       Not Included SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 29.00  87 | $ *  2,521.00 |
| Acct. no. | $ | Acct. no. 3448083561066 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company       Not Included SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 23.00  88 | $ *  2,003.00 |
| | | Acct. no. 3448083561096 | | |
| Life insurance net cash value | $ | Name and address of Company BMBYICBSD PO BOX 6003 HAGERSTOWN, MD 21747 | $ Payment/Months 56.00  34 | $ *  1,936.00 |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 810,000.00 | Name and address of Company       Not Included 603526300659 SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 18.00  89 | $ *  1,601.00 |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 3448083561056 | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ 810,000.00 | | $ 810,000.00 | Total Liabilities b. $  0.00 |

CPM 000152

## Statement of Assets and Liabilities
### (Supplement to Residential Loan Application)

Name
Vera N Ngwa

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 1,135,000.00
With interest at        11.625 %, for a term of 360         months and to be secured by property known as:
Subject Property Address (street, city, state & ZIP)
10 W 123rd St NEW YORK, NY 1002?
Legal Description of Subject Property (attach description if necessary)

| ASSETS AND LIABILITIES |
|---|

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrower if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  *Not Included<br>SALLIE MAE 3RD PTY LSC<br>1002 ARTHUR DR<br>LYNN HAVEN, FL 32444 | $ Payment/Months<br>14.00<br>90 | $<br>1,260.00 |
| Acct. no. | $ | Acct. no.<br>3448083561066 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>DSNB BLOOM<br>3039 CORNWALLIS RD<br>DURHAM, NC 27709 | $ Payment/Months<br>24.00<br>33 | $<br>767.00 |
| Acct. no. | $ | Acct. no.<br>824981 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  *Not Included<br>VERIZON NEW YORK INC<br>PO BOX 165018<br>COLUMBUS, OH 43216 | $ Payment/Months<br>.00 | $<br>93.00 |
| Acct. no. | $ | Acct. no.<br>2126316178460 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>VERIZON NY<br>PO BOX 165018<br>COLUMBUS, OH 43216 | $ Payment/Months<br>93.00<br>1 | $<br>93.00 |
| Acct. no. | $ | Acct. no.<br>617 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | | | | |
| Real estate owed (enter market value from schedule of real estate owned) | 810,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ 810,000.00 | Net Worth (a minus b) | $ 810,000.00 | Total Liabilities b. | $ 0.00 |



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

### LOCK-IN/FINANCING AGREEMENT

Vera N Ngwa, (hereinafter referred to collectively as "Borrower") has/have made an application on December 26, 2006 with Castle Point Mortgage, Inc. ("CPM, Inc.") for a mortgage loan (the "loan") secured by the property located at 10 W 123rd St NEW YORK, NY 10027 ("Property").

Borrower seeks a mortgage loan on the terms set forth below ("Loan"). This Lock-In/Financing Agreement ("Agreement") sets forth the terms under which will afford the Borrower rate protection for the term of this Agreement. **This is not a commitment to make a loan or extend credit. All loan terms not expressly locked in and set forth in this Agreement and any written supplements hereto, are subject to change at any time prior to settlement of the Loan. At this time, there are no circumstances by which the Borrower will close at a lower rate.**

- **Terms applied for and loan conditions:**
  A. Loan Term (in months):                          360
  B. Principal Amount of Loan:                        $1,135,000.00
  C. Type of Loan Program:                            Conventional
  D. Lien Position:                                   First
  E. Rate Type:                                       ARM
  F. Loan Purpose:                                    Cashout Refinance
  G. Monthly Payment (Principal & Interest):          $11,348.19
  H. Private Mortgage Insurance:                      Not Required
  I. Escrows for Real Estate Taxes & Insurance are:   Optional

**In the event that the Borrower selects the Lock-In option, the Borrower and the Property fully qualify for the Loan and the Loan Application is approved, a loan made under this Agreement shall be at the following rate and points (rates effective as of the date of this Agreement):**

| | | | |
|---|---|---|---|
| A. Interest Rate: | 11.625% | | |
| B. Borrower Points: | Loan Origination: | 4.000 | Loan Discount: |
| C. Seller Points (if applicable): | Loan Origination: | | Loan Discount: |

D. Adjustable Rate (ARM) Terms (if applicable):

| | |
|---|---|
| 5.370% | Index |
| 6.375% | Margin |
| 6.000% | Maximum rate adjustment (cap) |
| 3.000% | Maximum interest rate adjustment at the end of the first adjustment period |
| 1.000% | Maximum adjustment each period after the first adjustment |
| 60 | Month interval between adjustment periods |

**CPM, Inc. offers and Borrower elects ONE of the following THREE OPTIONS regarding their rate lock:**
**X 1. LOCKED IN - If Lock-In Option is selected, the following conditions apply:**
This LOCK-IN Agreement expires on February 09, 2007. In the event that the Loan does not close on or before that date, the rates and terms set forth in this option may change and CPM, Inc. will not be obligated to honor the terms quoted herein. THIS LOCK-IN provision is effective only if the Borrower executes this Agreement and returns the original to "CPM, Inc." within 7 days after the above initial application date.

**LOCK-IN FEE.** If this box is checked, you will be required to pay – at the time of initial application – a non-refundable Lock-in Fee in the amount of $0.00. In the event that the Loan closes, the fee will be credited to any up-front costs which you will owe in connection with the loan, including loan discount and loan origination fees.

**If the Loan does not close because you withdraw your application or supply incomplete or incorrect information, then the Lock-in Fee will be deemed to be earned by CPM, Inc., and will not be refunded, in whole or in part, to you. If the loan does not close before the expiration date of the agreement through no substantial fault of the Borrower or CPM, Inc. rejects your Loan application, CPM, Inc. will promptly refund to the Borrower any lock-in fee paid by the borrower.**

Please acknowledge Page 1 of the Lock In/Financing Agreement by initialing below:

_____          _____          _____
Vera N Ngwa                                                         Heather Gearin

*Lock-In/Financing Agreement.doc*          *Page 1 of 3*          *Castle Point Mortgage, Inc.*
*Revised 6/22/2006*

CPM 000154

**2. FLOATING - If Floating option is selected, the following conditions apply:**
The rate applicable to the Loan in the event that Borrower and the property fully qualify for the Loan and the Loan application is approved shall be the market rate on the date of closing. Rates provided for any given loan program are subject to change, and in fact do change, on a daily basis.

**3. FLOAT TO LOCK - If Float to Lock option is selected, the following conditions apply:**
If you select this option, your rate and points will float in accordance with the "FLOATING" option above, until closing, unless you affirmatively act to lock in the interest rate by carefully following the procedure described herein. You may request that the interest rate and points be locked in under this option by sending a fax request, which includes your name, loan number, property address and statement indicating you wish to lock your interest rate in at today's rate to the following facsimile number: (973) 206-0881. Within 24 hours of receipt of your request, CPM, Inc. will lock in your rate and mail you an updated Agreement confirming your loan terms for a specific lock in period. It is your responsibility to call your loan officer 1 day after sending your fax to CPM, Inc., to confirm receipt of the fax and your lock in terms.

**ADDITIONAL INFORMATION:**

There are other fees and charges associated with the Loan application, processing and closing of the Loan that are not reflected in this Agreement. These fees and charges are approximated in the Good Faith Estimate of Closing Costs, which is required to be supplied to you under federal law.

At the time of the execution of this Agreement, you agree to pay a fee of $100.00 for an appraisal report. This fee is **NON-REFUNDABLE** regardless of whether the mortgage loan is approved, declined, withdrawn, or closed for incompleteness. This fee is separate and distinct from any and all fees due in the event a mortgage loan is procured.

In accordance with New York law, CPM, Inc. will make a good faith effort to process the mortgage loan application as expeditiously as possible and stand ready to fulfill the terms of its Lock-In/Financing Agreement before the expiration date of the Agreement or any extension thereof. A good faith estimate of the time necessary to process the closing of your loan (taking into account the time needed for the performance of any local government inspections and any functions necessary to close the loan) is between 20 and 30 days.

The actual time necessary to process and close your loan may vary from the estimate due to certain situations that are unknown at this time. Some of these situations include, but are not limited to, the following:

   a.  the security property is insufficient in value to act as security for the repayment of your loan;
   b.  credit obligations that you failed to report;
   c.  a change in your financial circumstances resulting in your ineligibility for the loan for which you applied;
   d.  a material change or discontinuation of a loan program of an investor or another entity; or
   e.  a delay in CPM, Inc. receiving information from you or from others.

CPM, Inc. is not responsible for delays caused by third party providers of services required as a prerequisite to the making of the Loan (such as appraisers, credit bureaus, escrow and title companies, surveyors, and persons requested to supply income, employment and payment history information). CPM, Inc. cannot be responsible for delays caused by persons or circumstances beyond CPM, Inc.'s control which may result in the Lock-in (rate protection) under this Agreement to expire.

Any Agreement received by the lender by mail or through a broker must be signed by the lender in order to become effective. The borrower may rescind any Agreement until a written confirmation of the agreement has been signed by the lender and mailed to the borrower or to the brokerage business pursuant to its contractual relationship with the borrower. If borrower elects to rescind, the lender must promptly refund any lock-in fee paid.

This Agreement, and performance hereunder, shall be interpreted under and governed by the laws of New Yorkand no modification or addition to this Agreement may be made except in writing, executed by both parties. This Agreement is enforceable by Borrower and Lender.

**This is not a commitment to make a loan or extend credit. The terms herein are expressly contingent upon the Borrower and the Property fully qualifying under the loan program selected, or qualifying with the lender or investor to which the Loan application is provided, the approval of the Loan application by CPM, Inc. and any investor or subsequent assignee of the Loan, and the Borrower's fulfilling all of the requirements imposed by CPM, Inc. or investor, or the lender's agents, as prerequisites to making the loan.**

Please acknowledge Page 2 of the Lock In/Financing Agreement by initialing below:

_____          _____

Vera N Ngwa                                                    Heather Gearin

*Lock-In/Financing Agreement.doc*          *Page 2 of 3*          *Castle Point Mortgage, Inc.*

*Revised 6/22/2006*

CPM 000155

CPM, Inc. cannot guarantee the Borrower's acceptance by any particular loan program and is not responsible for any failure to approve or close a loan or the Loan to which this Agreement is applicable, if the reason for such failure is attributable to any cause other than conduct by which violates state or federal law applicable to the Loan. If information supplied by the Borrower or any third party in connection with the Loan application is discovered to be materially false or misleading, this Agreement shall be void, and any lock in fee shall be deemed earned and non refundable to the borrower.

This Agreement represents the entire Agreement between the parties hereto regarding rate protection. Any modification hereto or supplementary lock-in must be in writing and signed by both parties. **CPM, Inc. will NOT honor verbal statements or commitments different or in addition to the terms set forth in this Lock-In Agreement.**

**No Documentation/Limited Documentation Loan**

If the loan applied for is a "Limited Documentation" or "No Income Verification" Loan, CPM, Inc. reserves the right to change the mortgage loan process to a "Full Documentation" loan application where required or advisable. "Full Documentation" may require verifying information with employer(s), financial institutions and lenders.

**Tasks the Borrower Must Perform Prior to Closing**

We must receive and approve of all items requested during the loan process. Such information includes stipulations that will be requested from you during the process, and possibly at closing.

You will be required to pay all permitted closing costs including but not limited to title insurance costs, all recording costs, lender's attorney fee(s), and mortgage tax.

You must provide us with clear and marketable title to the property given to secure this loan. Any outstanding title judgments must be paid from the proceeds of this loan or out of your own funds prior to closing. Proof of payoff must be provided to us prior to the disbursement of funds.

You must obtain a one (1) year Homeowners Hazard insurance policy covering the subject property, and naming CPM, Inc. (mortgagee) as an additional named insured. The premium for the hazard insurance policy must be paid in advance. If the property is a condominium, CPM Inc. requires a certificate to the Master insurance policy.

All legal matters relative to this transaction must meet with the approval of the lender's attorney or title company.

This Agreement shall be null and void if any information in your application is incorrect or cannot be verified by us, or if there is any change in your financial condition, the property, or any other circumstances which adversely affects the secured property or your ability to repay the loan.

I/We, the undersigned, have read and fully understand the terms of this Lock-in/Financing Agreement and agree to all terms hereof, and hereby acknowledge receipt of a copy of this Agreement, fully filled out and executed within 10 days after my initial loan application.

|  | 12/29/06 |
|---|---|
| Vera N Ngwa | Date |

|  |  |
|---|---|
|  | Date |

|  | 12/29/06 |
|---|---|
| Heather Gearin | Date |
| Castle Point Mortgage, Inc. | |

CPM 000156

## Good Faith Estimate of Settlement Charges

Lender: Castle Point Mortgage, Inc.                    Loan Number: 3000002624

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

### Estimated Settlement Charges

| | POC | BORROWER | SELLER | LENDER |
|---|---|---|---|---|
| **800:  Items Payable in Connection with the Loan:** | | | | |
| 801:  Loan Origination Fee    4.000e   % of loan | | 45,400.00e | | |
| 802:  Loan Discount _____ % of loan | | | | |
| 803:  Appraisal Fee | 100.00 | | | |
| 804:  Credit Report | | 26.50e | | |
| 805:  Inspection Fee | | | | |
| 806:  Mtg Ins Application Fee | | | | |
| 807:  Assumption Fee | | | | |
| 808:  Application Fee | | 595.00e | | |
| 809:  Processing Fee | | 795.00e | | |
| 810: | | | | |
| 811: | | | | |
| 812: | | | | |
| 813: | | | | |
| 814: | | | | |
| 815: | | | | |
| 816: | | | | |
| 817: | | | | |
| 818: | | | | |
| **900:  Items Required By Lender To Be Paid In Advance:** | | | | |
| 901:  Per diem Interest for  15  days @  361.49  per day | | 5,422.35e | | |
| 902:  Mortgage Insurance Premium | | | | |
| 903:  Hazard Insurance Premium for 1 year | | | | |
| 904: | | | | |
| 905: | | | | |
| 906: | | | | |
| 907: | | | | |
| 908: | | | | |
| **1000:  Reserves Deposited With Lender** | | | | |
| 1001:  Hazard Insurance _____ months @  200.00  per month | | | | |
| 1002:  Mortgage Insurance _____ months @ _____ per month | | | | |
| 1003:  City Property Taxes _____ months @ _____ per month | | | | |
| 1004:  County Property Taxes _____ months @  417.00  per month | | | | |
| 1005:  Annual Assessments _____ months @ _____ per month | | | | |
| 1006: _____ months @ _____ per month | | | | |
| 1007: _____ months @ _____ per month | | | | |
| 1008:  Aggregate Adjustment | | | | |
| **1100:  Title Charges:** | | | | |
| 1101:  Settlement or Closing Fee | | 375.00e | | |
| 1102:  Abstract or Title Search | | 125.00e | | |
| 1103:  Title Examination | | 350.00e | | |
| 1104:  Title Insurance Binder | | | | |
| 1105:  Document Preparation | | | | |
| 1106:  Notary Fees | | | | |
| 1107:  Attorneys' Fees | | | | |
| 1108:  Title Insurance | | | | |
| 1109:  Lender's Coverage | | | | |
| 1110:  Owner's Coverage | | | | |
| 1111:  Environmental Protection Lien | | 25.00e | | |
| 1112:  Wiring Fee | | 75.00e | | |
| 1113: | | | | |
| **1200:  Government Recording and Transfer Charges:** | | | | |
| 1201:  Recording Fees, Deed, Release | | | | |
| 1202:  City/County Tax/Stamps, Deed, Mortgage | | | | |
| 1203:  State Tax/Stamps, Deed, Mortgage | | 21,818.75e | | 2,837.50e |
| 1204: | | | | |
| 1205: | | | | |

Mortgage Cadence Inc. © 1534 - 03/06                    1 of 2

| 1300: Additional Settlement Charges: | POC | BORROWER | SELLER | LENDER |
|---|---|---|---|---|
| 1301: Survey | | | | |
| 1302: Pest Inspection | | | | |
| 1303: | | | | |
| 1304: | | | | |
| 1305: | | | | |
| 1306: | | | | |
| 1307: | | | | |
| Total Settlement Costs: | | * 75,007.60e | | 2,837.50e |

For some of the estimated charges for settlement services above, the use of particular providers of services is required. The estimates are based on charges of the provider. Refer to the separate Provider of Services Addendum disclosure for more information. If the lender will choose a provider from a list of 5 or more service providers, an estimate of the range of the minimum and maximum dollar cost of the charge to be incurred is shown on the separate Addendum.

*** The Lender may have requirements for additional monthly Payment reserves. This might require additional liquid assets to be readily available.***

These estimates are provided pursuant to the Real Estate Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

The Undersigned acknowledges receipt of the booklet 'Buying Your Home - Settlement Costs and Helpful Information,' and the Consumer Handbook on ARM Mortgage, if applicable. I understand the amounts indicated above are ESTIMATES ONLY and may vary from the actual settlement charges at closing. Also I understand that the loan origination fee, interest rate, loan term, and monthly payment indicated herein are based on my application and may be subject to change. If for any reason the loan for which I have applied does not close, I agree to reimburse the Lender for any and all costs incurred to process my application including, but not limited to, the appraisal and credit reports.

| Applicant  Vera N Ngwa | Date | | Applicant | Date |
|---|---|---|---|---|
| Applicant | Date | | Applicant | Date |
| Applicant | Date | | Applicant | Date |
| Applicant | Date | | Applicant | Date |

Date of this estimate:  12/29/2006                By:

This Good Faith Estimate is being provided by Castle Point Mortgage, Inc.

### Monthly Payment Analysis

| | |
|---|---|
| Principal and Interest | 11,348.19 |
| Property Taxes | 417.00 |
| Hazard Insurance | 200.00 |
| Mortgage Insurance | |
| HOA Dues | |
| Other | |
| **Estimated Payment** | 11,965.19 |

### Program Information

| | |
|---|---|
| Sales Price/Value | |
| Req. Loan Amount: | 1,135,000.00 |
| Type of Loan | Conventional |
| Interest Rate | 11.625 |
| Loan Term | 360 |
| Loan Amortization | ARM |

Total Estimated Funds Needed to Close this Loan

| | |
|---|---|
| Estimated Closing Costs: | $69,585.25 |
| Estimated Prepaid Items: | $5,422.35 |
| Total Settlement Costs: | $75,007.60 |
| Funds To/From Borrower: | -$96,695.40 |

CPM 000158



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

### NEW YORK APPLICATION DISCLOSURE AND FEE AGREEMENT

Registered Mortgage Banker
New York State Banking Department

In the following disclosure, I refers to the applicant/borrower; you refers to Castle Point Mortgage, Inc.

**SERVICES PROVIDED BY CASTLE POINT MORTGAGE, INC.:**

Castle Point Mortgage, Inc. has advised me that it is authorized and prepared to assist me in securing financing. I understand that Castle Point Mortgage, Inc.'s services may include, but are not limited to the following:

- Taking information from me as the borrower and assisting me in filling out the loan application.
- Educating me in the home financing process, advising me about different loan products available, and explaining to me how closing costs and monthly payments could vary under each product.
- Analyzing my income and debt, counseling and pre-qualifying me to determine appropriate loan product(s) and maximum loan amount I can afford.
- Collecting financial information (tax returns, pay stubs, bank statements) and other documents.
- Investigating the accuracy and completeness of my information.
- Initiating/ordering verification(s) of employment and verification(s) of deposits.
- Initiating/ordering requests for a mortgage and other loan verifications.
- Initiating/ordering a title search on my property and assisting me in clearing title issues.
- Initiating/ordering an appraisal on my property.
- Initiating/ordering inspections or engineering reports as required.
- Informing me of any conditions required to be cleared prior to final approval or closing and assisting me in satisfying those conditions.
- Scheduling the loan closing with a third party closing agent.

I hereby agree to engage Castle Point Mortgage, Inc. for the purpose of advising me about financing and to provide the services described above. This agreement will continue until the earlier of the declination of my loan request(s), the closing of my loan or my termination of Castle Point Mortgage, Inc.'s services.

I acknowledge that prior to paying any fees or completing any application(s), I was advised of the following:

- Castle Point Mortgage, Inc. cannot guarantee acceptance into any particular loan program or specific loan terms or conditions;

**OUR COMPENSATION:**

I understand that, as compensation for Castle Point Mortgage, Inc.'s services, I will pay Castle Point Mortgage, Inc. following fees <u>upon the closing and funding</u> of my loan:

- An application fee in the amount of $595.00 which is non-refundable.

- A processing fee in the amount of $795.00 which is non-refundable.

- Origination points equal to 4.000 % of the loan amount or $45,400.00 which is non-refundable.

- A Credit Report Fee of $26.50 which is non-refundable.*

Please acknowledge Page 1 of the New York Application Disclosure and Fee Agreement by signing below:

_____        _____
Vera N Ngwa

*NY Application Disclosure and Fee Agreement   Page 1 of 2*                    *Castle Point Mortgage, Inc.*

*This credit report fee is an estimate of the actual cost of the report. The actual amount will be paid at closing. If the actual cost exceeds the estimate, I agree to pay the actual amount at closing. In the case where I require Castle Point to obtain a credit supplement to correct my credit report (if incorrect information is provided by one of the credit bureaus that I require correcting), the actual costs for these services may exceed the estimate.

