UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
VERA N. NGWA,

                               Plaintiff,

     -against-

CASTLE POINT MORTGAGE, INC., HEATHER
GEARIN, GMAC MORTGAGE, LLC and ROYAL
SETTLEMENT SERVICES, INC.,

                               Defendants.
-----------------------------------------------------------------------X

Docket No. 08CV0859
Date Filed: 1/24/08

**REPLY DECLARATION IN FURTHER SUPPORT OF MOTION TO DISMISS**

    **Keith D. Grace, Esq**., pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that:

    1.    I am an associate in the law firm of Conway, Farrell, Curtin & Kelly, P.C., counsel for Defendants Castle Point Mortgage, Inc. ("Castle Point"), Heather Gearin ("Gearin") and Royal Settlement Services, Inc. ("Royal")(collectively "Movants") and, as such, I am fully familiar with the facts and circumstances of this action and the proceedings herein. I make this Reply Declaration in further support of the instant motion for an Order pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure dismissing all causes of action in the Amended Complaint, and for such other and further relief this Court may deem just and proper.

## INTRODUCTION

    2.    Plaintiff's 201-paragraph Amended Complaint is unnecessarily long in form and fatally short on substance. Movants have pointed out pleading deficiencies with each purported cause of action and, instead of addressing those deficiencies in her opposition, Plaintiff does little more than repeat her deficient allegations and prematurely argue liability, which of course does nothing to establish that any of her claims are properly pled.

    3.    While a complete dismissal at the pleadings stage is a very significant decision to be

made by the Court, it is warranted in this case. The instant Motion has served to draw Plaintiff out, and Plaintiff's hollow opposition shows that she cannot support any of her claims with facts sufficient to plead the various causes of action. Plaintiff has already had the opportunity to amend and, at the last conference, it was made clear on the record that no further amendments would be sought or allowed, except for Plaintiff to add the correct servicer of the mortgage if defendant GMAC Mortgage, LLC ("GMAC") could establish it was not the servicer. Based on the express determination that there would be no further amendments, Movants were directed to go forward and file their Answer with the instant Motion pending, which Movants did as required on June 16, 2008.[1]

4. Movants respectfully submit that it is important to keep in mind the context of the case in considering the instant Motion. Plaintiff Vera N. Ngwa has brought this action defensively, in an effort to avoid foreclosure in a separate state court proceeding brought by GMAC in New York Supreme Court, New York County (Index No. 112806/07). At the very heart of Plaintiff's case is her assertion that she was *tricked into a loan that there was no way she could ever afford*, but tellingly, she never claimed this before she defaulted on this, her second mortgage transaction pertaining to the property. Plaintiff only started to claim she had been duped in the transaction after she spent all the money she received in the refinance and went into foreclosure for a second time. Moreover, Plaintiff's key assertion that she was tricked or defrauded is belied by the allegations of her own Amended Complaint.

5. Specifically, there are two undisputed facts that plaintiff sets forth in her Amended

---

[1] On or about June 16, 2008, while the instant motion was pending and after Movants submitted their Answer to the Amended Complaint, Plaintiff filed and served a Second Amended Complaint, apparently attempting to name the correct servicer. This Motion is directed at both the Amended Complaint and the Second Amended Complaint, which, pursuant to the Court's directive, must be identical with regard to the claims against the Movants. References to the paragraph numbers are to the paragraphs in the Amended Complaint, which was the operative complaint at the time the instant Motion was made.

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

Complaint, which essentially gut Plaintiff's entire case. They are as follows:

> **Undisputed Fact # 1**: Starting weeks before the closing, Plaintiff knew that her monthly payment would be more than $11,000.00 (nearly double her existing monthly payment), and she readily went through with the transaction anyway.[2]
>
> **Undisputed Fact # 2**: Starting weeks before the closing, Plaintiff knew that her monthly income was stated on her loan application as being $30,000.00, and she readily went through with the transaction anyway—indeed she signed statements swearing to the accuracy of this figure at the closing.[3]

