UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VERA N. NGWA,                                             :

                Plaintiff,                     :                    08 Civ. 0859 (AJP)

          -against-                          :                    **OPINION AND ORDER**

CASTLE POINT MORTGAGE, INC., et al.,      :

             Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Vera Ngwa brings this action against, inter alia, defendants Castle Point

Mortgage, Inc., Heather Gearin, and Royal Settlement Services, Inc. (collectively, the "Castle Point

Defendants" or the "defendants"), alleging violations of the Truth In Lending Act ("TILA"), New

York General Business Law § 349, New York Banking Law § 589, Real Estate Settlement

Procedures Act ("RESPA"), and New York Judiciary Law §§ 484 and 495.  (Dkt. No. 24: 2d Am.

Compl. ["Compl."] ¶ 1.)  Ngwa also seeks damages for negligence and fraud and rescission of the

mortgage at issue.  (Compl. ¶ 1.)

        The parties have consented to decision of this case by a Magistrate Judge pursuant

to 28 U.S.C. § 636(c).  (Dkt. No. 9.)

        Presently before the Court is the Castle Point Defendants' motion to dismiss the

complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure (Dkt. No. 16:

Defs. Notice of Motion), on the grounds that:  (1) Ngwa's first and second causes of action fail to

state a TILA claim because defendants made all necessary disclosures before consummation of the mortgage transaction (Dkt. No. 18: Defs. Br. at 2-4); (2) Ngwa's third and fourth causes of action pursuant to New York General Business Law allege acts that do not fit the objective definition of "deceptive acts or practices" and are "baseless, non-actionable breach of fiduciary duty allegations" (Defs. Br. at 11-13); (3) Ngwa's fifth cause of action fails because New York Banking Law § 589 "does not contain any specific requirements or prohibitions, and does not mention excessive fees" (Defs. Br. at 14-15); (4) Ngwa's sixth cause of action for fraud "is not pled with the requisite particularity" (Defs. Br. at 4-11); (5) Ngwa's seventh cause of action fails to state an unconscionability claim because the alleged facts defeat any claim of procedural or substantive unconscionability (Defs. Br. at 16-18); (6) Ngwa's negligence claim (eighth cause of action) fails "to allege that a duty existed, or [allege] any facts which would support the existence of such a duty" (Defs. Br. at 18-19); (7) Ngwa's RESPA claim (ninth cause of action) fails to allege which fees "were not reasonable or bonafide," and Ngwa does not indicate which provision of RESPA was violated (Defs. Br. at 19-20); and (8) Ngwa's tenth cause of action fails to state a claim for unauthorized practice of law because nothing in New York Judiciary Law §§ 484 or 495 "addresses the issue of a non-attorney acting as settlement or closing agent in a mortgage transaction" (Defs. Br. at 20-21).

For the reasons set forth below, Castle Point/Royal's motion to dismiss (Dkt. No. 16) is GRANTED, as follows:  Ngwa's federal claims (under TILA and RESPA, the first, second and ninth causes of action) are dismissed with prejudice and plaintiff Ngwa's remaining state-law claims are dismissed without prejudice.

## FACTS

The facts alleged in Ngwa's complaint[1] are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "Ngwa alleges."

## The Parties

Ngwa resides and owns property located at 10 West 123rd Street, New York, New York.  (Dkt. No. 24: Compl. ¶ 4; Dkt. No. 17: Grace Aff. ¶ 2 & Exs. C-H.)

Defendant Heather Gearin is a "loan officer" for defendant Castle Point, a company that makes mortgage loans.  (Compl. ¶¶ 6-7.)  Defendant Royal derives fees in connection with title services for mortgage loans and acts as a "Settlement Company" or "Closer" in connection with real estate closings.  (Compl. ¶ 15.)  Royal served as "Closing Agent" on the subject mortgage loan transaction.  (Compl. ¶ 19.)  Castle Point's principals are the majority owners of Royal.  (Compl. ¶ 16.)

## The Mortgage Loan

On or about July 5, 2005, Option One Mortgage Corporation issued a mortgage loan to Ngwa for $910,000, secured by her residential property at 10 West 123rd Street.  (Dkt. No. 24: Compl. ¶ 27.)  The Option One adjustable rate loan imposed an interest rate no greater than 9.8% but no less than 6.8%, with an initial fixed interest rate of 6.8% for the first two years.  (Compl. ¶ 28.)  The Option One mortgage required Ngwa to make a monthly payment of approximately

---

[1]    While the Castle Point Defendants' motion to dismiss is directed to Ngwa's amended complaint (Dkt. No. 12; see Dkt. No. 17: Grace Aff. ¶ 3 & Ex. B), the Court will cite to the Second Amended Complaint (Dkt. No. 24), which contains identical allegations as the amended complaint relating to the Castle Point Defendants.

4

$6,035.  (Compl. ¶ 28.)  In or about December 2006, Ngwa defaulted on the Option One mortgage,

with a balance of $986,779.27, and was the subject of a foreclosure action.  (Compl. ¶ 27.)

In December 2006, Ngwa received a "cold call[]" from Gearin, on behalf of Castle

Point, offering to refinance Ngwa's existing mortgage.  (Compl. ¶ 27.)  After Ngwa informed Gearin

of her current income, Gearin told Ngwa that she qualified for a refinanced loan from Castle Point

with more favorable payment terms than her Option One loan.  (Compl. ¶ 31.)  Gearin stated that she

could refinance Ngwa's existing mortgage loan for "'just over one million dollars'" with a lower

interest rate and smaller monthly payments than Ngwa's Option One mortgage.  (Compl. ¶ 30.)

Additionally, Gearin explained to Ngwa that Castle Point's refinance loan was "'the only way' that

[Ngwa] would be able to 'save her home'" and that the proposed loan would result in the satisfaction

of her current mortgage and a "'significant cash out' for [Ngwa's] 'benefit.'"  (Compl. ¶¶ 32-33.)

Based upon Gearin's representations, Ngwa decided to refinance her mortgage loan with Castle

Point.  (Compl. ¶ 34.)

In late December 2006 and in early January 2007, Ngwa provided Castle Point/Gearin

and Royal respectively with relevant income information and "executed tax income/income record

authorizations" to permit the Castle Point Defendants to obtain her income information from the

Internal Revenue Service and related tax authorities.  (Compl. ¶¶ 35-36, 49.)