In addition, I also understand that I am required to pay the following fee at application:

- Property Appraisal Fee                 $100.00

The Property Appraisal Fee is an estimate of the actual cost of this service and is NON-REFUNDABLE once services have been rendered by a third party appraisal company. Should the actual cost of this service exceed the estimate, I understand that I will pay the shortage at or before closing, conversely, if the actual cost is less than the estimate, I understand I will be refunded the difference.

### PREPAYMENT PENALTIES:

I understand that certain mortgage products impose a prepayment penalty on the borrower. Castle Point Mortgage, Inc. will disclose the amount of, or the formula for calculating, the prepayment penalty, and the terms of the prepayment penalty, if any, as soon as Castle Point Mortgage, Inc. knows the terms. In addition, I acknowledge that I am receipt of the Truth-In Lending statement which indicates whether or not my loan contains a prepay penalty clause.

### INTEREST RATE:

The interest rate will be set according to the terms described in the New York Lock In Agreement document provided with this application. If no New York Lock In Agreement was provided with this application, the rate will be set at the time that you decide to lock in the rate or, at the time of closing.

### APPLICATION QUESTIONS:

I understand that I may address questions or comments about my application to Heather Gearin at Castle Point Mortgage, Inc., 6800 Deerpath Road, Suite 105, Elkridge, MD 21075. Or I may call Castle Point Mortgage, Inc. at (800) 469-4850.

### ACKNOWLEDGMENT

By signing below, I/we acknowledge receipt of a copy of the New York Application Disclosure and Fee Agreement.

|  | 12/29/06 |
|---|---|
| Vera N Ngwa | Date |

|  |  |
|---|---|
|  | Date |

*NY Application Disclosure and Fee Agreement   Page 2 of 2*              *Castle Point Mortgage, Inc.*



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850 Fax (800) 461-0346
www.castlepointmortgage.com

### GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

| | | | |
|---|---|---|---|
| Prepared By: | Castle Point Mortgage, Inc.<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075 | Applicant(s): | Vera N Ngwa |
| | | Property Address: | 10 W 123rd St<br>NEW YORK, NY 10027 |
| Date Prepared: | December 29, 2006 | Loan Number: | 3000002624 |

Certain portions of the estimated settlement fees reflected on the Good Faith Estimate of settlement charges will be paid to particular providers that you are required to use. To the extent that the information is available at the time of this disclosure, the following is a list of the names, addresses, and telephone numbers of the providers that you are required to use in connection with your loan. This disclosure is made in accordance with section 3500.7(e) of the Real Estate Settlement Procedures Act. Within the last 12 months, Castle Point Mortgage, Inc. has repeatedly used or required borrowers to use the services of the following providers:

| CREDIT REPORTING AND FLOOD CERTIFICATION: | |
|---|---|
| CBC Companies<br>Hanover, MD 21076<br>7502 Connelley Drive, Suite 106-108<br>(800) 487-1227 | Land America Financial Group, Inc.<br>101 Gateway Centre Parkway<br>Richmond, VA 23235<br>(800) 446-7086 |
| **TITLE & SETTLEMENT SERVICES:** | |
| Fidelity National Title<br>3602 Inland Empire Blvd, Suite A110<br>Ontario, CA 91764<br>(909) 483-8091 | Lending Tree Settlement Services<br>12735 Grand Bay Parkway West – Suite 2000<br>Jacksonville, FL 32258<br>(866) 633-5877 |
| Royal Settlement Services, Inc<br>6800 Deerpath Road, Ste 110<br>Elkridge, MD 21075<br>(800) 591-1099 | The Jordan Real Estate Group<br>2 Industrial Way West<br>Meridian Center I<br>Eatontown, NJ 07724<br>(732)460-1920 |
| **MORTGAGE INSURANCE:** | |
| Genworth Financial<br>1039 Sterling Virginia Road, Suite 203<br>Herndon, VA 20170<br>(800) 336-3756 | |
| **APPRAISALS:** | |
| The Jordan Real Estate Group<br>1191 E. Newport Cntr Dr.<br>Deerfield Beach, FL 33442<br>(954) 429-9952 | Royal Settlement Services, Inc.<br>6800 Deerpath Road, Ste 110<br>Elkridge, MD 21075<br>(800) 591-1099 |

Royal Settlement Services, Inc. is an affiliate of Castle Point Mortgage, Inc., please reference the Affiliated Business Arrangement Disclosure for more information on this relationship.

_____    12/29/06
Vera N Ngwa                                        Date

_____
                                                        Date

6/28/2006                                    1

CPM 000161



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

| | | | |
|---|---|---|---|
| Prepared By: | Castle Point Mortgage, Inc.<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075 | Applicant(s): | Vera N Ngwa |
| | | Property Address: | 10 W 123rd St<br>NEW YORK, NY 10027 |
| Date Prepared: | December 29, 2006 | Loan Number: | 3000002624 |

This is to give you notice that Castle Point Mortgage, Inc. has a business relationship with Royal Settlement Services, Inc.

The principals of Castle Point Mortgage, Inc. are the majority owners of Royal Settlement Services, Inc. with 100 percent ownership. Because of this relationship, this referral may provide Castle Point Mortgage, Inc. a financial or other benefit..

[X]  A.  Set forth below is the estimated charge or range of charges by the provider for the following settlement services:

Provider and Settlement Service
Charge or Range of Charges:

| | |
|---|---|
| Royal Settlement Services, Inc. - Closing Fee | $375.00 |
| Royal Settlement Services, Inc. - Abstract or Title Search | $125.00 |
| Royal Settlement Services, Inc. - Title Exam Fee | $350.00 |
| Royal Settlement Services, Inc. - Courier Fee | $ |

You are not required to use the listed providers as a condition for purchase, sale, or refinance of the subject property.  If you have had an owners or lenders policy issued on the property you are mortgaging in the last 10 years, please inquire about a possible reissue rate with your loan processor.

**THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

[X]  B.  Set forth below is the estimated charge or range of charges for the settlement services of an attorney, credit reporting agency, or real estate appraiser that we as your lender will require you to use as a condition of your loan on this property to represent our interests in this transaction.

Provider and Settlement Service
Charge or Range of Charges:

| | |
|---|---|
| Royal Settlement Services, Inc. - Appraisal Fee | $100.00 |

### ACKNOWLEDGEMENT

I/We have read this disclosure form and understand that Castle Point Mortgage, Inc. is referring me/us to purchase the above-described settlement services from Royal Settlement Services, Inc., and may receive a financial or other benefit as a result of this referral.

| | |
|---|---|
| | 12/29/06 |
| Vera N Ngwa | Date |
| | |
| | Date |

6/28/2006                                          1

CPM 000162



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

### 5/6 LIBOR ADJUSTABLE RATE MORTGAGE (ARM) DISCLOSURE

This program disclosure describes the features of the adjustable rate mortgage (ARM) program you are considering. Information on other ARM programs may be available upon request.

**How Your Interest Rate and Payment Are Determined**

ARMs ("Adjustable Rate Mortgages"), get their name from the fact that their interest rate is periodically adjusted by the lender. At each interest rate adjustment, your new interest rate will be based on an index plus a margin. The index rate is the six month London Interbank Offered Rate (LIBOR). The rate is most commonly published in financial publications such as the Wall Street Journal. At each interest rate adjustment, the value of the index most recently available will be added to the margin, and the resulting interest rate will be rounded to the nearest 0.125 percentage point (0.125%). This will be your new interest rate unless the caps or floors on your interest rate, as described below, limit the amount your interest rate will change.

If the index for your ARM is no longer available, the Lender or the transferee of the Note and Security Instrument, who is entitled to receive payments under the Note, will choose a new index based on comparable information.

The initial interest rate being offered is not based on the interest rate formula described above as it may be either premium based or discounted from the computed formula. Ask your mortgage representative for the amount of the current interest rate, margin and lifetime cap as well as the amount of the current interest rate premium or discount and the discount points currently charged on this loan program. Please be aware that unless you enter a lock-in agreement once you have made your application, there is no guarantee the interest rate and discount points quoted will be available to you when your loan is ready for settlement.

Your loan payments are adjusted in response to adjustments of the index rate. At each adjustment the new loan payment is the amount that will fully amortize the then outstanding principal balance of your loan in the remaining loan term at the new interest rate. Your initial loan payments will be based on your initial interest rate, loan term and loan amount.

**How Your Interest Rate Can Change**

Your interest rate will be fixed for a period of five (5) years (60 payments). The initial rate change will take place in the sixtieth (60th) month and on that day every six (6) months thereafter. Each date on which your interest rate can change is called a "Change Date" and will be described in your loan documents. On each change Date, your interest rate will equal the index plus the margin, rounded up or down to the nearest .125%, unless your interest rate "caps" or "floors" limit the amount of change in the interest rate. The limitation on increases to your interest rate over the term of the loan will be six (6%) percentage points above the initial interest rate (the "cap"). Your interest rate will not decrease below the "floor" rate over the term of the loan which is equal to the initial interest rate. On the first Change Date, the limitation on increases to your interest rate will be set at three (3%) percentage points above the initial interest rate. On the second Change Date and every Change Date thereafter, the limitation on increases or decreases to your interest rate will be set at an amount of one (1%) percentage point.

It is in your interest to find out all terms of your loan including the start rate and the margin of the program for which you have applied. For overall rate limitations currently offered for Castle Point Mortgage's ARM programs, please contact a Castle Point Mortgage, Inc. representative.

**How Your Payment Can Change**

The initial payment change will take place effective within the sixty-first (61th) payment due date. Your principal and interest payment may change every six (6) months thereafter, based on changes in the interest rate, loan balance and remaining loan term. You will be notified in writing of any adjustments in your interest rate and payments at least 25, but no more than 120, days before your new interest rate will become effective. Your new payment will be due beginning with the first payment due date after the Change Date on which the related interest rate change occurred, and will be your payment until the first payment due date after the next Change Date. The notice you will receive will show your new interest rate and new payment amount, the date the interest rate and payment adjustment take effect, the balance of your loan and the name and telephone number of a Representative who can answer any questions you may have about your notice.

CPM 000163

Your monthly payment can increase or decrease substantially based on semi-annual changes in the interest rate. The following example provides information on varying terms:

**30 Year Example**
Let's assume you have a loan amount of $10,000, a loan term of 30 years, an initial interest rate of 9.75% (based on the 5.50% index value in effect in June 2006, plus a margin of 9.75%, and less a discount of 5.50%), the maximum amount that the interest rate can rise under this program is 6.0 percentage points to 15.75% and the monthly payment can rise from a first year payment of $85.92 to a maximum of $128.81 in the seventh (7th) year. To see what your payments would have been during the period shown above, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. For example, the monthly payment for a mortgage amount of $60,000 would be $60,000 divided by $10,000=6; 6 x $85.92 = $515.52.

**Demand Feature Information**

This obligation does not have a demand feature.

**Important Loan Information**

This description is for informational purposes only and does not constitute a commitment on the part of the Lender to provide financing. The Note, Security Instrument and Riders ('Loan Documents') will control the terms of the loan; therefore, you should become familiar with and understand the provisions of these documents. Upon execution of the Loan Documents, both you and the Lender will become bound by the terms of the Loan Documents.

Thank you for inquiring about a mortgage loan at Castle Point Mortgage, Inc. If this program disclosure has not fully answered your questions concerning this loan program, ask your mortgage representative for additional information.

I/We do hereby certify that I/We have read, understand and acknowledge receipt of the 5/6 LIBOR ARM Disclosure set forth above. I/We also acknowledge receipt of the Consumer Handbook on Adjustable Rate Mortgages.

| | |
|---|---|
| | 12/29/06 |
| Vera N Ngwa | Date |

| | |
|---|---|
| | Date |

CPM 000164



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

### IMPORTANT INFORMATION ABOUT YOUR PRIVACY

#### WE ARE COMMITTED TO SAFEGUARDING CUSTOMER INFORMATION

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. We have adopted this Privacy Policy to govern the use and handling of your personal information.

#### APPLICABILITY

This privacy policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

#### TYPES OF INFORMATION

Depending upon which of our services you are utilizing, the types of non-public information personal information that we may collect include:

- Information we receive from you on applications, forms, and in other communications to us, whether in person, by telephone or any other means;
- Information about your transactions with us or others; and
- Information we receive from a consumer reporting agency.

#### USE OF INFORMATION

We request information from you for our own legitimate business purposes and not for the benefit of any non-affiliated party. Therefore, we will not release your information to non-affiliated parties except:

1) as necessary for us to provide the product or service you have requested of us;
2) with third party lenders, wholesale lenders or investors, who have a relationship with us to acquire mortgage products that meet your specific needs; or
3) as permitted by law.

We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as equality control efforts or customer analysis and to track generic statistical information.

We may also provide all of the types of non-public personal information listed above to one or more of our unaffiliated lenders, wholesale lenders or investors, with whom we have joint marketing or service agreements. Such unaffiliated companies may include financial service providers, such as a bank, wholesale lenders, investors, title insurers, property and casualty insurers, or companies involved in real estate services, such as appraisal companies, and escrow companies.

Furthermore, we will not disclose information about you to anyone except as disclosed in this policy or as permitted by law. Examples of this might include disclosures necessary to service your account, prevent unauthorized transactions or in response to legal process.

#### FORMER CUSTOMERS

Even if you are no longer our customer, our privacy policy will continue to apply to you.

#### CONFIDENTIALITY AND SECURITY

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to non-public personal information about you to those individuals and entities who need to know that information to provide products and services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your non-public personal information.

CPM 000165



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

### THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977
### FAIR LENDING NOTICE

It is illegal to discriminate in the provisions of or in the availability of financial assistance because of the consideration of:

1. Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation, unless the financial institution can demonstrate in the particular case that such consideration is required to avoid an unsafe and unsound business practice; or

2. Race, color, religion, sex, martial status, national origin or ancestry.

It is illegal to consider the racial, ethnic, religious or national origin composition of a neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change, in appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.

These provisions govern financial assistance for the purpose of the purchase, construction, rehabilitation or refinancing of a one-to-four unit residence occupied by the owner and for the purpose of the home improvement of any one-to-four unit family residence.

If you have any questions about your rights, or if you wish to file a complaint, contact the management of this financial institution or the agency noted below:

**Office of Fair Housing and Equal Opportunity**
**U.S. Department of Housing and Urban Development**
**Room 5204**
**451 Seventh Street SW**
**Washington, DC  20410-2000**

6/28/2006                                   1

CPM 000166

## Title Company
## Borrower Signature Authorization

I hereby authorize <u>RSS</u>  (hereinafter referred to as "the Title Company"), to verify my past and present employment earnings records, bank accounts, stock holdings, and any other asset balances that are needed to process my mortgage loan application. I further authorize the Title Company to order mortgage and lien payoffs, a consumer credit report and verify other credit information, including past and present mortgage and landlord references. It is understood that a copy of this form will also serve as authorization.

The information the Title Company obtains is only to be used for clearance of title and the processing of my application for a mortgage loan.

_____    12/29/06
Vera N Ngwa

_____

CPM 000167



# Royal Settlement
# Services
### 6800 Deerpath Road, Suite 110

*Notice to Borrower or Purchaser of Eligibility for Reduced Title Insurance Premium*

**YOU MAY BE ENTITLED TO A REDUCED TITLE INSURANCE PREMIUM**

**PLEASE DISCUSS WHETHER YOU ARE ELIGIBLE FOR A PREMIUM DISCOUNT WITH YOUR SETTLEMENT AGENT**

We have issued or will be issuing a title commitment naming you as the proposed borrower and/or purchaser.

To determine eligibility for a reissue discount off of a prior title insurance policy, please provide your settlement agent with a copy of an owner's policy (or loan policy if only a loan policy will be purchased at this time) issued within the past 10 years by any title insurance company licensed to do business in Pennsylvania.

Please acknowledge your understanding of the above by signing below.

Date: _____         Date: _____

[Borrower/Purchaser]:                            [Borrower/Purchaser]:


_____                    _____
Print                                                       Print


_____                    _____
Sign                                                        Sign

CPM 000168

# CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES

**AUTHOR: FEDERAL RESERVE BOARD - OFFICE OF THRIFT SUPERVISION**

This information was originally prepared in consultation with the following organizations: American Bankers Association, America's Community Bankers, Comptroller of the Currency, Consumer Federation of America, Credit Union National Association, Inc., Federal Deposit Insurance Corporation, Federal Reserve Board's Consumer Advisory Council, Federal Trade Commission, Independent Bankers Association of America, Mortgage Bankers Association of America, Mortgage Insurance Companies of America, National Association of Federal Credit Unions, National Association of Home Builders, National Association of Realtors, National Credit Union Administration, Office of Special Advisor to the President for Consumer Affairs, The Consumer Bankers Association, and the U.S. Department of Housing and Urban Development.

The Federal Reserve Board and the Office of Thrift Supervision prepared this information on adjustable-rate mortgages (ARMs) in response to a request from the House Committee on Banking, Finance, and Urban Affairs (currently, the Committee on Financial Services) and in consultation with many other agencies and trade and consumer groups. It is designed to help consumers understand an important and complex mortgage option available to homebuyers.

## PEOPLE ARE ASKING ....

**"Some newspaper ads for home loans show surprisingly low rates. Are these loans for real, or is there a catch?"**
Some of the ads you see are for adjustable-rate mortgages (ARMs). These loans may have low rates for a short time—maybe only for the first year. After that, the rates may be adjusted on a regular basis. This means that the interest rate and the amount of the monthly payment may go up or down.

**"Will I know in advance how much my payment may go up?"**
With an adjustable-rate mortgage, your future monthly payment is uncertain. Some types of ARMs put a ceiling on your payment increase or interest-rate increase from one period to the next. Virtually all types must put a ceiling on rate increases over the life of the loan.

**"Is an ARM the right type of loan for me?"**
That depends on your financial situation and the terms of the ARM. ARMs carry risks in periods of rising interest rates, but they can be cheaper over a longer term if interest rates decline. You will be able to answer the question better once you understand more about ARMs. This booklet should help.

Mortgages have changed, and so have the questions that consumers need to ask and have answered. Shopping for a mortgage used to be a relatively simple process. Most home mortgage loans had interest rates that did not change over the life of the loan. Choosing among these fixed-rate mortgage loans meant comparing interest rates, monthly payments, fees, prepayment penalties, and due-on-sale clauses.
Today, many loans have interest rates (and monthly payments) that can change from time to time. To compare one ARM with another or with a fixed-rate mortgage, you need to know about indexes, margins, discounts, caps, negative amortization, and convertibility. You need to consider the maximum amount your monthly payment could increase. Most important, you need to compare what might happen to your mort-gage costs with your future ability to pay.

This booklet explains how ARMs work and some of the risks and advantages to borrowers that ARMs introduce. It discusses features that can help reduce the risks and gives some pointers about advertising and other ways you can get information from lenders. Important ARM terms are defined in a glossary. And the checklist at the end of the booklet should help you ask lenders the right questions and figure out whether an ARM is right for you. Asking lenders to fill out the checklist is a good way to get the information you need to compare mortgages.

## WHAT IS AN ARM?

With a fixed-rate mortgage, the interest rate stays the same during the life of the loan. But with an ARM, the interest rate changes periodically, usually in relation to an index, and payments may go up or down accordingly.

Lenders generally charge lower initial interest rates for ARMs than for fixed-rate mortgages. This makes the ARM easier on your pocketbook at first than a fixed-rate mortgage for the same amount. It also means that you might qualify for a larger loan because lenders sometimes make the decision about whether to extend a loan on the basis of your current income and the first year's payments. Moreover, your ARM could be less expensive over a long period than a fixed-rate mortgage—for example, if interest rates remain steady or move lower.
Against these advantages, you have to weigh the risk that an increase in interest rates would lead to higher monthly payments in the future. It's a trade-off--you get a lower rate with an ARM in exchange for

CPM 000169

assuming more risk.
Here are some questions you need to consider:

- Is my income likely to rise enough to cover higher mortgage payments if interest rates go up?
- Will I be taking on other sizable debts, such as a loan for a car or school tuition, in the near future?
- How long do I plan to own this home? (If you plan to sell soon, rising interest rates may not pose the problem they do if you plan to own the house for a long time.)
- Can my payments increase even if interest rates generally do not increase?

## HOW ARMS WORK: THE BASIC FEATURES

**The adjustment period** - With most ARMs, the interest rate and monthly payment change every year, every three years, or every five years. However, some ARMs have more frequent rate and payment changes. The period between one rate change and the next is called the "adjustment period." A loan with an adjustment period of one year is called a one-year ARM, and the interest rate can change once every year.

**The Index** - Most lenders tie ARM interest-rate changes to changes in an "index rate." These indexes usually go up and down with the general movement of interest rates. If the index rate moves up, so does your mortgage rate in most circumstances, and you will probably have to make higher monthly payments. On the other hand, if the index rate goes down, your monthly payment may go down. Lenders base ARM rates on a variety of indexes. Among the most common indexes are the rates on one-, three-, or five-year Treasury securities. Another common index is the national or regional average cost of funds to savings and loan associations. A few lenders use their own cost of funds as an index, which gives them more control than using other indexes. You should ask what index will be used and how often it changes. Also ask how it has fluctuated in the past and where it is published.