6. Plaintiff seeks to hide behind voluminous allegations, wherein she incorrectly asserts *de minimus* technical violations of the Truth in Lending Act and other state and federal statutes in the hope that one of her claims will stick. The specific fatal flaws in each of these claims is addressed below, but it is crucial to remain focused on these two undisputed facts because they completely disprove Plaintiff's core assertion that she was tricked into a loan she did not know she could not afford. Indeed, Plaintiff's own allegations establish that she knew exactly what her monthly payment was under her existing mortgage, knew what her monthly payment would be under the refinanced mortgage, obviously knew what her own income was, and knew her income was grossly inaccurate (if that was the case as she now claims) on the loan application she signed. Under these facts, which are alleged by Plaintiff herself, all of plaintiff's claims must fail. Moreover, having admitted in her own pleadings that she consummated the transaction knowing that her income had been grossly overstated, and having acknowledged that she signed documents affirming what she now alleges is a

---

[2] *See* Amended Complaint ("Am. Cplt.") ¶ 33 and Declaration of David M. Harrison in Opposition to Motion to Dismiss ("Opp. Dec.") Exh. 2 (CPM000150, 154 and 158) for disclosures of the monthly payment made in the December 29, 2005 Initial Disclosures weeks before the closing); *See* Am. Cplt. ¶¶ 53, 59, 75, 91, 101 and 102 and Opp. Dec. Exhs. 4, 6 and 7 for disclosures made to plaintiff at the time of closing prior to consummation.

[3] *See* Am Cplt. ¶ 33 and Opp. Dec. Exh. 2 (CPM000150) for undisputed evidence plaintiff was aware of her stated income figure made in the Initial Disclosures weeks before the closing; *See* Am Cplt. ¶¶ 53, 92-97, 127-128 and Opp. Dec. Exh. 4 for undisputed evidence that plaintiff signed the document containing her stated income at closing, which she now claims was false and fraudulently inflated.

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

3

blatant misstatement of fact, Plaintiff cannot benefit from her own wrongdoing by recovering in this action.

### REPLY ARGUMENTS SUPPORTING DISMISSAL

### PLAINTIFF FAILS TO STATE A TRUTH-IN-LENDING CLAIM AS A MATTER OF LAW

7. Plaintiff's first and second purported causes of action assert that the defendants violated the disclosure requirements of federal Truth-in-Lending Act ("TILA"), specifically those contained in Reg. Z §§226.17, 226.18 and 226.19. Because her own Amended Complaint and incorporated documents show that she <u>did receive and sign</u> all of the required TILA disclosures <u>at the time of closing</u>, plaintiff attempts to state a claim by arguing that "[t]he Act requires a lender to provide such disclosures not only on the date of consummation of a transaction; **but also prior to said date**." (Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss dated June 13, 2008 ("Opp. Mem.") p. 10 (emphasis in original). Plaintiff is absolutely wrong on this point, and she does not cite a single piece of authority to support this assertion. Indeed, the language of the Act, and even the sources Plaintiff cites, are all directly contrary to Plaintiff's position.

8. Plaintiff acknowledges in her opposition (as she must), that TILA disclosures "are required to be made '*before the credit is extended*' (15 U.S.C. § 1638(b); and even more specifically: '*(a) before consummation or (b) within three business days after the creditor receives the consumer's written application, whichever is earlier*' (italics added)(see Regulation Z § 226.19(a)(1)." (Opp. Mem. p. 11) She further acknowledges that the Act "defines 'consummation' as '*the time that a consumer becomes contractually obligated on a credit transaction*' (italics added). <u>See Regulation Z § 226.2</u>." (Opp. Mem. p. 11) This statutory language is plain and unambiguous, but Plaintiff repeatedly mischaracterizes it with the apparent hope that the Court will be persuaded to read it incorrectly.

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

9. Specifically, plaintiff seeks to alter the statute's meaning by mischaracterizing its clear language requiring disclosures "**before consummation**" and "**before the credit is extended**," as well as its definition of consummation as "**the time** that a consumer becomes contractually obligated on a credit transaction." Plaintiff mischaracterizes the statute by inserting the words "date" or "date of" into her descriptions of the statute where such language does not exist in the text itself. By adding in "date" and "date of," plaintiff tries to change the disclosure deadline from "before consummation" to "before [the date of] consummation," and seeks to alter the definition of consummation from "the time that a consumer becomes contractually obligated…" to the **date** that a consumer becomes contractually obligated. Plaintiff's use of this tricky device is most obvious on page 11 of Plaintiff's Memorandum in Opposition, but it is also employed throughout the Amended Complaint. Obviously this Court should not accept plaintiff's invitation to interpret the statute in direct contravention of its plain language.