On December 29, 2006, Ngwa received "initial disclosure" documents from Castle

Point, indicating the principal balance of the refinance loan as $1,135,000, with an adjustable interest

rate, to be secured by Ngwa's home.  (Compl. ¶¶ 37-38, 109.)  Additionally, the initial disclosure

documents indicated that Ngwa's monthly payment obligation under the loan would be $11,965.19.

(Dkt. No. 22: Harrison Aff. Ex. 2: "Initial Disclosure" documents at CPM 000158.)   The first document, entitled "Federal Application Policy and Disclosure Notices," included a "Rescission Notice," which stated, "If you are refinancing your primary residence, you[r] loan is subject to a three (3) business day Right of Rescission.  Funds will not be disbursed until the fourth (4) business day after closing.  Sundays and legal holidays are not counted in determining the rescission period." (Harrison Aff. Ex. 2: Initial Disclosure documents at CPM 000146.)  The "initial disclosure" packet also contained a "Uniform Residential Loan Application," a "LIBOR Adjustable Rate Mortgage (ARM) Disclosure," describing the features of her adjustable rate mortgage program, and a "Consumer Handbook on Adjustable Rate Mortgages."  (Harrison Aff. Ex. 2: Initial Disclosure documents at CPM 000149, 000163, 000169-73.)  Neither Gearin nor Castle Point explained the "initial disclosure" documents to Ngwa.  (Compl. ¶ 45.)  The Initial Disclosure documents did not disclose the loan's Annual Percentage Rate, Finance Charge, Amount Financed, Total of Payments or Total Number of Payments.  (Compl. ¶¶ 39-43.)  According to the complaint, the Initial Disclosure documents "did not contain a 'Truth in Lending Statement', as mandated by the Truth In Lending Act."  (Compl. ¶ 44.)

Soon after, Gearin called Ngwa and advised her to sign the documents and return them to Castle Point in order to enable Ngwa to "close" on the proposed loan.  (Compl. ¶ 46.) Gearin reiterated that the proposed loan was the "'only way'" for Ngwa to "'save'" her home, and that the loan was a "'good deal'" with "'easily'" affordable monthly payments that might "'qualify'" Ngwa for even more favorable terms if she "remained current on [her] loan for one year."  (Compl. ¶ 47.)

Based on Gearin's representations, Ngwa agreed to proceed with Castle Point's proposed loan. (Compl. ¶ 48.)

Gearin advised Ngwa that she did not have to be represented by an attorney at the loan closing. (Compl. ¶ 52.) On January 25, 2007, Royal held the loan "closing" at Ngwa's residence and the Royal representative, who was unaware of the specific information concerning the loan, presented Ngwa with numerous documents to sign. (Compl. ¶¶ 50-51, 55-56.) Ngwa received documents entitled: (1) "Mortgage;" (2) "Adjustable Rate Rider;" (3) "U.S. Department of Housing and Urban Development [Settlement] Statement" ("HUD Statement"); (4) "Federal Truth-In-Lending Disclosure Statement;" and (5) "Uniform Residential Loan Application" (Compl. ¶ 57; see also Compl. ¶¶ 58-59.)

The Mortgage indicated that Castle Point's loan contained a principal balance of $1,165,000,[2] "plus interest and other amounts that may be payable." (Compl. ¶ 59; Harrison Aff. Ex. 5: Mortgage ¶ E.) The "'Adjustable Rate Note'" stated that Ngwa was obligated to pay a yearly 11.875% interest rate subject to change, but "will not be greater than 17.875% or less than 6.500%." (Compl. ¶¶ 62, 65; Harrison Aff. Ex. 6: Adjustable Rate Note ¶¶ 2, 4(D).) According to the "Adjustable Rate Note," Ngwa's initial monthly payments were to be $11,871.36, subject to "change." (Compl. ¶ 63; Harrison Aff. Ex. 6: Adjustable Rate Note ¶ 3(B).) The "Adjustable Rate Rider" attached to the "Mortgage" stated that Ngwa's interest rate "may change on the first date of

---

[2]    The "initial disclosure" documents that Ngwa received in late December 2006 disclosed a principal loan balance of $1,135,000. (Compl. ¶¶ 37-38, 109.) Prior to the January 25, 2007 closing, neither Gearin nor Castle Point informed Ngwa that the principal balance increased from $1,135,000 to $1,165,000. (Compl. ¶¶ 108-09.)

February, 2012, and on that day every 6th month thereafter" but "'will[] never be increased or decreased on any single Change Date by more than . . . (2.000%)' from the rate of interest [Ngwa was] paying 'for the preceding 6 months.'"  (Compl. ¶¶ 70, 73; Harrison Aff. Ex. 5: Adjustable Rate Rider ¶¶ 4(A), 4(D).)

The "Truth-In-Lending Disclosure Statement" included information regarding the loan's "Annual Percentage Rate," "Finance Charge," "Amount Financed," "Total of Payments," "payment schedule," "Variable Rate Feature,"and notified Ngwa that she was "giving a security interest" in her residential property at 10 West 123rd Street.  (Compl. ¶¶ 75-81; Harrison Aff. Ex. 7: Truth-In-Lending Disclosure Statement at 1.)

Additionally, Ngwa received a "HUD Statement" reflecting the charges associated with her loan including a $46,000 "Loan Origination Fee" to Castle Point; a $595 "Application Fee" to Castle Point; a $795 "Processing Fee" to Castle Point; a $375 "Settlement or closing fee" to Royal;[3/] a $350 "Title examination" fee to Royal; a $3,153[4/] "Title Insurance" charge to Royal;

---

[3/]    Ngwa paid Royal this fee "despite [Royal] not being legally authorized or qualified to assess such a fee[,] . . . not having an attorney to effectuate such services[,] . . . [and] not producing an individual for said 'closing' who was capable of reviewing the information contained within those documents provided to [Ngwa] for her execution."  (Compl. ¶¶ 90-92.)

[4/]    None of the documents Ngwa received at the "closing" reflected the "reduced premium reissuance rate on the title insurance she received in connection with the subject loan transaction."  (Compl. ¶ 85.)  Ngwa "was not provided with any explanation . . . explaining why she did not receive a reduced premium reissuance rate on the title insurance . . . despite having received indication that she would be receiving such a reduction, pursuant to documents previously forwarded to her as part of the 'initial disclosure' exchanged by defendants Castle Point and Gearin on or about December 29, 2006."  (Compl. ¶ 86.)