**The margin** - To determine the interest rate on an ARM, lenders add to the index rate a few percentage points, called the "margin." The amount of the margin may differ from one lender to another, but it is usually constant over the life of the loan.

Index rate + margin = ARM interest rate

Let's say, for example, that you are comparing ARMs offered by two different lenders. Both ARMs are for 30 years and have a loan amount of $65,000. (All the examples used in this booklet are based on this amount for a 30-year term. Note that the payment amounts shown here do not include taxes, insurance, or similar items.)

Both lenders use the rate on one-year Treasury securities as the index. But the first lender uses a 2% margin, and the second lender uses a 3% margin. Here is how that difference in the margin would affect your initial monthly payment.

Home sale price $ 85,000
Less down payment - $ 20,000
Mortgage amount = $ 65,000
Mortgage term 30 years

First Lender
One-year index = 8%
Margin = 2%
ARM interest rate = 10%
Monthly payment @ 10% = $ 570.42

Second Lender
One-year index = 8%
Margin = 3%
ARM interest rate = 11%
Monthly payment @ 11% = $ 619.01

In comparing ARMs, look at both the index and margin for each program. Some indexes have higher values, but they are usually used with lower margins. Be sure to discuss the margin with your lender.

## CONSUMER CAUTIONS

**Discounts** - Some lenders offer initial ARM rates that are lower than their "standard" ARM rates (that is, lower than the sum of the index and the margin). Such rates, called discounted rates, are often combined with large initial loan fees ("points") and with much higher rates after the discount expires.

Very large discounts are often arranged by the seller. The seller pays an amount to the lender so that the lender can give you a lower rate and lower payments early in the mortgage term. This arrangement is referred to as a "seller buydown". The seller may increase the sales price of the home to cover the cost of the buydown.

A lender may use a low initial rate to decide whether to approve your loan, based on your ability to afford it. You should be careful to consider whether you will be able to afford payments in later years when the discount expires and the rate is adjusted. Here is how a discount might work. Let's assume that the lender's "standard" one-year ARM rate (index rate plus margin) is currently 10%. But your lender is

CPM 000170

offering an 8% rate for the first year. With the 8% rate, your first-year monthly payment would be $476.95.
But don't forget that with a discounted ARM, your initial payment will probably remain at $476.95 for only 12 months--and that any savings during the discount period may be made up during the life of the mortgage or may be included in the price of the house. In fact, if you buy a home using this kind of loan, you run the risk of . . .

**Payment shock** - Payment shock may occur if your mortgage payment rises very sharply at the first adjustment. Let's see what would happen in the second year if the rate on your discounted 8% ARM were to rise to the 10% "standard" rate.

<u>ARM Interest Rate Monthly Payment</u>
1st year (w/discount) @ 8% $ 476.95
2nd year @ 10% $ 568.82

As the example shows, even if the index rate were to stay the same, your monthly payment would go up from $476.95 to $568.82 in the second year.
Suppose that the index rate increases 2% in one year and the ARM rate rises to 12%.

<u>ARM Interest Rate Monthly Payment</u>
1t year (w/discount) @ 8% $ 476.95
2nd year @ 12% $ 665.43

That's an increase of almost $200 in your monthly payment. You can see what might happen if you choose an ARM because of a low initial rate. You can protect yourself from large increases by looking for a mortgage with features, described next, that may reduce this risk.

## HOW CAN I REDUCE MY RISK?

Besides offering an overall rate ceiling, most ARMs also have "caps" that protect borrowers from extreme increases in monthly payments. Others allow borrowers to convert an ARM to a fixed-rate mortgage. While they may offer real benefits, these ARMs may also cost more, or may add special features such as negative amortization.

**Interest-rate caps** - An interest-rate cap places a limit on the amount your interest rate can increase. Interest caps come in two versions:

- Periodic caps, which limit the interest-rate increase from one adjustment period to the next; and
- Overall caps, which limit the interest-rate increase over the life of the loan.

By law, virtually all ARMs must have an overall cap. Many have a periodic cap.

Let's suppose you have an ARM with a periodic interest-rate cap of 2%. At the first adjustment, the index rate goes up 3%. The example shows what happens.

<u>ARM Interest Rate Monthly Payment</u>
1st year @.10% $ 570.42
2nd year @ 13% (without cap) $ 717.12
2nd year @ 12% (with cap) $ 667.30
*Difference in 2nd year between payment with cap and payment without = $ 49.82*

A drop in interest rates does not always lead to a drop in monthly payments. In fact, with some ARMs that have interest-rate caps, your payment amount may increase even though the index rate has stayed the same or declined. This may happen when an interest-rate cap has been holding your interest rate down below the sum of the index plus margin. If a rate cap holds down your interest rate, increases to the index that were not imposed because of the cap may carry over to future rate adjustments.

<u>With some ARMs, payments may increase even if the index rate stays the same or declines.</u>

The following example shows how carryovers work. The index increased 3% during the first year. Because this ARM limits rate increases to 2% at any one time, the rate is adjusted by only 2%, to 12% for the second year. However, the remaining 1% increase in the index carries over to the next time the lender can adjust rates. So when the lender adjusts the interest rate for the third year, the rate increases 1%, to 13%, even though there is no change in the index during the second year.

<u>ARM Interest Rate Monthly Payment</u>
1st year @ 10% $ 570.42
If index rises 3% . . .
2nd year @ 12% (with 2% rate cap) $ 667.30
If index stays the same for the 3rd year @ 13% $ 716.56
*Even though the index stays the same in 3rd year, payment goes up $49.26*

CPM 000171

In general, the rate on your loan can go up at any scheduled adjustment date when the lender's standard ARM rate (the index plus the margin) is higher than the rate you are paying before that adjustment. The next example shows how a 5% overall rate cap would affect your loan.

ARM Interest Rate Monthly Payment
1st year @ 10% $ 570.42
10h year @ 15% (with cap) $ 813.00

Let's say that the index rate increases 1% in each of the next nine years. With a 5% overall cap, your payment would never exceed $813.00—compared to the $1,008.64 that it would have reached in the tenth year based on a 19% interest rate.

**Payment caps** - Some ARMs include payment caps, which limit your monthly payment increase at the time of each adjustment, usually to a percentage of the previous payment. In other words, with a 7½% payment cap, a payment of $100 could increase to no more than $107.50 in the first adjustment period, and to no more than $115.56 in the second.
Let's assume that your rate changes in the first year by 2 percentage points but your payments can increase by no more than 7½% in any one year.

Here's what your payments would look like:

ARM Interest Rate Monthly Payment
1st year @ 10% $ 570.42
2nd year @ 12% (without payment cap) $ 667.30
2nd year @ 12% (with 7½% payment cap) $ 613.20
*Difference in monthly payment = $ 54.10*

Many ARMs with payment caps do not have periodic interest-rate caps.

**Negative amortization** - If your ARM includes a payment cap, be sure to find out about "negative amortization." Negative amortization means that the mortgage balance increases. It occurs whenever your monthly mortgage payments are not large enough to pay all of the interest due on your mortgage. Because payment caps limit only the amount of payment increases, and not interest-rate increases, payments sometimes do not cover all the interest due on your loan. This means that the interest shortage in your payment is automatically added to your debt, and interest may be charged on that amount. You might therefore owe the lender more later in the loan term than you did at the start. However, an increase in the value of your home may make up for the increase in what you owe. The next illustration uses the figures from the preceding example to show how negative amortization works during one year. Your first 12 payments of $570.42, based on a 10% interest rate, paid the balance down to $64,638.72 at the end of the first year. The rate goes up to 12% in the second year. But because of the 7½% payment cap, your payments are not high enough to cover all the interest. The interest shortage is added to your debt (with interest on it), which produces negative amortization of $420.90 during the second year.

Beginning loan amount = $65,000
Loan amount at end of 1st year = $ 64,638.72
Negative amortization during 2nd year = $ 420.90
Loan amount at end of 2nd year = $ 65,059.62
($ 64,638.72 + $ 420.90)
*(if you sold your house at this point, you would owe almost $60 more than you originally borrowed)*

To sum up, the payment cap limits increases in your monthly payment by deferring some of the increase in interest. Eventually, you will have to repay the higher remaining loan balance at the ARM rate then in effect. When this happens, there may be a substantial increase in your monthly payment.
Some mortgages include a cap on negative amortization. The cap typically limits the total amount you can owe to 125% of the original loan amount. When that point is reached, monthly payments may be set to fully repay the loan over the remaining term, and your payment cap may not apply. You may limit negative amortization by voluntarily increasing your monthly payment.
Be sure to discuss negative amortization with the lender to understand how it will apply to your loan.

**Prepayment and conversion** - If you get an ARM and your financial circumstances change, you may decide that you don't want to risk any further changes in the interest rate and payment amount. When you are considering an ARM, ask for information about prepayment and conversion.
*Prepayment.* - Some agreements may require you to pay special fees or penalties if you pay off the ARM early. Many ARMs allow you to pay the loan in full or in part without penalty whenever the rate is adjusted. Prepayment details are sometimes negotiable. If so, you may want to negotiate for no penalty, or for as low a penalty as possible.
*Conversion.* - Your agreement with the lender may include a clause that lets you convert the ARM to a fixed-rate mortgage at designated times. When you convert, the new rate is generally set at the current market rate for fixed-rate mortgages.

CPM 000172

## WHERE TO GET INFORMATION

Before you actually apply for a loan and pay a fee, ask for all the information the lender has on the loan you are considering. It is important that you understand index rates, margins, caps, and other ARM features such as negative amortization. You can get helpful information from advertisements and disclosures, which are subject to certain federal standards.

**Advertising** - Your first information about mortgages probably will come from newspaper advertisements placed by builders, real estate brokers, and lenders. Although this information can be helpful, keep in mind that the ads are designed to make the mortgage look as attractive as possible. These ads may play up low initial interest rates and monthly payments, without emphasizing that those rates and payments later could increase substantially. So get all the facts.

A federal law, the Truth in Lending Act, requires mortgage advertisers, once they begin advertising specific terms, to give further information on the loan. For example, if they want to show the interest rate or payment amount on the loan, they must also tell you the annual percentage rate (APR) and whether that rate may go up. The APR, the cost of your credit as a yearly rate, reflects more than just a low initial rate. It takes into account interest, points paid on the loan, any loan origination fee, and any mortgage insurance premiums you may have to pay.

Ads may play up low initial rates. Get all the facts.

**Disclosures from lenders** - Federal law requires the lender to give you information about ARMs, in most cases before you apply for a loan. The lender also is required to give you information when you apply for a mortgage. You should get a written summary of important terms and costs of the loan. Some of these are the finance charge, the APR, and the payment terms.

Read information from lenders — and ask questions — before committing yourself.

Selecting a mortgage may be the most important financial decision you will make, and you are entitled to all the information you need to make the right decision. Don't hesitate to ask questions about ARM features when you talk to lenders, real estate brokers, sellers, and your attorney, and keep asking until you get clear and complete an-swers. The checklist is intended to help you compare terms on different loans.

## GLOSSARY

**Adjustable-rate mortgage (ARM)** - A mortgage for which the interest rate is not fixed, but changes during the life of the loan in line with movements in an index rate. You may also see ARMs referred to as AMLs (adjustable-mortgage loans) or VRMs (variable-rate mortgages).

**Annual percentage rate (APR)** - A measure of the cost of credit, expressed as a yearly rate. It includes interest as well as other charges. Because all lenders follow the same rules when calculating the APR, it provides consumers with a good basis for comparing the cost of loans, including mortgages.

**Buydown** - With a buydown, the seller pays an amount to the lender so that the lender can give you a lower rate and lower payments, usually for an early period in an ARM. The seller may increase the sales price to cover the cost of the buydown. Buydowns can occur in all types of mortgages, not just ARMs.

**Cap** - A limit on how much the interest rate or the monthly payment may change, either at each adjustment or during the life of the mortgage. Payment caps don't limit the amount of interest the lender is earning, so they may cause negative amortization.

**Conversion clause** - A provision in some ARMs that allows you to change the ARM to a fixed-rate loan at some point during the term. Conversion is usually allowed at the end of the first adjustment period. At the time of the conversion, the new fixed rate is generally set at one of the rates then prevailing for fixed-rate mortgages. The conversion feature may be available at extra cost.

**Discount** - In an ARM with an initial rate discount, the lender gives up a number of percentage points in interest to give you a lower rate and lower payments for part of the mortgage term (usually for one year or less). After the discount period, the ARM rate will probably go up depending on the index rate.

**Index** - The index is the measure of interest-rate changes that the lender uses to decide how much the interest rate on an ARM will change over time. No one can be sure when an index rate will go up or down. To help you get an idea of how to compare different indexes, the following chart shows a few common indexes over an eleven-year period (1994-2004). As you can see, some index rates tend to be higher than others, and some more volatile. (But if a lender bases interest-rate adjustments on the average value of an index over time, your interest rate would not be as volatile.) You should ask your lender how the index for any ARM you are considering has changed in recent years, and where the index is reported.

**Margin** - The number of percentage points the lender adds to the index rate to calculate the ARM interest rate at each adjustment.

**Negative Amortization** - Amortization means that monthly payments are large enough to pay the interest and reduce the principal on your mortgage. Negative amortization occurs when the monthly payments do not cover all the interest cost. The interest cost that isn't covered is added to the unpaid principal balance. This means that even after making many payments, you could owe more than you did at the beginning of the loan. Negative amortization can occur when an ARM has a payment cap that results in monthly payments not high enough to cover the interest due.

*CHARM Booklet*                  *Page 5 of 6*                  *Federal Reserve Board*

CPM 000173

**Points** - One point is equal to 1 percent of the principal amount of your mortgage. For example, if the mortgage is for $65,000, one point equals $650. Lenders frequently charge points in both fixed-rate and adjustable-rate mortgages in order to increase the yield on the mortgage and to cover loan closing costs. These points usually are collected at closing and may be paid by the borrower or the home seller, or may be split between them.

## MORTGAGE CHECKLIST

| | Mortgage A | Mortgage B |
|---|---|---|
| Mortgage amount | _____ | _____ |
| **Basic Features for Comparison:** | | |
| Fixed-rate annual percentage rate (the cost of your credit as a yearly rate, including both interest and other charges) | _____ | _____ |
| ARM annual percentage rate | _____ | _____ |
| Adjustment period | _____ | _____ |
| Index used and current rate | _____ | _____ |
| Margin | _____ | _____ |
| Initial payment without discount | _____ | _____ |
| Initial payment with discount (if any) | _____ | _____ |
| How long will discount last? | _____ | _____ |
| Interest-rate caps: | | |
| Periodic | _____ | _____ |
| Overall | _____ | _____ |
| Payment caps | _____ | _____ |
| Negative amortization | _____ | _____ |
| Convertibility or prepayment privilege | _____ | _____ |
| Initial fees and charges | _____ | _____ |
| **Monthly Payment Amounts** | | |
| What will my monthly payment be after 12 months if the index rate: | | |
| stays the same | _____ | _____ |
| goes up 2% | _____ | _____ |
| goes down 2% | _____ | _____ |
| What will my monthly payment be after 3 years if the index rate: | | |
| stays the same | _____ | _____ |
| goes up 2% per year | _____ | _____ |
| goes down 2% per year | _____ | _____ |

Take into account any caps on your mortgage and remember that it may run 30 years.

CPM 000174



## Borrower Signature Authorization

Privacy Act Notice: This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et. Sq. (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et. Seq., or 7 USC, 172 et. Seq. (if USDA/FmHA).

### Part I – General Information

| 1. Borrower(s) | 2. Name and address of Lender/Broker |
|---|---|
| Vera N Ngwa | **Castle Point Mortgage, Inc.** |
| | **6800 Deerpath Road, Suite 105** |
| | **Elkridge, MD 21075** |
| | **(P) (800) 469-4850, (F) (800) 461-0346** |

| 3. Date | 4. Loan Number | |
|---|---|---|
| January 04, 2007 | 3000002624 | |

### Part II – Borrower Authorization

I hereby authorize the Lender/Broker to verify my past and present employment earnings records, bank accounts, stock holdings, and any other asset balances that are needed to process my mortgage loan application. I further authorize the Lender/Broker to order a consumer credit report and verify other credit information, including past and present mortgage and landlord references. It is understood that a copy of this form will also serve as authorization.

The information the Lender/Broker obtains is only to be used in the processing of my application for a mortgage loan.

_Vera N Ngwa_  01/04/07

Vera N Ngwa    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

---

CPM 000175

**EXHIBIT  3**



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850  Fax (800) 461-0346
www.castlepointmortgage.com

| | | | |
|---|---|---|---|
| **STATE:** | New York | | |
| **MORTGAGE TYPE:** | Conventional | **NAME:** | Vera N Ngwa |
| **LIEN POSITION:** | First | | |
| **RATE TYPE:** | ARM | **ADDRESS:** | 10 W 123rd St |
| | | | NEW YORK, NY  10027 |
| **LOAN PURPOSE:** | Cashout Refinance | | |
| **DATE PREPARED:** | January 24, 2007 | **DISCLOSURE** | |
| | | **TYPE:** | Redisclosure |
| **LOAN NUMBER:** | 3000002624 | | |

Thank you for allowing us to assist you in your financing needs.  If you have any questions on anything contained in this packet, please do not hesitate to call us.  Enclosed you will find 2 sets of the following documents:

Table of Contents
Federal Application Policy and Disclosure Notices
Credit Score Information Disclosure
RESPA Servicing Disclosure
1003 Uniform Residential Loan Application, page 1
1003 Uniform Residential Loan Application, page 2
1003 Uniform Residential Loan Application, page 3
1003 Continuation Sheet, page 1
1003 Continuation Sheet, page 1
Lock In/Financing Agreement
Good Faith Estimate, page 1
Good Faith Estimate, page 2
New York Application Disclosure and Fee Agreement
Good Faith Estimate Provider Relationship
Affiliated Business Arrangement Disclosure
5-6 ARM Disclosure (3-1-6 Caps)
Castle Point Mortgage Privacy Policy
Fair Lending Notice
Borrower's Authorization
Title Company Borrower Signature Authorization
Notice to Borrower
Consumer Handbook on Adjustable Rate Mortgages, Page 1
Consumer Handbook on Adjustable Rate Mortgages, Page 2
Consumer Handbook on Adjustable Rate Mortgages, Page 3
Consumer Handbook on Adjustable Rate Mortgages, Page 4
Consumer Handbook on Adjustable Rate Mortgages, Page 5
Consumer Handbook on Adjustable Rate Mortgages, Page 6
Consumer Handbook on Adjustable Rate Mortgages, Page 7
Consumer Handbook on Adjustable Rate Mortgages, Page 8
Consumer Handbook on Adjustable Rate Mortgages, Page 9
Consumer Handbook on Adjustable Rate Mortgages, Page 10

Please sign and return one set in the enclosed postage page envelope to expedite the processing of your loan, and keep the other copy for your records.

*Table of Contents*                     *Page 1*                     *Castle Point Mortgage, Inc*

CPM 000176

**\*\*\*If at any time during the process you have questions regarding your loan, please call your loan officer, Heather Gearin at (800) 358-5990 .**

CPM 000177



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850 Fax (800) 461-0346
www.castlepointmortgage.com

## FEDERAL APPLICATION POLICY AND DISCLOSURE NOTICES

| | | | |
|---|---|---|---|
| Date Prepared: | **January 24, 2007** | Application Number: | **3000002624** |
| Borrower: | **Vera N Ngwa** | Borrower: | |
| Property Address: | **10 W 123rd St** | Mailing Address: | **10 W 123rd St** |
| | **NEW YORK, NY 10027** | | **NEW YORK, NY 10027** |

### EQUAL CREDIT OPPORTUNITY ACT DISCLOSURE

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning Castle Point Mortgage, Inc. is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC, 20580, (202) 724-1140.

Income which you receive as alimony, child support or separate maintenance payment, need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan.

Having made this disclosure to you, we are permitted to inquire if any of the income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are relying to qualify for the loan for which you are applying.

### NOTICE REGARDING YOUR UNIFORM RESIDENTIAL APPRAISAL REPORT

You are advised that you have the right, under the Equal Credit Opportunity Act, to obtain a copy of your residential appraisal report used in connection with your application for credit. If you would like a copy, please write to us at: Castle Point Mortgage, Inc., 6800 Deerpath Road, Suite 105, Elkridge, MD 21075. In your letter to us, please include your full name, property address, date of application, and loan number as stated on your application.

### FAIR CREDIT REPORTING ACT DISCLOSURE

In compliance with the Fair Credit Reporting Act, we are informing you that an investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of credit denial due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of your right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of the Fair Credit Reporting Act.

### FINANCIAL PRIVACY ACT DISCLOSURE

The Right to Financial Privacy Act requires that all applicants be informed of the purposes and uses to be made of the information that is solicited. The following is furnished to explain the purpose, use and effects of non disclosure for the information requested. Purpose: The information requested in the loan application is considered relevant to determine the worthiness for the loan applied. Use: The information gathered will be used in the evaluation of your loan application. Effects of non disclosure: Disclosure of the requested information is voluntary. Failure to provide information will not impose a penalty. However, the decision as to loan approval you are requesting must be made on the basis of the information supplied. This may result in a denial of credit, or delays in the processing of your application.