10. While it may not quite rise to the level of an overt attempt to mislead, Plaintiff's brazen effort to misconstrue the statute threatens the boundaries of ethical pleading and legitimate legal argument. While Plaintiff clearly tries to give the impression that the statute contains an express requirement of disclosure on a "date" prior to the closing "date," or that there exists some case law which interprets the statute that way, she provides no authority for her assertion that "[t]he Act requires a lender to provide such disclosures not only on the date of consummation of a transaction; **but also prior to said date**." In fact, the statute contains no such requirement, and there is no such authority interpreting the statute in this way.

11. The two cases plaintiff cites for her dubious assertion of law are directly contrary to Plaintiff's proposition. In *Floyd v. Security Finance Corp.*, 181 F. Supp.2d 1137 (D. Nev. 2001) the court addressed the question of whether two subsections of Regulation Z § 226.17 should be read as

two separate disclosure requirements or as a single requirement. Specifically, Regulation Z § 226.17(a)(1) requires that disclosures be made "in a form that the consumer may keep," and § 226.17(b) requires that the creditor make disclosures "before consummation of the transaction." In concluding that the Act required a single disclosure to be made in a written form that consumers may keep <u>prior to the consummation of the transaction</u>, the court held that "[t]o infer that two separate kinds of 'disclosures' are at issue in § 226.17 adds needless complexity to an already complex statute, and such an inference would be contrary to the plain text of the statute. *Id*. at 1141. The court added that its conclusion was bolstered by the purpose of the statute, which was to provide the borrower with "meaningful disclosure." *Id*. Nowhere in this case does the court ever suggest or imply that disclosures are required on some "date" prior to the "date of" consummation.

12. Moreover, in *Basile v. H&R Block, Inc.*, 897 F. Supp. 194 (E.D. Pa. 1995), the court determined that the TILA disclosures in that case were timely because they were made <u>before the loan agreements at issue were signed</u>. Plaintiff had argued, based on the general purpose of TILA, that disclosures should be made at the application stage, when most customers make their decision to use the loan service. The court rejected this argument, holding that the <u>general provisions of TILA cannot be used to override its specific provisions</u>. *Id*. at 197-198. In other words, despite the general purpose of providing "meaningful disclosure" to enable customers to shop around for credit—when the statute specifically requires disclosure by "consummation of the transaction," the general purpose of the statute cannot be used to read in some other or different deadline. Once again, nowhere in this case does the court ever suggest or imply that disclosures are required on some "date" prior to the "date" an agreement is consummated.

13. As the *Basile* court pointed out, "[t]here is very little case law directly discussing consummation." *Id*. at 197 (quoted citation omitted). However the *Basile* court did cite with

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

6

approval a case holding that "[d]isclosure as part of a mortgage loan settlement has been held adequate under TILA." *Id. citing Stavrides v. Mellon Nat'l Bank and Trust Company*, 353 F. Supp. 1072 (W.D. Pa. 1973), *aff'd*, 487 F.2d 953 (3rd Cir. 1973).  The plaintiff in *Basile* attempted to distinguish *Stavrides* by arguing that its holding applied "only to mortgage loans transactions that have an official 'closing session,'" but the *Basile* court rejected this argument, pointing out that "the Truth in Lending Act and governing regulations do not alter disclosure requirements based on the type of loan." *Id*. at 197.  In other words, where there is an official closing session, disclosures at this session are adequate under TILA, and more generally, even where there is no closing session, disclosures made before or at the time the loan agreement is signed are adequate.  Ironically, in citing *Basile*, the plaintiff has directed the Court to case law directly on point in favor of Movants' position—the disclosures made at closing fully satisfied the disclosure requirements of TILA.

14.    Since plaintiff has provided no authority to support her position that the formal TILA disclosures were required to be made prior to the "date of" closing, and since she admits by allegation in her Amended Complaint that she was provided with the Mortgage, Adjustable Rate Note, Adjustable Rate Rider, HUD Statement, TILA Statement and URLA "at the time of 'closing' of the subject mortgage loan" (Exh. B ¶ 53), and since plaintiff's own cases show that such disclosures at closing do satisfy TILA, plaintiff's First and Second causes of action must be dismissed.