$83,131.40 "Total Settlement Charges;" and a $986,779.27 "Foreclosure Payoff." (Compl. ¶¶ 84, 87-88; Harrison Aff. Ex. 8: HUD Statement at 1.)

Lastly, the "Uniform Residential Loan Application" indicated that Ngwa's monthly "Base Employment Income" and "Gross Monthly Income" was $30,000. (Compl. ¶¶ 96-97; Harrison Aff. Ex. 4: Uniform Residential Loan Application at 2.) Ngwa never expressed to Gearin or Castle Point, either verbally or in writing, that her monthly income was $30,000, as she has never earned such an amount. (Compl. ¶¶ 98-101.) In fact, according to the income information Ngwa submitted to the Castle Point Defendants, the $11,871.36 monthly payment obligation imposed by the loan exceeded Ngwa's average monthly income. (Compl. ¶¶ 63, 98-101, 106.)

Ngwa received $73,000 as "cash funds" from the loan (HUD Stmt. at 1), and used this money to pay her monthly $11,871.36 mortgage payment. (Dkt. No. 21: Ngwa Opp. Br. at 6.) Once these funds were exhausted, Ngwa defaulted on her loan and a foreclosure action was commenced against Ngwa. (Ngwa Opp. Br. at 6; see also Dkt. No. 17: Grace Aff. ¶ 8.)

**The Castle Point Defendants' Motion to Dismiss**

The Castle Point Defendants have moved to dismiss the complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure (Dkt. No. 16: Defs. Notice of Motion), on the grounds that: (1) Ngwa's first and second causes of action fail to state a TILA claim because defendants made all necessary disclosures before consummation of the mortgage transaction (Dkt. No. 18: Defs. Br. at 2-4); (2) Ngwa's third and fourth causes of action pursuant to New York General Business Law allege acts that do not fit the objective definition of "deceptive acts or practices" and are "baseless, non-actionable breach of fiduciary duty allegations" (Defs. Br. at 11-13); (3) Ngwa's

fifth cause of action fails because New York Banking Law § 589 "does not contain any specific requirements or prohibitions, and does not mention excessive fees" (Defs. Br. at 14-15); (4) Ngwa's sixth cause of action for fraud "is not pled with the requisite particularity" (Defs. Br. at 4-11); (5) Ngwa's seventh cause of action fails to state an unconscionability claim because the alleged facts defeat any claim of procedural or substantive unconscionability (Defs. Br. at 16-18); (6) Ngwa's negligence claim (eighth cause of action) fails "to allege that a duty existed, or [allege] any facts which would support the existence of such a duty" (Defs. Br. at 18-19); (7) Ngwa's RESPA claim (ninth cause of action) fails to allege which fees "were unreasonable or bonafide," and Ngwa does not indicate which provision of RESPA was violated (Defs. Br. at 19-20); and (8) Ngwa's tenth cause of action fails to state a claim for unauthorized practice of law because nothing in New York Judiciary Law §§ 484 or 495 "addresses the issue of a non-attorney acting as settlement or closing agent in a mortgage transaction" (Defs. Br. at 20-21).

## ANALYSIS

### I.    THE STANDARDS GOVERNING A MOTION TO DISMISS

#### A.    The Twombly-Iqbal "Plausibility" Standard

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.").[5]  A court must accept as true the facts alleged in the complaint and draw all reasonable

inferences in favor of the nonmoving party – here, the plaintiff.  Cosmas v. Hassett, 886 F.2d 8, 11

(2d Cir. 1989).[6]  At the same time, "'[c]onclusory allegations or legal conclusions masquerading as

factual conclusions will not suffice to [defeat] a motion to dismiss.'" Achtman v. Kirby, McInerney

& Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).[7]  A court must apply a "flexible 'plausibility

standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts

where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d at

157-58 (interpreting Twombly).[8]  This does "not require heightened fact pleading of specifics," Bell

---

[5]     Accord, e.g., Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), cert. denied, 128 S. Ct. 2931 (2008); Lindner v. Int'l Bus. Machs. Corp., 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); Joseph v. Terrence Cardinal Cooke Health Care Ctr., 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); Elektra Entm't Group, Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); Diana Allen Life Ins. Trust v. BP P.L.C., 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

[6]     Accord, e.g., Curran v. Teachers Ret. Sys. of City of N.Y., 241 Fed. Appx. 781, 782 (2d Cir. 2007); Iqbal v. Hasty, 490 F.3d at 152; Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004); Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001); In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir.), cert. denied, 534 U.S. 1071, 122 S. Ct. 678 (2001).

[7]     Accord, e.g., Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., 07 Civ. 11211, 2008 WL 2464187 at *2 (S.D.N.Y. June 18, 2008); Howard v. Mun. Credit Union, 05 Civ. 7488, 2008 WL 782760 at *6 (S.D.N.Y. Mar. 25, 2008); Wightman-Cervantes v. Am. Civil Liberties Union, 06 Civ. 4708, 2007 WL 1805483 at *1 (S.D.N.Y. June 25, 2007); Am. Nat'l Theatre & Acad. v. Am. Nat'l Theatre Inc., 05 Civ. 4535, 2006 WL 4882916 at *4 (S.D.N.Y. Sept. 27, 2006).

[8]     See also, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) ("We agree with the
(continued...)

Atl. Corp. v. Twombly, 127 S. Ct. at 1974,[9] but does require "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  Boykin v. KeyCorp, 521 F.3d at 213 (quoting Twombly, 127 S. Ct. at 1965).[10]

**B.    Rule 9(b) Applies to Fraud Claims**

Additionally, in considering the sufficiency of Ngwa's fraud claim, the Court must determine the adequacy of the complaint's allegations pursuant to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, the party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); see, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007); S.E.C. v. Lyon, 529

---

[8]    (...continued)
Iqbal panel's conclusion that Twombly focused on the plausibility of the complainant's claim for relief, although Iqbal does not offer much guidance to plaintiffs regarding when factual 'amplification [is] needed to render [a] claim plausible.'"); Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."); In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'"); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 n.2 (declining "to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.").

[9]    Accord, e.g., Boykin v. KeyCorp, 521 F.3d at 213; In re Elevator Antitrust Litig., 502 F.3d at 50.