### REAL ESTATE SETTLEMENT PROCEDURES ACT DISCLOSURE

If you are applying for a purchase money loan, we are required to provide to you a Department of Housing and Urban Development guide entitled "Settlement Costs". By signing this disclosure, you are acknowledging receipt of the "Settlement Costs" booklet.

### FEDERAL RESERVE BOARD DISCLOSURE

If you are applying for an adjustable rate mortgage, we are required to provide you with a "Consumer Handbook on Adjustable Rate Mortgages" and an ARM disclosure. By signing this disclosure, you are acknowledging receipt of the CHARM booklet.

### BORROWER'S CERTIFICATION

I have applied for a mortgage loan from Castle Point Mortgage, Inc. (the "lender"). In applying for the loan I have completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I certify that all of the information is true and complete. I made no misrepresentation in the loan application or other application or other documents, nor did I omit any pertinent information.

I understand and agree that the Lender reserves the right to verify the information provided on the application with the employer and/or the financial institutions.

I fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement when applying for this mortgage, as applicable under the provisions of Title 18 US Code, Section 1014.

I specifically acknowledge and agree that the Lender, it's agents, successors and assigns, may report my name, account information, and other information regarding their credit experiences with me to other proper persons, such as credit reporting agencies and other lenders; and that the Lender, its agents, successors and assigns may release information about my loan, including my application and information obtained in connection with it, to affiliates and their agents so that I can be considered for other products and services offered by them.

*Federal Application Policy  Disclosure Notices.doc  Page 1 of 2*                    *Castle Point Mortgage, Inc.*

CPM 000178

The Lender will normally obtain credit reports for all loan applications, and for updates, renewals, or extensions of any credit granted. Upon request, the Lender will inform you if a report has been obtained and will give you the name and address of the agency furnishing the report. I specifically authorize the Lender, its agents, successors and assigns and investors to whom the Lender may offer the mortgage to obtain and share said credit reports.

I specifically authorize the Lender, it successors, assigns and affiliates to request from time to time consumer reports on me from credit reporting agencies in order to determine my eligibility for additional product and/or service offerings; and any consumer reporting agency to provided from time to time consumer reports on me to the Lender, it's successors, assigns and affiliates so that I can be considered for additional product and/or service offerings. I will not be charged for these reports.

## AUTHORIZATION TO RELEASE INFORMATION

I/We have applied for a mortgage loan from Castle Point Mortgage, Inc. As part of the application process, Castle Point Mortgage, Inc. and the mortgage guaranty insurer may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

I/We authorize you to provide to Castle Point Mortgage, Inc. and to any investor to whom your mortgage may be sold or transferred to, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market and similar account balances; credit history; and copies of income tax returns.

Castle Point Mortgage, Inc. or any investor that purchases the mortgage may address this authorization to any party name in the loan application. A copy of this authorization may be accepted as an original.

## IMPORTANT PROCEDURES FOR OPENING A NEW ACCOUNT – PATRIOT ACT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account.

What this means for you: If you open an account (apply for a loan), we will ask for your name, address, taxpayer identification number, date of birth and other information that will allow us to identify you. Additionally, we will take certain steps to verify your identity, such as asking for your driver's license or other identifying documents or other sources. Similar identification requirements apply to non-personal accounts such as corporations and partnerships. Be assured that we recognize the importance of protecting your privacy and safeguarding the confidentiality of the information you provide to us.

## OTHER IMPORTANT INFORMATIONAL NOTICES

RESCISSION NOTICE – If you are refinancing your primary residence, you loan is subject to a three (3) business day Right of Rescission. Funds will not be disbursed until the fourth (4) business day after closing. Sundays and legal holidays are not counted in determining the rescission period.

ATTORNEY NOTICE – You have the right to employ an attorney of your choice licensed in the state that your property is located to represent you in this transaction.

PROPERTY INSURANCE – You may be required to obtain property insurance as a condition of receiving this loan. If property insurance is required, you may secure insurance from a company or agent of your own choosing. The minimum hazard insurance must equal the greater of:

1.  80% of the total property replacement cost as determined by your insurance agent; OR
2.  total liens on the property, up to 100% of the total property replacement cost as determined by your insurance agent.

In addition, the deductible for the property insurance cannot exceed the greater of $1,000.00 or 1% of the policy amount.

CONDOMINIUM/PLANNED URBAN DEVELOPMENT INSURANCE – If you reside in a condominium or a PUD, you or your agent must provide us with at Master Hazard Policy.

FLOOD INSURANCE – You may be required to obtain flood insurance as a condition of receiving this loan. If it is determined that your property is located in a special flood hazard boundary area, you are required to obtain a flood insurance policy prior to closing. The minimum flood insurance must equal the lesser of:

1.  total property replacement cost as determined by your insurance agent;
2.  total liens on the property; OR
3.  Federal Emergency Management Agency (FEMA) coverage limit of $250,000.

ESCROW ACCOUNTS – If your loan program does not escrow Taxes and Insurance, it will be your responsibility to pay all taxes, insurance premiums, water, sewer, ground rents and/or other assessments on the property listed as collateral on this loan since we will not escrow for this purpose.

IDENTIFICATION REQUIREMENTS: - At closing, all customers will be required to provide an unexpired, government issued, photo ID. For non US persons, this ID must be one of the following forms: 1. passport number and country of issuance; 2. alien identification card number; or 3. number and country of issuance of any other government issued documentation evidencing nationally or residence and bearing a photograph or similar safeguard.

**I/We do hereby certify that I/We have read, understand and acknowledge receipt of the Federal Application Policy and Disclosure Notices set forth above. I/We understand that these notices do not constitute a loan approval or that a loan approval will automatically be granted.**

|  |  |
|---|---|
|  | 01/24/07 |
| Vera N Ngwa | Date |

|  |  |
|---|---|
|  | Date |

*Federal Application Policy Disclosure Notices.doc Page 2 of 2*          *Castle Point Mortgage, Inc.*

# NOTICE TO THE HOME LOAN APPLICANT
# CREDIT SCORE INFORMATION DISCLOSURE

| APPLICANT NAME AND ADDRESS | LENDER NAME AND ADDRESS (ORIGINATOR) |
|---|---|
| Vera N Ngwa<br>10 W 123rd St<br>NEW YORK, NY 10027 | **Castle Point Mortgage**<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075<br>(P) (800) 469-4850, (F) (800) 461-0346 |

In connection with your application for a home loan, Castle Point Mortgage, Inc. must disclose to you the score that a consumer reporting agency distributed, the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on the information a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have any questions concerning the terms of the loan, contact the lender.

The consumer reporting agencies listed below provided a credit score that was used in connection with your home loan application.

| Consumer Reporting Agency #1 | Borrower Vera N Ngwa | Factors: |
|---|---|---|
| Experian<br>PO Box 2002<br>Allen, TX 75013-0036<br>(P)888-397-3742<br><br>Module Used:<br>ExperianFairIsaac<br><br>Range of Possible Scores:<br>300 to 900 | Score: 533<br><br>Created: 12/4/2006 | 39 - SERIOUS DELINQUENCY;<br>10 - PROPORTION OF BALANCE TO HIGH CREDIT ON REVOLVING ACCOUNTS;<br>13 - TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN;<br>18 - NUMBER OF ACCOUNTS WITH DELINQUENCY |
| **Consumer Reporting Agency #2**<br><br>Trans Union Corporation<br>PO Box 1000<br>Crum Lynne, PA 19022<br>(P)800-888-4213<br><br>Module Used:<br>TransUnionEmpirica<br><br>Range of Possible Scores:<br>300 to 900 | Borrower Vera N Ngwa<br><br>Score: 496<br><br>Created: 12/4/2006 | Factors:<br>39 - SERIOUS DELINQUENCY;<br>13 - TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN;<br>10 - PROPORTION OF REVOLVING BALANCES TO REVOLVING CREDIT LIMITS IS TOO HIGH;<br>18 - FREQUENT DELINQUENCY |
| **Consumer Reporting Agency #3**<br><br>Equifax Credit Info Services<br>Atlanta, GA 30374-0241<br>(P)800-685-1111<br><br>Module Used:<br>EquifaxBeacon5.0<br><br>Range of Possible Scores:<br>300 to 900 | Borrower Vera N Ngwa<br><br>Score: 496<br><br>Created: 12/4/2006 | Factors:<br>38 - SERIOUS DELINQUENCY AND DEROGATORY PUBLIC RECORD OR COLLECTION FILED;<br>18 - NUMBER OF ACCOUNTS WITH DELINQUENCY;<br>10 - PROPORTION OF BALANCES TO CREDIT LIMITS TOO HIGH ON REVOLVING ACCOUNTS;<br>13 - TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN |

I have received a copy of this disclosure.

_____

Vera N Ngwa

_____

01/24/07

*CREDIT SCORE INFORMATION DISCLOSURE*

CPM 000180

## RESPA SERVICING DISCLOSURE

Lender: **Castle Point Mortgage, Inc.**                                    Loan Number : 3000002624

**6800 Deerpath Road, Suite 105, Elkridge, MD 21075**

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHTS TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 USC §2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer practices and requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint resolution**

Section 6 of RESPA (12 USC §2605) gives you certain consumer rights, *whether or not your loan servicing is transferred*. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing transfer estimates**

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:
   [ ] We may assign, sell or transfer the servicing of your loan while the loan is outstanding.
   [ ] We are able to service your loan and (we) [ ] will [ ] (will not) [ ] (haven't decided whether to) service your loan.
       OR
   [X] We do not service mortgage loans, [X] and we have not serviced mortgage loans in the past three years.
   [ ] We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.
   [ ] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
           [ ] sell all of the mortgage servicing  [ ] retain all of the mortgage servicing
           [ ] assign, sell or transfer _____% of the mortgage servicing

2. For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:
           [ ] 0 to 25% or none  [ ] 26 to 50%  [ ] 51 to 75%  [X] 76 to 100% or all

   This estimate [X] does  [ ] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. [ ] We have previously assigned, sold, or transferred the servicing of first lien mortgage loans.
       OR
   [X] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

   | Year | Percentage of Loans Transferred |
   |------|--------------------------------|
   |      | (Rounded to the nearest quartile -- 0%, 25%, 50%, 75% or 100%) |
   | 2003 | 100% |
   | 2004 | 100% |
   | 2005 | 100% |

   This information [X] does  [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.


**January 24, 2007**                                    **Castle Point Mortgage, Inc.**
Date                                                    Presenter Servicer or Lender

ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT
I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/we understand that this acknowledgment is a required part of the mortgage loan application.


| Borrower Vera N Ngwa | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Mortgage Cadence Inc. © 1992 – 02/06

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_____     _____
Borrower                    Co-Borrower

| I. TYPE OF MORTGAGE AND TERMS OF LOAN | | | | |
|---|---|---|---|---|
| Mortgage Applied for | [ ] VA    [X] Conventional    [ ] Other (explain):<br>[ ] FHA    [ ] USDA/Rural Housing Service | Agency Case Number<br>3000002624 | | Lender Case Number<br>3000002624 |
| Amount<br>$ 1,165,000.00 | Interest Rate<br>11.875 % | No. of Months<br>360 | Amortization Type: [ ] Fixed Rate    [ ] Other (explain):<br>[ ] GPM    [X] ARM (type): | |

| II. PROPERTY INFORMATION AND PURPOSE OF LOAN | | |
|---|---|---|
| Subject Property Address (street, city, state & ZIP)<br>10 W 123rd St NEW YORK, NY 10027 | | No. of Units<br>2 |
| Legal Description of Subject Property (attach description if necessary) | | Year Built<br>1889 |
| Purpose of Loan  [ ] Purchase  [ ] Construction  [ ] Other (explain):<br>[X] Refinance  [ ] Construction-Permanent | Property will be:<br>[X] Primary Residence  [ ] Secondary Residence  [ ] Investment | |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements  [ ] made  [ ] to be made | |
|---|---|---|---|---|---|
| 2005 | 2,000,000.00 | 960,383.00 | Cash | Cost: $ | |

| Title will be held in what Name(s)<br>Vera N Ngwa | Manner in which Title will be held | Estate will be held in:<br>[X] Fee Simple<br>[ ] Leasehold (show expiration date) |
|---|---|---|
| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) | | |

| III. BORROWER INFORMATION | | |
|---|---|---|
| **Borrower** | | **Co-Borrower** |
| Borrower's Name (include Jr. or Sr. if applicable)<br>Vera N Ngwa | | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number<br>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 | Home Phone (incl. area code)<br>(212) 8316178 | DOB (mm/dd/yyyy)<br>10/19/1976 | Yrs. School<br>16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| [ ] Married    [X] Unmarried (include<br>[ ] Separated    single, divorced, widowed) | Dependents (not listed by Co-Borrower)<br>no.    ages<br>0 | | | [X] Married    [ ] Unmarried (include<br>[ ] Separated    single, divorced, widowed) | Dependents (not listed by Borrower)<br>no.    ages | | |
| Present Address (street, city, state, ZIP)  [ ] Own  [ ] Rent ___ No. Yrs.  2<br>10 W 123rd St<br>NEW YORK, NY 10027 | | | | Present Address (street, city, state, ZIP)  [ ] Own  [ ] Rent ___ No. Yrs.<br>NY | | | |
| Mailing Address, if different from Present Address | | | | Mailing Address, if different from Present Address | | | |

*If residing at present address for less than two years, complete the following*

| Former Address (street, city, state, ZIP)  [ ] Own  [ ] Rent ___ No. Yrs. | Former Address (street, city, state, ZIP)  [ ] Own  [ ] Rent ___ No. Yrs. |
|---|---|

| IV. EMPLOYMENT INFORMATION | | |
|---|---|---|
| **Borrower** | | **Co-Borrower** |
| Name & Address of Employer  [X] Self Employed<br>Cashaan Inc<br>10 New York st<br>New york, NY 10027 | Yrs. on this job<br>4 YRS<br>Yrs. employed in this line of<br>work/profession<br>4.00 | Name & Address of Employer  [ ] Self Employed | Yrs. on this job<br>Yrs. employed in this line of<br>work/profession |
| Position/Title/Type of Business<br>Owner | Business Phone (incl. area code)<br>(917) 7871672 | Position/Title/Type of Business | Business Phone (incl. area code) |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income<br>$ | | Monthly Income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer  [ ] Self Employed | Dates (from – to) | Name & Address of Employer  [ ] Self Employed | Dates (from – to) |
| | Monthly Income<br>$ | | Monthly Income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

3000002624

Freddie Mac Form 65  7/05<br>Mortgage Cadence Inc. © 1087 – 02/06                                                                      Fannie Mae Form 1003  7/05

CPM 000182

Vera N Ngwa

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 30,000.00 | $ | $ 30,000.00 | Rent | $ | |
| Overtime | | | .00 | First Mortgage (P&I) | 6,035.00 | 11,871.36 |
| Bonuses | | | .00 | Other Financing (P&I) | | |
| Commissions | | | .00 | Hazard Insurance | | 453.00 |
| Dividends/Interest | | | .00 | Real Estate Taxes | | 0.00 |
| Net Rental Income | | | .00 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | .00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| **Total** | $ 30,000.00 | $ | $ 30,000.00 | **Total** | $ 6,035.00 | $ 12,324.36 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS | | | |
|---|---|---|---|
| Description | Cash or Market Value | | |
| Cash deposit toward purchase held by: | $ .00 | | |

**Liabilities and Pledged Assets.** List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company OPTION ONE MORTGAGE CO 3 ADA WAY IRVINE, CA 92618 | $ Payment/Months 6,035.00 164, | $ 988,679.80 |
| Acct. no. | $ | Acct. no. 6470017857855 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 1002 ARTHUR DRIVE LYNN HAVEN, FL 32444 | $ Payment/Months 147.00 124 | $ 18,209.00 |
| Acct. no. | $ | Acct. no. 989918991710011 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CBNA 1000 TECHNOLOGY DR # MS5 O FALLON, MO 63368 | $ Payment/Months 417.00 38 | $ * 15,532.00 |
| Acct. no. | $ | Acct. no. 2593620 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CITI P.O. BOX 6500 SIOUX FALLS, SD 57117 | $ Payment/Months 73.00 94 | $ * 6,861.00 |
| Acct. no. | $ | Acct. no. 5424160272763274 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company CHASE 800 BROOKSEDGE BLVD WESTERVILLE, OH 43081 | $ Payment/Months 161.00 34 | $ * 5,352.00 |
| | | Acct. no. 5149231800018162 | | |
| Life insurance net cash value | $ | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 55.00 87 | $ * 4,785.00 |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. 3448083561018 | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,800,000.00 | | | |
| Vested interest in retirement fund | $ | Name and address of Company CBNA 143 SPARKS AVE PELHAM, NY 10803 | $ Payment/Months 135.00 34 | $ * 4,498.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. 61782173 | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ .00 | |
| | | Total Monthly Payments | $ 428.00 | |
| Total Assets a. | $ 1,800,000.00 | Net Worth (a minus b) $ 1,757,650.00 | Total Liabilities b. | $ 42,350.00 |

3000002624

Vern N Nizwa

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Lien | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10 W 123rd St<br>NEW YORK, NY 10027 | SF | $<br>1,800,000.00 | $<br>988,679.77 | $ | $<br>6,035.00 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $<br>800,000.00 | $<br>988,679.77 | $<br>0.00 | $<br>6,035.00 | $<br>0.00 | 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ |
| b. | Alterations, improvements, repairs | |
| c. | Land (if acquired separately) | |
| d. | Refinance (incl. debts to be paid off) | 1,021,015.77 |
| e. | Estimated prepaid items | 2,701.04 |
| f. | Estimated closing costs | 75,773.42 |
| g. | PMI, MIP, Funding Fee | |
| h. | Discount (if Borrower will pay) | |
| i. | Total costs (add items a through h) | 1,099,490.23 |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | |
| l. | Other Credits (explain) | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,165,000.00 |
| n. | PMI, MIP, Funding Fee financed | |
| o. | Loan amount (add m & n) | 1,165,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -65,509.77 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | [ ] | [X] | [ ] | [ ] |
| b. Have you been declared bankrupt within the past 7 years? | [ ] | [X] | [ ] | [ ] |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | [ ] | [X] | [ ] | [ ] |
| d. Are you a party to a lawsuit? | [ ] | [X] | [ ] | [ ] |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | [ ] | [X] | [ ] | [ ] |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | [ ] | [X] | [ ] | [ ] |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | [ ] | [X] | [ ] | [ ] |
| h. Is any part of the down payment borrowed? | [ ] | [X] | [ ] | [ ] |
| i. Are you a co-maker or endorser on a note? | [ ] | [X] | [ ] | [ ] |
| j. Are you a U.S. citizen? | [X] | [ ] | [ ] | [ ] |
| k. Are you a permanent resident alien? | [ ] | [X] | [ ] | [ ] |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | [X] | [ ] | [ ] | [ ] |
| m. Have you had an ownership interest in a property in the last three years? | [X] | [ ] | [ ] | [ ] |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 01/24/2007 | X | 01/24/2007 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [X] I do not wish to furnish this information | CO-BORROWER | [ ] I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino     [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino     [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native     [ ] Asian     [ ] Black or African American<br>[ ] Native Hawaiian or Other Pacific Islander     [ ] White | Race: | [ ] American Indian or Alaska Native     [ ] Asian     [ ] Black or African American<br>[ ] Native Hawaiian or Other Pacific Islander     [ ] White |
| Sex: | [ ] Female     [ ] Male | Sex: | [ ] Female     [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by:<br>[ ] Face-to-face interview<br>[ ] Mail<br>[ ] Telephone<br>[X] Internet | Heather Gearin | Castle Point Mortgage, Inc.<br>6800 Deerpath Road; Suite 105<br>Elkridge, MD 21075 |
| | Interviewer's Signature     Date | |
| | Interviewer's Phone Number (incl. area code)<br>(800) 469-4850 | |

Freddie Mac Form 65  7/05<br>Mortgage Cadence Inc. © 1087 - 02/06

Fannie Mae Form 1003  7/05

CPM 000184

## Statement of Assets and Liabilities
### (Supplement to Residential Loan Application)

Name
**Vera N Ngwa**

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 1,165,000.00
With interest at          11.875 %, for a term of  360          months and to be secured by property known as:
Subject Property Address (street, city, state & ZIP)
10 W 123rd St NEW YORK, NY 10027
Legal Description of Subject Property (attach description if necessary)

**ASSETS AND LIABILITIES**

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.     Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| *List checking and savings accounts below* | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DSNB MACYS 3039 CORNWALLIS RD DURHAM, NC 27709 | $ Payment/Months 1.00 3953 | $ 3,953.00 |
| Acct. no. | $ | Acct. no. 410322114 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 30.00 88 | $ 2,611.00 |
| Acct. no. | $ | Acct. no. 3448083561076 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 29.00 90 | $ 2,591.00 |
| Acct. no. | $ | Acct. no. 3448083561026 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 29.00 87 | $ 2,521.00 |
| Acct. no. | $ | Acct. no. 3448083561066 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 23.00 68 | $ 2,003.00 |
| | | Acct. no. 3448083561096 | | |
| Life insurance net cash value | $ | Name and address of Company BMBY/CBSD PO BOX 6003 HAGERSTOWN, MD 21747 | $ Payment/Months 58.00 34 | $ 1,936.00 |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,800,000.00 | Acct. no. 603526300659 | | |
| Vested interest in retirement fund | $ | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 18.00 89 | $ 1,601.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. 3448083561056 | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ | |
| **Total Assets a.** | $ 1,800,000.00 | Net Worth (a minus b) $ 1,757,650.00 | **Total Liabilities b.** | $ 42,350.00 |

## Statement of Assets and Liabilities
(Supplement to Residential Loan Application)

Name
Vera N Ngwa

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 1,165,000.00
With interest at        11.875 %, for a term of 360        months and to be secured by property known as:
Subject Property Address (street, city, state & ZIP)
10 W 123rd St NEW YORK, NY 10027
Legal Description of Subject Property (attach description if necessary)

### ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS  Descriptions | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | | |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | | |
| List checking and savings accounts below | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 14.00 90 | $ | 1,260.00 |
| Acct. no. | $ | Acct. no. 3448083561066 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DSNB BLOOM 3039 CORNWALLIS RD DURHAM, NC 27709 | $ Payment/Months 24.00 33 | $ | 787.00 |
| Acct. no. | $ | Acct. no. 624981 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company VERIZON NEW YORK INC PO BOX 165018 COLUMBUS, OH 43216 | $ Payment/Months .00 | $ | 93.00 |
| Acct. no. | $ | Acct. no. 2128316178460 | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company VERIZON NY PO BOX 165018 COLUMBUS, OH 43216 | $ Payment/Months 1.00 93 | $ | 93.00 |
| Acct. no. | $ | Acct. no. 617 | | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | $ | |
| | | Acct. no. | | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ | |
| Face amount: $ | | | | | |
| **Subtotal Liquid Assets** | $ | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,800,000.00 | Acct. no. | | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ | |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | | |
| Other Assets (itemize) | $ | | $ | | |
| | | Job-Related Expense (child care, union dues, etc.) | | | |
| | | Total Monthly Payments | $ | | |
| **Total Assets a.** | $ 1,800,000.00 | Net Worth (a minus b) $ 1,757,650.00 | Total Liabilities b. | $ | 42,350.00 |

Freddie Mac Form 65  7/05
Mortgage Cadence Inc. © 1538 · 02/06

Fannie Mae Form 1003  7/05



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

### LOCK-IN/FINANCING AGREEMENT

Vera N Ngwa, (hereinafter referred to collectively as "Borrower") has/have made an application on December 26, 2006 with Castle Point Mortgage, Inc. ("CPM, Inc.") for a mortgage loan (the "loan") secured by the property located at 10 W 123rd St NEW YORK, NY 10027 ("Property").