### PLAINTIFF FAILS TO STATE A FRAUD CLAIM AS A MATTER OF LAW

15.    Movants pointed out myriad defects in plaintiff's fraud allegations, including the fact that they are not pled with the necessary particularity (no specified, time, place or maker), and that most could never support a fraud claim as a matter of law.  Plaintiff's opposition starts with the conlcusory statement that she has "plainly satisfied those elements necessary to establish a cause of

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

action against defendants predicated on fraud," but she does nothing to support this hollow contention.

16.     Plaintiff does not even attempt to dispute or distinguish any of the legal authorities Movants have cited, which establish that her fraud claim is facially deficient. For example, plaintiff does not dispute Movants' cited authority establishing that she is required to be precise as to the time, place and maker of each alleged misrepresentation of fact, but yet does nothing to explain how her fraud allegations, most of which allege representations by "Castle Point and/or Gearin," and some of which allege representations made "at all times referenced herein" could ever meet that requirement. Plaintiff does not dispute the authority establishing that she cannot sustain her pleading burden by inferring scienter from the fact that an expected event (e.g. plaintiff's "saving her home" or a later refinance loan) did not occur (*Fink v. Citizens Mortgage Banking, Ltd.*, 148 A.D.2d 578, 539 N.Y.S.2d 45 (App. Div. 1989)), but she does nothing to explain how those allegations could ever constitute material misrepresentations of <u>existing fact</u>. Plaintiff does not dispute the authority establishing that any statements regarding how "favorable" the loan terms were to her would have been non-actionable instances of "puffing," but then does nothing to establish how such statements <u>could be actionable</u>. *Glassman v. Catli*, 111 A.D.2d 744, 745 (App. Div. 1985).

17.     Indeed, plaintiff does not dispute or distinguish any of the authority Movants cited which establishes as a matter of law that she is charged with knowledge of the contents of the documents she signed (even if she claims she did not read them), and that she cannot establish justifiable reliance because she could have discovered the allegedly fraudulent misrepresentations if she had read the documents. *See Brown v. Cushman & Wakefield, Inc.*, 2002 U.S. Dis. LEXIS 13787, *56-57 (S.D.N.Y. 2002) *adopted in its entirety by* 235 F. Supp.2d 291; 2002 U.S. Dist. LEXIS 23460 (S.D.N.Y. 2002). This unopposed law, applied to plaintiff's allegations, leads to the

inevitable conclusion that plaintiff could never state a claim for fraud under her own version of the facts set forth in the Amended Complaint.

18.     Plaintiff having literally done <u>nothing</u> in her opposition to refute Movants' *prima facie* case for dismissal of the fraud claims, the fraud claims should be dismissed.

### PLAINTIFF FAILS TO STATE A DECEPTIVE PRACTICES CLAIM AS A MATTER OF LAW

19.     As previously pointed out, Plaintiff's allegations in support of her Deceptive Practices Act claim are equally deficient to the fraud allegations, and her opposition to the instant Motion is similarly devoid of any legal or factual support.  As with the fraud claim, plaintiff fails to address the legal authorities Movants have cited, for example, the authority establishing that the Movants were under no obligation ascertain her particular circumstances or to assess and advise her on what was "beneficial" to her.  *See Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S2d 529 (1995); *see also Giordano v. Giammarino*, 2008 N.Y. Misc. LEXIS 716 (Sup. Ct. 2008)(fraud and Deceptive Practices claims dismissed against attorney in alleged predatory lending case despite attorney's possible fiduciary duties – "it is not a deceptive act or practice to proceed with an arms-length transaction without attempting to ascertain the extent of every consumer's appreciation of the ramifications of his or her decision, and whether that decision is in his or her overall best interest (citation omitted)").

20.     It also must be pointed out that plaintiff's submissions in opposition to the Motion, and the documents she has incorporated by reference in her Amended Complaint, directly contradict the allegations plaintiff makes in support of this portion of her claim.  Plaintiff's primary factual assertion in support of her Deceptive Practices claim is that "[t]he Residential Loan Application documents prepared by Castle Point and Gearin blatantly inflates plaintiff's combined monthly gross income."  (Opp. Mem. p. 15)  Putting aside for the moment the fact that plaintiff signed this

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

9

document swearing that it was accurate, thereby committing fraud, plaintiff falsely states in her opposition:

> Castle Point and/or Gearin clearly saw fit to ignore **plaintiffs'** actual combined income status, despite having been told directly by plaintiff as to what **they** were earning; and despite having been provided by **plaintiffs** with applicable tax return/record authorizations.