[10]    See also, e.g., Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir.), cert. denied, 128 S. Ct. 2964 (2008); Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131 (2d Cir. 2007); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98.

F. Supp. 2d 444, 449 (2d Cir. 2008); Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). In order to comply with Rule 9(b), "the complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993).[11/]

Although Rule 9(b) must be read together with Rule 8(a), the fraud allegations in the complaint must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint." Ross v. A.H. Robins Co., 607 F.2d 545, 557 (2d Cir. 1979), cert. denied, 446 U.S. 946, 100 S. Ct. 2175, (1980).[12/]  The complaint must give the defendant "adequate information" to allow the defendant "to frame a response." Ross v. A.H. Robins Co., 607 F.2d at 557-58.[13/]

---

[11/]    Accord, e.g., S.E.C. v. Lyon, 529 F. Supp. 2d at 449;  Lerner v. Fleet Bank, N.A., 459 F.3d at 290; Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir.), cert. denied, 531 U.S. 1012, 121 S. Ct. 567 (2000); Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999).

[12/]    Accord, e.g., Leemon v. Burns, 175 F. Supp. 2d 551, 555 (S.D.N.Y. 2001) (Peck, M.J.); LaSalle Nat'l Bank v. Duff & Phelps, 951 F. Supp. 1071, 1081 (S.D.N.Y. 1996) (Knapp, D.J. & Peck, M.J.); In re Towers Fin. Corp. Noteholders Litig., 93 Civ. 0180, 1995 WL 571888 at *12 (S.D.N.Y. Sept. 20, 1995) (Peck, M.J.), report & rec. adopted, 936 F. Supp. 126 (S.D.N.Y.1996); O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 225 (S.D.N.Y.1989) ("Rule 9(b) is designed to provide a defendant with fair notice of a plaintiff's claim in order to enable a defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits.").

[13/]    See also, e.g., United States v. Norden Sys., Inc., No. 94-CV-963, 2007 WL 2782525 at *6 (D. Conn. Sept. 20, 2007); In re Check Point Software Techs. Ltd. Sec. Litig., 03 Civ. 6594, 2006 WL 1116699 at *2 (S.D.N.Y. Apr. 26, 2006); Ryan v. Hunton & Williams, No. 99-CV-5938, 2000 WL 1375265 at *6 (E.D.N.Y. Sept. 20, 2000) ("Allegations of fraud . . . must be specific enough to provide a defendant with 'a reasonable opportunity to answer the complaint and adequate information to frame a response.'").

13

Furthermore, a complaint alleging fraud against multiple defendants must state the allegations specifically attributable to each individual defendant. E.g., DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987); Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 460-61 (S.D.N.Y. 2008); Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 494-95 (S.D.N.Y. 2005); Rich v. Maidstone Fin., Inc., 98 Civ. 2569, 2001 WL 286757 at *6 (S.D.N.Y. Mar. 23, 2001) ("[W]hen fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b).") (internal quotations, citations, & alterations omitted; collecting cases).[14]

C.     **Consideration Of Documents Attached To Or Referred To In The Complaint**

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)).[15]  The Court,

---

[14]    See also, e.g., Leemon v. Burns, 175 F. Supp. 2d at 556; LaSalle Nat'l Bank v. Duff & Phelps, 951 F. Supp. at 1082; In re Towers, 1995 WL 571888 at *13.

[15]    Accord, e.g., Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Aniero Concrete Co. v. N.Y. City Constr. Auth., 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based
(continued...)

14

however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98; Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . ."); see also, e.g., Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).

---

15/    (...continued)
solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Board of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

In this case, the transaction documents that plaintiff Ngwa referred to in her amended complaint, and which were submitted by plaintiff in opposition to defendants' motion to dismiss (see Dkt. No. 22: Harrison Aff. Exs. 1-8), may be considered on the motion to dismiss, subject to the Faulkner v. Beer proviso. (See cases cited in the immediately prior paragraphs.)

\* \* \* \*

The Court's role in deciding a motion to dismiss "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)); accord, e.g., Watson v. McGinnis, 964 F. Supp. 127, 130-31 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Saunders v. Coughlin, 1994 WL 88108 at *2 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

## II.    NGWA'S TILA CLAIMS ARE DISMISSED

Ngwa claims that Castle Point and Gearin "knowingly engaged in conduct which completely violated the applicable disclosure requirements mandated by the Truth In Lending Act." (Dkt. No. 24: Compl. ¶ 20; see also id. ¶¶ 111-27, Ngwa's first and second causes of action.)

TILA's purpose is "'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S. Ct. 1409, 1409-10

(1998) (quoting 15 U.S.C. § 1601(a)).[16] Accordingly, TILA mandates that creditors provide "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. at 412, 118 S. Ct. at 1410.[17]

A creditor's failure to comply with these disclosure requirements may result in actual and statutory damages. 15 U.S.C. § 1640(a). Additionally, if a creditor fails to provide a consumer with material disclosures when the loan is secured by the consumer's "principal dwelling," the consumer has "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required . . . whichever is later." 15 U.S.C. § 1635(a). If the required material disclosures are not delivered, the rescission period expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f); see 12 C.F.R. § 226.23(a)(3). However, the extended rescission right is only available when a creditor fails to

---

[16] Accord, e.g., Cain v. Bethea, No. 04 CV 3946, 2007 WL 2859681 at *51 (E.D.N.Y. Aug. 17, 2007), report & rec. adopted, 2007 WL 2846914 (S.D.N.Y. Sept. 26, 2007); McAnaney v. Astoria Fin. Corp., 357 F. Supp. 2d 578, 583 (E.D.N.Y. 2005); Gen. Elec. Capital Fin. Inc. v. Bank Leumi Trust Co., 95 Civ. 9224, 1999 WL 33029 at *8 (S.D.N.Y. Jan. 21, 1999); 15 U.S.C. § 1601(a).

[17] Accord, e.g., Gen. Elec. Capital Fin., Inc. v. Bank Leumi Trust Co., 1999 WL 33029 at *8; see 15 U.S.C. §§ 1631, 1632, 1635, 1638.