Borrower seeks a mortgage loan on the terms set forth below ("Loan"). This Lock-In/Financing Agreement ("Agreement") sets forth the terms under which will afford the Borrower rate protection for the term of this Agreement. **This is not a commitment to make a loan or extend credit. All loan terms not expressly locked in and set forth in this Agreement and any written supplements hereto, are subject to change at any time prior to settlement of the Loan. At this time, there are no circumstances by which the Borrower will close at a lower rate.**

- **Terms applied for and loan conditions:**
  A. Loan Term (in months):                        360
  B. Principal Amount of Loan:                     $1,165,000.00
  C. Type of Loan Program:                         Conventional
  D. Lien Position:                                First
  E. Rate Type:                                    ARM
  F. Loan Purpose:                                 Cashout Refinance
  G. Monthly Payment (Principal & Interest):       $11,871.36
  H. Private Mortgage Insurance:                   Not Required
  I. Escrows for Real Estate Taxes & Insurance are: Optional

**In the event that the Borrower selects the Lock-In option, the Borrower and the Property fully qualify for the Loan and the Loan Application is approved, a loan made under this Agreement shall be at the following rate and points (rates effective as of the date of this Agreement):**

A. Interest Rate:                                   11.875%
B. Borrower Points:           Loan Origination:    4.000    Loan Discount:
C. Seller Points (if applicable):   Loan Origination:         Loan Discount:
D. Adjustable Rate (ARM) Terms (if applicable):
   5.380%      Index
   6.500%      Margin
   6.000%      Maximum rate adjustment (cap)
   3.000%      Maximum interest rate adjustment at the end of the first adjustment period
   1.000%      Maximum adjustment each period after the first adjustment
   60          Month interval between adjustment periods

**CPM, Inc. offers and Borrower elects ONE of the following THREE OPTIONS regarding their rate lock:**
**X 1. LOCKED IN - If Lock-In Option is selected, the following conditions apply:**
This LOCK-IN Agreement expires on February 09, 2007. In the event that the Loan does not close on or before that date, the rates and terms set forth in this option may change and CPM, Inc. will not be obligated to honor the terms quoted herein. THIS LOCK-IN provision is effective only if the Borrower executes this Agreement and returns the original to "CPM, Inc." within 7 days after the above initial application date.

**LOCK-IN FEE.** If this box is checked, you will be required to pay – at the time of initial application – a non-refundable Lock-in Fee in the amount of $0.00. In the event that the Loan closes, the fee will be credited to any up-front costs which you will owe in connection with the loan, including loan discount and loan origination fees.

**If the Loan does not close because you withdraw your application or supply incomplete or incorrect information, then the Lock-in Fee will be deemed to be earned by CPM, Inc., and will not be refunded, in whole or in part, to you. If the loan does not close before the expiration date of the agreement through no substantial fault of the Borrower or CPM, Inc. rejects your Loan application, CPM, Inc. will promptly refund to the Borrower any lock-in fee paid by the borrower.**

Please acknowledge Page 1 of the Lock In/Financing Agreement by initialing below:

_____          _____          _____
Vera N Ngwa                                                        Heather Gearin

*Lock-In/Financing Agreement.doc*          *Page 1 of 3*          *Castle Point Mortgage, Inc.*
**Revised 6/22/2006**

**2. FLOATING - If Floating option is selected, the following conditions apply:**
The rate applicable to the Loan in the event that Borrower and the property fully qualify for the Loan and the Loan application is approved shall be the market rate on the date of closing. Rates provided for any given loan program are subject to change, and in fact do change, on a daily basis.

**3. FLOAT TO LOCK - If Float to Lock option is selected, the following conditions apply:**
If you select this option, your rate and points will float in accordance with the "FLOATING" option above, until closing, unless you affirmatively act to lock in the interest rate by carefully following the procedure described herein. You may request that the interest rate and points be locked in under this option by sending a fax request, which includes your name, loan number, property address and statement indicating you wish to lock your interest rate in at today's rate to the following facsimile number: (973) 206-0881. Within 24 hours of receipt of your request, CPM, Inc. will lock in your rate and mail you an updated Agreement confirming your loan terms for a specific lock in period. It is your responsibility to call your loan officer 1 day after sending your fax to CPM, Inc., to confirm receipt of the fax and your lock in terms.

**ADDITIONAL INFORMATION:**

There are other fees and charges associated with the Loan application, processing and closing of the Loan that are not reflected in this Agreement. These fees and charges are approximated in the Good Faith Estimate of Closing Costs, which is required to be supplied to you under federal law.

At the time of the execution of this Agreement, you agree to pay a fee of $130.00 for an appraisal report. This fee is **NON-REFUNDABLE** regardless of whether the mortgage loan is approved, declined, withdrawn, or closed for incompleteness. This fee is separate and distinct from any and all fees due in the event a mortgage loan is procured.

In accordance with New York law, CPM, Inc. will make a good faith effort to process the mortgage loan application as expeditiously as possible and stand ready to fulfill the terms of its Lock-In/Financing Agreement before the expiration date of the Agreement or any extension thereof. A good faith estimate of the time necessary to process the closing of your loan (taking into account the time needed for the performance of any local government inspections and any functions necessary to close the loan) is between 20 and 30 days.

The actual time necessary to process and close your loan may vary from the estimate due to certain situations that are unknown at this time. Some of these situations include, but are not limited to, the following:

  a. the security property is insufficient in value to act as security for the repayment of your loan;
  b. credit obligations that you failed to report;
  c. a change in your financial circumstances resulting in your ineligibility for the loan for which you applied;
  d. a material change or discontinuation of a loan program of an investor or another entity; or
  e. a delay in CPM, Inc. receiving information from you or from others.

CPM, Inc. is not responsible for delays caused by third party providers of services required as a prerequisite to the making of the Loan (such as appraisers, credit bureaus, escrow and title companies, surveyors, and persons requested to supply income, employment and payment history information). CPM, Inc. cannot be responsible for delays caused by persons or circumstances beyond CPM, Inc.'s control which may result in the Lock-in (rate protection) under this Agreement to expire.

Any Agreement received by the lender by mail or through a broker must be signed by the lender in order to become effective. The borrower may rescind any Agreement until a written confirmation of the agreement has been signed by the lender and mailed to the borrower or to the brokerage business pursuant to its contractual relationship with the borrower. If borrower elects to rescind, the lender must promptly refund any lock-in fee paid.

This Agreement, and performance hereunder, shall be interpreted under and governed by the laws of New York and no modification or addition to this Agreement may be made except in writing, executed by both parties. This Agreement is enforceable by Borrower and Lender.

**This is not a commitment to make a loan or extend credit. The terms herein are expressly contingent upon the Borrower and the Property fully qualifying under the loan program selected, or qualifying with the lender or investor to which the Loan application is provided, the approval of the Loan application by CPM, Inc. and any investor or subsequent assignee of the Loan, and the Borrower's fulfilling all of the requirements imposed by CPM, Inc. or investor, or the lender's agents, as prerequisites to making the loan.**

Please acknowledge Page 2 of the Lock In/Financing Agreement by initialing below:

---

Vera N Ngwa                                                                    Heather Gearin

*Lock-In/Financing Agreement.doc*         *Page 2 of 3*         *Castle Point Mortgage, Inc.*
*Revised 6/22/2006*

CPM, Inc. cannot guarantee the Borrower's acceptance by any particular loan program and is not responsible for any failure to approve or close a loan or the Loan to which this Agreement is applicable, if the reason for such failure is attributable to any cause other than conduct by which violates state or federal law applicable to the Loan. If information supplied by the Borrower or any third party in connection with the Loan application is discovered to be materially false or misleading, this Agreement shall be void, and any lock in fee shall be deemed earned and non refundable to the borrower.

This Agreement represents the entire Agreement between the parties hereto regarding rate protection. Any modification hereto or supplementary lock-in must be in writing and signed by both parties. **CPM, Inc. will NOT honor verbal statements or commitments different or in addition to the terms set forth in this Lock-In Agreement.**

**No Documentation/Limited Documentation Loan**

If the loan applied for is a "Limited Documentation" or "No Income Verification" Loan, CPM, Inc. reserves the right to change the mortgage loan process to a "Full Documentation" loan application where required or advisable. "Full Documentation" may require verifying information with employer(s), financial institutions and lenders.

**Tasks the Borrower Must Perform Prior to Closing**

We must receive and approve of all items requested during the loan process. Such information includes stipulations that will be requested from you during the process, and possibly at closing.

You will be required to pay all permitted closing costs including but not limited to title insurance costs, all recording costs, lender's attorney fee(s), and mortgage tax.

You must provide us with clear and marketable title to the property given to secure this loan. Any outstanding title judgments must be paid from the proceeds of this loan or out of your own funds prior to closing. Proof of payoff must be provided to us prior to the disbursement of funds.

You must obtain a one (1) year Homeowners Hazard insurance policy covering the subject property, and naming CPM, Inc. (mortgagee) as an additional named insured. The premium for the hazard insurance policy must be paid in advance. If the property is a condominium, CPM Inc. requires a certificate to the Master insurance policy.

All legal matters relative to this transaction must meet with the approval of the lender's attorney or title company.

This Agreement shall be null and void if any information in your application is incorrect or cannot be verified by us, or if there is any change in your financial condition, the property, or any other circumstances which adversely affects the secured property or your ability to repay the loan.

I/We, the undersigned, have read and fully understand the terms of this Lock-in/Financing Agreement and agree to all terms hereof, and hereby acknowledge receipt of a copy of this Agreement, fully filled out and executed within 10 days after my initial loan application.

| | 01/24/07 |
|---|---|
| Vera N Ngwa | Date |

| | |
|---|---|
| | Date |

| | 01/24/07 |
|---|---|
| Heather Gearin | Date |
| Castle Point Mortgage, Inc. | |

CPM 000189

**Good Faith Estimate of Settlement Charges**

Lender: Castle Point Mortgage, Inc.                                    Loan Number: ___3000002624___

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 A settlement statement that you will be receiving at settlement.
The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

### Estimated Settlement Charges

| | POC | BORROWER | SELLER | LENDER |
|---|---|---|---|---|
| **800:  Items Payable In Connection with the Loan:** | | | | |
| 801: Loan Origination Fee ___4.000e___ % of loan | | 46,600.00e | | |
| 802: Loan Discount _____ % of loan | | | | |
| 803: Appraisal Fee | 100.00 | 30.00e | | |
| 804: Credit Report | | 26.50e | | |
| 805: Inspection Fee | | | | |
| 806: Mtg Ins Application Fee | | | | |
| 807: Assumption Fee | | | | |
| 808: Application Fee | | 595.00e | | |
| 809: Processing Fee | | 795.00e | | |
| 810: | | | | |
| 811: | | | | |
| 812: | | | | |
| 813: | | | | |
| 814: | | | | |
| 815: | | | | |
| 816: | | | | |
| 817: | | | | |
| 818: | | | | |
| **900:  Items Required By Lender To Be Paid In Advance:** | | | | |
| 901: Per diem interest for _2_ days @ _379.02_ per day | | 758.04e | | |
| 902: Mortgage Insurance Premium | | | | |
| 903: Hazard Insurance Premium for 1 year | | 1,943.00e | | |
| 904: | | | | |
| 905: | | | | |
| 906: | | | | |
| 907: | | | | |
| 908: | | | | |
| **1000: Reserves Deposited With Lender** | | | | |
| 1001: Hazard Insurance _____ months @ ___.00___ per month | | | | |
| 1002: Mortgage Insurance _____ months @ _____ per month | | | | |
| 1003: City Property Taxes _____ months @ _____ per month | | | | |
| 1004: County Property Taxes _____ months @ __.00__ per month | | | | |
| 1005: Annual Assessments _____ months @ _____ per month | | | | |
| 1006: _____ months @ _____ per month | | | | |
| 1007: _____ months @ _____ per month | | | | |
| 1008: Aggregate Adjustment | | | | |
| **1100: Title Charges** | | | | |
| 1101: Settlement or Closing Fee | | 375.00e | | |
| 1102: Abstract or Title Search | | 125.00e | | |
| 1103: Title Examination | | 350.00e | | |
| 1104: Title Insurance Binder | | | | |
| 1105: Document Preparation | | | | |
| 1106: Notary Fees | | | | |
| 1107: Attorneys' Fees | | | | |
| 1108: Title Insurance | | 4,268.67e | | |
| 1109: Lender's Coverage | | | | |
| 1110: Owner's Coverage | | | | |
| 1111: Environmental Protection Lien | | 25.00e | | |
| 1112: Wiring Fee | | 75.00e | | |
| 1113: | | | | |
| **1200: Government Recording and Transfer Charges:** | | | | |
| 1201: Recording Fees, Deed, Release | | 112.00e | | |
| 1202: City/County Tax/Stamps, Deed, Mortgage | | | | |
| 1203: State Tax/Stamps, Deed, Mortgage | | 22,396.25e | | 2,912.50e |
| 1204: | | | | |
| 1205: | | | | |

Mortgage Cadence Inc. © 1534 - 0206

CPM 000190

| 1300: Additional Settlement Charges: | POC | BORROWER | SELLER | LENDER |
|---|---|---|---|---|
| 1301: Survey | | | | |
| 1302: Pest Inspection | | | | |
| 1303: | | | | |
| 1304: | | | | |
| 1305: | | | | |
| 1306: | | | | |
| 1307: | | | | |
| Total Settlement Costs: | | * 78,474.46e | | 2,912.50e |

For some of the estimated charges for settlement services above, the use of particular providers of services is required. The estimates are based on charges of the provider. Refer to the separate Provider of Services Addendum disclosure for more information. If the lender will choose a provider from a list of 5 or more service providers, an estimate of the range of the minimum and maximum dollar cost of the charge to be incurred is shown on the separate Addendum.

**\*\*\* The Lender may have requirements for additional monthly Payment reserves. This might require additional liquid assets to be readily available.\*\*\***

These estimates are provided pursuant to the Real Estate Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

The Undersigned acknowledges receipt of the booklet 'Buying Your Home - Settlement Costs and Helpful Information,' and the Consumer Handbook on ARM Mortgage, if applicable. I understand the amounts indicated above are ESTIMATES ONLY and may vary from the actual settlement charges at closing. Also I understand that the loan origination fee, interest rate, loan term, and monthly payment indicated herein are based on my application and may be subject to change. If for any reason the loan for which I have applied does not close, I agree to reimburse the Lender for any and all costs incurred to process my application including, but not limited to, the appraisal and credit reports.

| Applicant | Vera N Ngwa | Date | Applicant | · · Date |
|---|---|---|---|---|
| Applicant | | Date | Applicant | Date |
| Applicant | | Date | Applicant | Date |
| Applicant | | Date | Applicant | Date |

Date of this estimate: 1/24/2007

By:

**This Good Faith Estimate is being provided by Castle Point Mortgage, Inc.**

### Monthly Payment Analysis

| | |
|---|---|
| Principal and Interest | 11,871.36 |
| Property Taxes | 0.00 |
| Hazard Insurance | 453.00 |
| Mortgage Insurance | |
| HOA Dues | |
| Other | |
| **Estimated Payment** | 12,324.36 |

### Program Information

| | |
|---|---|
| Sales Price/Value | |
| Req. Loan Amount: | 1,165,000.00 |
| Type of Loan | Conventional |
| Interest Rate | 11.875 |
| Loan Term | 360 |
| Loan Amortization | ARM |

Total Estimated Funds Needed to Close this Loan

| | |
|---|---|
| Estimated Closing Costs: | -$65,509.77 |
| Estimated Prepaid Items: | $2,701.04 |
| Total Settlement Costs: | $78,474.46 |
| Funds To/From Borrower: | -$65,509.77 |

CPM 000191



**Castle Point Mortgage, Inc.**
6800 Deerpath Road, Suite 105
Elkridge, MD 21075
Phone (800) 469-4850 Fax (800) 461-0346
www.castlepointmortgage.com

### NEW YORK APPLICATION DISCLOSURE AND FEE AGREEMENT

Registered Mortgage Banker
New York State Banking Department

In the following disclosure, I refers to the applicant/borrower; you refers to Castle Point Mortgage, Inc.

### SERVICES PROVIDED BY CASTLE POINT MORTGAGE, INC.:

Castle Point Mortgage, Inc. has advised me that it is authorized and prepared to assist me in securing financing. I understand that Castle Point Mortgage, Inc.'s services may include, but are not limited to the following:

- Taking information from me as the borrower and assisting me in filling out the loan application.
- Educating me in the home financing process, advising me about different loan products available, and explaining to me how closing costs and monthly payments could vary under each product.
- Analyzing my income and debt, counseling and pre-qualifying me to determine appropriate loan product(s) and maximum loan amount I can afford.
- Collecting financial information (tax returns, pay stubs, bank statements) and other documents.
- Investigating the accuracy and completeness of my information.
- Initiating/ordering verification(s) of employment and verification(s) of deposits.
- Initiating/ordering requests for a mortgage and other loan verifications.
- Initiating/ordering a title search on my property and assisting me in clearing title issues.
- Initiating/ordering an appraisal on my property.
- Initiating/ordering inspections or engineering reports as required.
- Informing me of any conditions required to be cleared prior to final approval or closing and assisting me in satisfying those conditions.
- Scheduling the loan closing with a third party closing agent.

I hereby agree to engage Castle Point Mortgage, Inc. for the purpose of advising me about financing and to provide the services described above. This agreement will continue until the earlier of the declination of my loan request(s), the closing of my loan or my termination of Castle Point Mortgage, Inc.'s services.

I acknowledge that prior to paying any fees or completing any application(s), I was advised of the following:

- Castle Point Mortgage, Inc. cannot guarantee acceptance into any particular loan program or specific loan terms or conditions;

### OUR COMPENSATION:

I understand that, as compensation for Castle Point Mortgage, Inc.'s services, I will pay Castle Point Mortgage, Inc. following fees upon the closing and funding of my loan:

- An application fee in the amount of $595.00 which is non-refundable.

- A processing fee in the amount of $795.00 which is non-refundable.

- Origination points equal to 4.000 % of the loan amount or $46,600.00 which is non-refundable.

- A Credit Report Fee of $26.50 which is non-refundable.*

Please acknowledge Page 1 of the New York Application Disclosure and Fee Agreement by signing below:

_____          _____
Vera N Ngwa

*NY Application Disclosure and Fee Agreement   Page 1 of 2*          *Castle Point Mortgage, Inc.*

\*This credit report fee is an estimate of the actual cost of the report. The actual amount will be paid at closing. If the actual cost exceeds the estimate, I agree to pay the actual amount at closing. In the case where I require Castle Point to obtain a credit supplement to correct my credit report (if incorrect information is provided by one of the credit bureaus that I require correcting), the actual costs for these services may exceed the estimate.