(Opp. Mem. p. 16)(emphasis added)

21. The assertion in the above-quoted passage that copies of tax returns and/or authorizations to obtain tax returns were provided to Castle Point and Gearin is consistent with the allegations set forth in paragraphs 31-32 and 182-184 of the Amended Complaint, and is demonstrably false, as established by plaintiff's own submissions.

22. Specifically, in the Declaration in Opposition, plaintiff counsel states: "Duplicate copies of the authorizations executed by the plaintiff, permitting release of plaintiff's applicable tax record/return documents, in connection with the subject loan transaction, are annexed hereto as Exhibit "1." Exhibit 1 is an IRS form W-9 *Request for Taxpayer Identification Number and Certification* which, by its own terms, is for the purpose of obtaining a person's tax identification number so that income to that person, real estate transactions, mortgage interest, etc. can be properly reported to the IRS. Form W9 is not an authorization permitting release of applicable tax record/return documents to Movants. Indeed, the IRS form by which one authorizes release of tax returns is Form 4506T. There is a form 4506T in the closed loan file, but plaintiff never signed it, and plaintiff's counsel therefore cannot and does not attach it as an "authorization executed by plaintiff."

23. Indeed, none of the documents that plaintiff incorporates by reference in her Amended Complaint or attaches as the exhibits to her counsel's Declaration in Opposition contains any "tax return related documents" or "authorizations" that she alleges she provided. Moreover, the fact that

CONWAY, FARRELL, CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

10

her counsel attaches <u>only</u> the W-9 form to his Declaration after clearly stating that he is attaching "the authorizations executed by plaintiff, permitting release of plaintiff's applicable tax record/return documents," establishes that it is <u>not reasonable for the Court to draw an inference in favor of plaintiff as to these allegations</u>. Plaintiff's own documents directly contradict the allegations they are submitted to support.

24. Presumably Plaintiff's counsel is just mistaken about the tax return documents and authorizations. The above-quoted language from page 16 of the Memorandum in Opposition suggests that counsel may be thinking of another case in which two or more **plaintiffs (plural)** may have provided tax returns and authorizations. Perhaps counsel inadvertently failed to change sections he cut and pasted from a similar opposition brief with different facts—a theory bolstered by the Conclusion section on page 25, which refers to "The motion by **defendant NASB** to dismiss all causes of action…" (emphasis added). There is only one plaintiff in this case, and there is no defendant NASB. In any event, plaintiff's allegations in the Amended Complaint regarding her submission of tax return documents and authorizations, and her opposition arguments in that regard, are directly at odds with her own submissions, and cannot be credited for purposes of saving her defective pleading. Plaintiff's Deceptive Practices claims should be dismissed.

### PLAINTIFF FAILS TO STATE A CLAIM UNDER NEW YORK STATE BANKING LAW SECTION 589 AS A MATTER OF LAW

25. Plaintiff alleges that the defendants violated New York State Banking Law § 589 by receiving a loan origination fee that was "excessive and to plaintiff's detriment" (Dec. Dec. Exh. B, ¶ 149) as well as "drastically disproportionate to the services time and/or degree of expertise rendered by defendants Castle Point and/or Gearin." (Dec. Exh. B, ¶ 151) Section 589, entitled "Declaration of policy" contains just that, a general declaration of policy. The section does not contain any specific requirements or prohibitions, and does not mention excessive fees.

26.     In her opposition, plaintiff refers to Section 598(3), which generally grants a private right of action for violations of the Banking Law, Section 590(g), which describes what entities qualify as a "Registrant" or "Mortgage Broker," Section 590(f), which defines "Licensee" and "mortgage banker" and Section and 590(d) which defines what is meant by "soliciting, processing, placing or negotiating mortgage loans." (Opp. Mem. pp. 19-20)  Like Section 589, however, none of these sections contain any specific requirements or prohibitions, and none of them mention excessive fees.