17

provide the disclosures required by 15 U.S.C. § 1635(a)[18] and 12 C.F.R. § 226.23(a)(3) n.48.[19]

---

[18]    15 U.S.C. § 1635(a) requires that "[t]he creditor shall clearly and conspicuously disclose . . . to any obligor in a transaction subject to this section the rights of the obligor under this section" the right to rescind.

[19]    12 C.F.R. § 226.23(a)(3) n.48 defines "material disclosures" to mean "the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d)."

12 C.F.R. § 226.32(c) states:

Disclosures. In addition to other disclosures required by this part, in a mortgage subject to this section, the creditor shall disclose the following in conspicuous type size:

(1) Notices. The following statement: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."

(2) Annual percentage rate. The annual percentage rate.

(3) Regular payment; balloon payment. The amount of the regular monthly (or other periodic) payment and the amount of any balloon payment. The regular payment disclosed under this paragraph shall be treated as accurate if it is based on an amount borrowed that is deemed accurate and is disclosed under paragraph (c)(5) of this section.

(4) Variable-rate. For variable-rate transactions, a statement that the interest rate and monthly payment may increase, and the amount of the single maximum monthly payment, based on the maximum interest rate required to be disclosed under § 226.30.

(5) Amount borrowed. For a mortgage refinancing, the total amount the consumer will borrow, as reflected by the face amount of the note; and where the amount borrowed includes premiums or other charges for optional credit insurance or debt-cancellation coverage, that fact shall be stated, grouped together with the

(continued...)

See, e.g., Fiorenza v. Fremont Inv. & Loan, 08 Civ. 858, 2008 WL 2517139 at *3 (S.D.N.Y. June 20, 2008) ("Only the failure to provide those disclosures required by section 1635 and set forth in footnote 48 will result in an extension of the rescission period."); Mayfield v. Gen. Elec. Capital Corp., 97 Civ. 2786, 1999 WL 182586 at *7 (S.D.N.Y. Mar. 31, 1999) ("[O]nly failure to provide "material disclosures" or failure to disclose a right to rescind, give rise to a right to rescind.")

TILA's disclosure requirements are set out in 15 U.S.C. §§ 1631-39. TILA's mandatory disclosures must be made prior to "consummation" of the transaction, which is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. §§ 226.17(b), 226.2(a)(13).

The crux of the parties' dispute here is when the required disclosures needed to be made. It is undisputed that Ngwa did not become "contractually obligated" until the time of the closing on January 25, 2007; there was no pre-closing contractual commitment by Castle Point to lend, nor Ngwa to borrow, the money. As defendants described the parties positions:

> Plaintiff seems to be under the impression that TILA requires disclosures to be made at least one calendar day "prior to the date of the closing." . . . [T]here is no requirement in TILA to make disclosures "prior to the date of closing." TILA expressly and repeatedly uses the term "consummation of the transaction" as the deadline for disclosures, and plaintiff can point to no authority stating that this

---

[19]/    (...continued)
disclosure of the amount borrowed. The disclosure of the amount borrowed shall be treated as accurate if it is not more than $100 above or below the amount required to be disclosed.

12 C.F.R. § 226.32(d) prohibits balloon payments, an increased interest rate after default, and prepayment penalties.

somehow means disclosures must be made on the day before the closing or some earlier date.

(Dkt. No. 18: Defs. Br. at 3-4; see Dkt. No. 21: Ngwa Opp. Br. at 10: "The Act requires a lender to provide such disclosures not only on the date of consummation of a transaction; but also prior to said date." (emphasis deleted); id. at 11: The failure of a lender to provide a borrower with such mandated disclosures prior to the date of consummation of the loan "entitles a borrower to actual money damages . . . Ngwa was supposed to receive Federal Truth in Lending disclosures prior to January 25, 2007.") (emphasis deleted)).

While the Second Circuit has not addressed the issue of whether a creditor's failure to provide mandatory disclosures prior to closing, as opposed to at the closing, satisfies TILA's requirements, Judge Scheindlin recently held that the delivery of all mandated disclosures at a closing precludes the extension of the rescission period. Fiorenza v. Fremont Inv. & Loan, 2008 WL 2517139 at *4-5 (Defendant's "delivery of the material disclosures and notice of right to rescind at the closing precluded an extension of [plaintiff's] right to rescind the Loan. Accordingly, [plaintiff's] attempt to rescind the Loan is time-barred.") Judge Scheindlin explained:

> [Plaintiff's] assertion that the failure of a lender to provide a borrower with mandated material disclosures prior to the date of closing of the loan gives rise to an extended right on the part of the borrower to rescind the subject transaction is incorrect. [fn. citing case omitted.] Although there appears to be no case within the Second Circuit directly on point, other district courts have addressed whether a lender's failure to provide TILA mandated disclosures prior to the closing will give rise to an extended right of rescission. For example, in Oscar v. Bank One, N.A. [No. Civ. A.05-5928, 2006 WL 401853 at *1 (E.D. Pa. Feb. 17, 2006)], the plaintiffs asserted that they were not provided with disclosures concerning the variable rate of their home mortgage prior to the closing. The plaintiffs did, however, acknowledge that they received notification of the loan's variable interest rate feature at the closing. Consequently, the closing triggered the three day rescission period. Thus, the Court

held, the plaintiffs were not entitled to rescind the transaction more than two years after it had been consummated.  Similarly, in Rand Corp. v. Yer Song Moua [Civ. No. 07-510, 2007 WL 1576732 (D. Minn. May 30, 2007)], Moua argued that Rand failed to provide him with certain disclosures that are required, pursuant to 15 U.S.C. § 1639, to "be given not less than 3 business days prior to the consummation of the loan."  The court, assuming that Moua's contention was true, found that the Rand's action did not give rise to a three year right of rescission.  Because Rand did not completely fail to provide Moua with the mandated disclosures, but only failed to provide them until the date of closing, Moua did not have a valid basis for rescinding the loan nearly a year later.

In the instant case, [defendant Lender] provided [Plaintiff] with all the necessary disclosure and rescission forms [at closing].  [Plaintiff's] right to rescind the Loan, then, expired when she failed to notify [Lender] of her desire to cancel the transaction before midnight of the third business day following consummation of the transaction. [Plaintiff] would have had an extended right to rescind the Loan only if [Lender] never provided her with the material disclosures or the notice of right to rescind.  Consequently, [plaintiff] has failed to state a claim upon which rescission of the loan can be granted.