In addition, I also understand that I am required to pay the following fee <u>at application</u>:

- Property Appraisal Fee                $130.00

The Property Appraisal Fee is an estimate of the actual cost of this service and is NON-REFUNDABLE once services have been rendered by a third party appraisal company. Should the actual cost of this service exceed the estimate, I understand that I will pay the shortage at or before closing, conversely, if the actual cost is less than the estimate, I understand I will be refunded the difference.

## PREPAYMENT PENALTIES:

I understand that certain mortgage products impose a prepayment penalty on the borrower. Castle Point Mortgage, Inc. will disclose the amount of, or the formula for calculating, the prepayment penalty, and the terms of the prepayment penalty, if any, as soon as Castle Point Mortgage, Inc. knows the terms. In addition, I acknowledge that I am receipt of the Truth-In Lending statement which indicates whether or not my loan contains a prepay penalty clause.

## INTEREST RATE:

The interest rate will be set according to the terms described in the New York Lock In Agreement document provided with this application. If no New York Lock In Agreement was provided with this application, the rate will be set at the time that you decide to lock in the rate or, at the time of closing.

## APPLICATION QUESTIONS:

I understand that I may address questions or comments about my application to Heather Gearin at Castle Point Mortgage, Inc., 6800 Deerpath Road, Suite 105, Elkridge, MD 21075. Or I may call Castle Point Mortgage, Inc. at (800) 469-4850.

## ACKNOWLEDGMENT

By signing below, I/we acknowledge receipt of a copy of the New York Application Disclosure and Fee Agreement.

|                          | 01/24/07 |
| ------------------------ | -------- |
| Vera N Ngwa              | Date     |

|  | |
| ------------------------ | -------- |
|                          | Date     |

*NY Application Disclosure and Fee Agreement   Page 2 of 2*                    *Castle Point Mortgage, Inc.*



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

## GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

Prepared By:          Castle Point Mortgage, Inc.          Applicant(s):          Vera N Ngwa
                      6800 Deerpath Road, Suite 105
                      Elkridge, MD 21075

                                                          Property Address:     10 W 123rd St
                                                                                NEW YORK, NY 10027

Date Prepared:        January 24, 2007                    Loan Number:          3000002624

Certain portions of the estimated settlement fees reflected on the Good Faith Estimate of settlement charges will be paid to particular providers that you are required to use. To the extent the information is available at the time of this disclosure, the following is a list of the names, addresses, and telephone numbers of the providers that you are required to use in connection with your loan. This disclosure is made in accordance with section 3500.7(e) of the Real Estate Settlement Procedures Act. Within the last 12 months, Castle Point Mortgage, Inc. has repeatedly used or required borrowers to use the services of the following providers:

| CREDIT REPORTING AND FLOOD CERTIFICATION: | |
|---|---|
| CBC Companies<br>Hanover, MD 21076<br>7502 Connelley Drive, Suite 106-108<br>(800) 487-1227 | Land America Financial Group, Inc.<br>101 Gateway Centre Parkway<br>Richmond, VA 23235<br>(800) 446-7086 |
| **TITLE & SETTLEMENT SERVICES:** | |
| Fidelity National Title<br>3602 Inland Empire Blvd, Suite A110<br>Ontario, CA 91764<br>(909) 483-8091 | Lending Tree Settlement Services<br>12735 Grand Bay Parkway West – Suite 2000<br>Jacksonville, FL 32258<br>(866) 633-5877 |
| Royal Settlement Services, Inc<br>6800 Deerpath Road, Ste 110<br>Elkridge, MD 21075<br>(800) 591-1099 | The Jordan Real Estate Group<br>2 Industrial Way West<br>Meridian Center I<br>Eatontown, NJ 07724<br>(732)460-1920 |
| **MORTGAGE INSURANCE:** | |
| Genworth Financial<br>1039 Sterling Virginia Road, Suite 203<br>Herndon, VA 20170<br>(800) 336-3756 | |
| **APPRAISALS:** | |
| The Jordan Real Estate Group<br>1191 E. Newport Cntr Dr.<br>Deerfield Beach, FL 33442<br>(954) 429-9952 | Royal Settlement Services, Inc.<br>6800 Deerpath Road, Ste 110<br>Elkridge, MD 21075<br>(800) 591-1099 |

Royal Settlement Services, Inc. is an affiliate of Castle Point Mortgage, Inc., please reference the Affiliated Business Arrangement Disclosure for more information on this relationship.

_____          01/24/07
Vera N Ngwa                                Date

_____
                                          Date

CPM 000194



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850   Fax (800) 461-0346**
**www.castlepointmortgage.com**

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

| Prepared By: | Castle Point Mortgage, Inc.<br>6800 Deerpath Road, Suite 105<br>Elkridge, MD 21075 | Applicant(s): | Vera N Ngwa |
|---|---|---|---|
| | | Property Address: | 10 W 123rd St<br>NEW YORK, NY  10027 |
| Date Prepared: | January 24, 2007 | Loan Number: | 3000002624 |

This is to give you notice that Castle Point Mortgage, Inc. has a business relationship with Royal Settlement Services, Inc.

The principals of Castle Point Mortgage, Inc. are the majority owners of Royal Settlement Services, Inc. with 100 percent ownership. Because of this relationship, this referral may provide Castle Point Mortgage, Inc.  a financial or other benefit..

[X]   A.   Set forth below is the estimated charge or range of charges by the provider for the following settlement services:

Provider and Settlement Service
Charge or Range of Charges:

| | |
|---|---|
| Royal Settlement Services, Inc. - Closing Fee | $375.00 |
| Royal Settlement Services, Inc. - Abstract or Title Search | $125.00 |
| Royal Settlement Services, Inc. - Title Exam Fee | $350.00 |
| Royal Settlement Services, Inc. - Courier Fee | $ |

You are not required to use the listed providers as a condition for purchase, sale, or refinance of the subject property.  If you have had an owners or lenders policy issued on the property you are mortgaging in the last 10 years, please inquire about a possible reissue rate with your loan processor.

**THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

[X]   B.   Set forth below is the estimated charge or range of charges for the settlement services of an attorney, credit reporting agency, or real estate appraiser that we as your lender will require you to use as a condition of your loan on this property to represent our interests in this transaction.

Provider and Settlement Service
Charge or Range of Charges:

| | |
|---|---|
| Royal Settlement Services, Inc. - Appraisal Fee | $130.00 |

### ACKNOWLEDGEMENT

I/We have read this disclosure form and understand that Castle Point Mortgage, Inc. is referring me/us to purchase the above-described settlement services from Royal Settlement Services, Inc., and may receive a financial or other benefit as a result of this referral.

| | 01/24/07 |
|---|---|
| Vera N Ngwa | Date |
| | Date |

CPM 000195



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850 Fax (800) 461-0346**
**www.castlepointmortgage.com**

### 5/6 LIBOR ADJUSTABLE RATE MORTGAGE (ARM) DISCLOSURE

This program disclosure describes the features of the adjustable rate mortgage (ARM) program you are considering. Information on other ARM programs may be available upon request.

**How Your Interest Rate and Payment Are Determined**

ARMs ("Adjustable Rate Mortgages"), get their name from the fact that their interest rate is periodically adjusted by the lender. At each interest rate adjustment, your new interest rate will be based on an index plus a margin. The index rate is the six month London Interbank Offered Rate (LIBOR). The rate is most commonly published in financial publications such as the Wall Street Journal. At each interest rate adjustment, the value of the index most recently available will be added to the margin, and the resulting interest rate will be rounded to the nearest 0.125 percentage point (0.125%). This will be your new interest rate unless the caps or floors on your interest rate, as described below, limit the amount your interest rate will change.

If the index for your ARM is no longer available, the Lender or the transferee of the Note and Security Instrument, who is entitled to receive payments under the Note, will choose a new index based on comparable information.

The initial interest rate being offered is not based on the interest rate formula described above as it may be either premium based or discounted from the computed formula. Ask your mortgage representative for the amount of the current interest rate, margin and lifetime cap as well as the amount of the current interest rate premium or discount and the discount points currently charged on this loan program. Please be aware that unless you enter a lock-in agreement once you have made your application, there is no guarantee the interest rate and discount points quoted will be available to you when your loan is ready for settlement.

Your loan payments are adjusted in response to adjustments of the index rate. At each adjustment the new loan payment is the amount that will fully amortize the then outstanding principal balance of your loan in the remaining loan term at the new interest rate. Your initial loan payments will be based on your initial interest rate, loan term and loan amount.

**How Your Interest Rate Can Change**

Your interest rate will be fixed for a period of five (5) years (60 payments). The initial rate change will take place in the sixtieth (60th) month and on that day every six (6) months thereafter. Each date on which your interest rate can change is called a "Change Date" and will be described in your loan documents. On each change Date, your interest rate will equal the index plus the margin, rounded up or down to the nearest .125%, unless your interest rate "caps" or "floors" limit the amount of change in the interest rate. The limitation on increases to your interest rate over the term of the loan will be six (6%) percentage points above the initial interest rate (the "cap"). Your interest rate will not decrease below the "floor" rate over the term of the loan which is equal to the initial interest rate. On the first Change Date, the limitation on increases to your interest rate will be set at three (3%) percentage points above the initial interest rate. On the second Change Date and every Change Date thereafter, the limitation on increases or decreases to your interest rate will be set at an amount of one (1%) percentage point.

It is in your interest to find out all terms of your loan including the start rate and the margin of the program for which you have applied. For overall rate limitations currently offered for Castle Point Mortgage's ARM programs, please contact a Castle Point Mortgage, Inc. representative.

**How Your Payment Can Change**

The initial payment change will take place effective within the sixty-first (61th) payment due date. Your principal and interest payment may change every six (6) months thereafter, based on changes in the interest rate, loan balance and remaining loan term. You will be notified in writing of any adjustments in your interest rate and payments at least 25, but no more than 120, days before your new interest rate will become effective. Your new payment will be due beginning with the first payment due date after the Change Date on which the related interest rate change occurred, and will be your payment until the first payment due date after the next Change Date. The notice you will receive will show your new interest rate and new payment amount, the date the interest rate and payment adjustment take effect, the balance of your loan and the name and telephone number of a Representative who can answer any questions you may have about your notice.

CPM 000196

Your monthly payment can increase or decrease substantially based on semi-annual changes in the interest rate. The following example provides information on varying terms:

**30 Year Example**

Let's assume you have a loan amount of $10,000, a loan term of 30 years, an initial interest rate of 9.75% (based on the 5.50% index value in effect in June 2006, plus a margin of 9.75%, and less a discount of 5.50%), the maximum amount that the interest rate can rise under this program is 6.0 percentage points to 15.75% and the monthly payment can rise from a first year payment of $85.92 to a maximum of $128.81 in the seventh (7th) year. To see what your payments would have been during the period shown above, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. For example, the monthly payment for a mortgage amount of $60,000 would be $60,000 divided by $10,000=6; 6 x $85.92 = $515.52.

**Demand Feature Information**

This obligation does not have a demand feature.

**Important Loan Information**

This description is for informational purposes only and does not constitute a commitment on the part of the Lender to provide financing. The Note, Security Instrument and Riders ('Loan Documents") will control the terms of the loan; therefore, you should become familiar with and understand the provisions of these documents. Upon execution of the Loan Documents, both you and the Lender will become bound by the terms of the Loan Documents.

**Thank you for inquiring about a mortgage loan at Castle Point Mortgage, Inc. If this program disclosure has not fully answered your questions concerning this loan program, ask your mortgage representative for additional information.**

**I/We do hereby certify that I/We have read, understand and acknowledge receipt of the 5/6 LIBOR ARM Disclosure set forth above. I/We also acknowledge receipt of the Consumer Handbook on Adjustable Rate Mortgages.**

|  | 01/24/07 |
| --- | --- |
| Vera N Ngwa | Date |

|  |  |
| --- | --- |
|  | Date |

CPM 000197



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850  Fax (800) 461-0346**
**www.castlepointmortgage.com**

## IMPORTANT INFORMATION ABOUT YOUR PRIVACY

### WE ARE COMMITTED TO SAFEGUARDING CUSTOMER INFORMATION

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. We have adopted this Privacy Policy to govern the use and handling of your personal information.

### APPLICABILITY

This privacy policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### TYPES OF INFORMATION

Depending upon which of our services you are utilizing, the types of non-public information personal information that we may collect include:

- Information we receive from you on applications, forms, and in other communications to us, whether in person, by telephone or any other means;
- Information about your transactions with us or others; and
- Information we receive from a consumer reporting agency.

### USE OF INFORMATION

We request information from you for our own legitimate business purposes and not for the benefit of any non-affiliated party. Therefore, we will not release your information to non-affiliated parties except:

1) as necessary for us to provide the product or service you have requested of us;
2) with third party lenders, wholesale lenders or investors, who have a relationship with us to acquire mortgage products that meet your specific needs; or
3) as permitted by law.

We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as equality control efforts or customer analysis and to track generic statistical information.

We may also provide all of the types of non-public personal information listed above to one or more of our unaffiliated lenders, wholesale lenders or investors, with whom we have joint marketing or service agreements. Such unaffiliated companies may include financial service providers, such as a bank, wholesale lenders, investors, title insurers, property and casualty insurers, or companies involved in real estate services, such as appraisal companies, and escrow companies.

Furthermore, we will not disclose information about you to anyone except as disclosed in this policy or as permitted by law. Examples of this might include disclosures necessary to service your account, prevent unauthorized transactions or in response to legal process.

### FORMER CUSTOMERS

Even if you are no longer our customer, our privacy policy will continue to apply to you.

### CONFIDENTIALITY AND SECURITY

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to non-public personal information about you to those individuals and entities who need to know that information to provide products and services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your non-public personal information.

CPM 000198



**Castle Point Mortgage, Inc.**
**6800 Deerpath Road, Suite 105**
**Elkridge, MD 21075**
**Phone (800) 469-4850  Fax (800) 461-0346**
**www.castlepointmortgage.com**

### THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977
### FAIR LENDING NOTICE

It is illegal to discriminate in the provisions of or in the availability of financial assistance because of the consideration of:

1. Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation, unless the financial institution can demonstrate in the particular case that such consideration is required to avoid an unsafe and unsound business practice; or

2. Race, color, religion, sex, martial status, national origin or ancestry.

It is illegal to consider the racial, ethnic, religious or national origin composition of a neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change, in appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.

These provisions govern financial assistance for the purpose of the purchase, construction, rehabilitation or refinancing of a one-to-four unit residence occupied by the owner and for the purpose of the home improvement of any one-to-four unit family residence.

If you have any questions about your rights, or if you wish to file a complaint, contact the management of this financial institution or the agency noted below:

**Office of Fair Housing and Equal Opportunity**
**U.S. Department of Housing and Urban Development**
**Room 5204**
**451 Seventh Street SW**
**Washington, DC  20410-2000**

CPM 000199

# Borrower Signature Authorization

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et. Sq. (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et. Seq., or 7 USC, 172 et. Seq. (if USDA/FmHA).

## Part I – General Information

| 1. Borrower(s) | 2. Name and address of Lender/Broker |
|---|---|
| Vera N Ngwa | **Castle Point Mortgage, Inc.** |
| | **6800 Deerpath Road, Suite 105** |
| | **Elkridge, MD 21075** |
| | **(P) (800) 469-4850, (F) (800) 461-0346** |

| 3. Date | 4. Loan Number | |
|---|---|---|
| January 24, 2007 | 3000002624 | |

## Part II – Borrower Authorization

I hereby authorize the Lender/Broker to verify my past and present employment earnings records, bank accounts, stock holdings, and any other asset balances that are needed to process my mortgage loan application. I further authorize the Lender/Broker to order a consumer credit report and verify other credit information, including past and present mortgage and landlord references. It is understood that a copy of this form will also serve as authorization.

The information the Lender/Broker obtains is only to be used in the processing of my application for a mortgage loan.

_____    01/24/07

Vera N Ngwa    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

_____

CPM 000200

# Title Company
# Borrower Signature Authorization

I hereby authorize <u>RSS</u>  (hereinafter referred to as "the Title Company"), to verify my past and present employment earnings records, bank accounts, stock holdings, and any other asset balances that are needed to process my mortgage loan application. I further authorize the Title Company to order mortgage and lien payoffs, a consumer credit report and verify other credit information, including past and present mortgage and landlord references. It is understood that a copy of this form will also serve as authorization.

The information the Title Company obtains is only to be used for clearance of title and the processing of my application for a mortgage loan.

_____    01/24/07_____
Vera N Ngwa

_____

**EXHIBIT  4**

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_Vera N. Ngwa_ _____    _____
Borrower                                  Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA  [X] Conventional  [ ] Other (explain): [ ] FHA  [ ] USDA/Rural Housing Service | Agency Case Number 3000002624 | Lender Case Number 3000002624 |
|---|---|---|---|
| Amount $ 1,165,000.00 | Interest Rate 11.875 % | No. of Months 360 | Amortization Type: [ ] Fixed Rate  [ ] GPM  [X] ARM (type): [ ] Other (explain): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 10 W 123rd St NEW YORK, NY 10027 | | | No. of Units 2 |
|---|---|---|---|
| Legal Description of Subject Property (attach description if necessary) | | | Year Built 1889 |

| Purpose of Loan | [ ] Purchase  [ ] Construction  [ ] Other (explain): [X] Refinance  [ ] Construction-Permanent | Property will be: [X] Primary Residence  [ ] Secondary Residence  [ ] Investment |
|---|---|---|

| Complete this line if construction or construction-permanent loan. | | | | | |
|---|---|---|---|---|---|
| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |

| Complete this line if this is a refinance loan. | | | | | |
|---|---|---|---|---|---|
| Year Acquired 2005 | Original Cost 2,000,000.00 | Amount Existing Liens 960,383.00 | Purpose of Refinance Cash | Describe Improvements [ ] made  [ ] to be made  Cost: $ | |

| Title will be held in what Name(s) Vera N Ngwa | Manner in which Title will be held | Estate will be held in: [X] Fee Simple  [ ] Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) Vera N Ngwa | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) (212) 8316178 | DOB (mm/dd/yyyy) 10/19/1976 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| [ ] Married  [X] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents (not listed by Co-Borrower) no. ___ ages 0 | | | [ ] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents (not listed by Borrower) no. ___ ages | | |
| Present Address (street, city, state, ZIP) [X] Own  [ ] Rent _____ No. Yrs. 10 W 123rd St NEW YORK, NY 10027 | | | | Present Address (street, city, state, ZIP) [ ] Own  [ ] Rent _____ No. Yrs. NY | | | |
| Mailing Address, if different from Present Address | | | | Mailing Address, if different from Present Address | | | |

| If residing at present address for less than two years, complete the following | | |
|---|---|---|
| Former Address (street, city, state, ZIP) [ ] Own  [ ] Rent _____ No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own  [ ] Rent _____ No. Yrs. | |

## IV. EMPLOYMENT INFORMATION

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer Cashman Inc 10 New York st New york, NY 10027 | [X] Self Employed | Yrs. on this job 4 yrs | Name & Address of Employer | [ ] Self Employed | Yrs. on this job |
| | | Yrs. employed in this line of work/profession 4.00 | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business Owner | Business Phone (incl. area code) (917) 2871672 | Position/Title/Type of Business | Business Phone (incl. area code) |

| If employed in current position for less than two years or if currently employed in more than one position, complete the following: | | | | | |
|---|---|---|---|---|---|
| Name & Address of Employer | [ ] Self Employed | Dates (from - to) | Name & Address of Employer | [ ] Self Employed | Dates (from - to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer | [ ] Self Employed | Dates (from - to) | Name & Address of Employer | [ ] Self Employed | Dates (from - to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

3000002624

Vera N Ngwa

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 30,000.00 | $ | $ 30,000.00 | Rent | $ | |
| Overtime | | | .00 | First Mortgage (P&I) | 6,035.00 | 11,871.36 |
| Bonuses | | | .00 | Other Financing (P&I) | | |
| Commissions | | | .00 | Hazard Insurance | | 453.00 |
| Dividends/Interest | | | .00 | Real Estate Taxes | | 0.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below.) | | | .00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 30,000.00 | $ | $ 30,000.00 | Total | $ 6,035.00 | $ 12,324.36 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income     Notice: Alimony, child support, or separate maintenance income need not be revealed
if the Borrower (B) or Co-Borrower (C) does not choose to have it considered
for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.     Completed [ ] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ .00 | LIABILITIES | | |
| **List checking and savings accounts below** | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company OPTION ONE MORTGAGE CO 3 ADA WAY IRVINE, CA 92618 | $ Payment/Months 6,035.00 351 | $ * 906,076.00 |
| Acct. no. | $ | Acct. no. 6470017857855 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 1002 ARTHUR DRIVE LYNN HAVEN, FL 32444 | $ Payment/Months 147.00 126 | $ 18,389.00 |
| Acct. no. | $ | Acct. no. 988918991710011 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company EBNA 1000 TECHNOLOGY DR # H55 0 FALLON, MO 63368 | $ Payment/Months 417.00 36 | $ * 14,952.00 |
| Acct. no. | $ | Acct. no. 2593620 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CITI P.O. BOX 6500 SIOUX FALLS, SD 57117 | $ Payment/Months 72.00 95 | $* 6,797.00 |
| Acct. no. | $ | Acct. no. 5424180272763274 | | |
| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company CHASE 800 BROOKSEDGE BLVD WESTERVILLE, OH 43081 | $ Payment/Months 161.00 34 | $* 5,352.00 |
| | | Acct. no. 5149231800018162 | | |
| Life insurance net cash value | $ | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 55.00 87 | $ 4,785.00 |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $ | Acct. no. 3448003561016 | | |
| Real estate owned (enter market value from schedule of real estate owned) | 1,800,000.00 | | | |
| Vested interest in retirement fund | $ | Name and address of Company CBNA 143 SPARKS AVE PELHAM, NY 10803 | $ Payment/Months 135.00 34 | $ * 4,496.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. 61782173 | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ .00 | |
| | | **Total Monthly Payments** | $ 427.00 | |
| **Total Assets a.** | 1,800,000.00 | Net Worth (a minus b) | $ 1,761,423.00 | **Total Liabilities b.** $ 38,577.00 |