27.     The sections that follow § 589 contain certain requirements for the registration, licensing and regulation of "Licensed Mortgage Bankers" by the Banking Board and superintendent. Banking Law § 595 sets forth certain grounds for suspension or revocation of license, and § 595-a provides that "the banking board shall promulgate regulations and policies governing the establishment of grounds to impose a fine or penalty with respect to the activities of a mortgage banker, mortgage broker or exempt organization," which encompasses various enumerated wrongful acts (e.g. misrepresentation or concealment of material terms, failure to deliver funds, etc.). Nevertheless, Plaintiff still does not point to any provision or prohibition relating to the charging of "excessive" fees by brokers or lenders, and in fact does not point to any specific provision of the Banking Law that Movants are to have violated, except for the general statement of policy and the definitional sections stated above.  These provisions are not capable of being "violated" as they do not set forth any requirements or prohibitions.

28.     Indeed, Plaintiff's purported cause of action under the Banking Law appears to be referencing the provisions of the Real Estate Settlement Procedures Act ("RESPA") prohibiting the collection of "unearned fees" or fees "other than for services actually performed."  (see RESPA § 8 - 12 U.S.C. § 2607).  Neither Banking Law § 589, nor any of the provisions of the Banking Law that

plaintiff refers to in her opposition, contain any such provisions.  Plaintiff therefore fails to state a claim pursuant to New York State Banking Law, and her Fifth Cause of Action should therefore be dismissed.

### PLAINTIFF FAILS TO STATE A CLAIM FOR UNCONSCIONABILITY AS A MATTER OF LAW

29.     Plaintiff alleges that "[t]he fraudulent misrepresentations and material concealment of facts made by defendants Castle Point, Gearin and/or Royal, in connection with the processing and closing of the subject loan, as well as the disclosure of its terms, constituted inequitable and unconscionable conduct, by which plaintiff has been victimized." (Dec. Exh. B, ¶ 178)  Citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (1988) and other authorities, the Movants have already set forth why this allegation cannot support a claim of unconscionability, which requires that both procedural and substantive unconscionability must be pled and ultimately proven.

30.     Movants have already argued, based on the analogous facts in *Gillman*, that plaintiff cannot establish procedural unconscionability because her pleading establishes that she had the opportunity to review the documents containing all the terms of the deal.  Movants also pointed out that the Amended Complaint does not contain allegations sufficient to sustain a claim of substantive unconscionability, because this case does not even involve a "high cost loan" under applicable state and federal laws that require heightened disclosure requirements in certain transactions. Specifically, the federal Home Owners Equity Protection Act ("HOEPA") 15 U.S.C. § 1639 contains heightened disclosure requirements on loans with an APR of more than eight percent (8%) over the yield on treasury securities with a comparable maturity, or total points and fees in excess of eight percent (8%) of the principal.  Similarly, New York State Banking Law § 6-l, which is part of New York's anti-predatory lending law, defines a "high cost loan" as one with an APR of more than eight percent

(8%) over the yield on treasury securities with a comparable maturity, or total points and fees in excess of five percent (5%) of the <u>total loan amount</u> in loans over $50,000. Plaintiff did not plead violations of either of these laws because they do not apply to the transaction at issue—this was not a high cost loan by either definition.[4] Since plaintiff has not and cannot even plead that the present case involves a "high cost loan" subject to heightened disclosure requirements, as a matter of law, this case certainly does not involve a contract "which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (1988).

31. Plaintiff does not address *Gillman* in her opposition and, in fact, devotes but one, meaningless and conclusory sentence to unconscionability in her opposition: "Such actions taken by defendants Castle Point, Gearin and Royal were also clearly "unconscionable"; as defendants knowingly acted in a manner entirely to plaintiff's detriment." With this as her only opposition, Plaintiff has effectively conceded the dismissal of her unconscionability claim, and the Seventh Cause of Action should indeed be dismissed.

---

[4] In the Memorandum of Law in support, the undersigned asserted as a side note in a parenthetical at the top of page 18 that the $46,000 loan origination fee was a "yield-spread premium" paid by the lender and not by the plaintiff. Based on information obtained from our clients <u>after</u> the Memorandum was submitted, the undersigned learned that this assertion was incorrect. The loan origination fee was not a "yield-spread premium" and was not paid by the lender. The information in the parenthetical was included based on a misreading of the documents by the undersigned, and was discovered during client communications <u>after the fact</u>. After discovering the error, the undersigned wrote a letter withdrawing the entire parenthetical at the top of page 18 of the Memorandum of Law, with apologies to counsel, the parties and the Court. To be clear—the withdrawn information was a nonessential point, and does not change the fact that the loan at issue is not alleged to have been "high cost," and was not extraordinary under the circumstances. The withdrawal of this parenthetical information does not change or affect Movants' position that plaintiff has stated no claim under the equitable theory of unconscionability, and cannot state such a claim under the facts of this case. Nevertheless, a correction was warranted and appropriate, and was issued before plaintiff's opposition was submitted.