Fiorenza v. Fremont Inv. & Loan, 2008 WL 2517139 at *5 (fns. omitted); see also, e.g., Waters v.

Weyerhaeuser Mortgage Corp., 582 F.2d 503, 505 (9th Cir. 1978) ("Other courts have generally

focused on the creation of a contractual relationship as the operative factor in determining the

timeliness of disclosure.  Except for a district court opinion, overruled on appeal, we have found no

case which has held that disclosure at time of closing is untimely."  Moreover, the Federal Reserve

Board had proposed amending TILA to require disclosures ten business days prior to a consumer's

contractual obligation.  "The introduction and later rejection of the amendment creates a convincing

inference that the [Federal Reserve] Board believed the existing regulations contained no such

requirement [of disclosure prior to 'closing'] and intended no such time scheme to exist. . . .

[D]isclosure at time of closing satisfies the requirements of" TILA.); Bissette v. Colonial Mortgage

Corp., 477 F.2d 1245, 1248 (D.C. Cir. 1973) (bank not required to make TILA disclosures to the

borrowers until "the existence of a contractual relationship between borrower and lender," which in the absence of a contractual commitment from the lender is at the closing).  This Court agrees that disclosure at the closing, not the day before the closing, is all that is required by TILA.

Thus, Ngwa is not entitled to rescission of the mortgage loan transaction because Castle Point provided Ngwa with the required mandatory disclosures before she consummated her loan, i.e., at closing.[20]  Ngwa's right to rescind her mortgage loan transaction expired three days after she received both the notice of her rescission rights and the mandatory disclosures.[21]  See cases cited

---

[20]    12 C.F.R. § 226.18 requires a creditor to "disclose the following information as applicable:" (a) "Creditor"; (b) "Amount Financed"; (c) "Itemization of amount financed" or "Good faith estimates of settlement costs"; (d) Finance charge"; (e) "Annual percentage rate"; (f) "Variable rate"; (g) "Payment schedule"; (h) "Total of payments"; (i) "Demand feature"; (j) "Total sale price"; (k) "Prepayment"; (l) "Late payment"; (m) "Security interest"; (n) "Insurance and debt cancellation"; (o) "Certain security interest charges"; (p) "Contract reference"; (q) "Assumption policy"; and (r) "Required deposit".  12 C.F.R. § 226.18(a)-(r).

At the January 25, 2007 closing, Castle Point provided Ngwa with a "Federal Truth-In-Lending Disclosure Statement" which contained all the applicable disclosures under 12 C.F.R. § 226.18 including: "Creditor"; "Amount Financed"; "Finance Charge"; "Annual Percentage Rate"; "Variable Rate"; "Payment schedule"; "Total of Payments"; "Demand Feature"; "Prepayment"; "Late Charge"; "Security"; "Insurance"; a statement advising the borrower to "[s]ee your contract documents for any additional information"; and "Assumption".  (Dkt. No. 22: Harrison Aff. Ex. 7: "Federal Truth-In-Lending Disclosure Statement.")

Additionally, the "HUD Statement" provided to Ngwa at closing included estimates of settlement costs as well as security interest charges.  (Harrison Aff. Ex. 8: "HUD Settlement Statement.")  The "Total sale price" and "Required deposit" are inapplicable to Ngwa's transaction.

[21]    Ngwa and defendants disagree as to whether the parties exchanged "re-disclosure" on January 24, 2007.  (Dkt. No. 21: Ngwa Opp. Br. at 3-4.)  The alleged "re-disclosure" included the same documents that Castle Point provided Ngwa as the "initial disclosure" documents.  (Compare Harrison Aff. Ex. 2: 12/29/06 "Initial Disclosures" at CPM 000144-
(continued...)

above; see also 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3) n.48. Since Ngwa received these documents at the closing on January 25, 2007 (see pages 6-8 above), her right to rescind her loan transaction therefore expired at midnight on January 29, 2007.[22]  See Murphy v. Empire of America, 746 F.2d 931, 934 (2d Cir. 1984) ("[F]ailure to rescind within the statutorily permissible three-day period precludes their doing so."); Fiorenza v. Fremont Inv. & Loan, 2008 WL 2517139 at *4 ("[D]elivery of the material disclosures and notice of right to rescind at the closing precluded an extension of [Plaintiff's] right to rescind the Loan.").

        Ngwa also is not entitled to monetary damages because Castle Point provided her with the mandatory disclosures at closing.  Before the January 25, 2007 loan closing, Ngwa was not contractually obligated to Castle Point, and at the closing, Ngwa received the applicable mandatory disclosures.  (See fn.20 above.)  Therefore, because Ngwa received the required disclosures at the closing, prior to any contractual obligation, the disclosures were timely.  Neither Gearin nor Castle Point violated any TILA disclosure requirement.

---

[21]        (...continued)
        000175; with Harrison Aff. Ex. 3: 1/24/07 "Re-Disclosure" at CPM 000176-000201.)  For purposes of this analysis, it is irrelevant whether Ngwa received the "re-disclosure" packet because it is undisputed that she received the "initial disclosure" documents on December 29, 2006.  (See pages 4-5 above.)  The "initial disclosure" packet  included a statement of her rescission rights.  (See page 5 above.)  Thus, because Ngwa received notice of her rescission rights on December 29, 2006, before consummation of the transaction, disclosure of her rescission rights was timely.

[22]        The rescission notice states that only "Sundays and legal holidays are not counted in determining the rescission period."  (Harrison Aff. Ex. 2: "Initial Disclosures" at CPM 000146.)  Therefore, since January 25, 2007 was a Thursday, the third business day after this closing date was Monday, January 29, 2007.

### A.    Castle Point Provided The Required Variable-Rate Disclosures

Additionally, Ngwa's loan contained a variable-rate feature, which triggers special disclosure requirements. With variable-rate interest loans, TILA requires creditors to make two sets of disclosures. Pulphus v. Sullivan, No. 02 C 5794, 2003 WL 1964333 at *14 (N.D. Ill. Apr. 28, 2003.)  First, TILA requires lenders to provide the specific variable-rate program disclosures and the "booklet titled Consumer Handbook on Adjustable Rate Mortgages." 12 C.F.R. § 226.19(b)(1)-(2).  The first set of disclosures are required "at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier." 12 C.F.R. § 226.19(b).  The second set of variable-rate disclosures are required "before consummation of the transaction" and must include a statement "that the transaction contains a variable-rate feature" and a statement "that [the] variable-rate disclosures have been provided earlier. 12 C.F.R. §§ 226.17(b), 226.18(f)(2).  Only the second set of disclosures are considered "material disclosures" which, if not provided before consummation of the transaction, will trigger the extended rescission period. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); Pulphus v. Sullivan, 2003 WL 1964333 at *14.  Failure to provide the first set of variable-rate disclosures, while still a violation of the statute, "may subject it [the lender] to other sanctions, but it will not extend the rescission period granted to the consumer." Pulphus v. Sullivan, 2003 WL 1964333 at *14.