3000002624

Freddie Mac Form 65 7/05
Mortgage Cadence Inc. © 1087 - 02/06

Fannie Mae Form 1003 7/05

Iera N Ngwa

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10 W 123rd St NEW YORK, NY 10027 | SF | $ 1,800,000.00 | $ 906,076.00 | $ | $ 6,035.00 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 800,000.00 | $ 906,076.00 | $ 0.00 | $ 6,035.00 | $ 0.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Borrower | | | Co-Borrower | |
| | | | Yes | No | | Yes | No |
| a. Purchase price | $ | If you answer "Yes" to any questions a through i please use continuation sheet for explanation. | | | | | |
| b. Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | [ ] | [x] | | [ ] | [ ] |
| c. Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | [ ] | [x] | | [ ] | [ ] |
| d. Refinance (incl. debts to be paid off) | 937,768.00 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | [ ] | [x] | | [ ] | [ ] |
| e. Estimated prepaid items | 2,701.04 | d. Are you a party to a lawsuit? | [ ] | [x] | | [ ] | [ ] |
| f. Estimated closing costs | 75,773.42 | e. Have you directly or indirectly been obligated on any loan which resulted in | | | | | |
| g. PMI, MIP, Funding Fee | | foreclosure, transfer of title or deed in lieu of foreclosure, or judgment? | | | | | |
| h. Discount (if Borrower will pay) | | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | | |
| i. Total costs (add items a through h) | 1,016,242.46 | | | | | | |
| j. Subordinate financing | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | [ ] | [x] | | [ ] | [ ] |
| k. Borrower's closing costs paid by Seller | | g. Are you obligated to pay alimony, child support, or separate maintenance? | [ ] | [x] | | [ ] | [ ] |
| l. Other Credits (explain) | | h. Is any part of the down payment borrowed? | [ ] | [x] | | [ ] | [ ] |
| | | i. Are you a co-maker or endorser on a note? | [ ] | [x] | | [ ] | [ ] |
| | | j. Are you a U.S. citizen? | [x] | [ ] | | [ ] | [ ] |
| | | k. Are you a permanent resident alien? | [ ] | [x] | | [ ] | [ ] |
| | | l. Do you intend to occupy the property as your primary residence? | [x] | [ ] | | [ ] | [ ] |
| | | If "Yes," complete question m below. | | | | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,165,000.00 | m. Have you had an ownership interest in a property in the last three years? | [x] | [ ] | | [ ] | [ ] |
| | | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | PR | |
| n. PMI, MIP, Funding Fee financed | | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | | |
| o. Loan amount (add m & n) | 1,165,000.00 | | | | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -148,757.54 | | | | | | |

**IX. ACKNOWLEDGEMENT AND AGREEMENT**

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _Iera N Ngwa_ | 01/24/2007 | X | 01/24/2007 |

**X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES**

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| [ ] I do not wish to furnish this information | | [ ] I do not wish to furnish this information | |
| Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White | Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White |
| Sex: | [ ] Female   [ ] Male | Sex: | [ ] Female   [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: [ ] Face-to-face interview [ ] Mail [ ] Telephone [ ] Internet | Heather Gearin | Castle Point Mortgage, Inc. 6800 Deerpath Road, Suite 105 Elkridge, MD 21075 |
| | Interviewer's Signature _Heather Gearin_   Date 1/25/0 | |
| | Interviewer's Phone Number (incl. area code) (800) 469-4850 | |

Freddie Mac Form 65  7/05
Mortgage Cadence Inc. © 1087 – 02-06

Fannie Mae Form 1003  7/05

CPM 000055

## Statement of Assets and Liabilities
### (Supplement to Residential Loan Application)

Name
Vera N Ngwa

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 1,165,000.00
With interest at    11.875 %, for a term of  360      months and to be secured by property known as:
Subject Property Address (street, city, state or ZIP)

10 W 123rd St NEW YORK, NY 10027
Legal Description of Subject Property (attach description if necessary)

### ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| List checking and savings accounts below | | LIABILITIES | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company SALLIE MAE 3RD PTY LSC 1002 ARTHUR DR LYNN HAVEN, FL 32444 | $ Payment/Months 14.00 90 | $ 1,260.00 |
| Acct. no. | $ | Acct. no. 344B083501060 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DSNB BLOOM 3039 CORNWALLIS RD DURHAM, NC 27709 | $ Payment/Months 24.00 33 | $ 787.00 |
| Acct. no. | $ | Acct. no. 824961 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company VERIZON NEW YORK INC PO BOX 165018 COLUMBUS, OH 43216 | $ Payment/Months | $ 93.00 |
| Acct. no. | $ | Acct. no. 2128316178460 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company VERIZON NY PO BOX 165018 COLUMBUS, OH 43216 | $ Payment/Months 93.00 1 | $ 93.00 |
| Acct. no. | $ | Acct. no. 617 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 1,800,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | 1,800,000.00 | Net Worth $ (a minus b) 1,761,423.00 | Total Liabilities b. | $ 38,577.00 |

Freddie Mac Form 65 7/05
Mortgage Cadence Inc. © 13N1 - 02/06

Fannie Mae Form 1003  7/05

## Statement of Assets and Liabilities
### (Supplement to Residential Loan Application)

Name
Vera N Ngwa

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 1,165,000.00
With interest at     11.875 %, for a term of 360     months and to be secured by property known as:

Subject Property Address (street, city, state & ZIP)

10 W 123rd St NEW YORK, NY 10027

Legal Description of Subject Property (attach description if necessary)

### ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| List checking and savings accounts below | | LIABILITIES | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company   *Not Included  DSNB MACYS  3039 CORNWALLIS RD  DURHAM, NC 27709 | $ Payment/Months  3,953.00  1 | $  3,953.00 |
| Acct. no. | $ | Acct. no.  410322114 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | $ Payment/Months  30.00  88 | $  2,811.00 |
| Acct. no. | $ | Acct. no.  3448083561076 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | $ Payment/Months  29.00  90 | $  2,591.00 |
| Acct. no. | $ | Acct. no.  3448083561026 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | $ Payment/Months  29.00  87 | $  2,521.00 |
| Acct. no. | $ | Acct. no.  3448083561066 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | $ Payment/Months  23.00  88 | $  2,003.00 |
| | | Acct. no.  3448083561096 | | |
| Life insurance net cash value  Face amount: $ | $ | Name and address of Company  BMBY/CBSD  PO BOX 6003  HAGERSTOWN, MD 21747 | $ Payment/Months  56.00  34 | $  1,936.00 |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 1,800,000.00 | Acct. no.  6035263300859 | | |
| Vested interest in retirement fund | $ | Name and address of Company  SALLIE MAE 3RD PTY LSC  1002 ARTHUR DR  LYNN HAVEN, FL 32444 | $ Payment/Months  18.00  69 | $  1,601.00 |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no.  3448083561058 | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | 1,800,000.00 | Net Worth  (a minus b)  $  1,761,423.00 | Total Liabilities b. | $  38,577.00 |

Freddie Mac Form 65 7/05
Mortgage Cadence Inc. © 1538 - 02/06

Fannie Mae Form 1003 7/05

CPM 000057

Document Date: JANUARY 25, 2007

I/We hereby attest to the fact that I/we have not incurred any new debt obligations which have not been disclosed to the lender during the last 90 day period.

Thank you.


_____     _____
Borrower VERA N NGWA                    Date     Borrower                           Date


_____     _____
Borrower                           Date     Borrower                           Date


_____     _____
Borrower                           Date     Borrower                           Date


08/30/04                                      DocMagic eForms 800-649-1362
                                              www.docmagic.com

90d1.uuc

**EXHIBIT 5**

Mortgage Recording Tax:

After Recording Return To:

CASTLE POINT MORTGAGE, INC.
7 ENTIN ROAD
PARSIPPANY, NEW JERSEY 07054
Loan Number: 3000002624

—————————— [Space Above This Line For Recording Data] ——————————

# MORTGAGE

**MIN:** 1002735-3000002624-9

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated   JANUARY 25, 2007       , together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."   VERA N NGWA


whose address is   10 WEST 123RD STREET, NEW YORK, NEW YORK 10027

sometimes will be called "Borrower"
and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of   P.O. BOX 2026, FLINT, MI 48501-2026                          , tel. (888) 679-MERS.
**FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender."   CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION

will be called "Lender."  Lender is a corporation or association which exists under the laws of
MARYLAND
Lender's address is   6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND 21075

(E) "Note." The note signed by Borrower and dated   JANUARY 25, 2007       , will be called the "Note." The Note shows that I owe Lender   ONE MILLION ONE HUNDRED SIXTY-FIVE THOUSAND AND 00/100               Dollars (U.S. $ 1,165,000.00       ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by   FEBRUARY 1, 2037       .

Section:               Block:               Lot(s)/Unit No(s).:


Borrower Initials: _VNN_    _____    _____    _____    _____    _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic *eForms* 800-649-1362
Form 3033 01/01 (01/01/07)                    Page 1 of 16                                   www.docmagic.com

Ny3033.mzm

**(F)** "**Property.**" The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G)** "**Loan.**" The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Sums Secured.**" The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I)** "**Riders.**" All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | |
|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☐ Other(s) [specify] |

**(J)** "**Applicable Law.**" All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K)** "**Community Association Dues, Fees, and Assessments.**" All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L)** "**Electronic Funds Transfer.**" "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items.**" Those items that are described in Section 3 will be called "Escrow Items."

**(N)** "**Miscellaneous Proceeds.**" "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)** "**Mortgage Insurance.**" "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment.**" The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)** "**RESPA.**" "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Borrower Initials: _VNN_ ___ ___ ___ ___ ___

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)　　　　　　　Page 2 of 16　　　DocMagic *eForms* 800-649-1362
www.docmagic.com

Ny3033.mzm

CPM 000013

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fall to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

    (A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in Interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at        10 WEST 123RD STREET        .
                                    [Street]

                        NEW YORK                , New York   10027        .
                        [City, Town or Village]                        [Zip Code]

This Property is in          NEW YORK          County. It has the following legal description: SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A". A.P.N.: 1-1721-24

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

Borrower Initials: _K_A_N_   _____   _____   _____   _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic *eForms* 800-649-1362
Form 3033 01/01 (01/01/07)                Page 3 of 16                       www.docmagic.com

Ny3033.mzm

CPM 000014

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1.  **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.  **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess

Borrower Initials: _VNL_  _____  _____  _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                Page 4 of 16                    DocMagic ⒺFΘᴿᵐˢ 800-649-1362
www.docmagic.com

Ny3033.mzrs

exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.    **Monthly Payments For Taxes And Insurance.**

(a)  **Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1)  The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2)  The leasehold payments or ground rents on the Property (if any);

(3)  The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)  The premium for Mortgage Insurance (if any);

(5)  The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6)  If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

Borrower  Initials: _/_*NM*_  _____   _____   _____   _____   _____

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  DocMagic *€Rarms* 800-649-1362
Form 3033 01/01 (01/01/07)  Page 5 of 16  www.docmagic.com

Ny3033.mzm

CPM 000016

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, government authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time

Borrower Initials: _VNW_

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                          Page 6 of 16

DocMagic *E∏RMTIS* 800-649-1362
www.docmagic.com

Ny3033.mzm

charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available Insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy

Borrower Initials: _NN_ ____ ____ ____ ____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                                    Page 7 of 16                     DocMagic eFerms 800-649-1362
                                                                                                www.docmagic.com

Ny3033.mzm

the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7.    Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a)  Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b)  Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.    Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9.    Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to:  (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay these amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title

Borrower Initials: _KNK_ ___  ___  ___  ___

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                Page 8 of 16                DocMagic 800-649-1362
www.docmagic.com

ny3033.mzm

CPM 000019

(sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous

Borrower Initials: _VN_N_  _____  _____  _____

Ny3033.mzm

Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if:

Borrower Initials: _KNW_ ____ ____ ____ ____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)          Page 10 of 16

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Ny3033.mzm

(1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due. Lender will have the right under Section 22 below to demand that I make immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions

Borrower Initials: _MN_  _____  _____  _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                Page 11 of 16                DocMagic €Forms 800-649-1362
                                                                      www.docmagic.com

CPM 000022

of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Security Instrument Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan

Borrower Initials: _VVV_ _____ _____ _____ _____ _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                        Page 12 of 16
DocMagic CForms 800-649-1362
www.docmagic.com

Ny3033.mzm

servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

22. **Lender's Rights if Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

Borrower Initials: _VNW_

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                    Page 13 of 16         DocMagic * financ* 800-649-1362
                                                                    www.docmagic.com

ny3033.mzm

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a)  I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b)  Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

   (1)  The promise or agreement that I failed to keep or the default that has occurred;
   (2)  The action that I must take to correct that default;
   (3)  A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
   (4)  That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
   (5)  That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
   (6)  That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.  **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24.  **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25.  **Borrower's Statement Regarding the Property [check box as applicable].**

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

Borrower Initials: _VNV_  ___  ___  ___  ___  ___

CPM 000025

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
VERA N NGWA                -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Witness:                                    Witness:

_____                   _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                Page 15 of 16          DocMagic eForms 800-649-1362
                                                                 www.docmagic.com

CPM 000026

---

[Space Below This Line For Acknowledgment] —

---

State of New York )
) ss.
County of NEW YORK )

On the 25th day of January , in the year 2007 , before me,

the undersigned, personally appeared VERA N NGWA

---

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Michael Senz_
Notary Public State of New York

_Michael Senz_
Print or Type Name

(Seal, if any)                    My commission expires: 08/30/08

Tax Map Information No.: 1-1721-24

MICHAEL SENZ
Notary Public - State of New York
No. 01SE6114952
Qualified in New York County
My Comm. Expires Aug. 30, 2008

---

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01 (01/01/07)                    Page 16 of 16

DocMagic eForms 800-649-1362
www.docmagic.com

Vy3033.mzm

Loan Number: 3000002624

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 25th day of JANUARY, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

10 WEST 123RD STREET, NEW YORK, NEW YORK 10027
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Borrower Initials: _____

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                    Page 1 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

fn3170.rid

CPM 000028

**E.  "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F.  BORROWER'S OCCUPANCY.**  Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G.  ASSIGNMENT OF LEASES.**  Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**  Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower:  (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

Borrower Initials:  _VNN_ _____  _____  _____  _____  _____

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                    Page 2 of 3

DocMagic &#8471;&#8470;&#8471;&#8470; 800-649-1362
www.docmagic.com

Us3170.rid

CPM 000029

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.  CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
VERA  N  NGWA                    -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower


MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                       Page 3 of 3

DocMagic *EForms* 800-649-1362
www.docmagic.com

MIN: 1002735-3000002624-9          Loan Number: 3000002624

# ADJUSTABLE RATE RIDER
**(LIBOR Six-Month Index (As Published in *The Wall Street Journal*)**
**- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 25th day of JANUARY, 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to CASTLE POINT MORTGAGE, INC., A
MARYLAND CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

10 WEST 123RD STREET, NEW YORK, NEW YORK 10027

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     11.875 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A)   Change Dates**
   The interest rate I will pay may change on the 1st  day of FEBRUARY, 2012
and on that day every 6th  month thereafter. Each date on which my interest rate could change is called
a "Change Date."
   **(B)   The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

Borrower Initials: _____  _____  _____

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX                    *DocMagic* ℰℱℴℴℴℴ 800-649-1362
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)                                     *www.docmagic.com*
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                         Page 1 of 3

Us3138.rid

CPM 000031

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 500/1000                percentage points (      6.500  %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 17.875 % or less than       6.500 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000                percentage points (      2.000  %) from the rate of interest I have been paying for the preceding      6      months.  My interest rate will never be greater than 17.875 %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

Borrower Initials: _VN N_____  _____  _____

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                    Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

CPM 000032

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.


_____ (Seal)          _____ (Seal)
VERA N NGWA                    -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                       -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                       -Borrower                                         -Borrower


MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                    Page 3 of 3

DocMagic *eFerms* 800-649-1362
www.docmagic.com

**EXHIBIT  6**

MIN: 1002735-3000002624-9                    Loan Number: 3000002624

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.

JANUARY 25, 2007            ELKRIDGE            MARYLAND
[Date]                      [City]             [State]

10 WEST 123RD STREET, NEW YORK, NEW YORK 10027
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $1,165,000.00          (this amount is
called 'Principal'), plus interest, to the order of Lender. Lender is CASTLE POINT MORTGAGE,
INC., A MARYLAND CORPORATION (CFL # 7981)
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of    11.875   %. The interest rate I will pay may change in accordance with Section 4 of this
Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

**3.    PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the  1st   day of each month beginning on    MARCH 1
2007   . I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2037          . I still owe
amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 7 ENTIN ROAD, PARSIPPANY, NEW JERSEY
07054
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 11,871.36          . This
amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate
that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 of this Note.

Borrower Initials: *VNN*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                    Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family              *DocMagic* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                    Page 1 of 5                www.docmagic.com

Us3520.not

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  1st  day of FEBRUARY, 2012                 , and on that day every  6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  SIX AND  500/1000                   percentage points (   6.500  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   17.875  % or less than    6.500  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND  000/1000                    percentage point(s) (   2.000  %) from the rate of interest I have been paying for the preceding  6       months. My interest rate will never be greater than    17.875  %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

Borrower Initials: _V_N_N_ _____ _____ _____ _____ _____

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                     Page 2 of 5

Form 3520 1/01
*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Us3520.not

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Borrower Initials: _VNN_  _____  _____  _____

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 3 of 5

Form 3520 1/01
*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Us3520.nm

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.    Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower Initials: _____    _____    _____    _____

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                Page 4 of 5

Form 3520 1/01
*DocMagic* 800-449-1362
www.docmagic.com

Us3520.nct

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ *V~ N. Ngwa* _____ (Seal)                    _____ (Seal)
VERA N NGWA                    -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                               -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                               -Borrower                                        -Borrower


PAY TO THE ORDER OF:
  WITHOUT RECOURSE

CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION
BY: _____

ITS:      Douglas Hanke, VP/CFO


                                                             *[Sign Original Only]*


MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX                          Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)–Single Family         *DocMagic* ℰ*Forms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                      Page 5 of 5              *www.docmagic.com*

Us3520.nst

**EXHIBIT  7**

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 3000002624                                    Date: JANUARY 25, 2007
Creditor: CASTLE POINT MORTGAGE, INC. (CFLID # 7981)
Address: 6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND 21075

Borrower(s): VERA N NGWA

Address: 10 WEST 123RD STREET, NEW YORK, NEW YORK 10027

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| 12.457 % | $ 3,157,887.08 | $ 1,115,801.95 | $ 4,273,689.03 | $ |

**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 359 | 11,871.36 | 03/01/07 | | | | | | |
| 1 | 11,870.79 | 02/01/37 | | | | | | |

_____ **DEMAND FEATURE:** This obligation has a demand feature.

__X__ **VARIABLE RATE FEATURE:** Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**INSURANCE:** The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability _____ Property insurance _____ Flood insurance _____ Mortgage insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
**SECURITY:** You are giving a security interest in: 10 WEST 123RD STREET, NEW YORK, NEW YORK 10027
_____ The goods or property being purchased __X__ Real property you already own.
**FILING FEES:** $
**LATE CHARGE:** If payment is more than _____ 15 _____ days late, you will be charged _____ 2.000 % of the payment.
**PREPAYMENT:** If you pay off early, you
_____ may __X__ will not    have to pay a penalty.
_____ may __X__ will not    be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
_____ may __X__ may, subject to conditions _____ may not    assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate    all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

_Vera N Ngwa_  1/20/07
Applicant   VERA N NGWA                Date          Applicant                          Date

Applicant                             Date          Applicant                          Date

Applicant                             Date          Applicant                          Date

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

Regn4.tu-n

**EXHIBIT 8**

(Printed on Jan 25, 2007 @ 13:48)  US Department of Housing and Urban Development  OMB No. 2502-0491

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 20-00025043 | Loan Number: 3000002624 | Mortgage Ins. Case #: |
|---|---|---|