**PLAINTIFF FAILS TO STATE A NEGLIGENCE CLAIM AS A MATTER OF LAW**

32.     Plaintiff's negligence claim fails even to meet notice pleading standards because it does not even plead the bare elements of negligence, much less facts to support such elements. While plaintiff need not plead negligence with particularity, she must at least, for example, plead the general fact that defendants owed her some duty. Not only does plaintiff fail to allege any duty, she does not even argue that a duty exists in her opposition to the instant Motion.

33.     Simply pleading that the defendants "did nothing" to verify her income, without more, is not a negligence claim. It should be remembered that it was the defendants who were taking the risk by loaning plaintiff the money in this transaction. Absent some <u>fiduciary duty</u> to plaintiff, which is not alleged anywhere in the Amended Complaint, there is no basis to imply or impute that the defendants owed plaintiff some general duty to verify her income for plaintiff's protection. Plaintiff clearly is not able in good faith to make even a general allegation that Movants owed her such a duty, and plaintiff is therefore unable to state a claim for negligence. Plaintiff's Eighth Cause of Action should therefore be dismissed.

**PLAINTIFF FAILS TO STATE A CLAIM UNDER RESPA
OR FOR THE UNAUTHORIZED PRACTICE OF LAW**

34.     Plaintiff devotes two sentences to her purported RESPA claim in her opposition, and does not add anything for the Court's consideration. It appears that plaintiff is not willing or able to set forth the specific section of RESPA she claims was violated, or even to generally state the purported substantive prohibition involved.

35.     It appears that plaintiff is attempting to bootstrap a RESPA claim based on her argument that Royal acted improperly by serving as an escrow agent but, plaintiff has not and apparently cannot allege any section of any underlying law (New York State Banking Law, New York State Judiciary Law or otherwise) which prohibits Royal's actions or addresses the escrow issue

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

in such a way that it could serve as an underlying violation to render Royal's fees "non-bonafide" under RESPA as plaintiff asserts.  Plaintiff is incorrect as a matter of law when she claims that defendants Castle Point and Royal violated New York State Judiciary Law §§ 484 and 495 by allowing Royal to act as settlement agent and/or closing agent "in that said services are required to be performed by an independent attorney, pursuant to the New York State Judiciary Law, as set forth by Sections 484 and 495 of said statute."  Nothing in either of these provisions addresses the issue of a non-attorney acting as settlement or closing agent in a mortgage transaction.  As such, these vague allegations do not even provide the defendants with notice of the purported claims, and the Ninth and Tenth Causes of Action should therefore be dismissed.

**WHEREFORE,** defendants Castle Point Mortgage, Inc., Heather Gearin and Royal Settlement Services, Inc. request that an Order be made in this action dismissing the Amended Complaint against them in its entirety, and for such other and further relief as to this Court seems just and proper.

Dated: New York, New York
       June 20, 2008

_____
Keith D. Grace, Esq. (KG6230)
**CONWAY, FARRELL, CURTIN & KELLY, P.C.**
Attorneys for Defendants
*Castle Point Mortgage, Inc., Heather Gearin*
and *Royal Settlement Services, Inc.*
48 Wall Street – 20th Floor
New York, N.Y. 10005
(212) 785-2929

CONWAY, FARRELL,
CURTIN & KELLY, PC
48 WALL STREET
20TH FLOOR
NEW YORK, NY 10005

### CERTIFICATE OF SERVICE

I, KEITH D. GRACE, hereby certify that on this 20th day of June, 2008, the foregoing **Reply Declaration** was served via e-filing upon the following:

David M. Harrison, Esq.
*Attorney for Plaintiff*
48 Willoughby Street
Brooklyn, New York  11201
(718) 243-2109

Stan Goldberg, Esq.
Platzer Swergold Karlin Levine Goldberg & Jaslow, LLP
*Attorney for Defendant, GMAC*
1065 Avenue of the Americas
New York, NY 10018
(212) 593-3000