Ngwa received the first set of variable-rate disclosures – the Consumer Handbook on Adjustable Rate Mortgages and the "LIBOR Adjustable Rate Mortgage (ARM) Disclosure" – on December 29, 2006 in her "initial disclosure" packet.  (See page 5 above.)  The "initial disclosure" documents also contained a "Uniform Residential Loan Application."   (See page 5 above.)

Therefore, Castle Point provided Ngwa with the first set of variable-rate disclosures "at the time an application form [wa]s provided," in accordance with 12 C.F.R. § 226.19(b). Furthermore, at the January 25, 2007 closing, Castle Point provided Ngwa with a "Federal Truth-In-Lending Disclosure Statement" which stated, "Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier." (See pages 6-7 above; Dkt. No. 22: Harrison Aff. Ex. 7: "Federal Truth-In-Lending Disclosure Statement" at CPM 000036.) Castle Point, therefore, provided the second set of variable-rate disclosures "before consummation of the transaction" – i.e., before the closing – in compliance with 12 C.F.R. §§ 226.17(b) & 226.18(f)(2). (See cases cited at pages 19-21 above.) Thus, both sets of the required variable-rate disclosures were timely.

Ngwa's receipt of the applicable variable-rate disclosures on December 29, 2006 and her receipt of all mandatory disclosures on January 25, 2007 before the closing were in compliance with TILA's regulations.

Accordingly, Ngwa's two TILA claims (the first and second causes of action) seeking rescission of the loan and monetary damages are DISMISSED.

## III.    NGWA'S RESPA CLAIM IS DISMISSED

Ngwa's ninth cause of action is asserted under the Real Estate Settlement Procedures Act, or "RESPA," 12 U.S.C. § 2601 et seq. (Dkt. No. 24: Compl. ¶¶ 188-93.) Specifically, Ngwa alleges that "defendant Royal acted as the 'settlement['] or 'closing' agent on the subject mortgage loan . . . defendants Castle Point and Royal acted improperly in . . . designating defendant Royal as the 'settlement or closing' agent on the subject mortgage loan, in that said services are required to be performed by an attorney, pursuant to" RESPA. (Compl. ¶¶ 193-94.) Ngwa also claims that it was

improper for Royal to be the settlement or closing agent because Royal was not independent of

Castle, but in fact was affiliated with Castle Point.  (Compl. ¶ 191.)  Finally, Ngwa complains that

by acting as closing or settlement agent, Royal was able to obtain fees which "were not reasonable

or bonafide," in violation of RESPA.  (Compl. ¶ 196.)

        In moving to dismiss, defendants stated that:  "Plaintiff does not allege which fees

she contends 'were not reasonable or bona fide,' nor does she give any indication which provision

of RESPA she contends was violated.  As such, this vague allegation does not even provide the

defendants with notice of the claim, and the Ninth Cause of Action should therefore be dismissed."

(Dkt. No. 18: Defs. Br. at 19-20; <u>see also</u> Dkt. No. 25: Grace Reply Aff. ¶ 34: "Plaintiff devotes two

sentences to her purported RESPA claim in her opposition, and does not add anything for the Court's

consideration.  It appears that plaintiff is not willing or able to set forth the specific section of

RESPA she claims was violated, or even to generally state the purported substantive prohibition

involved.")

        Ngwa's opposition brief combines the discussion of the ninth and tenth causes of

action, and asserts that the requirement that the closing agent be an attorney comes not from RESPA

but from New York law.  (Dkt. No. 21: Ngwa Opp. Br. at 24.)  Based on that, Ngwa argues that "[a]s

defendant Royal was not empowered to escrow moneys in the subject transaction, it's assessment of

a fee for 'settlement' and/or 'closing' services, is clearly 'non-bonafide', pursuant to . . . [RESPA],

which is set forth by 12 U.S.C. § 2601[] (particularly with the principals of Royal being the same

as Castle Point).  These principals received funds as compensation for services which Royal was not

qualified to render."  (Ngwa Opp. Br. at 25.)

RESPA defines "settlement services" to include "the handling of the processing, and closing or settlement."  12 U.S.C. § 2602(3).

Castle Point informed Ngwa that "Royal Settlement Services, Inc. is an affiliate of Castle Point Mortgage, Inc., please reference the Affiliated Business Arrangement Disclosure for more information on this relationship." (Dkt. No. 22: Harrison Aff. Ex. 2: Initial Disclosures, "Good Faith Estimate Provider Relationship," at CPM 000161.)  The Affiliated Business Arrangement Disclosure Form repeated that Castle Point was affiliated with Royal, and added that Castle Point's principals owned 100% of Royal.  (Harrison Aff. Ex. 2: Initial Disclosures, "Affiliated Business Arrangement Disclosure," at CPM 000162.)  The document disclosed Royal's fees ($375 for closing, $125 for abstract of title search, $350 for title examination, and $100 for appraisal fee), and further stated that Ngwa was not required to use Royal and, in large bold type, advised Ngwa to shop around for better rates.  (Id.)