NAME AND ADDRESS OF BORROWER: VERA N NGWA, 10 W 123RD ST NEW YORK NY, 10027

NAME AND ADDRESS OF LENDER: CASTLE POINT MORTGAGE, INC. 6800 DEERPATH RD ELKRIDGE, MD, 21075

PROPERTY LOCATION: 10 W 123RD ST NEW YORK NY, 10027

SETTLEMENT AGENT: ROYAL SETTLEMENT SERVICES, INC  JASON ADAMS
PLACE OF SETTLEMENT:

| SETTLEMENT DATE: 01/25/2007 | DISBURSEMENT DATE: 01/30/2007 |
|---|---|

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. Items Payable In Connection With Loan | | 1501. FORECLOSURE PAYOFF | |
| 801. Loan Origination Fee % To CPM 4.000% OF $1,165,000.00 | $46,600.00 | STEVEN J BAUM P.C | $986,779.27 |
| 802. Loan Discount | | 1502. TAXES POC | |
| 803. Appraisal Fee To Royal Settlement Services POC $100.00 | $30.00 | | |
| 804. Credit Report Fee to CBC Companies | $6.95 | 1503. HOI PREMIUM | |
| 805. Lender's Inspection Fee | | STATE FARM | $1,943.00 |
| 806. Mortgage Insurance Application Fee | | 1504. CREDIT PAYOFF | |
| 807. Assumption Fee | | CBNA | $14,952.00 |
| 808. Application Fee to Castle Point Mortgage | $595.00 | 1505. CREDIT PAYOFF | |
| 809. Processing Fee to Castle Point Mortgage | $795.00 | VERIZON NY | $93.00 |
| 810. CLO Fee to Lending Tree | | 1506. CREDIT PAYOFF | |
| 811. | | CBNA | $4,498.00 |
| 900. Items Required By Lender To Be Paid In Advance | | 1507. | |
| 901. Interest from 01/30/2007 TO 02/01/2007 @$379.024/DAY | $758.05 | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium for | | | |
| 904. | | 1509. | |
| 905. | | | |
| 1000. Reserves Deposited With Lender | | 1510. | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | 1511. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1512. | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Adjustment | | 1514. | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to Royal Settlement Services | $375.00 | 1515. | |
| 1102. Abstract or title search | | | |
| 1103. Title examination to Royal Settlement Services | $350.00 | 1516. | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | 1517. | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | 1518. | |
| (Includes item numbers:  ) | | | |
| 1108. Title Insurance to RSS/ Stewart Title | $3,153.00 | 1519. | |
| (Includes item numbers:  ) | | | |
| 1109. Lender's coverage $1,165,000.00 | | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1110. Owner's coverage | | | $1,008,265.27 |
| 1111. NY Endorsements RSS/ Stewart | $476.90 | | |
| 1112. | | N. Net Settlement | |
| 1113. | | | |
| 1200. Government Recording and Transfer Charges | | 1600. Loan Amount | $1,165,000.00 |
| 1201. Recording fees: Mortgage: $157.00 Release $52.00 | $209.00 | | |
| 1202. City/county tax/stamps: | $29,707.50 | 1601. Plus Check/Cash from Borrower | $0.00 |
| 1203. State tax/stamps: | | | |
| 1204. Lenders 1/4% Mortgage Tax POCL $2,912.50 | | 1602. Minus total settlement charges | $83,131.40 |
| 1205. | | (Line 1400) | |
| 1300. Additional Settlement Charges | | 1603. Minus total Disbursements to | $1,008,265.27 |
| 1301. Survey | | Others (line 1520) | |
| 1302. Pest inspection | | 1604. Equals disbursements to borrower | $73,603.33 |
| 1303. Wire/Overnight Fee to Royal Settlement Services | $75.00 | | |
| 1304. | | | |
| 1305. | | | |
| 1400. Total settlement charges (enter on line 1602) | $83,131.40 | | |

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A ref. RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X _____  X _____
Royal Settlement Services, Inc        VERA N NGWA

CPM 000034

**EXHIBIT 9**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------------x

GMAC MORTGAGE, LLC,                                    Index No.: 112806/07

                                        Plaintiff,        **VERIFIED ANSWER**

                    -vs-

VERA N. NGWA; "JOHN DOE #1-5"
and "JANE DOE #1-5" said names
being fictitious, it being the intention
of Plaintiff to designate any and all
occupants, tenants, persons or
corporations, if any, having or
claiming an interest in or lien
upon the premises being
foreclosed herein,

                                        Defendants.

----------------------------------------------------------------------------x

The defendant, VERA N. NGWA, by her attorney, **DAVID M. HARRISON,**

**ESQ.,** hereby interpose the following Answer with Affirmative Defenses to plaintiff's

Complaint herein.

### AS AND FOR AN ANSWER TO THE ALLEGATIONS CONTAINED IN THE CAUSE OF ACTION WITHIN PLAINTIFF'S COMPLAINT

1.  Defendant is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in the paragraph of the Complaint marked

"FIRST", and therefore denies same.

2.  Defendant denies each and every allegation contained in the paragraph of the

Complaint marked "SECOND", except to admit that defendant VERA N. NGWA is

the owner of and resides within premises commonly known and designated as 10 West

123rd Street, New York, New York 10027.  Defendant further and affirmatively alleges

that each of the documents and instruments specified therein is invalid and unenforceable

for the reasons hereafter alleged.

    3.   Defendant is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in the paragraph of the Complaint marked

"THIRD", and therefore denies same.  Defendant further and affirmatively alleges that

each of the documents and instruments specified therein is invalid and unenforceable for

the reasons hereafter alleged.

    4.   Defendant denies each and every allegation contained in the paragraph of the

Complaint marked "FOURTH".  Defendant further and affirmatively alleges that each

of the documents and instruments specified therein is invalid and unenforceable for the

reasons hereafter alleged.

    5.   Defendant denies each and every allegation contained in the paragraph of the

Complaint marked "FIFTH".  Defendant further and affirmatively alleges that each

of the documents and instruments specified therein is invalid and unenforceable for the

reasons hereafter alleged.

    6.   Defendant is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in the paragraph of the Complaint marked

"SIXTH", and therefore denies same.  Defendant further and affirmatively alleges that

each of the documents and instruments specified therein is invalid and unenforceable for

the reasons hereafter alleged.

    7.   Defendant is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in the paragraph of the Complaint marked "SEVENTH", and therefore denies same. Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

8.    Defendant denies each and every allegation contained in the paragraph of the Complaint marked "EIGHTH". Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

9.    Defendant denies each and every allegation contained in the paragraph of the Complaint marked "NINTH". Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

10.    Defendant denies each and every allegation contained in the paragraph of the Complaint marked "TENTH". Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

11.    Defendant denies each and every allegation contained in the paragraph of the Complaint marked "ELEVENTH". Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

12.    Defendant denies each and every allegation contained in the paragraph of the Complaint marked "TWELFTH". Defendant further and affirmatively alleges that each

of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

13.   Defendant denies each and every allegation contained in the paragraph of the Complaint marked "THIRTEENTH".  Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

14.   Defendant denies each and every allegation contained in the paragraph of the Complaint marked "FOURTEENTH".  Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

15.   Defendant denies each and every allegation contained in the paragraph of the Complaint marked "FIFTEENTH".  Defendant further and affirmatively alleges that each of the documents and instruments specified therein is invalid and unenforceable for the reasons hereafter alleged.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE, THE DEFENDANT, VERA N. NGWA, ALLEGES

16.   Defendant repeats and realleges each and every allegation set forth in Paragraphs "1" through "15" of Defendants' Answer, as if fully set forth herein.

17.   Upon information and belief, the entity commonly known and designated as Castle Point Mortgage, Inc., regularly engages in the making of mortgage loans, and is therefore subject to the Truth In Lending Act, as dictated by 15 U.S.C. # 1601 et Seq., as well as Federal Reserve Board Regulation Z, 12 C.F.R # 226, which implements

the act.

18.   That said entity commonly known and designated as Castle Point Mortgage, Inc. acted and/or served in the capacity as the "lender" on the mortgage loan upon which the subject action is based.

19.   In the course of the subject consumer credit transaction between Castle Point Mortgage, Inc. and the defendant herein, Castle Point Mortgage, Inc. completely violated the applicable disclosure requirements set forth within the Truth In Lending Act, including those procedures dictated by 15 U.S.C. # 1640; Regulation Z # 226.17 and Regulation Z # 226.19(b).

20.   That at no time prior to the "date of closing" of the subject transaction did Castle Point Mortgage, Inc. provide the defendant, VERA N. NGWA, with a preliminary Truth In Lending Statement, as mandated by the Truth In Lending Act, including those procedures dictated by 15 U.S.C. # 1640; Regulation Z # 226.17 and Regulation Z # 226.19(b).

21.   That at no time prior to the "date of closing" of the subject transaction did Castle Point Mortgage, Inc. provide the defendant, VERA N. NGWA, with information and/or disclosure which reflected the "Annual Percentage Rate" assessable against the subject mortgage loan. as mandated by the Truth In Lending Act, including those procedures dictated by 15 U.S.C. # 1640; Regulation Z # 226.17 and Regulation Z # 226.19(b).

22.   That at no time prior to the "date of closing" of the subject transaction did

Castle Point Mortgage, Inc. provide the defendant, VERA N. NGWA, with information and/or disclosure which reflected the "Finance Charge" assessable against the subject mortgage loan. as mandated by the Truth In Lending Act, including those procedures dictated by 15 U.S.C. # 1640; Regulation Z # 226.17 and Regulation Z # 226.19(b).

23.    That at no time prior to the "date of closing" of the subject transaction did Castle Point Mortgage, Inc. provide the defendant, VERA N. NGWA, with information and/or disclosure which reflected the "Amount Financed" assessable against the subject mortgage loan. as mandated by the Truth In Lending Act, including those procedures dictated by 15 U.S.C. # 1640; Regulation Z # 226.17 and Regulation Z # 226.19(b).

24.    Because of Castle Point Mortgage, Inc. having violated the applicable disclosure procedures set forth within the Truth In Lending Act, as implemented by Regulation Z, the subject mortgage and mortgage note are void, invalid, null and unenforceable; and plaintiff's claims are barred.

25.    Because of Castle Point Mortgage, Inc. having violated the applicable disclosure procedures set forth within the Truth In Lending Act, as implemented by Regulation Z, the defendant, VERA N. NGWA, has a statutory right to rescind the alleged mortgage, as the applicable period to rescind is thereby extended to three years from the date of closing of said loan, pursuant to 15 U.S.C. # 1635; and defendant exercises this right within this Answer.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE,**
**THE DEFENDANT, VERA N. NGWA, ALLEGES**

26.   Defendant repeats and realleges each and every allegation set forth in Paragraphs "1" through "25" of Defendants' Answer, as if fully set forth herein.

27.   The above-referenced actions undertaken by said entity commonly known and designated as Castle Point Mortgage, Inc., as well as said entity's agents, servants, employees and/or representatives, in connection with the processing of the subject mortgage loan, was known by said entity to likely mislead the defendant, VERA N. NGWA, who was acting reasonably under the circumstances then and there existing, in reliance upon said entity's misrepresentations, and to the detriment of defendant herein.

28.   That the actions taken by Castle Point Mortgage, Inc. constituted fraud, in that defendant acted reasonably at all times, and relied upon prior misrepresentations made by said entity, as well as said entity's agents, servants, employees and/or representatives, all to defendant's detriment, as defendant's credit has been irreparably damaged; and defendant's title to her home has been illegally and unlawfully impaired.

29.   That said fraudulent actions perpetrated by Castle Point Mortgage, Inc. included said entity, as well as said entity's agents, servants, employees and/or representatives, knowingly failing to provide defendant VERA N. NGWA with mandated preliminary disclosure, as dictated by the Federal Truth In Lending Act.

30.   That said fraudulent actions perpetrated by Castle Point Mortgage, Inc., as well as said entity's agents, servants, employees and/or representatives assigned towards processing, approving and/or underwriting the subject mortgage loan, included qualifying defendant VERA N. NGWA  for mortgage financing which

Castle Point Mortgage, Inc. knew that defendant could not remain current upon.

    31.   That said fraudulent actions perpetrated by Castle Point Mortgage, Inc. as well as said entity's agents, servants, employees and/or representatives assigned towards processing, approving and/or underwriting the subject mortgage loan, included fraudulent inflation of defendant's monthly income "Base Employment Income", as Castle Point Mortgage, Inc., its agents, servants, employees and/or representatives, fraudulently listed defendant VERA N. NGWA's monthly "Base Employment Income" as $30,000, a figure that was never provided and/or verified by defendant VERA N. NGWA, and which was entirely contrary to the income information provided Castle Point Mortgage, Inc. by said defendant.

    32.   Because of the fraudulent and unconscionable conduct of said entity commonly known and designated as Castle Point Mortgage, Inc.: **(i)** plaintiff is equitably estopped from recovering in the subject foreclosure action; **(ii)** the mortgage and mortgage note are void, invalid, null and unenforceable, and plaintiff's claims are thereby barred.

    33.   Because of those fraudulent actions taken by Castle Point Mortgage, Inc., upon which defendant relied to her detriment, defendant VERA N. NGWA has a right to rescind the alleged mortgage, and defendant exercises this right within this Answer.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE, THE DEFENDANT, VERA N. NGWA, ALLEGES

    34.   Defendant repeats and realleges each and every allegation set forth in

Paragraphs "1" through "33" of Defendants' Answer, as if fully set forth herein.

35.   The actions taken by Castle Point Mortgage, Inc., in connection with the processing of the subject mortgage loan were known by said entity, its agents, servants, employees and/or representatives, to likely mislead the defendant, VERA N. NGWA, who was acting reasonably under the  circumstances then and there existing, in that plaintiff's misrepresentations as to the nature of the subject loan transaction, as well as the material terms underlying the loan, were knowingly deceptive, and unlawful, and as such, constituted violations of the New York State Deceptive Acts and Practices Statute, as codified by Section 349 of the New York State General Business Law.

36.   That the actions taken by Castle Point Mortgage, Inc., its agents, servants, employees and/or representatives, constituted fraud, in that defendant VERA N. NGWA acted reasonably at all times, and relied upon prior misrepresentations made by said entity, as well as said entity's agents, servants,  employees and/or representatives, all to defendant's detriment, as defendant's credit has been irreparably damaged; and defendant's  title to her home has been illegally and unlawfully impaired.

37.   That actions taken by Castle Point Mortgage, Inc., its agents, servants, employees and/or representatives, involved conduct which said entity knew were materially misleading and knowingly deceptive, and as such, constituted a violation of the New York State Deceptive Acts and Practices Statute, as codified by General Business Law Section 349.

38.   Because of those actions taken by Castle Point Mortgage, Inc.,  as well as its agents, servants, employees and/or representatives which involved conduct which

said entity knew was materially misleading and knowingly deceptive, and as such,

constituted a violation of the New York State Deceptive Acts and Practices Statute, as

codified by General Business Law Section 349, the mortgage and mortgage note are

void and unenforceable, as plaintiff's claims are thereby barred.

39.    Because of those actions taken by Castle Point Mortgage, Inc., its agents,

servants, employees and/or representatives, which involved conduct which said entity

knew were materially misleading and knowing deceptive, and as such, constituted a

violation of the New York State Deceptive Acts and Practices Statute, as codified by

General Business Law Section 349, defendant, VERA N. NGWA has a statutory right

to rescind the alleged mortgage, and defendants exercises this right within this Answer.

40.    Because of those actions taken by Castle Point Mortgage, Inc., its agents,

servants, employees and/or representatives, which involved conduct which said entity

knew were materially misleading and knowing deceptive, and as such, constituted a

violation of the New York State Deceptive Acts and Practices Statute, as codified by

General Business Law Section 349: **(i)** plaintiff is equitably estopped from recovering in

the subject foreclosure action; **(ii)** the mortgage and mortgage note are void, invalid, null

and unenforceable, and plaintiff's claims are thereby barred.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE,
THE DEFENDANT, VERA N. NGWA, ALLEGES**

41.    Defendant repeats and realleges each and every allegation set forth in

Paragraphs "1" through "40" of Defendants' Answer, as if fully set forth herein.

42.   Plaintiff herein has failed to set forth a cause of action upon which relief can
be granted.


### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE, THE DEFENDANT, VERA N. NGWA, ALLEGES


43.   Defendant repeats and realleges each and every allegation set forth in Paragraphs
"1" through "42" of Defendant's Answer, as if fully set forth herein.

44.   That the damages to the plaintiff herein, were caused in whole or in part or were
contributed to by the culpable conduct and want of care on the part of said entity commonly
known and designated as Castle Point Mortgage, Inc., and any such alleged damages should be
fully or partially diminished by said culpable conduct and want of care, pursuant to CPLR
Article 14-A.


### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE, THE DEFENDANT, VERA N. NGWA, ALLEGES


45.   Defendant repeats and realleges each and every allegation set forth in
Paragraphs "1" through "44" of Defendant's Answer, as if fully set forth herein.

46.   That the damages to the Plaintiff were caused in whole or in part or were
contributed to by the culpable conduct and want of care on the part of said entity commonly

known and designated as Castle Point Mortgage, Inc., and any such alleged damages

should be fully or partially diminished by said culpable conduct and want of care asserted

by the plaintiff, in connection with processing and consummation of the subject consumer

credit transaction/ mortgage loan.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE, THE DEFENDANT, VERA N. NGWA, ALLEGES

47.    Defendant repeats and realleges each and every allegation set forth in

Paragraphs "1" through "46" of Defendant's Answer, as if fully set forth herein.

48.    That the plaintiff herein has failed to mitigate plaintiff's damages.

**WHEREFORE**, the defendant, VERA N. NGWA, demands judgment against the

plaintiff, GMAC MORTGAGE, LLC, denying plaintiff's causes of action raised within the

subject Complaint, including plaintiff's cause of action for foreclosure, in its entirety, and

awarding the defendant, VERA N. NGWA, with costs, including reasonable attorney fees

and disbursements in connection therewith.

Dated: Brooklyn, New York
        October 16, 2007

Yours, etc.

**DAVID M. HARRISON, ESQ.**

Attorney for the Defendant
VERA N. NGWA
Office & P.O. Address
48 Willoughby Street
Brooklyn, New York 11201
(718) 243-2109

## <u>ATTORNEY VERIFICATION</u>

STATE OF NEW YORK    )

                               SS:

COUNTY OF KINGS    )

        The undersigned, an attorney admitted to practice in the Courts of the State of New York, hereby affirms, subject to the penalties of perjury: Affirmant is the attorney of record for the defendant, VERA N. NGWA, in the within action; Affirmant has read the foregoing ANSWER and knows the contents thereof; same is true to affirmant's own knowledge, except as to the matters therein alleged on information and belief, and as to those matters alleged on information and belief, affirmant believes them to be true. Affirmant further says that the reason this verification is made by affirmant, and not defendants, because defendants do not reside in the county wherein counsel has its office, to wit, the county of KINGS.  The grounds of affirmant's beliefs as to all matters not stated upon affirmant's knowledge are as follows: Based upon the contents of affirmant's file.

Dated: Brooklyn, New York
       October 16, 2007

                                                                      
**DAVID M. HARRISON, ESQ.**

SUPREME COURT OF NEW YORK                                           Index No.:  112806/07
COUNTY OF NEW YORK
---------------------------------------------------------------------------------------
GMAC MORTGAGE, LLC,

                                        Plaintiff,

              -against-

VERA N. NGWA; "JOHN DOE #1-5"
and "JANE DOE #1-5" said names
being fictitious, it being the intention
of Plaintiff to designate any and all
occupants, tenants, persons or
corporations, if any, having or
claiming an interest in or lien
upon the premises being
foreclosed herein,

                              Defendants.


---------------------------------------------------------------------------------------------------


                    **VERIFIED ANSWER**


---------------------------------------------------------------------------------------------------

                    **DAVID M. HARRISON, ESQ.**
                    Attorney for the Defendants
                    VERA N. NGWA
                    Office & P.O. Address
                    48 Willoughby Street
                    Brooklyn, New York 11201
                    (718) 243-2109
---------------------------------------------------------------------------------------------------
PLEASE TAKE NOTICE:
   [ ] Notice of Entry
   that the within is a (certified) true copy of Order                    duly entered in the office of
the clerk of the within named court on
   [ ] Notice of Settlement

   that an order                        of which the within is a true copy
   will be presented for settlement to the HON        one of the judges of the
   within named Court, at
   on                  19    at        M.
        Dated,                  Yours, etc.      DAVID M. HARRISON, ESQ.

## AFFIRMATION OF SERVICE

**DAVID M. HARRISON, ESQ.**, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following under penalty of perjury, pursuant to C.P.L.R. 2106.

1. That I am the attorney of record for the defendant, VERA N. NGWA.

2. That on October 16, 2007, I served the within VERIFIED ANSWER on the following party: **(i)** Fein, Such & Crane, LLP, attorneys for the plaintiff herein, 747 Chestnut Ridge Road, Suite 200, Chestnut Ridge, New York 10977: by depositing true copies of same enclosed in postpaid properly addressed wrappers, in an official depository under the exclusive care and custody of the United States Post Office Department, within the State of New York, and forwarding by first class mail/certificate of mailing.

Dated:  Brooklyn, New York
       October 16, 2007

                                           _____
                                            **DAVID M. HARRISON, ESQ.**