RESPA contains provisions prohibiting kickbacks and unwarranted fees, 12 U.S.C. § 2607, but does not prohibit "(1) the payment of a fee . . . (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, . . . [or] (4) affiliated business arrangements so long as (A) a disclosure is made of the existence of such an arrangement to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge . . . (B) such person is not required to use any particular provider of settlement services, and (C) the only thing of value that is received from the arrangement, other than the payments permitted under this subsection, is a return on the ownership interest . . . ."  12 U.S.C. § 2607(C).  Castle Point disclosed to Ngwa its ownership interest in Royal, its estimate of Royal's fees, and that Ngwa was

not required to use Royal, and the complaint does not allege that Castle Point or its principals received any compensation other than through its ownership in Royal.  Accordingly, defendants complied with § 2607(C).  See Spicer v. Ryland Group, Inc., 523 F. Supp. 2d 1356, 1358, 1361-62 (N.D. Ga. 2007) (Defendants' Affiliated Business Arrangement rider stating plaintiff was "NOT required to use the listed provider(s) as a condition for settlement of [plaintiff's] loan on the purchase of the subject property" and that "plaintiff is 'free to shop around'" made it "explicitly clear that the use of [defendants' affiliated company] was optional."  Defendants therefore did not violate RESPA.); Geisser v. NVR, Inc., No. 3:01-0132, 2001 WL 36016177 at *2-4 (M.D. Tenn. May 15, 2001) (Defendants did not violate RESPA in making "affiliated settlement services and title companies" available to plaintiffs because plaintiffs voluntarily signed "Affiliated Business Arrangement Disclosure Statements" that made it clear plaintiffs did not have to use defendants' companies in order to secure a mortgage.).

　　　　While Ngwa alleges that Royal's fees were "excessive" (Compl. ¶ 204), even if true that would not violate RESPA.  See 24 C.F.R. § 3500.14(g)(2) ("High prices standing alone are not proof of a RESPA violation," although the "Department [of Housing and Urban Development] may investigate high prices to see if they are the result of a referral fee or a split of a fee.").

　　　　In short, even after being challenged by defendant's motion to dismiss, Ngwa has not identified what RESPA provision plaintiff asserts defendants violated.  The provision that Ngwa appears to be referencing, prohibiting kickbacks and unearned fees, 12 U.S.C. § 2607, was not

violated because Castle Point disclosed its affiliated relationship with Royal and estimated Royal's fees and advised Ngwa that she was not required to use Royal's services.

Accordingly, Ngwa's ninth cause of action is <u>DISMISSED</u>.

## IV.    NGWA'S STATE LAW CLAIMS ARE DISMISSED WITHOUT PREJUDICE UNDER THE UNITED MINE WORKERS V. GIBBS DOCTRINE

Ngwa's remaining claims are state law claims, and diversity jurisdiction has not been pleaded.  (<u>See</u> Dkt. No. 24: Compl. ¶¶ 2-3.)  Because Ngwa's federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over her state law claims, which thus are dismissed without prejudice.  <u>See</u>, <u>e.g.</u>, <u>Carnegie-Mellon Univ.</u> v. <u>Cohill</u>, 484 U.S. 343, 350 & n.7, 108 S. Ct. 614, 619 & n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."); <u>United Mine Workers</u> v. <u>Gibbs</u>, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966); <u>Cave</u> v. <u>E. Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 250 (2d Cir. 2008); <u>Quinones</u> v. <u>Mamis-King</u>, 155 Fed. Appx. 547, 548 (2d Cir. 2005); <u>Gelb</u> v. <u>Bd. of Elections of City of N.Y.</u>, 155 Fed. Appx. 12, 15 (2d Cir. 2005); <u>Motorola Credit Corp.</u> v. <u>Uzan</u>, 388 F.3d 39, 56 (2d Cir. 2004), <u>cert. denied</u>, 544 U.S. 1044, 125 S. Ct. 2270 (2005); <u>In re Merrill Lynch Ltd. P'ships Litig. (Lanza)</u>, 154 F.3d 56, 61 (2d Cir. 1998); <u>Pitchell</u> v. <u>Callan</u>, 13 F.3d 545, 549 (2d Cir. 1994).[23]

---

[23]    <u>See also</u>, <u>e.g.</u>, <u>Nonnenmann</u> v. <u>City of New York</u>, 02 Civ. 10131, 2004 WL 1119648 at *28 n.34 (S.D.N.Y. May 20, 2004) (Peck, M.J.); <u>Leemon</u> v. <u>Burns</u>, 175 F. Supp. 2d 551, 562 & (continued...)

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Dkt. No. 16) is

GRANTED.  Plaintiff Ngwa's federal claims under TILA and RESPA (her first, second and ninth

causes of action) are dismissed with prejudice, and her state law claims are dismissed without

prejudice.[24/]  The Clerk of Court shall close the case.

SO ORDERED.

Dated:        New York, New York
              August 20, 2008

                                        _____
                                        Andrew J. Peck
                                        United States Magistrate Judge

Copies **by fax & ECF** to:        David M. Harrison, Esq.
                                   Keith D. Grace, Esq.
                                   Andrew S. Muller, Esq.
                                   Charles R. Jacob III, Esq.

---

[23/]    (...continued)
         n.16 (S.D.N.Y. 2001) (Peck, M.J.) (& cases cited therein); Johns-Davila v. City of New
         York, 99 Civ. 1885, 2000 WL 1725418 at *12 (S.D.N.Y. Nov. 20, 2000) (Peck, M.J.);
         Vasquez v. Artuz, 97 Civ. 8427, 1999 WL 440631 at *1 n.1 (S.D.N.Y. June 28, 1999) (Peck,
         M.J.); Berman v. Parco, 986 F. Supp. 195, 219 (S.D.N.Y. 1997) (Wood, D.J. & Peck, M.J.);
         Buti v. Impressa Perosa, S.R.L., 935 F. Supp. 458, 475 (S.D.N.Y. 1996), (Schwartz, D.J. &
         Peck, M.J.), aff'd, 139 F.3d 98 (2d Cir.), cert. denied, 525 U.S. 826, 119 S. Ct. 73 (1998); In
         re Towers Fin. Corp. Noteholders Litig., 93 Civ. 0810, 1996 WL 393579 at *20 (S.D.N.Y.
         July 15, 1996) (Knapp, D.J. & Peck, M.J.); Sheridan v. Jaffe, 94 Civ. 9344, 1996 WL
         345965 at *10 (S.D.N.Y. June 24, 1996) (Knapp, D.J. & Peck, M.J.); Shain v. Duff & Phelps
         Credit Rating Co., 915 F. Supp. 575, 584 (S.D.N.Y. 1996) (Knapp, D.J. & Peck, M.J.).

[24/]    Obviously, Ngwa can – and should – pursue those claims in state court.  Based on the
         allegations in her complaint, she was poorly treated, perhaps even defrauded, by defendants'
         conduct.  She does not, however, have any federal claims.

H:\OPIN\NGWA